No. ___

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

In re LOS ANGELES TIMES COMMUNICATIONS LLC

LOS ANGELES TIMES COMMUNICATIONS LLC,
*Petitioner*,

v.

UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF CALIFORNIA,
*Respondent*,

UNITED STATES,
*Real Party in Interest*,

and

MARK DAVID HANDEL,
*Real Party in Interest.*

_____

On Petition for Writ of Mandamus to the United States District Court for the
Central District of California (Case No. 2:20-cr-00612)

_____

### EXHIBITS TO PETITION FOR WRIT OF MANDAMUS

Katie Townsend
 *Counsel of Record*
Grayson Clary
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300

Jeff Glasser
LOS ANGELES TIMES
 COMMUNICATIONS LLC
2300 E. Imperial Highway
El Segundo, CA 90245
Telephone: (213) 237-7077

# INDEX OF EXHIBITS

Ex. 1     District Court's opinion and order denying motion of non-party Los Angeles Times Communications LLC to intervene and unseal as to certain materials and granting it as certain materials, ECF No. 158 (Sept. 19, 2024).

Ex. 2     Defendant's notice of manual filing of motion to compel discovery, ECF No. 54 (Nov. 25, 2021).

Ex. 3     District Court's order granting Defendant's *ex parte* application for sealed filing, ECF No. 60 (Nov. 29, 2021).

Ex. 4     Declaration of Mark Windsor, ECF No. 75 (Mar. 14, 2022).

Ex. 5     District Court's order granting Defendant's *ex parte* application for sealed filing, ECF No. 76 (Mar. 15, 2022).

Ex. 6     District Court's order granting the Government's *ex parte* application for sealed filing, ECF No. 123 (Oct. 24, 2023).

Ex. 7     The Government's notice of lodging the materials ordered unsealed and/or redacted, ECF No. 159 (Oct. 31, 2024).

Ex. 8     Materials lodged by the Government:

       i.      ECF No. 61 at Exs. B, C, D, E, G, H, K, L, M, Q, R
       ii.     ECF No. 71
       iii.    ECF No. 73 at Ex. 3
       iv.    ECF No. 125 at Exs. 2–5

# Exhibit 1

District Court's opinion and order denying motion of non-party Los Angeles Times Communications LLC to intervene and unseal as to certain materials and granting it as certain materials

ECF No. 158 (Sept. 19, 2024)

1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8              FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,          No. CR 20-00612(A)-ODW

        Plaintiff,                 ORDER DENYING NON-PARTY LOS ANGELES
                                   TIMES COMMUNICATIONS LLC TO
             v.                    INTERVENE AND UNSEAL AS TO CERTAIN
                                   MATERIALS AND GRANTING IT AS
MARK HANDEL,                       CERTAIN MATERIALS

        Defendant.

     Having considered Applicant Los Angeles Times Communications

LLC's ("Applicant") Motion to Intervene and Unseal Docket #s 59, 61,

70-73, 77-78 and 125 filed under seal in this case (the "Motion"),

the Government's Opposition to the Motion, the Applicant's Reply, any

argument of counsel, and the files and records in this case, the

Court hereby finds as follows:

     1.   Defendant MARK HANDEL's ("defendant") Ex Parte Application

for Order to Seal Documents and Declaration of Counsel filed at

Docket #59, defendant's Motion to Compel Specific Discovery and

Exhibits A, F, I, J, N, O, P, and S filed at Docket #61, the

government's Ex Parte Application for Order Sealing Documents and

Declaration of Thomas F. Rybarczyk filed at Docket #70, the

government's Opposition to Defendant's Motion to Compel Specific

Discovery (Dkts. 61, 67) filed at Docket #72, government's Exhibits

1   1-2, 4-7 filed at Docket #73, defendant's Reply in Support of Motion

2   to Compel Specific Discovery filed at Docket #77, and defendant's

3   Exhibit T to defendant's Reply in Support of Motion to Compel

4   Specific Discovery filed at Docket #78 shall remain <u>sealed</u>.  The

5   press and public do not have a qualified right of access to these

6   materials, and good cause remains to keep them sealed.

7        2.   In light of the government's non-opposition to unsealing

8   the following materials, Exhibits C, E, K, L, M, Q, and R filed at

9   Docket #61 and the Order Sealing Documents filed at Docket #71 shall

10  be <u>unsealed</u>.

11       3.   For good cause shown, Exhibits B and D filed at Docket #61

12  and Exhibit 3 filed at Docket #73 shall be <u>redacted</u> and the redacted

13  materials then unsealed consistent with this Order.

14       4.   For good cause shown, Exhibits G and H filed at Docket #61

15  and Exhibits 2-5 filed at Docket #125 shall be <u>redacted</u> and the

16  redacted materials then unsealed consistent with this Order.

17  Notwithstanding the public's qualified common law right of access to

18  sealed search warrant materials after an investigation ends and its

19  qualified First Amendment right of access to sentencing materials,

20  the government has established compelling reasons and significant

21  interests justifying the redactions.

22       5.   For the materials in this Order to be unsealed subject to

23  redaction, the following redactions shall be made prior to unsealing:

24            a.   The names and identities of uncharged third parties

25  who were then subjects of the federal investigation;

26            b.   The names or information that could be used to

27  identify confidential government informants and witnesses who

28  cooperated in the federal investigation;

     c.   Any description of sensitive law enforcement techniques;

     d.   The names and identities of victims and intended victims of any alleged crime; and

     e.   Personal identifying information, including, but not limited to, social security numbers, dates of birth, bank account information, home addresses, personal email addresses, and personal telephone numbers.

IT IS HEREBY ORDERED THAT the government shall redact the materials consistent with this Order and complete the redactions within forty-two (42) days of its issuance absent an extension by the Court for good cause shown.

IT IS FURTHER ORDERED THAT, upon completion of the redactions, the government shall (1) provide redacted copies of the materials to the Applicant and (2) lodge redacted copies of the materials with the Court.

IT IS SO ORDERED.

September 19, 2024
DATE

HONORABLE OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE

# Exhibit 2

Defendant's notice of manual filing of motion to compel discovery

ECF No. 54 (Nov. 25, 2021)

Mark Windsor
Law Office of Mark Windsor
65 North Raymond Avenue, Suite 320
Pasadena, CA 91103

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES | CASE NUMBER: |
|---|---|
| PLAINTIFF(S) | 20-CR-612-ODW |
| v. | |
| MARK HANDEL | **NOTICE OF MANUAL FILING OR LODGING** |
| DEFENDANT(S). | |

PLEASE TAKE NOTICE:

Pursuant to Local Rule 5-4.2, the following document(s) or item(s) are exempt from electronic filing, and will therefore be manually ☑ Filed ☐ Lodged: (**List Documents**)

Motion to Compel Specific Discovery
Exhibits to Motion
Ex Parte Application to File Under Seal
Proposed Order File Under Seal

**Reason:**

☑ Under Seal

☐ In Camera

☐ Items not conducive to e-filing (i.e., videotapes, CDROM, large graphic charts)

☐ Per Court order dated: _____

☐ Other:

| November 25, 2021 | Mark Windsor |
|---|---|
| Date | Attorney Name |
| | Mark Handel |
| | Party Represented |

*Note: File one Notice of Manual Filing or Lodging in each case, each time you manually submit a document(s).*

G-92 (05/15)      NOTICE OF MANUAL FILING OR LODGING

# Exhibit 3

District Court's order granting Defendant's *ex parte* application for sealed filing

ECF No. 60 (Nov. 29, 2021)

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 20-CR-612-ODW |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER TO SEAL DOCUMENTS** |
| | ) | |
| v. | ) | |
| | ) | |
| MARK HANDEL, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

    Good cause having been shown, it is hereby ordered that Mark Handel's *Ex Parte* Application for sealed filing is GRANTED. The document sought to be filed under seal, the accompanying exhibits to the document, and the defendant's *Ex Parte* Application for sealed filing shall all be filed under seal.

    IT IS SO ORDERED.


November 29, 2021
_____
DATE

_____
HONORABLE OTIS D. WRIGHT II
UNITED STATES DISTRICT JUDGE

# Exhibit 4

Declaration of Mark Windsor

ECF No. 75 (Mar. 14, 2022)

MARK WINDSOR (SBN 190589)
Law Office of Mark Windsor
65 N. Raymond Ave., Ste. 320
Pasadena, California 91103
Telephone: (626) 792-6700
Email: mark@windsorlaw.us

Attorney for Defendant
MARK HANDEL

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 20-CR-612-ODW-1 |
| Plaintiff, | **DEFENDANT'S *EX PARTE* APPLICATION FOR ORDER TO SEAL DOCUMENTS; DECLARATION OF COUNSEL** |
| v. | |
| MARK HANDEL, | Hearing Date: March 28, 2022<br>Time: 10:00 a.m.<br>Courtroom: 5D |
| Defendant. | |

Defendant Mark Handel, by and through his counsel, Mark Windsor, applies *ex parte* for an order that his Reply in Support of Motion to Compel Specific Discovery (hereinafter, "Reply") and accompanying Exhibit T in support of the Reply be filed under seal.

This *Ex Parte* Application is based on the attached declaration of Mark Windsor.

DATED: March 14, 2022          Respectfully submitted,

_____/s/_____

MARK WINDSOR
Attorney for Defendant

### DECLARATION OF MARK WINDSOR

I, Mark Windsor, declare as follows:

1.      I am an attorney admitted to practice in the Central District of California, and I represent defendant Mark Handel in the above-entitled action.

2.      I request leave to file defendant's Reply in Support of Motion to Compel Specific Discovery and accompanying Exhibit T in support of the Reply under seal.

3.      This request is based on the fact that the Reply and Exhibit T refers to sensitive, confidential information on law enforcement's investigation into politicians and their staffers, at least some of which is not public knowledge.

4.      I believe that failure to seal these documents would harm my client irreparably and make public potentially sensitive information about both my client and targets of a government investigation.

5.      I have contacted the government regarding their position on the under-seal filings.  The government has no objection.

6.      Should the Court deny this application, I request that the pleading and this application not be filed, but be returned to me, without filing of the documents or reflection of the name or nature of the documents on the clerk's public docket.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 14th day of March, 2022 at Los Angeles, California.

Respectfully submitted,

_____/s/_____
MARK WINDSOR
Attorney for Defendant

---

DEFENDANT'S *EX PARTE* APPLICATION TO SEAL DOCUMENTS

# Exhibit 5

District Court's order granting Defendant's *ex parte* application for sealed filing

ECF No. 76 (Mar. 15, 2022)

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 20-CR-612-ODW |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER TO SEAL DOCUMENTS** |
| v. | ) | |
| | ) | |
| MARK HANDEL, | ) | |
| | ) | |
| Defendant. | ) | |

Good cause having been shown, it is hereby ordered that Mark Handel's *Ex Parte* Application for sealed filing is GRANTED.   The document sought to be filed under seal and the accompanying exhibit to the document shall all be filed under seal.

IT IS SO ORDERED.

March 15, 2022
_____
DATE

_____
HONORABLE OTIS D. WRIGHT II
UNITED STATES DISTRICT JUDGE

# Exhibit 6

District Court's order granting the Government's *ex parte* application for sealed filing

ECF No. 123 (Oct. 24, 2023)

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

8

FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

UNITED STATES OF AMERICA,          No. CR 20-00612-ODW

10
            Plaintiff,             ORDER SEALING DOCUMENTS

11
                 v.

12
MARK HANDEL,

13
            Defendant.

14

15

16
For good cause shown, IT IS HEREBY ORDERED THAT:

17
       The government's ex parte application for sealed filing is

18
GRANTED.  The documents sought to be filed under seal shall be filed

19
under seal.

20

21
October 24, 2023

22
 DATE                              HONORABLE OTIS D. WRIGHT II
                                   UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

# Exhibit 7

The Government's notice of lodging the materials ordered unsealed
and/or redacted

ECF No. 159 (Oct. 31, 2024)

E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
Assistant United States Attorney
Public Corruption and Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-8452
     Facsimile:  (213) 894-0141
     E-mail:     thomas.rybarczyk@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 20-00612(A)-ODW |
| Plaintiff, | NOTICE OF LODGING |
| v. | |
| MARK HANDEL, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Thomas F. Rybarczyk, hereby gives notice that it is lodging with the Court the materials ordered unsealed and/or redacted in its Order Denying Non-Party Los Angeles Times Communications LLC Motion to Intervene and Unseal as to Certain Materials and Granting It as to Certain Materials (the "Order"), filed at Docket Number 158 on September 19, 2024.  Pursuant to Local Rule 5-4.2, the documents are exempted from electronic filing per the Order.

The government further notes that, for the exhibits associated with Docket Number 61, that is, the exhibits attached to Defendant MARK HANDEL's Motion to Compel Specific Discovery, the government searched for and could not locate a copy from the Court. This search included reviewing the email files of one of the former Assistant United States Attorneys assigned to the case at the time to locate a conformed copy. The government does have in its possession the courtesy copy provided by defendant's counsel and is lodging the unsealed exhibits, including those that Court ordered redacted, from that copy with the Court. In that courtesy copy provided by defendant, there is a note in Exhibit G on page "EX G 025" (bates number USAO_0056761) that was created by an individual working for counsel for defendant. Because it references an individual whose name has otherwise been redacted, the government has deleted that note from the version it is lodging with the Court.

Dated: October 31, 2024            Respectfully submitted,

                                   E. MARTIN ESTRADA
                                   United States Attorney

                                   MACK E. JENKINS
                                   Assistant United States Attorney
                                   Chief, Criminal Division

                                   THOMAS F. RYBARCZYK
                                   Assistant United States Attorney

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

# Exhibit 8

Materials lodged by the Government:

ECF No. 61 at Exs. B, C, D, E, G, H, K, L, M, Q, R
ECF No. 71
ECF No. 73 at Ex. 3
ECF No. 125 at Exs. 2–5

# DKT. 61

# EXHIBITS B, C, D, E, G, H, K, L, M, Q, R

# EXHIBIT B:

Defense's First Discovery Letter ("Discovery Letter 1"), Dated 6/9/21

# MARK WINDSOR

ATTORNEY AT LAW

65 NORTH RAYMOND AVENUE, SUITE 320
PASADENA, CALIFORNIA 91103

Telephone
626 7926700

June 9, 2021

Via Email:     ruth.pinkel@usdoj.gov
               agustin.d.orozco@usdoj.gov
               jonathan.galatzan@usdoj.gov

Ruth C. Pinkel; Agustin D. Orozco; Jonathan Galatzan
United States Attorney's Office, Central District of California
312 North Spring Street
Los Angeles, CA 90012
Re:     United States v. Mark Handel, CR 20-612-ODW-1
Ms. Pinkel, Mr. Orozco, and Mr. Galatzan:

I am writing to request the production of the following materials pursuant to Fed. R. Crim. P. 12(b)(4)
(B), 16(a), and 26.2, Brady v. Maryland, 373 U.S. 83 (1963), and all other applicable rules and statutes.
Specifically, I am requesting disclosure of the following discovery:
Wiretap Evidence: Any and all wiretap evidence in the possession of the government, or that is
reasonably attainable by the government, that mentions Mr. Handel or captures statements of Mr.
Handel. This includes, but is not limited to, any wiretap material captured during the investigations of
█████████, ████, █████████, █████, █████████, ████,
██████, Individual B ████████████], and Individual A [██████████████].

1. **Phone, SMS, and All Other Chat Communications:** Any and all phone calls, recordings, text
   messages, chat messages, linesheets, prepared summaries, reports, and other communications - in the
   possession of the government, or that is reasonably accessible and/or attainable by the government
   - that mention or capture Mr. Handel.

2. **Phone Records, GPS, Cell Site Data:** Any and all phone logs, GPS data, cell-site data, reports,
   prepared summaries, and other records pertaining to Mr. Handel's phone that were gathered during
   the investigation into Mr. Handel as it pertains to the instant case.

3. **E-mail Communications:** Any and all electronic mail that mentions or capture Mr. Handel,
   including, but not limited to, e-mails sent to/from "markhandel@aol.com," which was the subject
   of a search warrant issued on 12/11/15. (See USAO_56769).

4. **Individual A:** Any and all records related to Individual A's meeting with the FBI or other law
   enforcement official(s). This includes, but is not limited to, any reports, recordings, memorandum,
   summaries, photos, and rough notes memorializing communications and interactions with Individual
   A.

5. **Interviews with and Law Enforcement Files for Mark Handel:** Any and all records related to Mr. Handel's work as an informant and/or meeting with the FBI or other law enforcement official(s). This includes, but is not limited to, any reports, recordings, memorandum, summaries, photos, and rough notes memorializing communications and interactions with Mr. Handel. This also includes but is not limited to any evaluations or ratings of Mr. Handel as an informant and any reports, notes or other indications of the reliability of the information provided by him to law enforcement.

6. ███████████: All evidence concerning ███████████ as it pertains to the instant investigation, including, but not limited to, interviews with law enforcement, recordings, photos, reports, affidavits, applications, communications, and all other files and records.

7. **Reports and Records:** Any and all evidence in the possession of the government, or that is reasonably attainable by the government, that involve ███████████ and ███████████.

Thank you in advance for your time and attention to these requests.

Regards,

/s/

Mark Windsor
Counsel for Mark Handel

# EXHIBIT C:

Government's Email Response
to Discovery Letter 1,
Dated 7/7/21

 Gmail

**jennifer wang <jenniferwang103@gmail.com>**

---

## Fwd: Discovery Requests, USA v. Mark Handel

**Mark Windsor** <windsorlaw@gmail.com>                    Wed, Jul 7, 2021 at 4:52 PM
To: Jennifer Wang <jenniferwang103@gmail.com>

---------- Forwarded message ---------
From: **Pinkel, Ruth (USACAC)** <Ruth.Pinkel@usdoj.gov>
Date: Wed, Jul 7, 2021 at 4:21 PM
Subject: RE: Discovery Requests, USA v. Mark Handel
To: Mark Windsor <windsorlaw@gmail.com>, Orozco, Agustin D. (USACAC) <Agustin.D.Orozco@usdoj.gov>

Hi Mark,

I received your voice mail of yesterday.  We are in the process of producing additional discovery on a rolling basis.  I expect the Mark Handel aol production to be the next in line for production later this month.

Thank you,

Ruth

**Ruth C. Pinkel** | Assistant United States Attorney | Acting Deputy Chief | U.S. Attorney's Office| Public Corruption and Civil Rights Section

1500 United States Courthouse| 312 N. Spring Street|Los Angeles, California 90012

T:213.894.6077 | ruth.pinkel@usdoj.gov

---

**From:** Mark Windsor <windsorlaw@gmail.com>
**Sent:** Wednesday, June 9, 2021 3:14 PM
**To:** Pinkel, Ruth (USACAC) <RPinkel@usa.doj.gov>; Orozco, Agustin D. (USACAC) <aorozco@usa.doj.gov>; Galatzan, Jonathan (USACAC) <jgalatzan@usa.doj.gov>
**Subject:** Discovery Requests, USA v. Mark Handel

Ruth - Hope you are well. Please see attached for our current discovery requests.

--

# EXHIBIT D:
Defense's Second Discovery
Letter ("Discovery Letter 2"),
Dated 10/11/21

# MARK WINDSOR

ATTORNEY AT LAW

65 NORTH RAYMOND AVENUE, SUITE 320
PASADENA, CALIFORNIA 91103

Telephone
626 7926700

October 11, 2021

Via Email:    ruth.pinkel@usdoj.gov
              agustin.d.orozco@usdoj.gov
              jonathan.galatzan@usdoj.gov

Ruth C. Pinkel; Agustin D. Orozco; Jonathan Galatzan
United States Attorney's Office, Central District of California
312 North Spring Street
Los Angeles, CA 90012

Re:    *United States v. Mark Handel,* CR 20-612-ODW-1:
       Second Request for Discovery

Ms. Pinkel, Mr. Orozco, and Mr. Galatzan:

I am writing once again to request the production of the following materials pursuant to Fed. R. Crim. P. 12(b)(4)(B), 16(a), and 26.2, *Brady v. Maryland,* 373 U.S. 83 (1963), and all other applicable rules and statutes.

This is my second request for discovery. My first request was sent to Ms. Pinkel on June 9, 2021 and is attached to this letter as Exhibit A. One month later, Ms. Pinkel responded vaguely that your office was in the "process of producing additional discovery on a rolling basis" and that it would be producing the Mark Handel aol production next. This response did not address most of the requests that the defense made on June 9, 2021. As a result, I am issuing a second request for government discovery, wherein I am reiterating almost all of the requests from my first letter as well as including additional requests. To be clear, while I make several specific requests for discovery below, I am requesting immediate disclosure of *all* material discoverable under *Brady v. Maryland,* supra.

Specifically, I am requesting disclosure of the following discovery:

1. **Wiretap Evidence:** Any and all wiretap evidence in the possession of the government, or that is reasonably attainable by the government, that mentions Mr. Handel or captures statements of Mr. Handel. This includes, but is not limited to, any wiretap material captured during the investigations of ████████, ████████, ████████, ████████, ████████, ████████, Individual B [████████], and Individual A [████████].

2. **Investigation Prior to August 8, 2014:** Any and all evidence showing that investigation into Mr. Handel was initiated, or that "a matter… was pending in the United States Attorney's Office (USAO) on or before August 8, 2014, the date the Honorable Andre Birotte Jr. resigned from his position as the United States Attorney for the Central District of California." (See Dkt 3: Memorandum filed by Plaintiff USA, dated December 8, 2020). Also, in connection with this request, I would like copies of any written policies, guidelines, or other documentation describing how your office determines whether a case was pending in your office before a certain date for purposes of recusing U.S. Attorney personnel who later become Article III or magistrate judges.

3. **Phone, SMS, and All Other Chat Communications:** Any and all phone calls, recordings, text messages, chat messages, linesheets, prepared summaries, reports, and other communications - in the possession of the government, or that is reasonably accessible and/or attainable by the government - that mention or capture Mr. Handel.

4. **Phone Records, GPS, Cell Site Data:** Any and all phone logs, GPS data, cell-site data, reports, prepared summaries, and other records pertaining to Mr. Handel's phone that were gathered during the investigation into Mr. Handel as it pertains to the instant case.

5. **Individual A:** Any and all records related to Individual A's meeting with the FBI or other law enforcement official(s). This includes, but is not limited to, any reports, recordings, memorandum, summaries, photos, and rough notes memorializing communications and interactions with Individual A.

6. **Interviews with Mark Handel:** Any and all records related to Mr. Handel's meeting with the FBI or other law enforcement official(s). This includes, but is not limited to, any reports, recordings, memorandum, summaries, photos, and rough notes memorializing communications and interactions with Mr. Handel.

7. **Law Enforcement Cooperator Files for Mark Handel:** *Unredacted* copies of the following:

   a. Applications as a confidential informant (CI) or confidential human source (CHS) for all agencies that either requested his assistance or received a benefit from the information he supplied; this includes, but is not limited to, DOJ, IRS, Attorney General, FBI, etc.;

   b. All CI or CHS contract(s) that Mr. Handel signed;

   c. All of Mr. Handel's reviews, including any initial review(s) authorizing him to be under contract as well as all subsequent reviews;

   d. Records of all of Mr. Handel's compensation, money, benefits, or other value received from the government as a result of his cooperation;

   e. All records showing he was disciplined for any violation(s) of his contract;

   f. All memoranda, electronic communications (emails, text messages, chat messages, etc.), telephone logs, recordings, and other records of communications by any individual commenting on any aspect of the information Mr. Handel provided to the agency or agencies that utilized him as a CI or CHS;

   g. All cases in which his information was used either for investigation and/or prosecution

    h. All expenses for which Mr. Handel received reimbursement for as the result of providing assistance to any agency or agencies.

8. ███████: All evidence concerning ████████ as it pertains to the instant investigation, including, but is not limited to, any reports, recordings, memorandum, summaries, photos, and rough notes memorializing communications and interactions with ██████████.

9. ████████: All evidence concerning ██████ as it pertains to the instant investigation, including, but not limited to, interviews with law enforcement, recordings, photos, reports, affidavits, applications, communications, and all other files and records.

10. **<u>Reports and Records</u>:** Any and all evidence in the possession of the government, or that is reasonably attainable by the government, that involve ████████ and ████.

11. I would like notice of all experts you intend to call at trial, with regard to:

    a. Any witnesses to give opinion testimony under FRE 702, please disclose the name of the witness and qualification;

    b. All experts the government will use, I request a report from the expert as to his expected testimony, including an explanation of the bases for his testimony and how his conclusions meet the reliability standards of *Daubert v. Merrell Dow*, 509 U.S. 579 (1993); and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999);

    c. All experts, transcripts of any prior opinion testimony offered in any court by the witness;

    d. All experts, any draft reports;

    e. All experts, copies of all the data which the witness considered in reaching his opinion, including notes, copies of any reports, the authorities, treatises, witnesses and other experts consulted by the witness in forming his opinion, any correspondence from the government, any written or oral reports, tests, testimony, investigations and any other information consulted by the witness in arriving at his opinion; and

    f. All experts, any results or reports of physical examinations, and/or scientific tests or experiments which are intended for use at trial or which are material to the preparation of the defense.

12. All information concerning informants or cooperating witnesses involved in this case. At a minimum, the government is obligated to disclose the identification and location of any informants or cooperating witnesses, as well as the identity and location of any other percipient witnesses unknown to Defendant Handel. *Roviaro v. United States*, 353 U.S. 53 (1957); *United States v. Wilkins*, 326 F.2d 135 (2nd Cir. 1964). This request includes, without limitation:

    a. A list of the identities of any government informant, agent, or confidential source involved in the investigation or prosecution of this case to include, addresses and phone numbers;

b. Whether any government informant has provided any information which led to the arrest or prosecution of the defendant;

c. Whether any confidential informant or cooperating witness has worked for the government in the past;

d. Whether any confidential informant or cooperating witness has a prior criminal record and if so, provide it;

e. Whether any confidential informant or cooperating witness was paid for his or her efforts in this case or any other case and, if so, how much;

f. Whether any confidential informant or cooperating witness has any pending cases anywhere, and if so, provide list of cases pending and, whether any assistance or consideration was offered or suggested, formally or informally, or is intended by the government to be offered on behalf of the informant with respect to any pending case the informant has;

g. Any pending cases against any confidential informant or cooperating witness's immediate family members, *see United States v. Lankford*, 955 F.2d 1545, 1549 (11th Cir.) (error to preclude cross-examination into arrest of witness's sons on state drug charges because, despite lack of any federal agreement to help the sons, witness may have believed and hoped that his cooperation would persuade federal authorities to assist sons or to forego taking the state prosecutions to federal court);

h. Whether any confidential informant or cooperating witness requested of the government anything of value or any assistance or consideration in any legal matter;

i. Any agreement, promise or suggestion made by the government or its agents to any prospective informant offering assistance to the informant in obtaining leniency in any court, or lack of prosecution or arrest, or any other favorable treatment or consideration for the efforts made in connection with any aspect of this case by the informant;

j. A list of all cases in which each confidential informant or cooperating witness has provided testimony;

k. Copies of transcripts of any prior testimony offered in any court by any confidential informant or cooperating witness;

l. The identity of any other percipient witnesses, including any other cooperating witnesses, unknown to Defendant Handel;

m. The identity of all individuals criminally investigated or prosecuted as a result of the statements of the confidential source;

n. Any reports, recordings, notes or other record of or describing allegations or conduct concerning criminal activity of confidential informants while said informants were registered informants with the federal or state authorities, or assisting a joint task force;

o. Copies of any agency manuals regarding the use and handling of informants applicable to the officers or personnel supervising, handling, or otherwise utilizing the informants in this case.

p. Copies of any and all reports, statements, recordings or other information obtained when the informant was opened as a source for the LAPD, the FBI, and any other law enforcement organization.

13. All evidence that any prospective government witness is biased or prejudiced against Defendant Handel, or has a motive to falsify or distort his or her testimony. *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987); *United States v. Strifler*, 851 F.2d 1197 (9th Cir. 1988). This request includes, without limitation:

   a. All evidence of any misconduct or dishonesty relating to the confidential source, or any other person involved in the investigation of this case;

   b. All evidence of any inconsistent statements given by the confidential sources during this or any other investigation.

14. Pursuant to the Constitutional requirements of *United States v. Agurs*, 427 U.S. 97 (1927), *Giles v. Maryland,* 386 U.S. 66 (1967), and *Brady v. Maryland*, 373 U.S. 83 (1963), please provide any exculpatory or favorable evidence or information, or any evidence or statements of anyone which may be favorable to Defendant Handel, which is in the possession or control of the government or its agents, or, if unknown, can by due diligence become known or acquired by the government, or its agents, including, but not limited to, the following:

   a. Copies of any statements or the substance of any oral statements made by any prospective government witness, or by alleged co-conspirator, which is exculpatory for or favorable to Defendant Handel, or which is inconsistent with any fact the government alleges with respect to the charges in the Indictment;

   b. Copies of any reports of mental illness, excessive alcoholism, or any medical condition of any prospective government witness, confidential informant or cooperating witness which would affect the witness 'ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substances.

15. The defense asks that the government produce all proffers, communications with the government and statements made by any cooperating witness, confidential informant or his attorney, whether made formally or informally, *see United States v. Sudikoff*, 36 F.Supp.2d 1196 (C.D. Cal. 1999); and,

   a. Copies of any witness's criminal record;

   b. Any government report on any witness's uncharged criminal behavior.

16. Produce all prior statements of any unindicted co-conspirators. Even if the government does not intend to call these witnesses at trial, the defense reserves the right to call them in its case and is entitled to their prior statements. *See United States v. Walker*, 922 F. Supp. 732, 742-43 (N.D.N.Y. 1996) (requiring disclosure of co-conspirator statements under Rule 16 for all persons the government does not intend to call at trial because the Jencks Act limits on discovery apply only to those witnesses who will be called at trial).

17. The name, last known address and telephone number, of each prospective witness. "Witnesses particularly eyewitnesses, to a crime are the property of neither the prosecutor nor the defense. Both sides have an equal right and should have an equal opportunity, to interview them." *Gregory v. United States*, 369 F.2d 185 (D.C. Cir 1966), cited with approval in *United States v. Tucker*, 716 F.2d 576, 583 (9th Cir. 1983) (failure of defense counsel to interview prosecution witnesses is ineffective assistance of counsel).

18. All statements, documents, evidence or materials of any type which relate to all statements or alleged confessions made by any defendant which the prosecution may attempt to introduce at trial.

19. The names, serial numbers, employment and present assignment of all law enforcement and other governmental personnel involved in the investigation and any arrests in this case. Similarly, I request all information relating to any law enforcement officer who was part of this investigation, be s/he federal or local, that indicates any arrest, criminal charge, or internal investigation related to the commission of a crime, a violation of an internal agency rule, or any act that would indicate fraud or dishonesty on the part of the officer/agent, and any other personnel who fit the description above. Even if the government does not intend to call these witnesses at trial, the defense reserves the right to call them in its case.

20. The name and last known address of every witness to the crimes charged who will not be charged as a prosecution witness. *See United States v. Cadet*, 727 F.2d 1453, 1469 (9th Cir. 1984).

21. All evidence that any prospective prosecution witness, including, but not limited to government agents and law enforcement officers, (a) has ever made any false statement, whether or not under oath or penalty of perjury, and/or (b) does not have a good reputation in the community for honesty. *See United States v. Strifler*, 851 F. 2d 1197 (9th Cir. 1988); Rule 608 (a) Federal Rules of Evidence.

22. All evidence that any prospective prosecution witness, including, but not limited to government officers, has ever made a false, contradictory, or inconsistent statement with regard to this case, or any statement showing bias or a motive to fabricate. *Pennsylvania v. Ritchie*, 107 S.Ct. 989 (1987); *United States v. Strifler*, 851 F. 2d 1197 (9th Cir. 1988).

23. A complete list of witnesses the government intends to call at trial in this matter.

24. A complete list of exhibits the government intends to introduce or refer to at trial in this matter.

These requests include not only information presently within your own knowledge, but also information within the knowledge of all law enforcement officers and informants involved in any way in this matter, and you are specifically requested to obtain all responsive information from such persons.

If you decline to disclose any of the materials requested above, or if you have doubts as to the propriety of the disclosure, I ask that you submit the materials to the court for its review. *United States v. Lehman*, 756 F.2d 725, 729 (9th Cir. 1985).

Finally, to the extent that the court's standing order, or other entered order, states that the defendant must object to any evidentiary foundational issues in order to preserve the right to object at trial, Defendant does so now. That is not to say that Defendant will not stipulate to matters at trial, only that Defendant reserves the right to make decisions about evidentiary issues closer to the time of trial.

If you have any questions regarding the nature of these requests, please contact me. Thank you for your time and attention, and I look forward to your timely response.

Regards,

/s/

Mark Windsor
Counsel for Mark Handel

# EXHIBIT E:
Government's Email Response to
Discovery Letter 2,
Dated 10/12/17

 **Gmail**

**jennifer wang <jenniferwang103@gmail.com>**

---

**RE: [EXTERNAL] Re: Second Discovery Request on behalf of Mark Handel, 20CR612-ODW-Received**
1 message

---

**Pinkel, Ruth (USACAC)** <Ruth.Pinkel@usdoj.gov>                                          Tue, Oct 12, 2021 at 10:46 AM
To: Mark Windsor <windsorlaw@gmail.com>, "Orozco, Agustin D. (USACAC)" <Agustin.D.Orozco@usdoj.gov>, "Galatzan, Jonathan (USACAC)" <Jonathan.Galatzan@usdoj.gov>
Cc: Jennifer Wang <jenniferwang103@gmail.com>

Mark,

We confirm receipt of the letter.

Thank you,

Ruth

---

**From:** Mark Windsor <windsorlaw@gmail.com>
**Sent:** Monday, October 11, 2021 1:27 PM
**To:** Pinkel, Ruth (USACAC) <RPinkel@usa.doj.gov>; Orozco, Agustin D. (USACAC) <aorozco@usa.doj.gov>; Galatzan, Jonathan (USACAC) <jgalatzan@usa.doj.gov>
**Cc:** Jennifer Wang <jenniferwang103@gmail.com>
**Subject:** [EXTERNAL] Re: Second Discovery Request on behalf of Mark Handel, 20CR612-ODW

Please substitute the attached for the main letter sent previously. We had some technical difficulties and the formatting is a bit wonky on the first version. Please contact me with any questions or concerns.

Mark Windsor

On Mon, Oct 11, 2021 at 11:41 AM Mark Windsor <windsorlaw@gmail.com> wrote:

Please see attached letter requesting discovery, please confirm receipt. Thank you,

Mark Windsor

--
Mark Windsor
Attorney at Law
65 North Raymond Avenue
Suite 320
Pasadena, CA 91103
tl (626) 792-6700, fx (626) 956-8900

This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521. It is legally privileged. This

EX E-001

information is confidential information and is intended only for the use of the individual or entity named above. If you have received this communication in error, please notify us immediately by return email.

--

Mark Windsor
Attorney at Law
65 North Raymond Avenue
Suite 320
Pasadena, CA 91103
tl (626) 792-6700, fx (626) 956-8900

This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521. It is legally privileged. This information is confidential information and is intended only for the use of the individual or entity named above. If you have received this communication in error, please notify us immediately by return email.

# EXHIBIT G:
First Search Warrant for Aol Address,
Dated 12/11/15

AO 106 (Rev. 04/10)  Application for a Search Warrant  (USAO CDCA Rev. 01/2013)

# UNITED STATES DISTRICT COURT
### for the
Central District of California

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with the account identified as<br>markhandel@aol.com that is stored at premises<br>controlled by AOL, Inc. | )<br>)<br>)<br>)<br>)<br>) | Case No.  **15-2371M** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Eastern_____ District of _____Virginia_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

*Code Section(s)*
18 U.S.C. 371, 666, 1001, 1341, 1343, 1346
52 U.S.C. 30109(d) and 31122

*Offense Description*
See attached Affidavit

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

FILED
CLERK, U.S. DISTRICT COURT
DEC 1 1 2015
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

LODGED

2015 DEC 11  AM 11: 58
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

/s/
*Applicant's signature*

Jonathan C. McDonald, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

JEAN P. ROSENBLUTH

Date: 12/11/15

*Judge's signature*

City and state:  Los Angeles, California

Jean P. Rosenbluth, U.S. Magistrate Judge
*Printed name and title*

AUSA: Brandon D. Fox 213-894-0284

EX G-001

USAO_0056737

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

## SUBJECT ACCOUNT

This warrant applies to information associated with the account identified as markhandel@aol.com that is stored at premises controlled by AOL, Inc., a company that is located at their headquarters 22000 AOL Way, Dulles, Virginia.

USAO_0056738

# ATTACHMENT B
## ITEMS TO BE SEIZED
### SUBJECT ACCOUNT

A.  **SEARCH PROCEDURE**

    1.    The search warrant will be presented to personnel of AOL, Inc. (the "PROVIDER"), who will be directed to isolate the information described in Section II below.

    2.    To minimize any disruption of service to third parties, the PROVIDER's employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the information described in Section II below.

    3.    The PROVIDER's employees will provide in electronic form the exact duplicate of the information described in Section II below to the agent who serves the search warrant.

    4.    With respect to contents of wire and electronic communications produced by the PROVIDER (hereafter, "content records," see Section II.10.a below), law enforcement agents and/or individuals assisting law enforcement and acting at their direction (the "search team") will examine such content records pursuant to search procedures specifically designed to identify items to be seized under this warrant. The search shall extract and seize only the specific items to be seized under this warrant (see Section III below). In conducting this search, the search team shall take notes regarding how it conducts the search.

    5.    If the search team encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime

USAO_0056739

was encountered, including how it was immediately apparent contraband or evidence of a crime.

6.     The search team will complete its search of the content records as soon as is practicable but not to exceed 60 days from the date of receipt from the PROVIDER of the response to this warrant.  If additional time is needed, the government may seek an extension of this time period from the Court within the original 60-day period.

7.     Once the search team has completed its review of the content records and created copies of the items seized pursuant to the warrant, the original production from the PROVIDER will be sealed -- and preserved by the search team for authenticity and chain of custody purposes -- until further order of the Court. Thereafter, the search team will not access the data from the sealed original production which fell outside the scope of the items to be seized absent further order of the Court.

8.     The special procedures relating to digital data found in this warrant govern only the search of digital data pursuant to the authority conferred by this warrant and do not apply to any search of digital data pursuant to any other court order.

9.     Pursuant to 18 U.S.C. § 2703(g) the presence of an agent is not required for service or execution of this warrant.

B.     **INFORMATION TO BE DISCLOSED BY THE PROVIDER**

10.     To the extent that the information described in Attachment A-1 is within the possession, custody, or control of the PROVIDER, including any information that has been deleted but is still available to the PROVIDER, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose the following information to the government for the SUBJECT ACCOUNT listed in Attachment A:

EX G-004

a.      All contents of all wire and electronic communications associated with the SUBJECT ACCOUNT, limited to that which occurred on or after March 1, 2013, including:

i.      All e-mails associated with the SUBJECT ACCOUNT, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, and deleted e-mails, as well as all header information associated with each e-mail, and any related documents or attachments.

ii.      All records pertaining to communications between the PROVIDER and any person regarding the SUBJECT ACCOUNT, including contacts with support services and records of actions taken.

b.      All user connection logs and transactional information of all activity relating to the SUBJECT ACCOUNT described above in Section II.10.a, including all log files, dates, times, durations, data transfer volumes, methods of connection, IP addresses, ports, routing information, dial-ups, and locations.

c.      All subscriber information pertaining to the SUBJECT ACCOUNT, including the date on which the account was created, the length of service, the IP address used to register the account, the subscriber's full name(s), screen name(s), other account names or e-mail addresses associated with the account, telephone numbers, physical addresses, and other identifying information regarding the subscriber, the types of service utilized, account status, account settings, login IP addresses associated with session dates and times, as well as means and source of payment, including detailed billing records.

C.      **INFORMATION TO BE SEIZED BY THE GOVERNMENT**

11.      For the SUBJECT ACCOUNT listed in Attachment A, the search team may seize:

a.      All information described above in Section N.10.a that constitutes evidence, contraband, fruits, or instrumentalities of violations of: 18

USAO_0056741

U.S.C. §§ 371 (Conspiracy); 666 (Federal Program Bribery); 1001 (Making False Statements); 1341, 1343, and 1346 (Mail and Wire Fraud, including through the deprivation of honest services); and 52 U.S.C. §§ 30109(d) and 31122 (Willfully Providing Conduit Contributions), those violations involving ████████████

████████████  ████████████  ████████████ and MARK

HANDEL, and occurring after March 1, 2013, namely information relating to:

        i.     Who created, accessed, or used the SUBJECT ACCOUNT, including records about their identities and whereabouts.

        ii.    Fundraising, campaign donations, conduit campaign donations, Independent Expenditures and Political Action Committees.

        iii.   Real estate developments in the Los Angeles area.

        iv.   Personal benefits, including but not limited to meals and entertainment, offered or given to public officials.

        v.     ████████████  ████████████  ████████████ ████████████ and/or ████████████

        vi.   The Federal Bureau of Investigation and/or its agents.

        vii.  Financial accounts and tax records.

*B gm 12/11/19*

        b.    All records and information described above in Sections II.10.b *B gm 12/11/19* and IV.10.c.

## D.   **PROVIDER PROCEDURES**

        12.    IT IS ORDERED that the PROVIDER shall deliver the information set forth in Section IV *B gm 12/11/19* within 10 days of the service of this warrant. The PROVIDER shall send such information to:

        Special Agent Jonathan C. McDonald
        11000 Wilshire Boulevard
        Suite 1700
        Los Angeles, CA 90024
        ████████████

USAO_0056742

13.    IT IS FURTHER ORDERED that the PROVIDER shall provide the name and contact information for all employees who conduct the search and produce the records responsive to this warrant.

14.    IT IS FURTHER ORDERED that the PROVIDER shall not notify any person, including the subscriber(s) of each account identified in Attachment A, of the existence of the warrant.

EX 9-007

# AFFIDAVIT

I, Jonathan C. McDonald, being duly sworn, declare and state as follows:

## I.    **INTRODUCTION**

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since March 2008.  I am currently assigned to a public corruption squad.  During my employment with the FBI, I have participated in multiple investigations of public officials, including those involving bribery, extortion, mail and wire fraud, and obstruction of justice.  Many of these investigations have involved the use of informants and cooperating witnesses, and have required financial analysis.  My duties have included conducting covert investigations of public officials.  I have also conducted physical surveillance and have monitored electronic surveillance.  In addition, I have attended numerous training sessions on the investigation of public corruption and other white collar crimes.

2.      I make this affidavit in support of an application for search warrants for information associated with the account identified as markhandel@aol.com (the "SUBJECT ACCOUNT")  The information associated with the SUBJECT ACCOUNT is stored at premises controlled by AOL, Inc. (the "PROVIDER"), a provider of electronic communication and remote computing services, headquartered at 22000 AOL Way, Dulles, Virginia.

3.      The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of applications for search warrants under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A) and 2703(d) to require the PROVIDER to disclose to the government copies of the information (including the content of communications) described in Section I of Attachment B.  Upon receipt of the information described in Section N of Attachment B, law enforcement agents and/or individuals assisting law

USAO_0056744

enforcement and acting at their direction will review that information to locate the
items described in Section IV of Attachment B. Attachments A and B are
incorporated herein by reference.

4.     As described more fully below, I respectfully submit there is probable
cause to believe that the information associated with the SUBJECT ACCOUNT
constitutes evidence, contraband, fruits, or instrumentalities of criminal violations
of: 18 U.S.C. §§ 371 (Conspiracy); 666 (Federal Program Bribery);[1] 1001 (Making
False Statements); 1341, 1343, and 1346 (Mail and Wire Fraud, including through
the deprivation of honest services);[2] and 52 U.S.C. §§ 30109(d) and 31122 (Willfully
Providing Conduit Contributions) (collectively, the "SUBJECT OFFENSES").

5.     The facts set forth in this affidavit are based upon my personal
observations, my training and experience, my review of conversations recorded
through court-authorized wiretaps, and my review of emails obtained through other
search warrants and document requests. This affidavit is intended to show merely
that there is sufficient probable cause for the requested warrant and does not
purport to set forth all of my knowledge of the investigation into this matter.
Unless specifically indicated otherwise, all conversations and statements described
in this affidavit are related in substance and in part only. In places, I have placed
in brackets the context or my understanding of what I have quoted.

## II.    SUMMARY OF INVESTIGATION

6.     The FBI is currently investigating public corruption related offenses
into a political organization operating in the ▮▮▮▮▮▮▮▮▮▮ area that is run

---

[1] The conduct discussed in the affidavit discusses in part personal benefits to
influence and reward agents of the City of Los Angeles (namely, ▮▮▮▮▮ and
▮▮▮▮▮ which receives well more than $10,000 in federal program funds
annually.

[2] It is likely that the mails and interstate wires were used to carry out the
scheme described in this affidavit, including through the use of mails and interstate
wires to make the campaign payments and the use of the emails described herein.

USAO_0056745

by ████████ ████████████ ████████████ ████████████
and ████████████ As set forth below, the SUBJECT ACCOUNT has been
identified as an e-mail accounts that was used in connection with and to carry out
the SUBJECT OFFENSES.

### III. INDIVIDUALS AND ENTITIES IN THE INVESTIGATION

7. ████████████████ is currently a ████████████████████
████████████████████████████, ████████ represented ████
████████████████████ which is the seat ████████ currently holds, from
████████████.

8. ████████████████ is the ████████████████████
████████, which covers portions of the ████████████████████
████████████████████████████████████████████████
████████████. ████████ was elected to this position ████████ after a
contest against ████████████████ ████████████, ████████ ████
████████, again in a race against ████████████

9. ████████████ is the ████████ for ████████ ████████ was
previously the ████████ for ████████████ from ████████ while
████████████ was the ████████████ for the ████████████ ████████
is running for ████████████ in an election that will take place in ████.

10. ████████████ is the ████████████████ for ████████
according to a website operated by the Los Angeles City Council.

11. MARK HANDEL is a real estate developer. All of the emails I
attribute to HANDEL herein were sent to or received by the SUBJECT ACCOUNT.

### IV. STATEMENT OF PROBABLE CAUSE

12. As discussed in detail below, the investigation has revealed that
████████ ████████ ████████ ████████ HANDEL, and others have

USAO_0056746

engaged in a number of criminal offenses. As they relate to HANDEL, these offenses include:

    a.    Illegal conduit contributions;

    b.    The offer of benefits to influence and reward ▮▮▮▮ and ▮▮▮▮ with respect to developments in ▮ district ▮▮▮▮ and

    c.    Lies to the FBI.

13.    Based on my training and experience and my knowledge of the investigation, I believe HANDEL uses the SUBJECT ACCOUNT when communicating about these issues.

    1.    <u>HANDEL Offers Free Meals and $150,000 in Campaign Funds</u>

14.    I have learned through the investigation that HANDEL develops real estate, including property located in the Los Angeles area. As discussed below, HANDEL has offered expensive meals to ▮▮▮▮ ▮▮▮▮ and other public officials, and $150,000 in campaign donations to ▮▮▮▮ when ▮ runs for political office in the ▮▮▮▮. At the same time, according to interceptions I describe below, HANDEL was attempting to have the City approve of his plans to erect multiple housing units on land he owns, and was concerned the City would approve the building of fewer units (in other words, less density and less income) than he desired. It also appears HANDEL was concealing his ownership interest in the property from the public.

15.    On November 6, 2014, HANDEL called ▮▮▮▮ in a recorded conversation. After discussing their efforts to have provisional ballots counted in a local election in a manner that would allow ▮▮▮▮ (and ▮▮▮▮ political ally) ▮▮▮▮ to defeat ▮ rival, ▮▮▮▮ HANDEL said he would "take everyone out to a fucking steak for Sunday night . . .

USAO_0056747

at Mastro's," which is a luxury steakhouse with restaurants located the Los Angeles area. HANDEL said this would cost him "fifteen-hundred [dollars]."[3]

16.     On November 7, 2014, HANDEL called ███████████ In the recorded conversation, HANDEL informed ███████ that he invited ███████ to dinner that weekend. HANDEL stated, "I invited ███ over . . . for like steak, you know fish, lobster, but I thought maybe I'd have four or five people." HANDEL asked if ███████ and ███████████ would want "to join in?" HANDEL said ███████ and ███████████ could bring their spouses. ███████████ responded, "I would love that." HANDEL later said he could "accommodate up to 20" people, but he needed to know who was coming because he had to "buy steaks" and "thaw fish."

17.     In another portion of the conversation, HANDEL told ███████ that when ███████ "finally decided" to run for office (he was considering a run for the ███████), HANDEL would allow ███████ "to open with 150 grand." ███████ said "boom." I understand this to mean HANDEL would either provide ███████ directly with $150,000 in campaign contributions or bundle these campaign contributions for ███████ at the outset of ██ run for office.

18.     From November 7, 2014 to November 9, 2014, HANDEL, ███████████ ███████ ███████ and ███████ engaged in a string of group text messages. The content of these messages suggested that HANDEL was hosting a dinner at an expensive restaurant for the group. For example, on November 9, 2014, ███████ sent a text to the group, in which he stated, "Mark [HANDEL],

---

[3] ███ was a ███████████ from ███████████ until losing an election in ███████████ ██ covers much of the same geography as ███████████ ██ ██ was ███████ ██ ran against ███████ in the ███████ election. In ███████████, staff members from the Los Angeles County Registrar's Office were still counting provisional and absentee ballots from that election to determine the winner of the election. In late ███████████ conceded losing the election to ███████

USAO_0056748

let's do, Morton's Burbank? Please let us know." HANDEL responded in a text message, "Ok. I got reservations at both [M]ortons. Burbank and Conoga [sic] park! Please everyone just let me know where everyone will be at 6 pm, and I will be there! Try to pin this down by 5pm! I need time to shower!" I understand from these text messages and the previous communications that HANDEL was going to be buying the group dinner at another expensive steakhouse.

19. On November 9, 2014, HANDEL's American Express business account charged $1,197.83 at "MTBK" at 3400 West Olive in Burbank. The Morton Steakhouse in Burbank is located at 3400 West Olive. Location data shows that
████████ cellular phone was in the vicinity of this address on November 9, 2015 at 9:00 p.m. The FBI has obtained the receipt from this bill and it indicates that it was for a party of ten.

### 2. HANDEL Discusses Development in Which He Has Concealed Interest

20. Around the same time, ████████ and HANDEL engaged in discussions about HANDEL's efforts to convince the City to approve a development project that HANDEL was proposing. At issue was the number of housing units to be built on the land. HANDEL and ████████ talked about ████████ "stay[ing] on the sidelines" so others would not know about ██ support for HANDEL's project.

21. Specifically, on November 8, 2014, HANDEL and ████████ spoke in a recorded telephone call about a number of issues. HANDEL stated, "I'm not involved in any projects in your district, but there is one project in your district. Can I make a suggestion? . . . I know that project is going to Planning Commission. Is there any possibility of not scheduling it to PLUM[4] until after the election? . . . the property owners would be more than happy to, uh, to be patient." ████████

---

[4] In referring to "PLUM," I understand HANDEL to be referencing the Los Angeles City Council's Planning and Land Use Management Committee.

responded, "Sure." HANDEL said, "I think that's best, too. Don't you agree?" ███████ replied, "Yeah, probably. Especially now, yeah." HANDEL asked, "Why take the risk?" ███████ stated, "Right. Yeah, on all those." At no time did HANDEL state which project he was referring to, but it was clear from their dialogue (including that ███████ did not seek any clarification of HANDEL's deliberately vague reference) that ███████ understood HANDEL's reference. Based on this and later interceptions, I believe HANDEL is concealing his interest in real estate developments in ███████ and that ███████ is aware that HANDEL is doing so. In this call, HANDEL also agreed to increase the amount of money he was raising for ███████ March 2015 election by stating, "I was only going to do about 5,000 . . . but now the situation is critical . . . I think I can do 15 [thousand]." Earlier in the call HANDEL said he was "no longer . . . in the contribution business. My name and I don't want to contribute to anybody, you know." I understand this to mean that while HANDEL will financially support ███████ campaign through fundraising, he wanted to conceal his involvement by not providing campaign donations that can be traced back to him.

22. HANDEL continued to suggest that ███████ and ███████ should not show their support for his project prior to the March 2015 election. On November 11, 2014, ███████ placed a call to HANDEL. ███████ said HANDEL's "point is . . . . Just stay on the sidelines." HANDEL confirmed this was what he was thinking. ███████ said they needed to find out "if we can be coy if we know they're gonna go nine." I understand ███████ to mean ███████ and █staff would not need to publicly influence the process if the City decided to approve of HANDEL building nine housing units in this area. At the conclusion of the call, HANDEL referred to ███████ as "███████," which is the position ███████ was considering running for (and for which █ is currently registered as a candidate). I believe HANDEL called ███████ "███████" as a not so

USAO_0056750

subtle reminder that HANDEL was offering to provide substantial campaign donations ($150,000) to ▮▮▮▮▮ as ▮▮▮▮▮ was considering what actions to take with respect to HANDEL's development.

23. Similarly, on November 12, 2014, ▮▮▮▮▮ called HANDEL. In the recording, the two discussed the number of units that would be built on HANDEL's property. HANDEL stated, "The issue of density . . . is there a huge difference in quality of life for the neighborhood between 5, 7, 9, or 11 or 13 homes?" HANDEL said his "advice is for you guys to sit on your hands because if you fight for the nine, they're not gonna give you the nine anyways." HANDEL then stated, "if you and the council office ultimately at a date in the future, past the month of March, decided that it's going to be nine, I'll accept nine without ever an argument . . . Not one argument." HANDEL said, however, "if you guys were to say . . . we don't even think we can support nine, I would . . . my back hairs would get up." HANDEL and ▮▮▮▮▮ discussed how HANDEL could appeal any adverse action to the City Council. I understand HANDEL to be informing ▮▮▮▮▮ which position with respect to the number of units (no less than nine) ▮▮▮▮▮ and ▮▮▮▮▮ should take if they expected continued financial support from HANDEL in the future.

24. Later on November 12, 2014, ▮▮▮▮▮ again called HANDEL in a recorded conversation. ▮▮▮▮▮ said, "I talked to ▮▮▮▮▮ [▮▮▮▮▮ talked to ▮▮▮▮▮ [▮▮▮▮▮ ▮▮▮▮▮ said they would "not talk about the number," but that they would talk about "the great things" that HANDEL "can bring" to the area where the development is located. I understand this to mean that ▮▮▮▮▮ ▮▮▮▮▮ and ▮▮▮▮▮ agreed that ▮▮▮▮▮ would publicly support aspects of HANDEL's project, but would not inform the public they had come to a decision on the number of units that should be built in the development. HANDEL asked "who's gonna carry the water, ▮▮▮▮▮ ▮▮▮▮▮ confirmed

USAO_0056751

that "████████ is." I understand this to mean ████████ would be representing ████████ at the meeting. ████████ said if the City only approved six housing units, "maybe we can get you up to nine." HANDEL asked who would hear his appeal of an adverse decision by the planning commission. ████████ said HANDEL would "appeal to [City] Council." HANDEL responded that he was "not worried about that." I understand this to mean that HANDEL believed he had enough support in the City Council, including with ████████ to win an appeal of an adverse decision by the City's Planning Commission. HANDEL directed ████████ to tell ████████ "I'm not gonna be the world's most friendly guy." ████████ replied, "That's fine." I understand this to mean HANDEL would pretend that ████████ who would be representing ████████ at the hearing, was not a supporter of HANDEL's development to disguise their true support for the project and HANDEL's true relationship with ████████. And ████████ agreed to that plan.

25. On November 13, 2014, HANDEL and ████████ spoke in two different recorded calls. HANDEL informed ████████ that the Planning Commission had just approved the building of nine housing units in the development. HANDEL specifically said, "They approved it. They approved the nine." HANDEL discussed how "the council office [████████ office] being low key about this is working in our benefit." HANDEL said he and ████████ could push off the final decision on the number of units to be built until after the primary election in March by stating, "We put it off until after the election for sure." HANDEL said, if "you guys want to be even more passive as far as direct lobbying" that they could rely on another City employee to "carry the day."

3. Discussions About HANDEL's "Arrangement" with ████████

26. On November 19, 2014, ████████ and ████████ spoke in a recorded conversation. In the call, ████████ told ████████ that ██ had

USAO_0056752

recently talked to ███████ ████████ about a "good campaign meeting today." ██████ said ██ did not tell ██████ during that conversation, "about the arrangement with HANDEL . . . I didn't mention anything about that." I believe this call shows that ██████ and ████████ have fundraising or other financial arrangements with HANDEL in exchange for their official support for HANDEL's interests that they do not want to publicly discuss or acknowledge.

 27. On November 20, 2014, ████████ and HANDEL spoke in a recorded conversation. HANDEL asked if ████████ had given ████████ "any details about the meeting that we had and what my suggestions were?" ██████ acknowledged that ██████ had done so. ████████ said ██ appreciated HANDEL's ideas, and that ██ "was thinking something very similar about opening my ███ campaign, getting a bunch of donations in there." Based on the prior interceptions, the context of the call, and ████████ response to HANDEL's comment, I believe HANDEL's statement regarding "details about the meeting . . . and what my suggestions were" are in reference to HANDEL offering to provide large contributions to ████████ and/or ████████ at the outset of their campaigns in a conversation HANDEL had with ████████

USAO_0056753

4.　　　　████████ Pulls Consideration of HANDEL's Development from Public Agenda at HANDEL's Request; HANDEL Offers to Host Holiday Lunch

28.　　On December 8, 2014, HANDEL left a voicemail message for ████████ In the recorded message, HANDEL asked ████████ to "Call me. It's important. It's scheduled . . . for PLUM. I need you to pull it. What's going on my man? Get on top of this, please." I understand HANDEL to be referring to an agenda item before the Los Angeles City Council's Planning and Land Use Management Committee relating to one of HANDEL's developments. I believe HANDEL wanted to delay the agenda item until after the March 2015 election so that ████████ and ██ staff could exert their influence in support of HANDEL's development (and thereby secure its success) without fear of jeopardizing the election or the extra scrutiny that might come with their support of a lucrative development project before the election.

29.　　Later on December 8, 2014, ████████ received a call from HANDEL. HANDEL asked, "Did you get my message?" ████████ said he did and asked "when is it on schedule?" HANDEL replied, "December 15th or 16th." ████████ said HANDEL had "found out before us." HANDEL asked if "you'll be able to pull it." ████████ responded, "Yeah." HANDEL told ████████ "Oh, good. Don't let it slip through your fingers." ████████ replied, "Are you kidding me? Fuck no." HANDEL told ████████ that ████████ had been "an incredible friend . . . and have been a fantastic ████████ . . . but I got to tell you . . . because you do so much, little details in the past have slipped through the office's fingers." ████████ provided an example of ████████ ████████ "████████ ████████ being on the 101 freeway as they're rendering a decision, things like that." ████████ replied, "Small things like that." HANDEL said, "if we didn't pay attention this [HANDEL's current project] would have flowed through, wouldn't it?" ████████ replied, "But, yeah, we will get it yanked. We will move it all the

way out." I understand these comments to mean that ▮▮▮▮ would cause an agenda item in PLUM to approve of one of HANDEL's developments to be tabled until after the election. Later in the conversation, HANDEL asked "we can talk about money, correct?" ▮▮▮▮ responded, "Yeah." HANDEL continued, "You know the campaign money is difficult for me. I keep telling you guys." ▮▮▮▮ replied, "sure, yeah, yeah, no problem." HANDEL said, "Some of my friends expressed a great interest in, you know, providing as much help as they can. And if there was some kind of independent ability, everybody would like to know where that is, when will that be known." HANDEL mentioned two donors who were "waiting in the wings." HANDEL told ▮▮▮▮ to "let me know . . . I'm by the ready and make sure, obviously, the blah, blah, blah." ▮▮▮▮ said, "Yes, sir." HANDEL reiterated that ▮▮▮▮ should "Let me know." ▮▮▮▮ said, "You got it." I understand these comments to mean that HANDEL and his friends do not want to donate to ▮▮▮▮ directly because of the public reporting requirement, but will donate to a Political Action Committee or Independent Expenditure ("some kind of independent ability") that would spend funds to support ▮▮▮▮ and/or oppose▮ rival, ▮▮▮▮

30. On December 11, 2014, HANDEL called ▮▮▮▮ In the recorded call, HANDEL said he again "wanted to make sure on the PLUM thing." ▮▮▮▮ responded, "Yup. We're good." HANDEL then said, "thank you, thank you so much for taking care of the PLUM thing." HANDEL continued, "maybe we'll get together . . . as a matter of fact, before the campaign [▮▮▮▮ March 2015 reelection campaign] starts in earnest, you guys want to have a little Christmas lunch? Me, you, ▮▮▮ [▮▮▮▮ and ▮▮ [▮▮▮▮ at Larsen's?" ▮▮▮▮ replied, "That'd be fun." HANDEL told ▮▮▮▮ to "pick a day and get a little guest list stuff together . . . I'd love to treat you guys to a wonderful Christmas lunch. What do you think?" ▮▮▮▮ said, "I think that's wonderful,

USAO_0056755

very wonderful." HANDEL reiterated that ▓▓▓▓ should "put together a guest list, a time, and a place." ▓▓▓▓ said he would "put some fun people together." HANDEL said, "We'll have a fucking Christmas lunch." ▓▓▓▓ replied, "I love it." I understand HANDEL to be offering a free lunch to ▓▓▓▓ and ▓▓▓▓ for ▓▓▓▓ ▓▓▓▓ and others to attend as a way to influence and reward them for supporting him through their official acts favorable to HANDEL's financial interests.

31.   On December 19, 2014, ▓▓▓▓ called HANDEL. HANDEL said he wanted to talk about "a couple things. First of all, I suspect because everybody is so busy that next week is out . . . unless you had made plans." ▓▓▓▓ replied that ▓▓ "didn't have a chance to do anything." HANDEL said they should "forget that." I understand this to be in reference to the free Christmas lunch HANDEL had offered ▓▓▓▓ and ▓▓▓▓ in the previous call. HANDEL said he would be traveling, but he was back on December 31 and they should "get together the first week of January because there's lots of things to talk about." ▓▓▓▓ responded, "Absolutely."

> 5.   HANDEL Continues to Offer Benefits and Campaign Donations to ▓▓▓▓ and ▓▓▓▓

32.   On January 13, 2015, HANDEL called ▓▓▓▓ and invited ▓▓▓▓ and ▓▓▓▓ to HANDEL's house for the Super Bowl. In the recorded conversation, ▓▓▓▓ said ▓ would attend and that ▓ would bring ▓▓▓▓ HANDEL mentioned he was also "waiting to hear from some people so we can help. You know? Blah, blah, blah." ▓▓▓▓ responded, "Love it . . . fabulous." I understand this to mean that HANDEL was in the process of bundling campaign money for ▓▓▓▓

33.   On January 26, 2015, HANDEL and ▓▓▓▓ had a recorded conversation. ▓▓▓▓ stated, "We're fixing it." HANDEL said, "Find me a

USAO_0056756

developer that is asking to delay projects?" I understand this to mean HANDEL was asking ▮▮▮▮▮ to take steps to ensure that his development would not be on PLUM's agenda until after the election. HANDEL then asked if "we're all set for the Super Bowl?" ▮▮▮▮▮ confirmed that ▮ and ▮▮▮▮▮ would be attending the Super Bowl party at HANDEL's residence and ▮▮▮▮▮ and ▮▮▮▮▮ would also be attending.

34.     On February 10, 2015, HANDEL and ▮▮▮▮▮ spoke in a recorded telephone conversation. HANDEL said if ▮▮▮▮▮ won the election on March 3, 2015, HANDEL and real estate developer ▮▮▮▮▮ "want to take the whole gang to Mastro's [luxury steakhouse] for a big celebration dinner." ▮▮▮▮▮ replied, "That'd be great."

### 6.     HANDEL and ▮▮▮▮▮ Discuss HANDEL's Development in E-mails

35.     On February 18, 2015, HANDEL, using the SUBJECT ACCOUNT, forwarded an email to ▮▮▮▮▮ and added the text "?????." In the forwarded email, a City of Los Angeles official wrote that the Planning Committee would hold a hearing about HANDEL's development on February 24, 2015. ▮▮▮▮▮ responded to HANDEL on the SUBJECT ACCOUNT stating, "We need an extension letter from your folks for a 30-day extension of time, because we currently must act under the law by February 26. If you guys send in a letter giving the City an additional 30 days we'll be fine."

36.     On February 20, 2015, HANDEL and ▮▮▮▮▮ spoke in a recorded telephone conversation about HANDEL's real estate development. ▮▮▮▮▮ told HANDEL ▮ "sent an e-mail back saying the reason it's on February 24th is we are legally obligated to take up the item by then . . . or we lose jurisdiction. So we need a 30 day extension. If you guys write it, then we can just kick it down a little further." HANDEL asked, "So what do you need from us? I'll look at the e-mail."

USAO_0056757

███████ responded, "It's a letter to the city of Los Angeles." HANDEL said he would look at "your e-mail and I'll make sure we get the letter off." HANDEL told ███████ "I'm gonna send you something in your e-mail, go look at your e-mail." HANDEL then asked if he had ever sent ███████ a picture HANDEL took with protestors outside of a ███████ fundraising event. I believe this discussion shows HANDEL and ███████ communicate about his developments and fundraising on the SUBJECT ACCOUNT.

> 7.  HANDEL Provides Donations through Conduit Contributions Using His ███████

37.  It appears one of the ways HANDEL provides money to ███████ campaign, and other campaigns, is through conduit or straw contributions, which disguise their true source (HANDEL).

38.  On October 23, 2014, ███████ sent an email to HANDEL on the SUBJECT ACCOUNT stating, "These are donors I think contributed. Some may or may not be yours." ███████ then forwarded a list of individuals, including ███████ HANDEL replied, "Ok. Wat (sic) are the limits. And wats (sic) the name of the committee." ███████ responded that the limit was a contribution of $700 and the contributions were for ███████.

39.  In the same December 8, 2014 conversation between HANDEL and ███████ discussed above, in which HANDEL said that "campaign money is difficult for me. I keep telling you guys," HANDEL mentioned that ███████. ███████ was one donor "waiting in the wings." HANDEL then told ███████ "You met Mr. ███████ ███████ replied "Yeah, great guy." HANDEL said "yeah, you passed your hand right through ███." ███████ responded, "Yeah, exactly right through. Boom, hologram. Very nice. Big fan." I believe HANDEL was referencing ███████ as a straw donor, which is why he said ███████ was a "hologram," because a hologram is something that appears real but is not, similar

USAO_0056758

to a straw donor, and through which things can easily pass through (like money whose true source is being concealed).

40.    On ███████████, in a recorded phone call, HANDEL and ███████ spoke about an article about to be published in the ███████, which was written by reporter ███████ The article was to discuss donations attributed to ███████ that were given to the ███████████ supporting ███████ that ███████ ran.  HANDEL said, "if you follow the records, ███████████████████████████."

███████ said he was not sure if ███ "is that good of a reporter; that ███ has enough time to really dig."  HANDEL asked whether "someone [would] say, 'wait a minute, ███ fronting for all his developer clients?  That's not ███ money, that's their money.'  It's like, would the Ethics Commission ask that question."  HANDEL added that he "hope[d] there's no one" in ███████ office who is "angry at ███. . . . That would be a disaster" because HANDEL's name "is over everything."  I understand this to mean that HANDEL is aware that these conduit contributions are illegal and he is hoping his involvement with the contributions remains concealed.

41.    On ███████████, ███████ left a recorded voicemail message for HANDEL.  ███████ stated, "an article on the ███████ just posted."  ███████ said the article was "not that bad."  HANDEL returned ███████ call the same day.  ███████ said the reporter, ███ "doesn't have the resources to dig."  HANDEL stated, "I feel better."  ███████ said, "It would have taken a lot to get to the bottom, I mean maybe one day someone will so you should probably start moving some things around."  I understand ███████ to mean HANDEL was the true donor of the money falsely attributed to ███████ and that HANDEL should do better to conceal that fact.  HANDEL then said, "I'm already . . . let's say something after this election happens with . . . ███

[███████] .... There's going to be an enormous contribution from . . . a film group." HANDEL said, "There's only six people, seven people that know, you know, wait a minute, this is MARK HANDEL." I understand HANDEL to mean he has already made an agreement with a different straw donor to provide money to support ███████ and that uncovering the true source of that money (HANDEL) would be very difficult.

    8.    <u>Communications Related to HANDEL's Conduit Contributions Are Likely to Be Contained in the SUBJECT ACCOUNT</u>

    42.    On February 20, 2015, ███████ ███████████, ██ ███████ sent ███████ a text message stating, "Ugh txt won't work. Check email please." In a call recorded later that day, ███████ said █ would give ███████ "some cover. I think he is MARK HANDEL's attorney, but that is completely on the down low." ███████ read an e-mail and stated that the reporter's question was "can you confirm is ███████ ███████████ tax accountant? So, █ is definitely not your accountant." ███████ responded, "Correct." ███████ said ███████ "has donated to your campaign for ███ and █ [███████████ ███████████ just want me to confirm if █ is your tax accountant. So I guess I can just respond to █ and say, 'No █ isn't' and have that be the entire answer."

    43.    According to the Federal Election Commission website, ███████ was listed as the source of three donations to support ███████ ███████ ███████. The records show that ███████ was reported as the source of the following amounts on the following dates:

    a.  ███████████

    b.  ███████████

    c.  ███████████

44.  I believe the ▮▮▮▮▮▮▮ donations by ▮▮▮▮▮ were conduit contributions from HANDEL.  On March 3, 2013, ▮▮▮▮▮▮ ▮▮▮▮▮▮, who acts as a fundraiser for ▮▮▮▮▮ sent ▮▮▮▮▮ an email with the subject, "Fundraiser: Larger donation."  The email listed approximately ten individuals for ▮▮▮▮▮ to call regarding a fundraising dinner.  HANDEL was one of the individuals listed.  On April 1, 2013, ▮▮▮▮▮ ▮▮▮▮▮ sent ▮▮▮▮▮ an email stating listing "Guests Confirmed."  The email listed HANDEL as an individual "Not Attending, but giving Money."  The Federal Election Commission website does not list any donations from HANDEL to ▮▮▮▮▮ around this time.

45.  Indeed, the only donation to ▮▮▮▮▮ attributed to HANDEL was a ▮▮▮▮ donation that came more than a year later, ▮▮▮▮▮▮ (after ▮▮▮▮▮ ▮▮▮▮▮).  I believe it is likely at least some of the contributions attributed to ▮▮▮▮▮ were, in reality, straw donations from HANDEL, in violation of Federal Election law 52 U.S.C. § 30122 (formerly 2 U.S.C. § 441f), but were concealed similar to how HANDEL had utilized ▮▮▮▮▮ name to contribute to ▮▮▮▮▮

46.  It appears that HANDEL additionally provided ▮▮▮▮▮ with a donation under his ▮▮▮ name on ▮▮▮▮▮.  On that date, ▮▮▮▮▮ ▮▮▮▮▮ forwarded ▮▮▮▮▮ an email stating, "Fyi, Mark Handel ..."  The forwarded email reflected what appears to be an automatically generated electronic communication showing that ▮▮▮▮▮ campaign had received a campaign contribution.  This one reflected that HANDEL's ▮ provided a ▮ donation to ▮▮▮▮▮ on ▮▮▮▮▮.  Despite the donation being attributed to HANDEL's ▮ the automatically generated electronic communication listed the SUBJECT ACCOUNT, HANDEL's cell phone number, and ▮▮▮▮▮ business address in detailing the donation.

USAO_0056761

9.   HANDEL's False Statements to the FBI

47.   On January 22, 2015, SA Tanner and SA Dahle recorded an interview of HANDEL, who had previously been an FBI source in an unrelated investigation. SA Tanner asked HANDEL whether he had paid for any meals to any public official. HANDEL said that he did it all the time, but it was never in exchange for the official's support. When SA Tanner asked HANDEL for the identity of the last public official that HANDEL treated to a meal, HANDEL stated, "Teddy Roosevelt." SA Tanner inquired whether that was the real answer that HANDEL was providing the FBI. HANDEL said it was.

48.   Following the FBI's January 22, 2015 meeting with HANDEL, HANDEL sent SA Tanner emails from the SUBJECT ACCOUNT with information about an elected official he wanted the FBI to investigate (⬛⬛ political rival). On February 21, 2015, SA Tanner sent HANDEL an email on the SUBJECT ACCOUNT asking if HANDEL could meet. HANDEL responded the same day, "same place 5pm Monday ok."

49.   SA Tanner and Dahle recorded a meeting with HANDEL on February 23, 2015. HANDEL informed the agents that ⬛⬛ was HANDEL's accountant. HANDEL denied providing ⬛⬛ with any money that ⬛⬛ had given to ⬛⬛ ⬛⬛. Specifically, HANDEL stated it was "against the law. I would never do that. Never do that." HANDEL twice stated he had "not made a political contribution in 15 years." Not only do Federal Election Commission records show that HANDEL made a donation ⬛⬛ to ⬛⬛ as discussed above), but I believe the evidence shows that HANDEL provided conduit contributions through ⬛⬛

USAO_0056762

## V.    PRESERVATION LETTERS AND PRIOR ATTEMPTS TO OBTAIN CONTENTS

50.    On approximately July 30, 2015 and October 18, 2015, I sent the PROVIDER preservation letters requesting that information associated with the SUBJECT ACCOUNT be preserved for 90 days pursuant to 18 U.S.C. § 2703(f).

51.    Other than what has been described herein, to my knowledge the United States has not attempted to obtain the contents of the SUBJECT ACCOUNT by other means.

## VI.    BACKGROUND REGARDING E-MAIL AND THE PROVIDER

52.    In my training and experience, I have learned that the PROVIDER provides a variety of online services, including e-mail, to the public.  The PROVIDER allows subscribers to obtain e-mail accounts at the domain names aol.com, like the SUBJECT ACCOUNT.  Subscribers obtain an account by registering with the PROVIDER.  During the registration process, the PROVIDER asks subscribers to provide basic personal information.  Therefore, the computers of the PROVIDER are likely to contain stored electronic communications and information concerning subscribers and their use of the PROVIDER's services, such as account access information, e-mail transaction information, and account application information.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNT.

53.    In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account.  Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).  In my training and experience, such information

USAO_0056763

may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNT.

54.     In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol ("IP") address used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the SUBJECT ACCOUNT.

55.     In my training and experience, e-mail account users will sometimes communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the users of the SUBJECT ACCOUNT.

56.     I know from my training and experience that the complete contents of an e-mail account may be important to establishing the actual user who has dominion and control of that account at a given time. E-mail accounts may be registered in false names or screen names from anywhere in the world with little to

USAO_0056764

no verification by the service provider. They may also be used by multiple people. Given the ease with which e-mail accounts may be created under aliases, and the rarity with which law enforcement has eyewitness testimony about a defendant's use of an e-mail account, investigators often have to rely on circumstantial evidence to show that an individual was the actual user of a particular account. Only by piecing together information contained in the contents of an account may an investigator establish who the actual user of an account was. Often those pieces will come from a time period before the account was used in the criminal activity. Limiting the scope of the search would, in some instances, prevent the government from identifying the true user of the account and, in other instances, may not provide a defendant with sufficient information to identify other users of the account. Therefore, the contents of a given account, including the e-mail addresses and messages sent to that account, often provides important evidence regarding the actual user's dominion and control of that account. For the purpose of searching for content demonstrating the actual user(s) of the SUBJECT ACCOUNT, I am requesting a warrant requiring the PROVIDER to turn over all information associated with the SUBJECT ACCOUNT with the date restriction included in Attachment B for review by the search team.

57. Relatedly, the government must be allowed to determine whether other individuals had access to the SUBJECT ACCOUNT. If the government were constrained to review only a small subsection of an e-mail account, that small subsection might give the misleading impression that only a single user had access to the account.

58. I also know based on my training and experience that criminals discussing their criminal activity may use slang, short forms (abbreviated words or phrases such as "lol" to express "laugh out loud"), or codewords (which require entire strings or series of e-mail conversations to determine their true meaning)

when discussing their crimes. They can also discuss aspects of the crime without specifically mentioning the crime involved. In the electronic world, it is even possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of an e-mail or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and paren :) to convey a smile or agreement) to discuss matters. "Keyword searches" would not account for any of these possibilities, so actual review of the contents of an e-mail account by law enforcement personnel with information regarding the identified criminal activity, subject to the search procedures set forth in Attachment B, is necessary to find all relevant evidence within the account.

59. As set forth in Attachment B, I am requesting a warrant that permits the search team to keep the original production from the PROVIDER under seal until the investigation is completed and, if a case is brought, that case is completed through disposition, trial, appeal, or collateral proceeding.

60. I make that request because I believe it might be impossible for the PROVIDER to authenticate information taken from the SUBJECT ACCOUNT as its business record without the original production to examine. Even if the PROVIDER kept an original copy at the time of production (against which it could compare against the results of the search at the time of trial), the government cannot compel the PROVIDER to keep a copy for the entire pendency of the investigation and/or case. If the original production is destroyed, it may be impossible for the PROVIDER to examine a particular document found by the search team and confirm that it was a business record of the PROVIDER's taken from the SUBJECT ACCOUNT.

61. I also know from my training and experience that many e-mail accounts are purged as part of the ordinary course of business by providers. For example, if an e-mail account is not accessed within a specified time period, it -- and

its contents -- may be deleted. As a consequence, there is a risk that the only record of the contents of an e-mail account might be the production that a provider makes to the government, for example, if a defendant is incarcerated and does not (perhaps cannot) access his or her e-mail account. Preserving evidence, therefore, would ensure that the government can satisfy its Brady obligations and give the defendant access to evidence that might be used in his or her defense.

## VII.  REQUEST FOR NON-DISCLOSURE

62.    Pursuant to 18 U.S.C. § 2705(b), I request that the Court enter orders commanding the PROVIDER not to notify any person, including the subscriber(s) of the SUBJECT ACCOUNT, of the existence of the warrant because there is reason to believe that such notification will (1) result in the destruction of or tampering with evidence; (2) result in intimidation of or tampering with potential witnesses; or (3) otherwise seriously jeopardize the investigation. The current investigation set forth above is not public and is based, in part, on confidential reporting by a cooperating witness and on court ordered wiretaps that are currently under seal. Further, the investigation has shown that ▮▮▮▮▮▮ ▮▮▮▮▮▮ and ▮▮▮▮▮▮ have surrounded themselves with loyal people who are witnesses to the offenses. Based on my training and experience, I believe ▮▮▮▮▮▮ ▮▮▮▮▮▮ and/or their associates are likely to tamper with the investigation if they receive notice of the search warrants.

USAO_0056767

## VIII. <u>CONCLUSION</u>

63.     Based on the foregoing, I request that the Court issue the requested search warrant.

_____

/s/

Jonathan C. McDonald
Special Agent
Federal Bureau of Investigation

Subscribed to and sworn before me
On December 11, 2015.

JEAN P. ROSENBLUTH

_____

HONORABLE JEAN P. ROSENBLUTH
UNITED STATES MAGISTRATE JUDGE

USAO_0056768

# EXHIBIT H:

Second Search Warrant for Aol Address,
Dated 1/13/17

# UNITED STATES DISTRICT COURT

for the

Central District of California



FILED
CLERK, U.S. DISTRICT COURT

JAN 1 3 2017

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of:
Information associated with account identified as
markhandel@aol.com that is within the possession,
custody, or control of AOL, Inc.

)
)
)
)
)
)

Case No. 17 MJ 00083

## APPLICATION FOR WARRANT PURSUANT TO 18 U.S.C. § 2703

I, a federal law enforcement officer, request a warrant pursuant to Title 18, United States Code, Section 2703, and state under penalty of perjury that I have reason to believe that within the following data:

*See Attachment A*

There are now concealed or contained the items described below:

*See Attachment B*

The basis for the search is:

☑ Evidence of a crime;
☑ Contraband, fruits of crime, or other items illegally possessed;
☑ Property designed for use, intended for use, or used in committing a crime.

The search is related to a violation of:

| Code section(s) | Offense Description |
|---|---|
| 18 §§ 152; 157; 371; 666; 1001; 1341; 1343; 1346; 1621; 1623; and 52 §§ 30109(d) and 30122 | Concealment of Assets; Bankruptcy Fraud; Conspiracy; Federal Program Bribery; Making False Statements; Mail & Wire Fraud, including through the deprivation of honest services; Perjury; False Declaration Before Court; and Willfully Providing Conduit Contributions |

The application is based on these facts: *See attached Affidavit, which is incorporated herein by reference.*

/s/

*Applicant's signature*

SA Jonathan McDonald - FBI

*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/13/17

City and State: Los Angeles, CA

**JEAN P. ROSENBLUTH**

*Judge's signature*

Jean Rosenbluth, U.S. Magistrate Judge

*Printed name and title*

AUSA: Ruth Pinkel (x6077)

USAO_0056785

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

### SUBJECT ACCOUNT

This warrant applies to information associated with the account identified as markhandel@aol.com that is stored at premises owned, maintained, controlled or operated by AOL, Inc., a company that accepts service of legal process at 22000 AOL Way, Dulles, Virginia.

EX H-002

ATTACHMENT B

ITEMS TO BE SEIZED

SUBJECT ACCOUNT

I.   SEARCH PROCEDURE

1.   The search warrant will be presented to personnel of AOL, Inc. (the "PROVIDER"), who will be directed to isolate the information described in Section II below.

2.   To minimize any disruption of service to third parties, the PROVIDER's employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the information described in Section II below.

3.   The PROVIDER's employees will provide in electronic form the exact duplicate of the information described in Section II below to the law enforcement personnel specified below in Section IV.

4.   With respect to contents of wire and electronic communications produced by the PROVIDER (hereafter, "content records," see Section II.10.a. below), law enforcement agents and/or individuals assisting law enforcement and acting at their direction (the "search team") will examine such content records pursuant to search procedures specifically designed to identify items to be seized under this warrant.  The search shall extract and seize only the specific items to be seized under this warrant (see Section III below).  The search team may use forensic examination and searching tools, such as "EnCase" and

i

USAO_0056787

"FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

5.    If the search team encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

6.    The search team will complete its search of the content records as soon as is practicable but not to exceed 120 days from the date of receipt from the PROVIDER of the response to this warrant.  The government will not search the content records beyond this 120-day period without first obtaining an extension of time order from the Court.

7.    Once the search team has completed its review of the content records and created copies of the items seized pursuant to the warrant, the original production from the PROVIDER will be sealed -- and preserved by the search team for authenticity and chain of custody purposes -- until further order of the Court.  Thereafter, the search team will not access the data from the sealed original production which fell outside the scope of the items to be seized absent further order of the Court.

8.    The special procedures relating to digital data found in this warrant govern only the search of digital data pursuant to the authority conferred by this warrant and do not apply to any search of digital data pursuant to any other court order.

EX H-004

USAO_0056788

9.    Pursuant to 18 U.S.C. § 2703(g) the presence of an agent is not required for service or execution of this warrant.

## II.  INFORMATION TO BE DISCLOSED BY THE PROVIDER

10.  To the extent that the information described in Attachment A is within the possession, custody, or control of the PROVIDER, including any information that has been deleted but is still available to the PROVIDER, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose the following information to the government for each SUBJECT ACCOUNT listed in Attachment A:

a.    All contents of all wire and electronic communications associated with the SUBJECT ACCOUNT, limited to that which occurred on or after December 15, 2015, including:

i.    All e-mails, communications, or messages of any kind associated with the SUBJECT ACCOUNT, including stored or preserved copies of messages sent to and from the account, deleted messages, and messages maintained in trash or any other folders or tags or labels, as well as all header information associated with each e-mail or message, and any related documents or attachments.

ii.  All records pertaining to communications between the PROVIDER and any person regarding the SUBJECT ACCOUNT, including contacts with support services and records of actions taken.

b.    All other records and information, including:

i.    All subscriber information, including the date on which the account was created, the length of service,

iii
EX H-005

USAO_0056789

the IP address used to register the account, the subscriber's full name(s), screen name(s), other account names or e-mail addresses associated with the account, telephone numbers, physical addresses, and other identifying information regarding the subscriber, the types of service utilized, account status, account settings, login IP addresses associated with session dates and times, as well as means and source of payment, including detailed billing records, **and including any changes made to any subscriber information** or services, including specifically changes made to secondary e-mail accounts, phone numbers, passwords, identity or address information, or types of services used, and including the dates on which such changes occurred, for the SUBJECT ACCOUNT.

       ii. All user connection logs and transactional information of all activity relating to the SUBJECT ACCOUNT described above in Section II.10.a., including all log files, dates, times, durations, data transfer volumes, methods of connection, IP addresses, ports, routing information, dial-ups, and locations.

## III. **INFORMATION TO BE SEIZED BY THE GOVERNMENT**

    11. For each SUBJECT ACCOUNT listed in Attachment A, the search team may seize:

       a. All information described above in Section II.10.a. that constitutes evidence, contraband, fruits, or instrumentalities of violations of: 18 U.S.C. §§ 152 (Concealment of Assets); 157 (Bankruptcy Fraud); 371 (Conspiracy); 666 (Federal Program Bribery), 1001 (Making False

iv
<span style="color:red">EX H-006</span>

USAO_0056790

Statements); 1341, 1343, 1346 (Mail and Wire Fraud, including through the deprivation of honest service); 1621 (Perjury); 1623 (False Declaration Before Court); and 52 U.S.C. §§ 30109(d) and 30122 (Willfully Providing Conduit Contributions), involving ████████████ ██████████ ████████████ ████████████ MARK HANDEL, and ████████████ and occurring after December 15, 2015, namely information relating to:

       i.   Information relating to who created, accessed, or used the SUBJECT ACCOUNT, including records about their identities and whereabouts.

       ii.   Fundraising, campaign donations, conduit campaign donations, IEs and PACs.

       iii. Real estate developments in the Los Angeles area.

       iv.  Personal benefits, including but not limited to meals and entertainment, offered or given to public officials.

       v.   ████████████ ████████████ ████████████ ████████████ ████████████ and/or ████████████

       vi.  The Federal Bureau of Investigation and/or its agents.

       vii. Financial accounts and tax records.

       viii.   Mark Handel's assets, liabilities, and sources of income.

     b.   All records and information described above in Section II.10.b.

USAO_0056791

## IV. PROVIDER PROCEDURES

12. IT IS ORDERED that the PROVIDER shall deliver the information set forth in Section II within 10 days of the service of this warrant. The PROVIDER shall send such information to:

> Special Agent Jonathan McDonald
> 11000 Wilshire Boulevard
> Suite 1700
> Los Angeles, CA 90024

13. IT IS FURTHER ORDERED that the PROVIDER shall provide the name and contact information for all employees who conduct the search and produce the records responsive to this warrant. IT IS FURTHER ORDERED that the PROVIDER shall not notify any person, including the subscriber(s) of each account identified in Attachment A, of the existence of the warrant, until further order of the Court or until written notice is provided by the United States Attorney's Office that nondisclosure is no longer required.

USAO_0056792

## AFFIDAVIT

I, Jonathan McDonald, being duly sworn, declare and state as follows:

### I.   INTRODUCTION

1.   I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), and have been so employed since March 2008.  I am currently assigned to a public corruption squad. During my employment with the FBI, I have participated in multiple investigations of public officials, including those involving bribery, extortion, mail and wire fraud, and obstruction of justice.  Many of these investigations have involved the use of informants and cooperating witnesses, and have required financial analysis.  My duties have included conducting covert investigations of public officials.  I have also conducted physical surveillance and have monitored electronic surveillance.  In addition, I have attended numerous training sessions on the investigation of public corruption and other white collar crimes.

2.   I make this affidavit in support of an application for a search warrant for information associated with the account identified as markhandel@aol.com (the "SUBJECT ACCOUNT"), associated with MARK HANDEL ("HANDEL"), that is stored at premises controlled by AOL, Inc. (the "PROVIDER"), a provider of electronic communication and remote computing services,

USAO_0056793

headquartered at 22000 AOL Way, Dulles, Virginia.[1]  The
information to be searched is described in Attachment A.  This
affidavit is made in support of an application for a search
warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A)
and 2703(d)[2] to require the PROVIDER to disclose to the
government copies of the information (including the content of
communications) described in Section II of Attachment B.  Upon
receipt of the information described in Section II of Attachment
B, law enforcement agents and/or individuals assisting law

---

[1] Because this Court has jurisdiction over the offenses
being investigated, it may issue the warrant to compel the
PROVIDER pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A).
See 18 U.S.C. §§ 2703(a) ("A governmental entity may require the
disclosure by a provider . . . pursuant to a warrant issued
using the procedures described in the Federal Rules of Criminal
Procedure . . . by a court of competent jurisdiction") and 2711
("the term 'court of competent jurisdiction' includes -- (A) any
district court of the United States (including a magistrate
judge of such a court) or any United States court of appeals
that -- (i) has jurisdiction over the offense being
investigated; (ii) is in or for a district in which the provider
of a wire or electronic communication service is located or in
which the wire or electronic communications, records, or other
information are stored; or (iii) is acting on a request for
foreign assistance pursuant to section 3512 of this title").

[2] The government is seeking non-content records pursuant to
18 U.S.C. § 2703(d).  To obtain the basic subscriber
information, which do not contain content, the government needs
only a subpoena.  See 18 U.S.C. § 2703(c)(1), (c)(2).  To obtain
additional records and other information--but not content--
pertaining to subscribers of an electronic communications
service or remote computing service, the government must comply
with the dictates of section 2703(c)(1)(B), which requires the
government to supply specific and articulable facts showing that
there are reasonable grounds to believe that the records or
other information sought are relevant and material to an ongoing
criminal investigation in order to obtain an order pursuant to
18 U.S.C. § 2703(d).  The requested warrant calls for both
records containing content (see Attachment B paragraph II.10.a.)
as well as subscriber records and other records and information
that do not contain content (see Attachment B paragraph
II.10.b.).

USAO_0056794

enforcement and acting at their direction will review that information to locate the items described in Section III of Attachment B. Attachments A and B are incorporated herein by reference.

3. As described more fully below, I respectfully submit there is probable cause to believe that the information associated with the SUBJECT ACCOUNT constitutes evidence, contraband, fruits, or instrumentalities of criminal violations of 18 U.S.C. §§ 152 (Concealment of Assets); 157 (Bankruptcy Fraud); 371 (Conspiracy); 666 (Federal Program Bribery);[3] 1001 (Making False Statements); 1341, 1343, 1346 (Mail and Wire Fraud, including through the deprivation of honest service);[4] 1621 (Perjury); 1623 (False Declaration Before Court); and 52 U.S.C. §§ 30109(d) and 30122 (Willfully Providing Conduit Contributions) (collectively, the "SUBJECT OFFENSES").

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all

---

[3] The conduct discussed in the Affidavit discusses, in part, personal benefits to influence and reward agents of the City of Los Angeles (namely, ▮▮▮▮ and ▮▮▮▮ which receives well more than $10,000 in federal program funds annually.

[4] The mails and interstate wires likely were used to carry out the scheme described in this Affidavit, including through the use of mailings and interstate wires to make the campaign payments and the use of the emails described in this Affidavit.

3

USAO_0056795

conversations and statements described in this affidavit are related in substance and in part only. In places, I have placed in brackets context or my understanding of what I have quoted.

## II.  SUMMARY OF INVESTIGATION AND PRIOR EMAIL SEARCH WARRANT

5.   The FBI currently is investigating public corruption related offenses into a political organization operating in the



area that is run by ███ ██████████ ███
███████ ███████████ ████████████ and ███████████
The FBI is investigating HANDEL's and ████████████ involvement with ████████ ████████ and ████████ as well as HANDEL's and ████████ involvement in possible bankruptcy fraud related offenses. As set forth below, the SUBJECT ACCOUNT has been identified as an e-mail account that was used in connection with and to carry out the SUBJECT OFFENSES.

6.   During the course of this investigation, pursuant to court orders, the FBI has intercepted telephone calls over the cellular phones used by ████████ and ████████ Additionally, on December 11, 2015, in Case Number 15-2371M, the Court issued a search warrant in connection with the SUBJECT ACCOUNT. That search warrant was served on AOL, Inc. that same day.

7.   On December 22, 2015, email production associated with the December 11, 2015, search warrant was received from AOL, Inc.

8.   Based on my review of the SUBJECT ACCOUNT, I know that HANDEL maintains emails, including those that are evidence of the SUBJECT OFFENSES, in his account for approximately six months. Below I detail a number of emails that were maintained

USAO_0056796

in the SUBJECT ACCOUNT months after they were sent or received. Based on HANDEL's pattern of storing emails for several months and the preservation letters served on AOL on approximately July 30, 2015, October 18, 2015, and November 21, 2016, I believe evidence of the SUBJECT OFFENSES is currently stored on the SUBJECT ACCOUNT.

### III. INDIVIDUALS AND ENTITIES IN THE INVESTIGATION



9. ███ ( ███ is currently a ███

███. From ███, ███ represented ███, which is the seat ███ currently holds.

10. ███ ( ███ is the ███ for the ███, which covers portions of ███ ███, and includes the neighborhoods of ███

███. ███ was elected to this position in ███ after a contest against ███. ███ ███, ███, again in a race against ███

11. ███ ( ███ is the ███ for ███ was previously the ███ for ███ ███ from 2011 to 2013 while ███ was the ███ for the ███. In ███, ███ launched a bid to run for ███, but ███ withdrew from the race in late ███, before the election took place.

USAO_0056797

12.  ▓▓▓▓▓▓▓▓  ("▓▓▓▓▓▓  is the  ▓▓▓▓▓▓▓▓▓▓
▓▓▓▓  for  ▓▓▓▓▓▓  according to a website operated by the Los
Angeles City Council.

13.  HANDEL is a real-estate developer.  All of the emails
I attribute to HANDEL in this Affidavit were sent to or received
by the SUBJECT ACCOUNT.

14.  ▓▓▓▓▓▓▓▓  (▓▓▓▓▓▓  is a Certified Public
Accountant (CPA) who is a partner with a Burbank CPA firm,
▓▓▓▓▓▓  ▓▓▓▓  ▓▓▓▓▓▓▓

## IV.  STATEMENT OF PROBABLE CAUSE

15.  As discussed in detail below, the investigation has
revealed that  ▓▓▓▓▓  ▓▓▓▓▓▓  ▓▓▓▓▓  ▓▓▓▓▓  HANDEL,
▓▓▓▓  and others have engaged in a number of criminal
offenses.  As they relate to HANDEL, these offenses include:

a.   Illegal conduit contributions;

b.   The offer of benefits to influence and reward
▓▓▓▓▓▓  and  ▓▓▓▓▓  with respect to developments in  ▓▓▓▓▓▓▓
district, and lying about it to the FBI;

c.   False statements and concealment of assets in
connection with HANDEL's personal bankruptcy proceeding filed on
or about April 15, 2015; and

d.   False statements to the FBI.

16.  Based on my training and experience and my knowledge
of the investigation, I believe HANDEL uses the SUBJECT ACCOUNT
when communicating about these issues.

USAO_0056798

1.  **HANDEL OFFERS FREE MEALS AND $150,000 IN CAMPAIGN FUNDS**

17.  I have learned through the investigation that HANDEL develops real estate, including property located in the Los Angeles area. As discussed below, HANDEL has offered expensive meals to ████████ ████████ and other public officials, and $150,000 in campaign donations to ████████ when █ runs for political office in the ████████. At the same time, according to interceptions I describe below, HANDEL was attempting to have the City approve of his plans to erect multiple housing units on land he owns, and he was concerned the City would approve the building of fewer units (in other words, less density and less income) than he desired. HANDEL also apparently was concealing his ownership interest in the property from the public.

18.  On November 6, 2014, HANDEL called ████████ in a recorded conversation. After discussing their efforts to have provisional ballots counted in a local election in a manner that would allow ████████ (and ████████ political ally) ████████ to defeat ████ rival, ████████ HANDEL said he would "take everyone out to a fucking steak for Sunday night . . . at Mastro's." Mastro's is an up-scale steakhouse in Beverly

7

USAO_0056799

Hills. HANDEL said this would "cost[] me fifteen-hundred [dollars]."[5]

19. On November 7, 2014, HANDEL called ███████ In the recorded conversation, HANDEL informed ██████ that he invited ████████ to dinner that weekend. HANDEL stated, "I invited ██ over . . . for like steak, you know fish, lobster, but I thought maybe I'd have four or five people." HANDEL asked if ██████ and ████████ would want "to join in?" HANDEL said ███████ and ████████ could bring their spouses. ████████ responded, "I would love that." HANDEL later said he could "accommodate up to 20" people, but he needed to know who was coming because he had to "buy steaks" and "thaw fish."

20. In another portion of the conversation, HANDEL told ████████ that when ████████ "finally decided" to run for office (he was considering a run for the ████████████ ), HANDEL would allow ████████ "to open with 150 grand." ████████ said "boom." I understand this to mean HANDEL would either provide ████████ directly with $150,000 in campaign contributions or bundle these campaign contributions for ████████ at the outset of ██ run for office.

---

[5] ████████ was a ████████████ from ████████████. ████ until losing an election in ████ covers much of the same geography as ████ was ████████████

████ ran against ████████ ██ in the ████ election. In ████, staff members from the Los Angeles County Registrar's Office were still counting provisional and absentee ballots from that election to determine the winner of the election. In late ████████, ████████ conceded losing the election to ████████,

USAO_0056800

21.  From November 7, 2014 to November 9, 2014, HANDEL, ████████ ████████ ████████ and ████████████ engaged in a string of group text messages.  The content of these messages suggested that HANDEL was hosting a dinner at an expensive restaurant for the group.  For example, on November 9, 2014, ████████ sent a text to the group, in which he stated, "Mark [HANDEL], let's do, Morton's Burbank?  Please let us know." HANDEL responded in a text message, "Ok.  I got reservations at both [M]ortons.  Burbank and Conoga [sic] park!  Please everyone just let me know where everyone will be at 6 pm, and I will be there!  Try to pin this down by 5pm!  I need time to shower!"  I understand from these text messages and the previous communications that HANDEL was going to be buying the group dinner at another expensive steakhouse.

22.  On November 9, 2014, HANDEL's American Express business account charged $1,197.83 at "MTBK" at 3400 West Olive in Burbank.  The Mortons Steakhouse in Burbank is located at 3400 West Olive.  Location data shows that ████████'s cellular phone was in the vicinity of this address on November 9, 2015 at 9:00 p.m.  The FBI has obtained the receipt from this bill, and the receipt indicates that it was for a party of ten.

2.  HANDEL DISCUSSES FIRMAMENT DEVELOPMENT IN WHICH HE HAS CONCEALED INTEREST

23.  Around the same time, ████████ and HANDEL engaged in discussions about HANDEL's efforts to convince the City to approve a development project that HANDEL was proposing.  The development is located adjacent to Firmament Avenue and is

USAO_0056801

sometimes referred by HANDEL and others as "Firmament."

24. At issue was the number of housing units to be built on the land. HANDEL and ▮▮▮▮ talked about ▮▮▮▮ "stay[ing] on the sidelines," so others would not know about ▮▮▮▮ support for HANDEL's project.

25. Specifically, on November 8, 2014, HANDEL and ▮▮▮▮ spoke in a recorded telephone call about a number of issues. HANDEL stated, "I'm not involved in any projects in your district, but there is one project in your district. Can I make a suggestion? . . . I know that project is going to Planning Commission. Is there any possibility of not scheduling it to PLUM[6] until after the election? . . . the property owners would be more than happy to, uh, to be patient." ▮▮▮▮ responded, "Sure." HANDEL said, "I think that's best, too. Don't you agree?" ▮▮▮▮ replied, "Yeah, probably. Especially now, yeah." HANDEL asked, "Why take the risk?" ▮▮▮▮ stated, "Right. Yeah, on all those." At no time did HANDEL state which project he was referring to, but it was clear from their dialogue (including that ▮▮▮▮ did not seek any clarification of HANDEL's deliberately vague reference) that ▮▮▮▮ understood HANDEL's reference.

26. Based on this and later interceptions and emails, I believe HANDEL is concealing his interest in real-estate developments in ▮▮▮▮ and that ▮▮▮▮ is aware that HANDEL is doing so. In this November 8th call, HANDEL also

---

[6] In referring to "PLUM," I understand HANDEL to be referencing the Los Angeles City Council's Planning and Land Use Management Committee ("PLUM").

EX H-018

USAO_0056802

agreed to increase the amount of money he was raising for
█████████ s March 2015 election by stating, "I was only going to
do about 5,000 . . . but now the situation is critical . . . I
think I can do 15 [thousand]." Earlier in the call HANDEL said
he was "no longer . . . in the contribution business. My name
and I don't want to contribute to anybody, you know." I
understand this to mean that while HANDEL will financially
support █████████ campaign through fundraising, he wanted to
conceal his involvement by providing campaign donations that
cannot be traced back to him.

    27. HANDEL continued to suggest that ████████ and ████████
should not show their support for his project prior to the March
2015 election. On November 11, 2014, ████████ placed a call to
HANDEL. ████████ said HANDEL's "point is . . . Just stay on the
sidelines." HANDEL confirmed this was what he was thinking.
████████ said they needed to find out "if we can be coy if we
know they're gonna go nine." I understand ████████ to mean
████████ and ██ staff would not need to publicly influence the
process if the City decided to approve of HANDEL building nine
housing units in this area. At the conclusion of the call,
HANDEL referred to ████████ as "████████████," which is the
position for which ████████ was considering running at that time
(████████ later registered as a candidate and raised campaign
funds, but dropped out of the race in ████████ 2015.) I believe
HANDEL called ████████ "████████████" as a subtle reminder that
HANDEL was offering to provide substantial campaign donations

USAO_0056803

($150,000) to ▮▮▮▮ while ▮▮▮▮ was considering what actions to take with respect to HANDEL's development.

28. Similarly, on November 12, 2014, ▮▮▮▮ called HANDEL. In the recording, the two discussed the number of units that would be built on HANDEL's property. HANDEL stated, "The issue of density . . . is there a huge difference in quality of life for the neighborhood between 5, 7, 9, or 11 or 13 homes?" HANDEL said his "advice is for you guys to sit on your hands because if you fight for the nine, they're not gonna give you the nine anyways." HANDEL then stated, "if you and the council office ultimately at a date in the future, past the month of March, decided that it's going to be nine, I'll accept nine without ever an argument . . . Not one argument." HANDEL said, however, "if you guys were to say . . . we don't even think we can support nine, I would . . . my back hairs would get up." HANDEL and ▮▮▮▮ discussed how HANDEL could appeal any adverse action to the City Council. I understand HANDEL to be informing ▮▮▮▮ which position ▮▮▮▮ and ▮▮▮▮ should take with respect to the number of units (no less than nine) if they expected continued political support from HANDEL in the future.

29. Later on November 12, 2014, ▮▮▮▮ again called HANDEL in a recorded conversation. ▮▮▮▮ said, "I talked to ▮▮▮▮ [▮▮▮▮ talked to ▮▮▮▮ ▮▮▮▮." ▮▮▮▮ said they would "not talk about the number," but they would talk about "the great things" that HANDEL "can bring" to the area where the development is located. I understand this to mean that ▮▮▮▮ ▮▮▮▮ and ▮▮▮▮ agreed that ▮▮▮▮ would

12
EX H-020

USAO_0056804

publicly support aspects of HANDEL's project but would not inform the public they had come to a decision on the number of units that should be built in the development. HANDEL asked "who's gonna carry the water, ▇▇▇▇ ▇▇▇▇ confirmed that "▇▇▇ is." I understand this to mean ▇▇▇ would be representing ▇▇▇ at the meeting. ▇▇▇ said if the City only approved six housing units, "maybe we can get you up to nine." HANDEL asked who would hear his appeal of an adverse decision by the planning commission. ▇▇▇ said HANDEL would "appeal to [City] Council." HANDEL responded that he was "not worried about that." I understand this to mean that HANDEL believed he had enough support in the City Council, including with ▇▇▇ to win an appeal of an adverse decision by the City's Planning Commission. HANDEL directed ▇▇▇ to tell ▇▇▇ "I'm not gonna be the world's most friendly guy." ▇▇▇ replied, "That's fine." I understand this to mean HANDEL would pretend that ▇▇▇ who would be representing ▇▇▇ at the hearing, was not a supporter of HANDEL's development to disguise their true support for the project and HANDEL's true relationship with ▇▇▇.

30. On November 13, 2014, HANDEL and ▇▇▇ spoke in two different recorded calls. HANDEL informed ▇▇▇ that the Planning Commission had just approved the building of nine housing units in the development. HANDEL specifically said, "They approved it. They approved the nine." HANDEL discussed how "the council office [▇▇▇ office] being low key about this is working in our benefit." HANDEL said he and ▇▇▇

USAO_0056805

██████████      could push off the final decision on the number of units to be built until after the primary election in March by stating, "We put it off until after the election for sure." HANDEL said, if "you guys want to be even more passive as far as direct lobbying" that they could rely on another City employee to "carry the day."

31.   On July 21, 2015, an email from the email address ████████████████████████████ which I believe to be utilized by ████████████ [7] appears to have sent an email to ██████████   In the email, ████████████ "attached a revised site plan for Firmament, based on our [█████████ and ███████████ conversation today."   On the same day, an email from the account ██████████████████████ which I believe to be associated with ████████████ responded to ████████ and carbon copied ████████    ████████ said, among other things, "This is going to come back on July 28th for approval. I'm assuming this plan meets with your clients [sic] approval." I understand this email to mean that ████████ wanted to confirm with ██████████ that HANDEL (██████████ client) had approved the revised site plan before it came up for approval before the City Council.

32.   According to a website operated by the Los Angeles City Council, after approval by the Los Angeles City Council's PLUM Committee, the City Clerk scheduled the Firmament development for approval with the City Council on June 17, 2015.

---

7 ████████████ is an architect with ████████████ Architects, Inc. that works with HANDEL in connection with HANDEL's real-estate development projects, including Firmament,

USAO_0056806

The item subsequently was continued to June 30, 2015 and then again to July 28, 2015 and then again to July 31, 2015.

33. ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The City Council then approved the project, ▮▮▮▮▮▮▮. The approved project allowed for nine housing units. ▮▮▮▮▮ voted in favor of approving the development. On August 4, 2015, the City Clerk transmitted the file to the Mayor to of Los Angeles act by August 14, 2015.

34. On August 7, 2015, HANDEL sent an email to ▮▮▮▮▮▮▮▮▮ an account I believe to be utilized by with ▮▮▮▮▮ asking if the City Council had approved the project. ▮▮▮▮ responded that "[i]t was approved August 4th. The Mayor has until August 14th to sign the ordinance change." In response, HANDEL stated: "Thx ▮▮▮ You are hideously under appreciated [sic]! But not by me!" I understand this email to mean that HANDEL is thanking ▮▮▮▮▮ for helping obtain the City Council's approval of the nine housing units that HANDEL desired for the Firmament project.

### 3. DISCUSSIONS ABOUT HANDEL'S "ARRANGEMENT" WITH ▮▮▮▮▮

35. On November 19, 2014, ▮▮▮▮▮ and ▮▮▮▮▮ spoke in a recorded conversation. In the call, ▮▮▮▮▮ told ▮▮▮▮ that ▮▮ had recently talked to ▮▮▮▮▮▮ ▮▮▮▮▮▮▮ about a "good campaign meeting today." ▮▮▮▮▮ said ▮▮ did not tell ▮▮▮▮ during that conversation, "about the arrangement with HANDEL . . . I didn't mention anything about that." I believe

USAO_0056807

this call shows that ▮▮▮▮ and ▮▮▮▮ have fundraising or other financial arrangements with HANDEL in exchange for their official support for HANDEL's interests that they do not want to publicly discuss or acknowledge.

36. On November 20, 2014, ▮▮▮▮ and HANDEL spoke in a recorded conversation. HANDEL asked if ▮▮▮▮ had given ▮▮▮▮ "any details about the meeting that we had and what my suggestions were?" ▮▮▮▮ acknowledged that ▮▮▮▮ had done so. ▮▮▮▮ said ▮ appreciated HANDEL's ideas, and ▮ "was thinking something very similar about opening my ▮▮▮▮ campaign, getting a bunch of donations in there." Based on the prior interceptions, the context of the call, and ▮▮▮▮ response to HANDEL's comment, I believe HANDEL's statement regarding "details about the meeting . . . and what my suggestions were" are in reference to HANDEL offering to provide large contributions to ▮▮▮▮ and/or ▮▮▮▮ during their campaigns.

        4.    ▮▮▮▮ PULLS CONSIDERATION OF HANDEL'S DEVELOPMENT FROM PUBLIC AGENDA AT HANDEL'S REQUEST; HANDEL DISCUSSES DONATIONS AND OFFERS TO HOST HOLIDAY LUNCH

37. On December 8, 2014, HANDEL left a voicemail message for ▮▮▮▮ In the recorded message, HANDEL asked ▮▮▮▮ to "Call me. It's important. It's scheduled . . . for PLUM. I need you to pull it. What's going on my man? Get on top of this, please." I understand HANDEL to be referring to an agenda item before the Los Angeles City Council's PLUM Committee

USAO_0056808

relating to one of HANDEL's developments.[8]  I believe HANDEL
wanted to delay the agenda item until after the March 2015
election so that ███████ and ███ staff could exert their
influence in support of HANDEL's development (and thereby secure
its success) without fear of jeopardizing the election or the
extra scrutiny that might come with their support of a lucrative
development project before the election.

    38.  Later on December 8, 2014, ███████ received a call
from HANDEL.  HANDEL asked, "Did you get my message?"  ███████
said he did and asked "when is it on schedule?"  HANDEL replied,
"December 15th or 16th."  ███████ said HANDEL had "found out
before us."  HANDEL asked if "you'll be able to pull it."
███████ responded, "Yeah."  HANDEL told ███████ "Oh, good.
Don't let it slip through your fingers."  ███████ replied, "Are
you kidding me?  Fuck no."  HANDEL told ███████ that ███████ had
been "an incredible friend . . . and have been a fantastic chief
of staff . . . but I got to tell you . . . because you do so
much, little details in the past have slipped through the
office's fingers."  *HANDEL* ███████ provided an example of ███████ s
███████████████████ '███ [███████ being on the 101 freeway
as they're rendering a decision, things like that."  ███████
replied, "Small things like that."  HANDEL said, "if we didn't
pay attention this [HANDEL's current project] would have flowed
through, wouldn't it?"  ███████ replied, "But, yeah, we will get
it yanked.  We will move it all the way out."  I understand

---

[8] It is unclear from the recorded conversations whether
HANDEL is referring to the Firmament development discussed above
or if HANDEL is referring to another one of his developments.

USAO_0056809

these comments to mean that ███████ would cause an agenda item in PLUM to approve of one of HANDEL's developments to be tabled until after the election. Later in the conversation, HANDEL asked "we can talk about money, correct?" ███████ responded, "Yeah." HANDEL continued, "You know the campaign money is difficult for me. I keep telling you guys." ███████ replied, "sure, yeah, yeah, no problem." HANDEL said, "Some of my friends expressed a great interest in, you know, providing as much help as they can. And if there was some kind of independent ability, everybody would like to know where that is, when will that be known." HANDEL mentioned two donors who were "waiting in the wings." HANDEL told ███████ to "let me know ... I'm by the ready and make sure, obviously, the blah, blah, blah." ███████ said, "Yes, sir." HANDEL reiterated that ███████ should "Let me know." ███████ said, "You got it." I understand these comments to mean that HANDEL and his friends do not want to donate to ███████ directly because of the public reporting requirement, but will donate to a Political Action Committee (PAC)[9] or Independent Expenditure (IE)[10] ("some kind of independent ability") that would spend funds to support ███████ and/or oppose ██ rival, ███████████

---

[9] PAC is defined by Miriam Webster as a group formed to raise and contribute money to the campaigns of candidates likely to advance the group's interests.

[10] IE is defined by the California Fair Political Practices Commission as an expenditure for a communication that expressly advocates the nomination, election or defeat of a clearly identified candidate or ballot measure that is not made to, or at the behest of, an officeholder, or committee.

USAO_0056810

39. On December 11, 2014, HANDEL called ▮▮▮▮▮ In the recorded call, HANDEL said he again "wanted to make sure on the PLUM thing." ▮▮▮▮▮ responded, "Yup. We're good." HANDEL then said, "thank you, thank you so much for taking care of the PLUM thing." HANDEL continued, "maybe we'll get together . . . as a matter of fact, before the campaign [▮▮▮▮▮ March 2015 reelection campaign] starts in earnest, you guys want to have a little Christmas lunch? Me, you, ▮▮▮ [▮▮▮▮▮ and ▮▮▮ [▮▮▮▮▮ at Larsen's?" ▮▮▮▮ replied, "That'd be fun." HANDEL told ▮▮▮▮ to "pick a day and get a little guest list stuff together . . . I'd love to treat you guys to a wonderful Christmas lunch. What do you think?" ▮▮▮▮ said, "I think that's wonderful, very wonderful." HANDEL reiterated that ▮▮▮▮ should "put together a guest list, a time, and a place." ▮▮▮▮ said he would "put some fun people together." HANDEL said, "We'll have a fucking Christmas lunch." ▮▮▮▮ replied, "I love it." I understand HANDEL to be offering a free lunch to ▮▮▮▮ and ▮▮▮▮ for ▮▮▮▮ ▮▮▮▮ and others to attend as a way to influence and reward them for supporting him through their official acts favorable to HANDEL's financial interests.

40. On December 19, 2014, ▮▮▮▮ called HANDEL. HANDEL said he wanted to talk about "a couple things. First of all, I suspect because everybody is so busy that next week is out . . . unless you had made plans." ▮▮▮▮ replied that ▮ "didn't have a chance to do anything." HANDEL said they should "forget that." I understand this to be in reference to the free lunch HANDEL had offered ▮▮▮▮ and ▮▮▮▮ in the previous call.

USAO_0056811

HANDEL said he would be traveling, but he was back on December 31 and they should "get together the first week of January because there's lots of things to talk about."           responded, "Absolutely."

      5.   HANDEL CONTINUES TO OFFER BENEFITS AND CAMPAIGN
          DONATIONS TO ████████ AND ████████

    41.  On January 13, 2015, HANDEL called ████████ and invited ████████ and ████████ to HANDEL's house for the Super Bowl. In the recorded conversation, ████████ said he would attend and that he would bring ████████ HANDEL mentioned he was also "waiting to hear from some people so we can help. You know? Blah, blah, blah." ████████ responded, "Love it . . . fabulous." I understand this to mean that HANDEL was in the process of bundling campaign money for ████████.

    42.  On January 26, 2015, HANDEL and ████████ had a recorded conversation. ████████ stated, "We're fixing it." HANDEL said, "Find me a developer that is asking to delay projects?" I understand this to mean HANDEL was asking ████████ to take steps to ensure that his development would not be on PLUM's agenda until after the election. HANDEL then asked if "we're all set for the Super Bowl?" ████████ confirmed that █ and ████████ would be attending the Super Bowl party at HANDEL's residence and ████████ and ████████ would also be attending.

    43.  On February 10, 2015, HANDEL and ████████ spoke in a recorded telephone conversation. HANDEL said if ████████ won the election on March 3, 2015, HANDEL and real-estate developer ████████ "want to take the whole gang to Mastro's [up-scale

USAO_0056812

steakhouse] for a big celebration dinner." ██████ replied,
"That'd be great."

      6.    HANDEL AND ██████ DISCUSS HANDEL'S DEVELOPMENT
            AND FUNDRAISING IN E-MAILS

    44.  On February 18, 2015, HANDEL, using the SUBJECT
ACCOUNT, forwarded an email to ██████ and added the text
"?????."  In the forwarded email, a City of Los Angeles official
wrote that the Planning Committee would hold a hearing about
HANDEL's development on February 24, 2015.  ██████ responded to
HANDEL on the SUBJECT ACCOUNT stating, "We need an extension
letter from your folks for a 30-day extension of time, because
we currently must act under the law by February 26.  If you guys
send in a letter giving the City an additional 30 days we'll be
fine."  I believe this was an effort to postpone the Planning
Committee's decision until after the election.

    45.  On February 20, 2015, HANDEL and ██████ spoke in a
recorded telephone conversation about HANDEL's real estate
development.  ██████ told HANDEL █ "sent an e-mail back saying
the reason it's on February 24th is we are legally obligated to
take up the item by then . . . or we lose jurisdiction.  So we
need a 30-day extension.  If you guys write it, then we can just
kick it down a little further."  HANDEL asked, "So what do you
need from us? I'll look at the e-mail."  ██████ responded,
"It's a letter to the city of Los Angeles."  HANDEL said he
would look at "your e-mail and I'll make sure we get the letter
off."

USAO_0056813

46.    Although not expressly mentioned by HANDEL or ████████
these discussions appear to relate to the Firmament project.
According to a website operated by the Los Angeles City Council,
consideration of whether to approve the Firmament development
originally was scheduled to occur before the Los Angeles City
Council's PLUM Committee on February 24, 2015, but the item was
continued on the agenda until May 29, 2015.  On May 29, 2015,
the item again was continued to June 2, 2015.  On June 2, 2015,
the Los Angeles City Council's PLUM Committee approved the
development project, as amended.  I believe these discussions
show HANDEL and ████████ communicate about the developments and
fundraising on the SUBJECT ACCOUNT.

47.    In addition to recorded telephone conversation,[11] the
emails produced in response to the first search warrant of the
SUBJECT ACCOUNT demonstrate that HANDEL and ████████ communicate
about the developments on the SUBJECT ACCOUNT.

48.    As discussed above in ¶¶ 30 and 33, HANDEL and ████████
sent and received emails related to the City Council's approval
of the Firmament project.  Additionally, on September 21, 2015,
HANDEL carbon copied ████████ on an email discussing the minimum
lot size related to the Firmament project.  In that email,
HANDEL stated, "The RD five is a density designation.  It is not
a lot size designation.  The lot size is whatever we wanted

---

[11] The bulk of the emails produced in response to the first
search warrant of the SUBJECT ACCOUNT were sent or received
between June 10, 2015 and December 15, 2015.  The emails
discussed in HANDEL's and ████████ recorded telephone
conversations on February 18 and 20, 2015 were not included in
the production.

22
EX H-030

USAO_0056814

[sic] to be[.]" I believe that HANDEL included ▇▇▇▇ on the email to demonstrate that ▇▇▇▇ agreed with HANDEL's statement that the "lot size is whatever we wanted [sic] to be[.]"

49. In addition to Firmament, the SUBJECT ACCOUNT is used to discuss other real-estate development projects with ▇▇▇▇ On October 12, 2015, an email from the email address ▇▇▇▇▇▇▇▇▇▇ which I believe to be utilized by ▇▇▇▇ ▇▇▇▇ an associate of HANDEL, was sent to ▇▇▇▇ at ▇▇▇▇▇▇▇ and ▇▇▇▇▇▇▇▇ with the subject "16040 Sherman Way - Follow Up." In the email, ▇▇▇▇ stated "It was a pleasure meeting with you the other week about our potential development at 16040 Sherman Way." ▇▇▇▇ proceeded to explains some of the aspects of the project and stated that "to make this project work with market rate apartments that aren't all micro-units, we are requesting a **zone change from C2-1VL to RAS4**." (Emphasis in original.) ▇▇▇▇ then explained why ▇ believes the development is "an ideal candidate for an RAS4 zone change" and concluded his email by saying, "Thank you ▇▇▇▇ for your consideration in this matter and we hope to hear a positive response from your office by the end of this week." On November 24, 2015, ▇▇▇▇ sent an email to ▇▇▇▇ also with the subject "16040 Sherman Way - Follow Up," in which ▇▇▇▇ wrote, "Hey ▇▇▇▇ - What's your phone number? Want to give you a call today. Have more info on the site and community issues, etc. Thanks. ▇▇▇▇ On the same day, ▇▇▇▇ forwarded ▇▇▇▇ email to HANDEL. In that email, ▇▇▇▇ stated, "Below, I'm waiting for his [▇▇▇▇ call back. Do you know

USAO_0056815

anything I don't?" HANDEL responded "[n]ope" to ████ email.
I understand this email exchange to mean that, like with the
Firmament project, HANDEL is trying to coordinate with ████
to ensure that HANDEL's project gets the appropriate approvals
from the City.

50. The emails also show that HANDEL and ████
communicate about the fundraising on the SUBJECT ACCOUNT. On
October 5, 2015, ████ sent an email to HANDEL, stating "Great
seeing you the other day. Come by the event if you can. Would
love to have you there." ████ also attached an invitation to
a mixer in support of ████ then campaign for ████.
The suggested contribution amounts listed in the invitation are:
"$4,200 HOST," "$2,000 FRIEND," and "$1,000 GUEST."

### 7. HANDEL PROVIDES DONATIONS THROUGH CONDUIT CONTRIBUTIONS INCLUDING BY USING HIS ████

51. It appears one of the ways HANDEL provides money to
████ campaign, and other campaigns, is through conduit or
straw contributions. Although conduit or straw contributions to
local officials are not federal crimes on their own, they are
evidence that benefits are being concealed from the public.

52. On October 23, 2014, ████ sent an email to HANDEL
on the SUBJECT ACCOUNT stating, "These are donors I think
contributed. Some may or may not be yours." ████ then
forwarded a list of individuals, including ████ HANDEL
replied, "Ok. Wat [sic] are the limits. And wats [sic] the name
of the committee." ████ responded that the limit was a

USAO_0056816

contribution of $700 and the contributions were for ▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

53.  In the same December 8, 2014 conversation between
HANDEL and ▮▮▮▮▮ discussed above, in which HANDEL said that
"campaign money is difficult for me.  I keep telling you guys,"
HANDEL mentioned that ▮▮▮▮▮▮▮ was one donor "waiting in the
wings."  HANDEL then told ▮▮▮▮▮ "You met Mr. ▮▮▮▮▮▮
▮▮▮▮▮ replied "Yeah, great guy."  HANDEL said "yeah, you
passed your hand right through him."  ▮▮▮▮▮ responded, "Yeah,
exactly right through.  Boom, hologram.  Very nice.  Big fan."
I believe HANDEL was referencing ▮▮▮▮ as a straw donor, which
is why he said ▮▮▮▮ was a "hologram," because a hologram is
something that appears real but is not, similar to a straw
donor, and through which things can easily pass through (like
money whose true source is being concealed).

54.  On ▮▮▮▮▮▮▮▮▮▮, in a recorded phone call, HANDEL
and ▮▮▮▮▮ spoke about an article about to be published in the
▮▮▮▮▮▮, which was written by reporter ▮▮▮▮▮▮▮  The
article was to discuss donations attributed to ▮▮▮▮ that were
given to the ▮▮ supporting ▮▮▮▮ that ▮▮▮▮▮ ran.
HANDEL said, "if you follow the records, ▮▮▮▮▮▮▮▮ ▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," ▮▮
said, "I don't know if ▮▮▮▮ that good of a reporter; that
▮▮ has enough time to really dig."  HANDEL asked whether
"someone [would] say, 'wait a minute, ▮▮ fronting for all of
his developer clients?  That's not his money, that's their money
. . .' would the Ethics Commission ask that question?"  HANDEL

USAO_0056817

added that he "hope[d] there's someone in ██████ office who is not angry at ████ . . . That would be a disaster, because my name's all over everything." I understand this to mean that HANDEL is aware that ██████ name is associated with certain LLC's, controlled and/or funded by HANDEL; that these conduit contributions are illegal (at least under state law); and HANDEL is hoping his involvement with the contributions remains concealed.

55. On ████████ ██████, ██████ left a recorded voicemail message for HANDEL. ██████ stated, "an article on the Daily News just posted." ██████ said the article was "not that bad." HANDEL returned ██████ call the same day. ██████ said the reporter, ██████ "doesn't have the resources to dig." HANDEL stated, "I feel better." ██████ said, "It would have taken a lot to get to the bottom, I mean maybe one day someone will so you should probably start moving some things around." I understand ██████ to mean HANDEL was the true donor of the money falsely attributed to ██████ and that HANDEL should do better to conceal that fact. HANDEL then said, "I'm already . . . let's say something after this election happens with . . . ████ [██████ . . . There's going to be an enormous contribution from . . . a film group." HANDEL said, "There's only six people, seven people that know, you know, wait a minute, this is MARK HANDEL." I understand HANDEL to mean he has already made an agreement with a different straw donor to provide money to support ██████ and that uncovering the true source of that money (HANDEL) would be very difficult. HANDEL

USAO_0056818

later said, "that's a good story, you know I'm tempted to call
███ because I go, you're a fucking idiot, it's me you shithead,
can I get some credit here?" ███████ replied, "Come on, you know
these people in Tujunga figured it out ten years ago . . . at
the golf course." I understand this to mean that HANDEL was
joking he was tempted to call ████████ and tell ██ he was
the true donor of the money falsely attributed to ██████
Additionally, I understand HANDEL to be stating he also
concealed his interest in a real estate development in the past
involving an area within the district adjacent to ████████████.
I also understand this to mean that ████████ was aware of
HANDEL's involvement.

### 8. COMMUNICATIONS RELATED TO HANDEL'S FEDERAL CONDUIT CONTRIBUTIONS

56. HANDEL has also made conduit contributions in federal
campaigns, including to ████ ████████ ████████ thus these
contributions are illegal under federal law. For example, on
February 20, 2015, ████████ ███████████████████, ███
████████ sent ████████ a text message stating, "Ugh txt won't
work. Check email please." In a call recorded later that day,
████████ said he would give ████████ "some cover. I think he is
MARK HANDEL's attorney, but that is completely on the down low."
████████ read an e-mail and stated that the reporter's question
was "can you confirm is ████████ ████████████ tax
accountant? So, he is definitely not your accountant."
████████ responded, "Correct." ████████ said ████████ "has
donated to your campaign for ████████and ██ ████████

USAO_0056819

██████████████████████ just want me to confirm if he is your tax accountant. So I guess I can just respond to ████ and say, 'No he isn't and have that be the entire answer."

57. According to the Federal Election Commission website, ████████ was listed as the source of three donations to support ████████ ██████████ elections. The records show that ████████ was reported as the source of the following amounts on the following dates:

     a. ███████ ██████████ ██████

     b. ███████ ██████████ ██████

     c. ███████ ██████████ ██████

58. I believe the ██████████ donations by ████████ were conduit contributions from HANDEL. On March 3, 2013, ████████ ████████████████ who acts as a fundraiser for ████████ sent ████████ an email with the subject, "Fundraiser: Larger donation." The email listed approximately ten individuals for ████████ to call regarding a fundraising dinner. HANDEL was one of the individuals listed. On April 1, 2013, ████████ step-daughter sent ████████ an email setting forth a list of "Guests Confirmed." The email listed HANDEL as an individual "Not Attending, but giving Money." The Federal Election Commission website does not list any donations from HANDEL to ████████ around this time.

59. Indeed, the only donation to ████████ attributed to HANDEL was a ██████ donation that came more than a year later, ████████████████ (after ██████████████████ ). I believe it is likely at least some of the contributions attributed to ████████

USAO_0056820

were, in reality, straw donations from HANDEL, in violation of
Federal Election law 52 U.S.C. § 30122 (formerly 2 U.S.C.
§ 441f), but were concealed similar to how HANDEL had utilized
████████ name to contribute to ████████

    60. The SUBJECT ACCOUNT also appears to have been used to
make a conduit contribution to ████████ in the name of HANDEL'S
wife, ████████ on ████████ . On that date,
████████ ████████ forwarded ████ an email stating,
"Fyi, Mark Handel ..." The forwarded email reflected what
appears to be an automatically generated electronic
communication showing that ████████ campaign had received a
campaign contribution. This one reflected that HANDEL's ████
provided a ████ donation to ████████ on ████████
Despite the donation being attributed to HANDEL's ████, who uses
a different last name, the automatically generated electronic
communication listed the SUBJECT ACCOUNT, HANDEL's cell phone
number, and ████████ business address in detailing the
donation.

    9.   HANDEL'S FALSE STATEMENTS TO THE FBI

    61. As explained below, in meeting with the FBI, HANDEL
falsely stated that he never gave money to ████████ to donate to
████████ and has not paid for meals for public officials in
exchange for their support.

    62. On January 22, 2015, FBI SAs Leah Tanner and David
Dahle recorded an interview of HANDEL, who had previously been
an FBI source in an unrelated investigation. SA Tanner asked
HANDEL whether he had paid for any meals for any public

USAO_0056821

official. HANDEL said that he did it all the time, but it was never in exchange for the official's support. When SA Tanner asked HANDEL for the identity of the last public official that HANDEL treated to a meal, HANDEL stated, "Teddy Roosevelt." SA Tanner inquired whether that was the real answer that HANDEL was providing the FBI. HANDEL said it was.

63. Following the FBI's January 22, 2015 meeting with HANDEL, HANDEL sent SA Tanner emails from the SUBJECT ACCOUNT with information about an elected official he wanted the FBI to investigate (███████ political rival). On February 21, 2015, SA Tanner sent HANDEL an email on the SUBJECT ACCOUNT asking if HANDEL could meet. HANDEL responded the same day, "same place 5pm Monday ok."

64. SAs Tanner and Dahle recorded a meeting with HANDEL on February 23, 2015. HANDEL informed the agents that ███████ was HANDEL's accountant. HANDEL denied providing ███████ with any money that ███████ had given to ███████ IE. Specifically, HANDEL stated it was "against the law. I would never do that. Never do that." HANDEL twice stated he had "not made a political contribution in 15 years." Not only do Federal Election Commission records show that HANDEL made a donation in ███████ (to ███████ as discussed above), but I believe the evidence shows that HANDEL provided conduit contributions through ███████

USAO_0056822

10. HANDEL REPRESENTED TO THE BANKRUPTCY COURT UNDER OATH THAT HE IS UNEMPLOYED, BUT REGULARLY CONDUCTS BUSINESS USING THE SUBJECT ACCOUNT

65.  On or about April 15, 2015, HANDEL filed a voluntary petition for bankruptcy protection under Chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101-1532). As of the date of this Affidavit, HANDEL's bankruptcy proceeding is currently pending before the United States Bankruptcy Court for the Central District of California, 15-bk-11292-MT. Through the course of the bankruptcy, I believe Handel has falsely stated to the bankruptcy court on multiple occasions that he is currently unemployed, has been unemployed since 2008, and earns no income. These false statements are set forth in the paragraphs below.

66.  In his Debtor's Certification of Employment Income Pursuant to 11 U.S.C. § 521(a)(1)(B)(iv) dated April 13, 2015, HANDEL declared, under penalty of perjury, that he "was unemployed for the entire 60-day period prior to the date of the filing of my bankruptcy petition." (Bk. Dkt. # 1, p. 46.)[12] In the Official Form B 6I (Schedule I: Your Income), HANDEL listed his employment status as "[n]ot employed" and that his "gross wages, salary, tips, bonuses, overtime, and commissions" are $0.00. (Bk. Dkt. # 1, p. 47.) Under penalty of perjury, HANDEL declared that "the information on this statement and in any attachments is true and correct." (Bk. Dkt. # 1, p. 49.)

67.  On May 21, 2015, HANDEL testified under oath at the first meeting of creditors under 11 U.S.C. § 341 in connection

_____

[12]  References to the bankruptcy court docket are abbreviated as "Bk. Dkt. #."

31

USAO_0056823

with his bankruptcy proceeding. According to a transcript of that meeting filed in the bankruptcy proceeding, HANDEL testified that he has not had personal income since 2008. (Bk. Dkt. # 44-1, Exhibit 1, p. 15.) HANDEL testified that all of his personal expenses are paid through an S-corporation called DTMM Corp., which he described as his "wife's company," and DTMM Corp. is funded through loans from ███████ (HANDEL's brother) and ████████ (Bk. Dkt. # 44-1, Exhibit 1, pp. 12, 16.)[13] HANDEL further testified, "I consult and I facilitate any real estate transactions he [████ might need me on . . ." When asked if HANDEL gets paid for this consulting, HANDEL testified, "Well, I don't but ███ [█████ does loan DTMM plenty of money." In response to whether HANDEL represents ██ ██████ gratis, HANDEL testified, "Because he [████ continues to lend DTMM money, yeah. He [███████ sustains my wife and myself, you know, to be able to function. That's correct." (Bk. Dkt. # 44-1, Exhibit 1, p. 17.) "I consult on every single real estate deal that ████████ does and he probably has 35 ongoing real estate ventures right now." When asked, "All of these consultancies, you do for no pay at all, no remuneration, no interest, no nothing." HANDEL responded, "Not right now, that's correct and there's a specific reason for that . . . I'm a very generous guy." (Bk. Dkt. # 44-1, Exhibit 1, pp. 30-31.) According to the monthly operating reports filed in the bankruptcy proceeding, DTMM has distributed over $1.6 million

---

[13] HANDEL's wife, ████████ is employed by the Center for Surrogate Parenting as an administrative assistant and earns $960 per month. (Bk. Dkt. #1, p. 32.)

EX H-040

USAO_0056824

between April 2015 and September 2016, all of which appear to be on HANDEL's behalf for personal expenses. (Bk. Dkt. # 34, 41, 64, 70, 80, 89, 116-17, 124, 128, 131, 137-38, 154-56, 161.)

68. On or about August 19, 2016, HANDEL signed and filed the Disclosure Statement Describing Debtor's Second Amended Chapter 11 Plan of Reorganization, Dated August 19, 2016 ("Disclosure Statement"). (Bk. Dkt. # 147.) In the Disclosure Statement, HANDEL states that he "is currently unemployed and has been unemployed for years. However, until approximately 2008, the Debtor [HANDEL] had been engaged in the acquisition, development, and sale of commercial real property for over 28 years." (Bk. Dkt. # 147, p. 5.)

69. I have reviewed the emails recovered from the first search warrant. Between June 10, 2015 and December 15, 2015, approximately 500 emails sent or received by HANDEL relate to his involvement in real-estate development projects. In these emails, HANDEL, among other things, approves payment of invoices, discusses specifications with architects and designers, and pitches new projects. I believe these emails, some of which are set forth below, demonstrate HANDEL is acting in a management or owner capacity, not in a consultant capacity and he is trying to conceal his true role. In addition, these facts, when coupled with the so-called "loans" from ▮▮▮▮▮▮▮ shows that HANDEL is really paid for his work.

70. For instance, on June 15, 2015, an email from email address ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which I believe to be utilized by ▮▮▮▮▮▮▮ (accounting manager for ▮▮▮▮▮

USAO_0056825

Architects) was sent to ████████ in which ████████ reminds
████████ about an overdue invoice of $2,950.00 related to a real-
estate project. On June 24, 2015, ████████ sent ████████ email
to HANDEL, stating "Mark please approve." On the same day,
HANDEL responded "Approved" to ████████ and carbon copied
████████

71.   On June 23, 2015, HANDEL sent an email to
████████████████ an email address I believe to be utilized
by ████████████ (controller for Canyon Air Service, Inc.),
and carbon copied ████████ and ████████████ with the
subject "Re: Outstanding Invoice #01462." In that email, HANDEL
stated "██ the last very small invoice on ████ job. Please
pay! Thank you." In a subsequent email sent the same day to the
same recipients, HANDEL stated "██ please sent [sic] invoice
to the above email addresses."

72.   On June 29, 2015, HANDEL responded to an email from
email address ████████████ which I believe to be
utilized by ████████ (a designer at ████████████ Interiors),
who had emailed HANDEL to ask him "if you [HANDEL] received my
previous email and when we should be expecting payment." In his
response, HANDEL carbon copies ████████ and ████████ stating "I
did, and I employed my slow pay approach. Sorry! ████████ please
sen [sic] a check for 5k on account at your earliest
convenience. Thank you!"

73.   On August 22, 2015, an email from the email address
████████████ which I believe to be utilized by ████████ of

USAO_0056826

██████████ Development Co. was sent to HANDEL with the subject "dough to finish Customs," stating:

Money needed – San Juan Capistrano - $325k-350k

Money needed – Hidden Hills - $800k-850k

████████ [sic] Money into Mulholland (what I show) - $1,400,000.00

74.  It appears that HANDEL has an interest in a business with ██████████ which HANDEL has not disclosed in his bankruptcy filings.  On September 16, 2015, an email from the email address ████████████████ which I believe to be utilized by ██████████ was sent with the subject of "Re: Keyman Coverage" to ██████████████ which I believe to be associated with ███████████ ██████  In that email, ████████ stated "█████████ We have decided to hold off on the Key Man policy.  I will get back to you after we decide to move forward. As you can see, I'm copying one of my partners. Regards, ████████  The only person carbon copied on the email is HANDEL.

75.  I believe the emails described in this paragraph and the following paragraphs show that HANDEL is still actively working as a real estate developer and not just as an unpaid consultant.  In October 2015, HANDEL put in a bid on a new real-estate development project in Calabasas.  On October 15, 2015, an email from the email address ████████████████████ which I believe to be associated with ██████████████ was sent to HANDEL.  ████████ appears to work for an entity named Blue Marble Development that is starting a real-estate development in Calabasas.  In her email, ████████ wrote to HANDEL, among other

USAO_0056827

things, "Nice speaking with you about our Calabasas project of 78 townhomes and condos on Las Virgenes Road.         asked us to send you the plans so you can review them before you meet with him next week." On October 19, 2015, HANDEL sent an email to ▆▆ in which he said, among other things, "▆▆ thank you for the email, and the opportunity to bid this project. I'll forward you a project list of projects recently completed and projects under construction by our company."

76. On October 19, 2015, an email from the email address ▆▆▆▆ believed to be associated with ▆▆ ▆▆ another associate of HANDEL, sent HANDEL an email entitled "▆▆ Resume" that included a pdf attachment named Bstone Project book. The Bstone Project book contains ▆▆ resume, a list of project history, and current projects under development, including the following:

    10 Townhomes – Harbor City

    3 Hillside Homes – Echo Park

    4 Hillside Homes – Mulholland Corridor

    39 Homes SFD Condo's on Hillside – Lake View Terrace

77. On October 19, 2015, HANDEL forwarded the Bstone Project book to ▆▆ in an email with the subject "Handel/▆▆ project book."

78. In October 2015, HANDEL and ▆▆ attempted to obtain financing from Loan Oak Fund, LLC in connection with a real-estate development project called Peppertree. On October 7, 2015, ▆▆▆▆ forwarded an email that ▆▆ had sent to email address ▆▆▆▆ which I believe

USAO_0056828

to be utilized by with ████████████ an employee of Lone Oak
Funding, LLC, in which ██████████ was providing information to
██████████ on the Peppertree project. In response, HANDEL told
██████████ "Well done, and remember do not CC me on any emails
to anyone. Just forward me emails that have been sent. Thank
you so much." I believe this email demonstrates that HANDEL
makes efforts to conceal his involvement and/or interest in real
estate development projects.

79. On December 2, 2015, an email from the email address
██████████████████ which I believe to be utilized by ██████
██████ Associates (an electrical engineering consulting
company) was sent to ██████████ stating "PLEASE SEE ATTACHMENTS.
██████ would like a status on payment please. We are still
waiting for payment." On the same day, ████████████ responded to
this email and carbon copied HANDEL, stating "This is not mine.
This is mark handels [sic] project, who I cc'd. Thank you."
Attached to the email were two invoices in the amount of
$3,219.50 and $83.36. I believe these emails illustrate that
HANDEL is continuing his real-estate business.

80. HANDEL also uses the SUBJECT ACCOUNT to direct ██████████
to pay HANDEL's personal expenses. For example, on July 7,
2015, HANDEL sent an email to ████████████████ an email address
I believe to be utilized by ██████████ and ██████████████████ an
email address I believe to be utilized by ██████████████
(██████████ personal assistant), with the subject line "Cigars."
In that email, HANDEL states, "██████ please mail a check to
██████████ for $2500.00. Thank you. Let me know when it goes, and

USAO_0056829

I believe you know the drill. Address it only to the cigar
store! No other name on the envelope. Thx!" On July 8, 2015,
███████ responded, "The check is in the mail." A review of the
bank account of Investor Capital Group shows that ███████ signed
a check on July 8, 2015 in the amount of $2,500.00, made out to
███████ ███████████████. Additionally, on
November 6, 2015, HANDEL forwarded an invoice in the amount of
$160 AUD (Australian Dollars) from Lost Histories to email
address ████████████ which is I believe to be utilized by
███████████, an employee with ████████ accounting firm,
██████ ██████ ████████ The invoice related to an effort by
HANDEL's daughter to claim Polish citizenship for her
grandfather. In the email, HANDEL states: "██████, Kindly pay
this invoice. Not certain what the exchange rate is, but feel
free to contact ███████████ by email to discuss. As always
. . . Thnx!!!!!!" I believe these email exchanges also
demonstrate that HANDEL is likely to use the SUBJECT ACCOUNT to
discuss or direct the payment of personal bills.

> 11. HANDEL USES THE SUBJECT ACCOUNT TO DISCUSS
> PAYMENTS OF LIABILITIES THAT HANDEL INTENTIONALLY
> OMITTED FROM HIS BANKRUPTCY FILINGS

81. On or about July 2, 2015, HANDEL sent an email to
email address ████████████ which I believe to be associated
with ████████████, in which HANDEL stated as follows:

> ████, you know I filed a personal bankruptcy, correct?
> I'll send you the link for your perusal. I purposely
> did not put you down as a creditor, because I don't
> consider this a business debt. I do have a couple of
> very adversarial creditors among the 99 million in
> debt holders that are making things very difficult for
> me in terms any spending that I do. I hope that you
> realize that my intentions were and are morally sound,

USAO_0056830

as I agreed to a sum, and have already paid a modicum of that money. I realize that I haven't met my time commitments, but when I send you the BK link, I'm sure you'll realize that my situation is fluid, and obviously quickly deteriorated out of my control. You need to be patient and hopefully appreciate that I will fulfill my commitments. I'm hopeful you'll be sanguine about this, but if not, there is not much I can do about it right now.

## V. PRESERVATION LETTERS AND PRIOR ATTEMPTS TO OBTAIN CONTENTS

82. On approximately July 30, 2015, October 18, 2015, and November 21, 2016, I sent the PROVIDER preservation letters requesting that information associated with the SUBJECT ACCOUNT be preserved for 90 days pursuant to 18 U.S.C. § 2703(f).

83. Other than the search warrant issued on December 11, 2015 and what has been described in this Affidavit, to my knowledge the United States has not attempted to obtain the contents of the SUBJECT ACCOUNT by other means.

## VI. BACKGROUND ON E-MAIL AND SOCIAL MEDIA ACCOUNTS AND THE PROVIDER

84. In my training and experience, I have learned that providers of e-mail and/or social media services offer a variety of online services to the public. Providers, like the PROVIDER, allow subscribers to obtain accounts like the SUBJECT ACCOUNT. Subscribers obtain an account by registering with the provider. During the registration process, providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail or social media account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of

USAO_0056831

payment (including any credit or bank account number). Some
providers also maintain a record of changes that are made to the
information provided in subscriber records, such as to any other
e-mail addresses or phone numbers supplied in subscriber
records. In my training and experience, such information may
constitute evidence of the crimes under investigation because
the information can be used to identify the user(s) of a SUBJECT
ACCOUNT.

85. Therefore, the computers of the PROVIDER are likely to
contain stored electronic communications and information
concerning subscribers and their use of the PROVIDER's services,
such as account access information, e-mail or message
transaction information, and account application information.
In my training and experience, such information may constitute
evidence of the crimes under investigation because the
information can be used to identify the user(s) of a SUBJECT
ACCOUNT.

86. In my training and experience, e-mail and social media
providers typically retain certain transactional information
about the creation and use of each account on their systems.
This information can include the date on which the account was
created, the length of service, records of login (i.e., session)
times and durations, the types of service utilized, the status
of the account (including whether the account is inactive or
closed), the methods used to connect to the account (such as
logging into the account via the provider's website), and other
log files that reflect usage of the account. In addition, e-

USAO_0056832

mail and social media providers often have records of the
Internet Protocol ("IP") address used to register the account
and the IP addresses associated with particular logins to the
account. Because every device that connects to the Internet
must use an IP address, IP address information can help to
identify which computers or other devices were used to access a
SUBJECT ACCOUNT.

87. In my training and experience, e-mail and social media
account users will sometimes communicate directly with the
service provider about issues relating to the account, such as
technical problems, billing inquiries, or complaints from other
users. Providers of e-mails and social media services typically
retain records about such communications, including records of
contacts between the user and the provider's support services,
as well records of any actions taken by the provider or user as
a result of the communications. In my training and experience,
such information may constitute evidence of the crimes under
investigation because the information can be used to identify
the user(s) of a SUBJECT ACCOUNT.

88. I know from my training and experience that the
complete contents of an account may be important to establishing
the actual user who has dominion and control of that account at
a given time. Accounts may be registered in false names or
screen names from anywhere in the world with little to no
verification by the service provider. They may also be used by
multiple people. Given the ease with which accounts may be
created under aliases, and the rarity with which law enforcement

USAO_0056833

has eyewitness testimony about a defendant's use of an account, investigators often have to rely on circumstantial evidence to show that an individual was the actual user of a particular account. Only by piecing together information contained in the contents of an account may an investigator establish who the actual user of an account was. Often those pieces will come from a time period before the account was used in the criminal activity. Limiting the scope of the search would, in some instances, prevent the government from identifying the true user of the account and, in other instances, may not provide a defendant with sufficient information to identify other users of the account. Therefore, the contents of a given account, including the e-mail addresses or account identifiers and messages sent to that account, often provides important evidence regarding the actual user's dominion and control of that account. For the purpose of searching for content demonstrating the actual user(s) of a SUBJECT ACCOUNT, I am requesting a warrant requiring the PROVIDER to turn over all information associated with a SUBJECT ACCOUNT with the date restriction included in Attachment B for review by the search team.

89. Relatedly, the government must be allowed to determine whether other individuals had access to a SUBJECT ACCOUNT. If the government were constrained to review only a small subsection of an account, that small subsection might give the misleading impression that only a single user had access to the account.

USAO_0056834

90.  I also know based on my training and experience that criminals discussing their criminal activity may use slang, short forms (abbreviated words or phrases such as "lol" to express "laugh out loud"), or code words (which require entire strings or series of conversations to determine their true meaning) when discussing their crimes.  They can also discuss aspects of the crime without specifically mentioning the crime involved.  In the electronic world, it is even possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of a message or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and paren :) to convey a smile or agreement) to discuss matters. "Keyword searches" would not account for any of these possibilities, so actual review of the contents of an account by law enforcement personnel with information regarding the identified criminal activity, subject to the search procedures set forth in Attachment B, is necessary to find all relevant evidence within the account.

91.  This application seeks a warrant to search all responsive records and information under the control of the PROVIDER, which is subject to the jurisdiction of this court, regardless of where the PROVIDER has chosen to store such information.

92.  As set forth in Attachment B, I am requesting a warrant that permits the search team to keep the original production from the PROVIDER under seal until the investigation

USAO_0056835

is completed and, if a case is brought, that case is completed through disposition, trial, appeal, or collateral proceeding.

a. I make that request because I believe it might be impossible for the PROVIDER to authenticate information taken from a SUBJECT ACCOUNT as its business record without the original production to examine. Even if the PROVIDER kept an original copy at the time of production (against which it could compare against the results of the search at the time of trial), the government cannot compel the PROVIDER to keep a copy for the entire pendency of the investigation and/or case. If the original production is destroyed, it may be impossible for the PROVIDER to examine a particular document found by the search team and confirm that it was a business record of the PROVIDER's taken from a SUBJECT ACCOUNT.

b. I also know from my training and experience that many accounts are purged as part of the ordinary course of business by providers. For example, if an account is not accessed within a specified time period, it -- and its contents -- may be deleted. As a consequence, there is a risk that the only record of the contents of an account might be the production that a provider makes to the government, for example, if a defendant is incarcerated and does not (perhaps cannot) access his or her account. Preserving evidence, therefore, would ensure that the government can satisfy its Brady obligations and give the defendant access to evidence that might be used in his or her defense.

USAO_0056836

## VII. REQUEST FOR NON-DISCLOSURE

93.  Pursuant to 18 U.S.C. § 2705(b), I request that the Court enter an order commanding the PROVIDER not to notify any person, including the subscriber(s) of the SUBJECT ACCOUNT, of the existence of the warrant because there is reason to believe that such notification will (1) result in the destruction of or tampering with evidence; (2) result in intimidation of or tampering with potential witnesses; or (3) otherwise seriously jeopardize the investigation.  The current investigation set forth above is not public and is based, in part, on confidential reporting by a cooperating witness and on court ordered wiretaps that are currently under seal.  Further, the investigation has shown that ▮▮▮▮▮▮ ▮▮▮▮▮▮ ▮▮▮▮▮ and HANDEL have surrounded themselves with loyal people who are witnesses to the offenses.  Based on my training and experience, I believe ▮▮▮▮▮▮ ▮▮▮▮▮▮ ▮▮▮▮▮ HANDEL, ▮▮▮▮▮ and/or their associates are likely to tamper with the investigation if they receive notice of the search warrants.

USAO_0056837

VIII.    CONCLUSION

94.    Based on the foregoing, I request that the Court issue the requested search warrant.

_/s/_

Jonathan McDonald
Special Agent
Federal Bureau of Investigation

Subscribed to and sworn before me on January 13, 2017.

**JEAN P. ROSENBLUTH**

HONORABLE JEAN ROSENBLUTH
UNITED STATES MAGISTRATE JUDGE

USAO_0056838

# EXHIBIT K:
Original Bankruptcy Petition,
Dated 4/14/15

B1 (Official Form 1)(04/13)

| **United States Bankruptcy Court**<br>**Central District of California** | **Voluntary Petition** |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Handel, Mark** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all)<br>**xxx-xx-5897** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State):<br>**23575 Parksouth St.**<br>**Calabasas, CA**<br>ZIP Code **91302** | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP Code |
| County of Residence or of the Principal Place of Business:<br>**Los Angeles** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP Code | Mailing Address of Joint Debtor (if different from street address):<br>ZIP Code |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

| **Type of Debtor**<br>(Form of Organization) (Check one box)<br><br>■ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities,<br>check this box and state type of entity below.) | **Nature of Business**<br>(Check one box)<br><br>☐ Health Care Business<br>☐ Single Asset Real Estate as defined<br>in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>■ Other | **Chapter of Bankruptcy Code Under Which**<br>**the Petition is Filed** (Check one box)<br><br>☐ Chapter 7<br>☐ Chapter 9<br>■ Chapter 11<br>☐ Chapter 12<br>☐ Chapter 13<br><br>☐ Chapter 15 Petition for Recognition<br>of a Foreign Main Proceeding<br>☐ Chapter 15 Petition for Recognition<br>of a Foreign Nonmain Proceeding |
|---|---|---|
| **Chapter 15 Debtors**<br>Country of debtor's center of main interests:<br><br>Each country in which a foreign proceeding<br>by, regarding, or against debtor is pending: | **Tax-Exempt Entity**<br>(Check box, if applicable)<br>☐ Debtor is a tax-exempt organization<br>under Title 26 of the United States<br>Code (the Internal Revenue Code). | **Nature of Debts**<br>(Check one box)<br>☐ Debts are primarily consumer debts, ■ Debts are primarily<br>defined in 11 U.S.C. § 101(8) as business debts.<br>"incurred by an individual primarily for<br>a personal, family, or household purpose." |

| **Filing Fee** (Check one box)<br><br>■ Full Filing Fee attached<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must<br>attach signed application for the court's consideration certifying that the<br>debtor is unable to pay fee except in installments. Rule 1006(b). See Official<br>Form 3A.<br><br>☐ Filing fee waiver requested (applicable to chapter 7 individuals only). Must<br>attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>■ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates)<br>are less than $2,490,925 *(amount subject to adjustment on 4/01/16 and every three years thereafter).*<br><br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors,<br>in accordance with 11 U.S.C. § 1126(b). | **Chapter 11 Debtors** |
|---|---|---|

**Statistical/Administrative Information** | THIS SPACE IS FOR COURT USE ONLY

☐ Debtor estimates that funds will be available for distribution to unsecured creditors.
■ Debtor estimates that, after any exempt property is excluded and administrative expenses paid,
there will be no funds available for distribution to unsecured creditors.

Estimated Number of Creditors

| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-<br>49 | 50-<br>99 | 100-<br>199 | 200-<br>999 | 1,000-<br>5,000 | 5,001-<br>10,000 | 10,001-<br>25,000 | 25,001-<br>50,000 | 50,001-<br>100,000 | OVER<br>100,000 |

Estimated Assets

| ☐ | ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

Estimated Liabilities

| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

EX K-001

| B1 (Official Form 1)(04/13) | | Page 2 |
|---|---|---|
| **Voluntary Petition** | Name of Debtor(s): **Handel, Mark** | |
| *(This page must be completed and filed in every case)* | | |

| All Prior Bankruptcy Cases Filed Within Last 8 Years (If more than two, attach additional sheet) | | |
|---|---|---|
| Location Where Filed: **- None -** | Case Number: | Date Filed: |
| Location Where Filed: | Case Number: | Date Filed: |

| Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor: **- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| | (To be completed if debtor is an individual whose debts are primarily consumer debts.) |
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) | I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b). |
| ☐ Exhibit A is attached and made a part of this petition. | **X** _____ <br> Signature of Attorney for Debtor(s)          (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

■ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

■ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**

(Check any applicable box)

■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**

(Check all applicable boxes)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.                                          EX K-002

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

B1 (Official Form 1)(04/13)                                                                                                    **Page 3**

| **Voluntary Petition** | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | **Handel, Mark** |

<table>
<tr><td colspan="2" align="center">**Signatures**</td></tr>
<tr>
<td width="50%">

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7. [If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____

Signature of Debtor **Mark Handel**

X _____

Signature of Joint Debtor

Telephone Number (If not represented by attorney)

**4 - 13 - 15**
Date

X _____
**Signature of Attorney***

Signature of Attorney for Debtor(s)

**David L. Neale 141225**
Printed Name of Attorney for Debtor(s)

**Levene, Neale, Bender, Yoo & Brill LLP**
Firm Name

**10250 Constellation Blvd.
Suite 1700
Los Angeles, CA 90067**

Address

**(310) 229-1234**
Telephone Number

**4 - 14 - 15**        **141225**
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

</td>
<td width="50%">

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11. United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____

Signature of Foreign Representative

_____

Printed Name of Foreign Representative

_____

Date

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____

Printed Name and title, if any, of Bankruptcy Petition Preparer

_____

Social-Security number (If the bankrutpcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____

Address

X _____

_____

Date

Signature of bankruptcy petition preparer or officer, principal, responsible person,or partner whose Social Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. §110; 18 U.S.C. §156.*

</td>
</tr>
<tr>
<td>

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____

Signature of Authorized Individual

_____

Printed Name of Authorized Individual

_____

Title of Authorized Individual

_____

Date

</td>
<td></td>
</tr>
</table>

EX K-003

Case: 24-6972 11/18/2024 DktEntry: 2.1 Page 131 of 368

B 1D (Official Form 1, Exhibit D) (12/09)

## United States Bankruptcy Court
### Central District of California

In re  **Mark Handel**                                      Case No. _____

                                   Debtor(s)      Chapter   **11**   _____

### EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

■ 1. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

□ 2. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 14 days after your bankruptcy case is filed.*

□ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the seven days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Summarize exigent circumstances here.]* ___

**If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency. Failure to fulfill these requirements may result in dismissal of your case. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.**

□ 4. I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.] [Must be accompanied by a motion for determination by the court.]*

EX K-004

B 1D (Official Form 1, Exhibit D) (12/09) - Cont. Page 2

    ☐ Incapacity. (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);

    ☐ Disability. (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);

    ☐ Active military duty in a military combat zone.

    ☐ 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

        Signature of Debtor: _____

                                **Mark Handel**

        Date: _____9 - 13 - 15_____

EX K-005

Certificate Number: 14751-CAC-CC-025357289



14751-CAC-CC-025357289

# CERTIFICATE OF COUNSELING

I CERTIFY that on <u>April 6, 2015</u>, at <u>2:24</u> o'clock <u>PM PDT</u>, <u>Mark Handel</u> received from <u>$0$ BK Class Inc.</u>, an agency approved pursuant to 11 U.S.C. § 111 to provide credit counseling in the <u>Central District of California</u>, an individual [or group] briefing that complied with the provisions of 11 U.S.C. §§ 109(h) and 111.

A debt repayment plan <u>was not prepared</u>. If a debt repayment plan was prepared, a copy of the debt repayment plan is attached to this certificate.

This counseling session was conducted <u>by internet</u>.

Date:  <u>April 13, 2015</u>           By:   <u>/s/AMEY AIONO</u>

                                  Name:  <u>AMEY AIONO</u>

                                  Title:  <u>Certified Credit Counselor</u>

* Individuals who wish to file a bankruptcy case under title 11 of the United States Bankruptcy Code are required to file with the United States Bankruptcy Court a completed certificate of counseling from the nonprofit budget and credit counseling agency that provided the individual the counseling services and a copy of the debt repayment plan, if any, developed through the credit counseling agency. *See* 11 U.S.C. §§ 109(h) and 521(b).

EX K-006

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
## Central District of California

In re    **Mark Handel**                                                                Case No.

Debtor(s)                              Chapter    **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or* chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | *Amount of claim [if secured, also state value of security]* |
| **Jack Benadon (Weyerhauser)** 3500 W. Olive Avenue #1190 Burbank, CA 91505 | **Jack Benadon (Weyerhauser)** 3500 W. Olive Avenue #1190 Burbank, CA 91505 818-973-4500 | **23575 Parksouth St., Calabassas, CA 91302 Principal residence title vested in Handel Family Trust, dated March 21, 2005** | | **25,276,287.00 (3,200,000.00 secured) (6,019,619.60 senior lien)** |
| **Jack Benadon (Appian Group)** 3500 W. Olive Avenue #1190 Burbank, CA 91505 | **Jack Benadon (Appian Group)** 3500 W. Olive Avenue #1190 Burbank, CA 91505 818-973-4500 | **Resolved by Judgment** | | **24,711,940.00** |
| **Comerica Bank** 2321 Rosecrans Ave., Suite 5000 El Segundo, CA 90245 | **Comerica Bank** 2321 Rosecrans Ave., Suite 5000 Los Angeles, CA 90071 (310) 297-2200 | | | **8,288,295.00** |
| **Comerica Bank** 2321 Rosecrans Ave., Suite 5000 El Segundo, CA 90245 | **Comerica Bank** 2321 Rosecrans Ave., Suite 5000 El Segundo, CA 90245 (310) 297-2200 | | | **8,065,660.00** |
| **Comerica Bank** 2321 Rosecrans Ave., Suite 5000 El Segundo, CA 90245 | **Comerica Bank** 2321 Rosecrans Ave., Suite 5000 El Segundo, CA 90245 (310) 297-2200 | | | **6,892,065.00** |
| **California Bank and Trust** c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017 | **California Bank and Trust** c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017 (213) 891-0700 | | **Disputed** | **4,665,338.00** |
| **Comerica Bank** 2321 Rosecrans Ave., Suite 5000 El Segundo, CA 90245 | **Comerica Bank** 2321 Rosecrans Ave., Suite 5000 El Segundo, CA 90245 (310) 297-2200 | | | **3,599,927.00** |

EX R-007

B4 (Official Form 4) (12/07) - Cont.

In re   **Mark Handel**                                 Case No.

Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | *Amount of claim [if secured, also state value of security]* |
| **California Bank and Trust c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017** | **California Bank and Trust c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017 (213) 891-0700** | **279 Vicorian Village Dr. #44, Elkhart Lake, Wisconson 4-bedroom condo title vested in Sarah J. Lulloff and Mark Handel, and assigned, transferred an** | **Disputed** | **3,276,599.00 (525,000.00 secured) (344,216.46 senior lien)** |
| **Bank of the West (Indy Mac) P.O. Box 615274 Los Angeles, CA 90051** | **Bank of the West (Indy Mac) P.O. Box 615274 Los Angeles, CA 90051 (310) 208-4111** | | | **2,851,887.00** |
| **Jack Benadon (Indy Mac) 3500 W. Olive Avenue #1190 Burbank, CA 91505** | **Jack Benadon (Indy Mac) 3500 W. Olive Avenue #1190 Burbank, CA 91505 818-973-4500** | **Resolved by Judgment** | | **2,781,239.00** |
| **California Bank and Trust c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017** | **California Bank and Trust c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017 (213) 891-0700** | | **Disputed** | **2,157,658.00** |
| **Jack Benadon (Korogluyan) 3500 W. Olive Avenue #1190 Burbank, CA 91505** | **Jack Benadon (Korogluyan) 3500 W. Olive Avenue #1190 Burbank, CA 91505 818-973-4500** | **23575 Parksouth St., Calabassas, CA 91302 Principal residence title vested in Handel Family Trust, dated March 21, 2005** | | **2,000,000.00 (3,200,000.00 secured) (4,019,619.60 senior lien)** |
| **Jack Benadon (Korogluyan) 3500 W. Olive Avenue #1190 Burbank, CA 91505** | **Jack Benadon (Korogluyan) 3500 W. Olive Avenue #1190 Burbank, CA 91505 818-973-4500** | **23575 Parksouth St., Calabassas, CA 91302 Principal residence title vested in Handel Family Trust, dated March 21, 2005** | | **600,000.00 (3,200,000.00 secured) (3,171,316.04 senior lien)** |
| **Sunnyside Development c/o Robert A. Sall Law Firm 32351 Coast Highway Laguna Beach, CA 92651** | **Sunnyside Development c/o Robert A. Sall Law Firm 32351 Coast Highway Laguna Beach, CA 92651 (949) 499-2942** | **23575 Parksouth St., Calabassas, CA 91302 Principal residence title vested in Handel Family Trust, dated March 21, 2005** | | **248,303.56 (3,200,000.00 secured) (3,771,316.04 senior lien)** |

**B4 (Official Form 4) (12/07) - Cont.**

In re    **Mark Handel**                                                              Case No. _____
                                Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| **Adler Law, APC**<br>**24007 Ventura Blvd. Suite 270**<br>**Calabasas, CA 91302** | **Adler Law, APC**<br>**24007 Ventura Blvd. Suite 270**<br>**Calabasas, CA 91302**<br>**818-968-5562** | **legal fees and costs** | | **7,448.00** |
| **Bendadon, Shapiro, Villalobos**<br>**3500 W. Olive Avenue, #1190**<br>**Burbank, CA 91505** | **Bendadon, Shapiro, Villalobos**<br>**3500 W. Olive Avenue, #1190**<br>**Burbank, CA 91505**<br>**(818) 973-4500** | | | **2,975.00** |
| **Farmers Insurance**<br>**7524 Southby Dr.**<br>**attn: Fred Yeger**<br>**Canoga Park, CA 91304** | **Farmers Insurance**<br>**7524 Southby Dr.**<br>**attn: Fred Yeger**<br>**Canoga Park, CA 91304** | | | **1,311.18** |
| **Los Virgenes Water District**<br>**4232 Las Virgenes Rd.**<br>**Calabasas, CA 91302** | **Los Virgenes Water District**<br>**4232 Las Virgenes Rd.**<br>**Calabasas, CA 91302**<br>**(818) 251-2100** | | | **817.97** |
| **AT&T**<br>**PO Box 537104**<br>**Atlanta, GA 30353** | **AT&T**<br>**PO Box 537104**<br>**Atlanta, GA 30353**<br>**888-826-0132** | | | **540.62** |
| **Waste Management**<br>**PO Box 541008**<br>**Los Angeles, CA 90054** | **Waste Management**<br>**PO Box 541008**<br>**Los Angeles, CA 90054**<br>**(213) 634-3113** | | | **121.90** |

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, **Mark Handel**, the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date    4 - 13 - 15                    Signature    _____
                                                        **Mark Handel**
                                                        Debtor

*Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

EX K-009

## United States Bankruptcy Court
### Central District of California

In re    **Mark Handel**

Debtor

Case No. _____

Chapter_____    **11**

# LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with Rule 1007(a)(3) for filing in this chapter 11 case.

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| **None** | | | |

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date____4 . 13 . 15_____        Signature_____

**Mark Handel**

Debtor

*Penalty for making a false statement or concealing property*:    Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C §§ 152 and 3571.

**0**___ continuation sheets attached to List of Equity Security Holders

EX K-010

# STATEMENT OF RELATED CASES
## INFORMATION REQUIRED BY LBR 1015-2
## UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA

1. A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, his/her spouse, his or her current or former domestic partner, an affiliate of the debtor, any copartnership or joint venture of which debtor is or formerly was a general or limited partner, or member, or any corporation of which the debtor is a director, officer, or person in control, as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature thereof, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

**None**

2. (If petitioner is a partnership or joint venture) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor or an affiliate of the debtor, or a general partner in the debtor, a relative of the general partner, general partner of, or person in control of the debtor, partnership in which the debtor is a general partner, general partner of the debtor, or person in control of the debtor as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature of the proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

**None**

3. (If petitioner is a corporation) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, or any of its affiliates or subsidiaries, a director of the debtor, an officer of the debtor, a person in control of the debtor, a partnership in which the debtor is general partner, a general partner of the debtor, a relative of the general partner, director, officer, or person in control of the debtor, or any persons, firms or corporations owning 20% or more of its voting stock as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

**None**

4. (If petitioner is an individual) A petition under the Bankruptcy Reform Act of 1978, including amendments thereof, has been filed by or against the debtor within the last 180 days: (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

**None**

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed at _____Los Angeles_____ , California.

Date: _____4 - 13 - 15_____

**Mark Handel**
Signature of Debtor

Signature of Joint Debtor

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*  Page 1  **F 1015-2.1.STMT.RELATED.CASES**

B6 Summary (Official Form 6 - Summary) (12/14)

# United States Bankruptcy Court
## Central District of California

In re    **Mark Handel**

Debtor

Case No. _____

Chapter_____**11**_____

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 3,725,000.00 | | |
| B - Personal Property | Yes | 4 | 20,000.00 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 3 | | 34,916,722.06 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 2 | | 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 5 | | 64,027,463.72 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 2 | | | 4,417.92 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 2 | | | 3,000.00 |
| Total Number of Sheets of ALL Schedules | | 22 | | | |
| | | Total Assets | 3,745,000.00 | | |
| | | Total Liabilities | | 98,944,185.78 | |

EX K-012

B 6 Summary (Official Form 6 - Summary) (12/14)

# United States Bankruptcy Court
## Central District of California

In re  **Mark Handel**

Debtor

Case No. _____

Chapter_____  **11**

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C.§ 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

■ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | |
| Student Loan Obligations (from Schedule F) | |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | |
| TOTAL | |

**State the following:**

| | |
|---|---|
| Average Income (from Schedule I, Line 12) | |
| Average Expenses (from Schedule J, Line 22) | |
| Current Monthly Income (from Form 22A-1 Line 11; OR, Form 22B Line 14; OR, Form 22C-1 Line 14 ) | |

**State the following:**

| | | |
|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column | | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | |
| 4. Total from Schedule F | | |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | |

**EX K-013**

B6A (Official Form 6A) (12/07)

In re **Mark Handel** Case No. _____

_____
Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| 23575 Parksouth St., Calabassas, CA 91302 **Principal residence** title vested in Handel Family Trust, dated March 21, 2005 | Fee simple | - | 3,200,000.00 | 31,295,906.60 |
| 279 Vicorian Village Dr. #44, Elkhart Lake, Wisconson **4-bedroom condo** title vested in Sarah J. Lulloff and Mark Handel, and assigned, transferred and set over to Handel Family Trust, dated March 21, 2005 | Fee simple | - | 525,000.00 | 3,620,815.46 |

| | | |
|---|---|---|
| Sub-Total > | 3,725,000.00 | (Total of this page) |
| Total > | 3,725,000.00 | |
| | | (Report also on Summary of Schedules) |

<span style="color:red">EX K-014</span>

__0__ continuation sheets attached to the Schedule of Real Property

B6B (Official Form 6B) (12/07)

In re    **Mark Handel**                                              Case No. _____
                                        ,
                              Debtor

## SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."
If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1. Cash on hand | | **Cash on hand $3000** | - | **3,000.00** |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | X | | | |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | **Household goods** | - | **7,000.00** |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | | **Art** | - | **3,000.00** |
| 6. Wearing apparel. | X | | | |
| 7. Furs and jewelry. | | **Jewelry** | - | **2,000.00** |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | **Lincoln Benefit Life - Term Life Insurance Policy - No Value ($5 million if pays out)** | - | **0.00** |
| 10. Annuities. Itemize and name each issuer. | X | | | |

Sub-Total >    **15,000.00**
(Total of this page)

**3**  continuation sheets attached to the Schedule of Personal Property

EX K-015

B6B (Official Form 6B) (12/07) - Cont.

In re  **Mark Handel**                                          Case No. _____
                              Debtor                    ,

## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | | **Allstar Growth Fund LLC**<br>**0.138492% ownership** | - | **0.00** |
| 14. Interests in partnerships or joint ventures. Itemize. | | **MSB Killion Partners, LP**<br>**Limited Partnership**<br>**Tax ID #20-3746776**<br>**Beginning date: 11-5-05** | - | **0.00** |
| | | Limited Partner: Mark Handel, as trustee of The Handel Family Trust dated March 21, 2005 33% | | |
| | | **MSB Bloomfield Partners, LP**<br>**Tax ID #20-3587404**<br>**Beginning date:   9-30-05** | - | **0.00** |
| | | Limited Partner: Mark Handel, as trustee of The Handel Family Trust dated March 21, 2005 33% | | |
| | | **MB Valley Partners**<br>**Partnership**<br>**Tax ID #20-3587319**<br>**Beginning date:   10-1-05** | - | **0.00** |
| | | Limited Partner: Mark Handel, as trustee of The Handel Family Trust dated March 21, 2005 50% | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |

Sub-Total >       **0.00**
(Total of this page)

Sheet __1__ of __3__ continuation sheets attached
to the Schedule of Personal Property

EX K-016

B6B (Official Form 6B) (12/07) - Cont.

In re    **Mark Handel**                                            Case No. _____
                                                                                      Debtor

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | | See #9 regarding life insurance policy | - | 0.00 |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **Cross claims against State Farm General Inc. Co. in lawsuit, State Farm General Inc. Co. v. MWH Development Corp. et al., LC100714** | - | Unknown |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | **2003 Mercedez** | - | 5,000.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |

Sub-Total >    **5,000.00**
(Total of this page)

Sheet __2__ of __3__ continuation sheets attached
to the Schedule of Personal Property

<span style="color:red">EX K-017</span>

B6B (Official Form 6B) (12/07) - Cont.

In re **Mark Handel**                                                      Case No. _____

_____,
                            Debtor

## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

Sheet __3__ of __3__ continuation sheets attached
to the Schedule of Personal Property

|  |  |
|---|---|
| Sub-Total > | **0.00** |
| (Total of this page) | |
| Total > | **20,000.00** |
| | EX K-018 |
| | (Report also on Summary of Schedules) |

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

B6C (Official Form 6C) (04/13)

In re __Mark Handel__ _____ Case No. _____

Debtor(s)

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:
(Check one box)
☐ 11 U.S.C. §522(b)(2)
☒ 11 U.S.C. §522(b)(3)

☐ Check if debtor claims a homestead exemption that exceeds $155,675.*

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Real Property** | | | |
| **23575 Parksouth St., Calabassas, CA 91302**<br>**Principal residence**<br>**title vested in Handel Family Trust, dated March 21, 2005** | **C.C.P. § 704.730** | **Up to $175,000 if funds are available** | **3,200,000.00** |
| **Household Goods and Furnishings** | | | |
| **Household goods** | **C.C.P. § 704.020** | **7,000.00** | **7,000.00** |
| **Interests in Insurance Policies** | | | |
| **Lincoln Benefit Life - Term Life Insurance Policy - No Value ($5 million if pays out)** | **C.C.P. § 704.100** | **100% of benefits payable upon death; currently $0** | **Contingent** |
| **Automobiles, Trucks, Trailers, and Other Vehicles** | | | |
| **2003 Mercedez** | **C.C.P. § 704.010** | **2,900.00** | **5,000.00** |
| **Other Property** | | | |
| **Any vested or contingent interests in pensions and retirement plans that the Debtor now has or may ever have** | **C.C.P. § 704.110** | **unknown, depending on market performance** | **Unknown** |
| **Jewelry and Art** | **C.C.P. § 704.040** | **7,625.00** | **5,000.00** |
| Total: | | **17,525.00** | **3,217,000.00** |

*Amount subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

Schedule of Property Claimed as Exempt consists of 1 total page(s)

EX K-019

Software Copyright (c) 1996-2014 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

B6D (Official Form 6D) (12/07)

In re **Mark Handel** Case No. _____

Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J/C | | | | | | |
| Account No. **Bruce Tolchin** c/o Onyx capital corp 11777 San Vicente Blvd. suite 640 Los Angeles, CA 90049 | | | | | Deed of Trust<br><br>23575 Parksouth St., Calabassas, CA 91302<br>**Principal residence**<br>title vested in Handel Family Trust, dated March 21, 2005 | | | | | |
| | | | | | Value $ 3,200,000.00 | | | | 393,267.13 | 0.00 |
| Account No. **California Bank and Trust** c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017 | | | | | 1/27/2015<br>**Judgment Lien**<br>279 Vicorian Village Dr. #44, Elkhart Lake, Wisconson<br>4-bedroom condo<br>title vested in Sarah J. Lulloff and Mark Handel, and assigned, transferred and set over to Handel Family Trust, dated | | | X | | |
| | | | | | Value $ 525,000.00 | | | | 3,276,599.00 | 3,276,599.00 |
| Account No. **683104913 (Formerly WAMU)** **Chase Paymentech** PO Box 78420 Phoenix, AZ 85062 | | | | | Deed of Trust<br><br>23575 Parksouth St., Calabassas, CA 91302<br>**Principal residence**<br>title vested in Handel Family Trust, dated March 21, 2005 | | | | | |
| | | | | | Value $ 3,200,000.00 | | | | 1,532,700.42 | 0.00 |
| Account No. **Notice Purposes Only** **De Lage Landen Financial Services** 111 Old Eagle School Rd. Wayne, PA 19087 | | | | | | | | X | | |
| | | | | | Value $ 0.00 | | | | 0.00 | 0.00 |

**2** continuation sheets attached

Subtotal
(Total of this page) | 5,202,566.55 | 3,276,599.00

EX K-020

B6D (Official Form 6D) (12/07) - Cont.

In re    **Mark Handel**                                                    Case No. _____

                            Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | Husband, Wife, Joint, or Community<br>DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. | | | **Deed of Trust** | | | | | |
| Jack Benadon (Korogluyan)<br>3500 W. Olive Avenue #1190<br>Burbank, CA 91505 | | | **23575 Parksouth St., Calabassas, CA 91302**<br>**Principal residence**<br>title vested in Handel Family Trust, dated March 21, 2005 | | | | | |
| | | | Value $ 3,200,000.00 | | | | 600,000.00 | 571,316.04 |
| Account No. | | | **Abstract of Judgment** | | | | | |
| Jack Benadon (Korogluyan)<br>3500 W. Olive Avenue #1190<br>Burbank, CA 91505 | | | **23575 Parksouth St., Calabassas, CA 91302**<br>**Principal residence**<br>title vested in Handel Family Trust, dated March 21, 2005 | | | | | |
| | | | Value $ 3,200,000.00 | | | | 2,000,000.00 | 2,000,000.00 |
| Account No. | | | **Deed of Trust** | | | | | |
| Jack Benadon (M Ghosn)<br>3500 W. Olive Avenue #1190<br>Burbank, CA 91505 | | | **23575 Parksouth St., Calabassas, CA 91302**<br>**Principal residence**<br>title vested in Handel Family Trust, dated March 21, 2005 | | | | | |
| | | | Value $ 3,200,000.00 | | | | 1,245,348.49 | 0.00 |
| Account No. | | | **Abstract of Judgment** | | | | | |
| Jack Benadon (Weyerhauser)<br>3500 W. Olive Avenue #1190<br>Burbank, CA 91505 | | | **23575 Parksouth St., Calabassas, CA 91302**<br>**Principal residence**<br>title vested in Handel Family Trust, dated March 21, 2005 | | | | | |
| | | | Value $ 3,200,000.00 | | | | 25,276,287.00 | 25,276,287.00 |
| Account No. **Notice Purposes Only** | | | **Tax Lien** | | | | | |
| Los Angeles County Treasurer<br>225 N. Hill Street<br>Los Angeles, CA 90012 | | | **23575 Parksouth St., Calabassas, CA 91302**<br>**Principal residence**<br>title vested in Handel Family Trust, dated March 21, 2005 | | | | | |
| | | | Value $ 3,200,000.00 | | | | 0.00 | 0.00 |

Sheet **1** of **2** continuation sheets attached to
Schedule of Creditors Holding Secured Claims

Subtotal
(Total of this page)    29,121,635.49    27,847,603.04

EX K-021

B6D (Official Form 6D) (12/07) - Cont.

In re __Mark Handel_____,                    Case No._____

                                        Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | Husband, Wife, Joint, or Community DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. **596497066**<br><br>**Nationstar Mortgage**<br>**P.O. Box 60516**<br>**City of Industry, CA 91716-0516** | | - | **Deed of Trust**<br>279 Vicorian Village Dr. #44, Elkhart Lake, Wisconson<br>4-bedroom condo<br>title vested in Sarah J. Lulloff and Mark Handel, and assigned, transferred and set over to Handel Family Trust, dated March 21, 2005 | | | | | |
| | | | Value $ 525,000.00 | | | | 344,216.46 | 0.00 |
| Account No. **(lawsuit)**<br><br>**Phoenix Pavement Company**<br>**c/o Law Offices of Nolan E. Clark**<br>**2001 Financial Way, Ste. 102**<br>**Glendora, CA 91741** | | - | **Lis Pendens** | X | X | X | | |
| | | | Value $ 0.00 | | | | 0.00 | 0.00 |
| Account No. **Notice Purposes Only**<br><br>**Sheboygan County Tax Collector**<br>**Administration Building**<br>**508 New York Avenue**<br>**Sheboygan, WI 53081** | | - | **Tax Lien**<br>279 Vicorian Village Dr. #44, Elkhart Lake, Wisconson<br>4-bedroom condo<br>title vested in Sarah J. Lulloff and Mark Handel, and assigned, transferred and set over to Handel Family Trust, dated March 21, 2005 | | | | | |
| | | | Value $ 525,000.00 | | | | 0.00 | 0.00 |
| Account No.<br><br>**Sunnyside Development**<br>**c/o Robert A. Sall Law Firm**<br>**32351 Coast Highway**<br>**Laguna Beach, CA 92651** | | - | **Abstract of Judgment**<br>23575 Parksouth St., Calabassas, CA 91302<br>**Principal residence**<br>title vested in Handel Family Trust, dated March 21, 2005 | | | | | |
| | | | Value $ 3,200,000.00 | | | | 248,303.56 | 248,303.56 |
| Account No. | | | Value $ | | | | | |

Sheet __2__ of __2__ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

Subtotal
(Total of this page) | 592,520.02 | 248,303.56 |

Total
(Report on Summary of Schedules) | 34,916,722.05 | K-31,272,505.60 |

B6E (Official Form 6E) (4/13)

In re   **Mark Handel**                       ,        Case No. _____

                          Debtor

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐ **Domestic support obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $12,475* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $6,150* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

Claims of individuals up to $2,775* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

■ **Taxes and certain other debts owed to governmental units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**

Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

* Amount subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

EX K-023

_\_\_\_1\_\_\_\__ continuation sheets attached

B6E (Official Form 6E) (4/13) - Cont.

In re  **Mark Handel**                                                        Case No. _____
_____,
                         Debtor

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
(Continuation Sheet)

**Taxes and Certain Other Debts
Owed to Governmental Units**

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | Husband, Wife, Joint, or Community DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|
| Account No. | | | For Notice Purposes Only | | | | | |
| **Employment Development Dept. Bankruptcy Group MIC 92E P.O. Box 826880 Sacramento, CA 94280-0001** | | - | | | | | | 0.00 |
| | | | | | | | 0.00 | 0.00 |
| Account No. | | | For Notice Purposes Only | | | | | |
| **Franchise Tax Board Special Procedures - Insolvency P.O. Box 2952 Sacramento, CA 95812-2952** | | - | | | | | | 0.00 |
| | | | | | | | 0.00 | 0.00 |
| Account No. | | | For Notice Purposes Only | | | | | |
| **Internal Revenue Service Insolvency I Stop 5022 300 N. Los Angeles St., # 4062 Los Angeles, CA 90012** | | - | | | | | | 0.00 |
| | | | | | | | 0.00 | 0.00 |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |

Sheet  1   of  1    continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

|  | Subtotal (Total of this page) | | 0.00 | 0.00 |
|---|---|---|---|---|
|  | Total (Report on Summary of Schedules) | | 0.00 | 0.00 |
|  |  |  | 0.00 | 0.00 |

EX K-024

B6F (Official Form 6F) (12/07)

In re  **Mark Handel**                                                                    Case No. _____

                                            Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| | | H W J C | | | | | |
| Account No. | | | legal fees and costs | | | | |
| Adler Law, APC 24007 Ventura Blvd. Suite 270 Calabasas, CA 91302 | | - | | | | | 7,448.00 |
| Account No. 568786943 | | | | | | | |
| AT&T PO Box 537104 Atlanta, GA 30353 | | - | | | | | 540.62 |
| Account No. | | | 7/1/07 | | | | |
| Bank of the West (Indy Mac) P.O. Box 615274 Los Angeles, CA 90051 | | - | | | | | 2,851,887.00 |
| Account No. 3105 | | | | | | | |
| Bendadon, Shapiro, Villalobos 3500 W. Olive Avenue, #1190 Burbank, CA 91505 | | - | | | | | 2,975.00 |

**4**  continuation sheets attached

Subtotal
(Total of this page)                                            **2,862,850.62**

EX K-025

B6F (Official Form 6F) (12/07) - Cont.

In re  **Mark Handel**                                                                                    Case No. _____

                                              Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
| | | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | | | | |
| Account No. | | | 6/11/10 | | | | |
| **California Bank and Trust** c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017 | | - | | | | X | 2,157,658.00 |
| Account No. **OCSC 30-2010-00354824** | | | 7/7/10 | | | | |
| **California Bank and Trust** c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017 | | - | | | | X | 4,665,338.00 |
| Account No. **4266-8412-5916-7862** | | | | | | | |
| **Chase Slate** PO Box 94014 Palatine, IL 60094 | | - | | | | | 29.99 |
| Account No. **5466-1601-3119-1734** | | | | | | | |
| **Citi Advantage** **Processing Center** Des Moines, IA 50363 | | - | | | | | 78.29 |
| Account No. | | | 3/27/08 | | | | |
| **Comerica Bank** 2321 Rosecrans Ave., Suite 5000 El Segundo, CA 90245 | | - | | | | | 6,892,065.00 |

Sheet no. **1** of **4** sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)        **13,715,169.28**

EX K-026

B6F (Official Form 6F) (12/07) - Cont.

In re  **Mark Handel**                                              Case No. _____

                                                    Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | Husband, Wife, Joint, or Community<br>DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br><br>**Comerica Bank**<br>**2321 Rosecrans Ave., Suite 5000**<br>**El Segundo, CA 90245** | | - | **11/28/10** | | | | **8,065,660.00** |
| Account No.<br><br>**Comerica Bank**<br>**2321 Rosecrans Ave., Suite 5000**<br>**El Segundo, CA 90245** | | - | **4/12/10** | | | | **8,288,295.00** |
| Account No.<br><br>**Comerica Bank**<br>**2321 Rosecrans Ave., Suite 5000**<br>**El Segundo, CA 90245** | | - | **7/10/10** | | | | **3,599,927.00** |
| Account No. **A139916308**<br><br>**Farmers Insurance**<br>**7524 Southyby Dr.**<br>**attn: Fred Yeger**<br>**Canoga Park, CA 91304** | | - | | | | | **1,311.18** |
| Account No. **SFSC CGC 12-520727**<br><br>**Jack Benadon (Appian Group)**<br>**3500 W. Olive Avenue #1190**<br>**Burbank, CA 91505** | | - | **5/24/12**<br>**Resolved by Judgment** | | | | **24,711,940.00** |

Sheet no. **2** of **4** sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)          **44,667,133.18**

EX K-027

B6F (Official Form 6F) (12/07) - Cont.

In re **Mark Handel**                             Case No. _____

                                  Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. **LASC SC 104809** <br><br> **Jack Benadon (Indy Mac)** <br> **3500 W. Olive Avenue #1190** <br> **Burbank, CA 91505** | | - | **3/18/10** <br> **Resolved by Judgment** | | | | **2,781,239.00** |
| Account No. **350168** <br><br> **Los Virgenes Water District** <br> **4232 Las Virgenes Rd.** <br> **Calabasas, CA 91302** | | - | | | | | **817.97** |
| Account No. **Lawsuit** <br><br> **State Farm General Inc. Co.** <br> **c/o Reese Law Group** <br> **3168 Lionshead Ave.** <br> **Carlsbad, CA 92010** | | - | **State Farm General Inc. Co. v. MWH Development Corp. et al.** <br> **Subject to setoff.** | X | X | X | **0.00** |
| Account No. **8448200184980690** <br><br> **Time Warner Cable** <br> **PO Box 986** <br> **Toledo, OH 43697** | | - | | | | | **96.94** |
| Account No. **500-0151800-0283-2** <br><br> **Waste Management** <br> **PO Box 541008** <br> **Los Angeles, CA 90054** | | - | | | | | **121.90** |

Sheet no. __3__ of __4__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

               Subtotal
            (Total of this page)     **2,782,275.81**

EX K-028

B6F (Official Form 6F) (12/07) - Cont.

In re    **Mark Handel**                                             Case No. _____
                                          Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|---|
| Account No. **41058319500002** | | | | | | | | | | |
| **Wisconsin Public Service** **PO Box 19003** **Green Bay, WI 54307** | | - | | | | | | | | **34.83** |
| Account No. | | | | | | | | | | |
| Account No. | | | | | | | | | | |
| Account No. | | | | | | | | | | |
| Account No. | | | | | | | | | | |

Sheet no. __4__ of __4__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                    **34.83**

Total
(Report on Summary of Schedules)  EX K-1129 **64,027,463.72**

B6G (Official Form 6G) (12/07)

In re  **Mark Handel**                                                        Case No. _____

                                                    Debtor

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☑ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|

**0**

EX K-030

_____ continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

B6H (Official Form 6H) (12/07)

In re    **Mark Handel**                                                    Case No. _____

                                                    Debtor

## SCHEDULE H - CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed
by debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state,
commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or
Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of
any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used
by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor,
state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not
disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐  Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **Codebtors and/or Guarantors**<br>   **Guarantors and co-debtors may exist on certain**<br>**debts, but such entities are generally defunct or**<br>**have no assets** | |

**0**

_____ continuation sheets attached to Schedule of Codebtors

Software Copyright (c) 1996-2014 - Best Case. LLC - www.bestcase.com                                    Best Case Bankruptcy

EX K-031

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Mark Handel** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | |

Check if this is:

☐ An amended filing

☐ A supplement showing post-petition chapter 13 income as of the following date:

MM / DD/ YYYY

## Official Form B 6I

## Schedule I: Your Income

12/13

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1: Describe Employment

1. Fill in your employment information.

If you have more than one job, attach a separate page with information about additional employers.

Include part-time, seasonal, or self-employed work.

Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| | Employment status | ☐ Employed<br>■ Not employed | ■ Employed<br>☐ Not employed |
| | Occupation | | **Administrative Assistant** |
| | Employer's name | | **Center for Suorragate Parenting** |
| | Employer's address | | **15821 Ventura Blvd., Suite 625<br>Encino, CA 91436** |
| | How long employed there? | | **2 years 7 months** |

### Part 2: Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. $ | 0.00 | $ | 960.00 |
| 3. | Estimate and list monthly overtime pay. | 3. +$ | 0.00 | +$ | 0.00 |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. $ | 0.00 | $ | 960.00 |

EX K-032

| Debtor 1 | **Mark Handel** | | Case number (if known) | | |
|---|---|---|---|---|---|

| | | | **For Debtor 1** | | **For Debtor 2 or non-filing spouse** |
|---|---|---|---|---|---|
| | Copy line 4 here | 4. | $ 0.00 | | $ 960.00 |

**5.** List all payroll deductions:

| | | | For Debtor 1 | | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|---|
| 5a. | Tax, Medicare, and Social Security deductions | 5a. | $ 0.00 | | $ 82.08 |
| 5b. | Mandatory contributions for retirement plans | 5b. | $ 0.00 | | $ 0.00 |
| 5c. | Voluntary contributions for retirement plans | 5c. | $ 0.00 | | $ 0.00 |
| 5d. | Required repayments of retirement fund loans | 5d. | $ 0.00 | | $ 0.00 |
| 5e. | Insurance | 5e. | $ 0.00 | | $ 0.00 |
| 5f. | Domestic support obligations | 5f. | $ 0.00 | | $ 0.00 |
| 5g. | Union dues | 5g. | $ 0.00 | | $ 0.00 |
| 5h. | Other deductions. Specify: | 5h.+ | $ 0.00 | + | $ 0.00 |

**6.** Add the payroll deductions. Add lines 5a+5b+5c+5d+5e+5f+5g+5h.    6.    $ 0.00    $ 82.08

**7.** Calculate total monthly take-home pay. Subtract line 6 from line 4.    7.    $ 0.00    $ 877.92

**8.** List all other income regularly received:

8a. **Net income from rental property and from operating a business, profession, or farm**
Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income.    8a.    $ 0.00    $ 0.00

8b. **Interest and dividends**    8b.    $ 540.00    $ 0.00

8c. **Family support payments that you, a non-filing spouse, or a dependent regularly receive**
Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement.    8c.    $ 0.00    $ 0.00

8d. **Unemployment compensation**    8d.    $ 0.00    $ 0.00

8e. **Social Security**    8e.    $ 0.00    $ 0.00

8f. **Other government assistance that you regularly receive**
Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies.
Specify: _____    8f.    $ 0.00    $ 0.00

8g. **Pension or retirement income**    8g.    $ 0.00    $ 0.00

8h. **Other monthly income. Specify:** _____    8h.+    $ 0.00    + $ 0.00

**9.** Add all other income. Add lines 8a+8b+8c+8d+8e+8f+8g+8h.    9.    $ 540.00    $ 0.00

**10.** Calculate monthly income. Add line 7 + line 9.
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.    10.    $ 540.00   +   $ 877.92   =   $ 1,417.92

**11.** State all other regular contributions to the expenses that you list in Schedule J.
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in Schedule J.
Specify:    **gifts from wife**    11.    +$ 3,000.00

**12.** Add the amount in the last column of line 10 to the amount in line 11. The result is the combined monthly income.
Write that amount on the Summary of Schedules and Statistical Summary of Certain Liabilities and Related Data, if it applies    12.    $ 4,417.92

**Combined monthly income**

**13.** Do you expect an increase or decrease within the year after you file this form?
■ No.
☐ Yes. Explain: [                                                    ]

EX K-033

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 **Mark Handel** | |

United States Bankruptcy Court for the:  CENTRAL DISTRICT OF CALIFORNIA

Debtor 2
(Spouse, if filing)

Case number
(if known)

Check if this is:
- [ ] An amended filing
- [ ] A supplement showing post-petition chapter 13 expenses as of the following date:

MM / DD / YYYY

- [ ] A separate filing for Debtor 2 because Debtor 2 maintains a separate household

## Official Form B 6J
## Schedule J: Your Expenses                                    12/13

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:  Describe Your Household

1. **Is this a joint case?**

   ■ No. Go to line 2.
   □ Yes. **Does Debtor 2 live in a separate household?**
      □ No
      □ Yes. Debtor 2 must file a separate Schedule J.

2. **Do you have dependents?**  □ No

| Do not list Debtor 1 and Debtor 2. | ■ Yes. Fill out this information for each dependent............ Do not state the dependents' names. | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|---|---|
| | | Wife | | □ No  ■ Yes |
| | | Daughter | 11 | □ No  ■ Yes |
| | | Son | 11 | □ No  ■ Yes |
| | | Son | 16 | □ No  ■ Yes |
| | | Daughter | 19 | ■ No  □ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**   □ No   ■ Yes

### Part 2:  Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 6I.)

**Your expenses**

| | | | |
|---|---|---|---|
| 4. | The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4. $ | 0.00 |
| | **If not included in line 4:** | | |
| 4a. | Real estate taxes | 4a. $ | 0.00 |
| 4b. | Property, homeowner's, or renter's insurance | 4b. $ | 0.00 |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c. $ | 0.00 |
| 4d. | Homeowner's association or condominium dues | 4d. $ | 0.00 |
| 5. | **Additional mortgage payments for your residence,** such as home equity loans | 5. $ | 0.00 |

EX K-034

Official Form B 6J                          **Schedule J: Your Expenses**                          page 1

| Debtor 1 | **Mark Handel** | Case number (if known) | |
|---|---|---|---|

| 6. | **Utilities:** | | | |
|---|---|---|---|---|
| | 6a. | Electricity, heat, natural gas | 6a. $ | 0.00 |
| | 6b. | Water, sewer, garbage collection | 6b. $ | 0.00 |
| | 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. $ | 0.00 |
| | 6d. | Other. Specify: | 6d. $ | 0.00 |
| 7. | **Food and housekeeping supplies** | | 7. $ | 1,600.00 |
| 8. | **Childcare and children's education costs** | | 8. $ | 1,300.00 |
| 9. | **Clothing, laundry, and dry cleaning** | | 9. $ | 50.00 |
| 10. | **Personal care products and services** | | 10. $ | 50.00 |
| 11. | **Medical and dental expenses** | | 11. $ | 0.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | | 12. $ | 0.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | | 13. $ | 0.00 |
| 14. | **Charitable contributions and religious donations** | | 14. $ | 0.00 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a. Life insurance | | 15a. $ | 0.00 |
| | 15b. Health insurance | | 15b. $ | 0.00 |
| | 15c. Vehicle insurance | | 15c. $ | 0.00 |
| | 15d. Other insurance. Specify: | | 15d. $ | 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | | 16. $ | 0.00 |
| 17. | **Installment or lease payments:** | | | |
| | 17a. Car payments for Vehicle 1 | | 17a. $ | 0.00 |
| | 17b. Car payments for Vehicle 2 | | 17b. $ | 0.00 |
| | 17c. Other. Specify: | | 17c. $ | 0.00 |
| | 17d. Other. Specify: | | 17d. $ | 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 6I).** | | 18. $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | | 19. $ | 0.00 |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.*** | | | |
| | 20a. Mortgages on other property | | 20a. $ | 0.00 |
| | 20b. Real estate taxes | | 20b. $ | 0.00 |
| | 20c. Property, homeowner's, or renter's insurance | | 20c. $ | 0.00 |
| | 20d. Maintenance, repair, and upkeep expenses | | 20d. $ | 0.00 |
| | 20e. Homeowner's association or condominium dues | | 20e. $ | 0.00 |
| 21. | **Other:** Specify: | | 21. +$ | 0.00 |
| 22. | **Your monthly expenses.** Add lines 4 through 21. The result is your monthly expenses. | | 22. $ | 3,000.00 |
| 23. | **Calculate your monthly net income.** | | | |
| | 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | | 23a. $ | 4,417.92 |
| | 23b. Copy your monthly expenses from line 22 above. | | 23b. -$ | 3,000.00 |
| | 23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income.* | | 23c. $ | 1,417.92 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.

☐ Yes.

Explain:

EX K-035

B6 Declaration (Official Form 6 - Declaration). (12/07)

## United States Bankruptcy Court
### Central District of California

In re **Mark Handel** _____ Case No. _____

Debtor(s)  Chapter **11**

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of **23** sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date **4 - 13 - 15** Signature _____

**Mark Handel**
Debtor

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

B7 (Official Form 7) (04/13)

# United States Bankruptcy Court
## Central District of California

In re    **Mark Handel**                                                        Case No.

                                              Debtor(s)        Chapter    **11**

# STATEMENT OF FINANCIAL AFFAIRS

    This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

    Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

## *DEFINITIONS*

    *"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

    *"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any persons in control of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(2), (31).

---

### 1. Income from employment or operation of business

None
■
    State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

      AMOUNT                    SOURCE

---

### 2. Income other than from employment or operation of business

None
☐
    State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| $6,774.00 | 2013: Husband Interest / Dividends |
| $7,000.00 | 2014: Interest/Dividends: approximately |
| $0.00 | 2015 to date |

EX K-037
Best Case Bankruptcy

B7 (Official Form 7) (04/13)
2

### 3. Payments to creditors

None ■ *Complete a. or b., as appropriate, and c.*

a. *Individual or joint debtor(s) with primarily consumer debts:* List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None □ b. *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $6,225*. If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|---|
| **American Express** **Box 0001** **Los Angeles, CA 90096** | 1/8/2015 1/20/2015 1/20/2015 2/18/2015 2/18/2015 2/18/2015 3/24/2015 3/24/2015 3/24/2015 4/7/2015 | 23,777.20 365.35 219.67 16,743.05 434.72 49.90 14,066.95 647.83 219.67 31,630.32 | **$88,154.66** | **$0.00** |
| **Chase Mortgage** **PO Box 78420** **Phoenix, AZ 85062** | 1/8/2015 2/4/2015 3/4/2015 3/24/2015 | 11,601.25 11,601.25 11,601.25 11,601.25 | **$46,405.00** | **$0.00** |
| **Investor Capital Group** **3500 W. Olive Avenue, Suite 1190** **Burbank, CA 91505** | 2/25/2015 150,000.00 3/16/2015 72,000.00 | | **$222,000.00** | **$0.00** |
| **Lincoln Benefit Title** **PO Box 5708** **Carol Stream, IL 60197** | 1/20/2015 | 8,552.25 | **$8,552.25** | **$0.00** |
| **Nationstar Mortgage** **P.O. Box 60516** **City of Industry, CA 91716-0516** | 1/8/2015 2/4/2015 3/4/2015 3/24/2015 | 2,540.67 2,540.67 2,540.67 2,540.67 | **$10,162.68** | **$0.00** |

None ■ c. *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

* *Amount subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

EX K-038

B7 (Official Form 7) (04/13)
3

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

**4. Suits and administrative proceedings, executions, garnishments and attachments**

None ☐ a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| **State Farm General Inc. Co. v. MWH Development Corp. et al., LC100714** | **Insurance Coverage** | **Los Angeles Superior Court (Van Nuys Courthouse), 6230 Sylmar Ave., Van Nuys, CA 91401; Dept. Q** | **Pending** |
| **Sunnyside Development Partners LLC et al. v. MWH Development Corp. et al., BC375270** | **Contractual Fraud** | **Los Angeles Superior Court; Dept. 44; 111 North Hill Street, Los Angeles, CA 90012** | **Judgment against Debtor; case still active and pending** |

None ☐ b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **California Bank and Trust c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017** | **January 27, 2015** | **lien was recorded on Condo in Wisconsin, valued at $525,000** |

**5. Repossessions, foreclosures and returns**

None ■ List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**6. Assignments and receiverships**

None ■ a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None ■ b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

EX K-039

B7 (Official Form 7) (04/13)
4

**7. Gifts**

None ■ List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
| --- | --- | --- | --- |

**8. Losses**

None ■ List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
| --- | --- | --- |

**9. Payments related to debt counseling or bankruptcy**

None □ List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYER IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |
| Levene, Neale, Bender, Yoo & Brill 10250 Constellation Blvd. Suite 1700 Los Angeles, CA 90067 | 4/2/2015 | $75,000 |
| Levene, Neale, Bender, Yoo & Brill 10250 Constellation Blvd. Suite 1700 Los Angeles, CA 90067 | 11/3/2014, DTMM Construction, Inc. | $10,000 |

**10. Other transfers**

None ■ a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
| --- | --- | --- |

None ■ b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
| --- | --- | --- |

EX K-040

B7 (Official Form 7) (04/13)

5

**11. Closed financial accounts**

None
■ List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

**12. Safe deposit boxes**

None
■ List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

**13. Setoffs**

None
■ List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

**14. Property held for another person**

None
■ List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

**15. Prior address of debtor**

None
■ If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|

**16. Spouses and Former Spouses**

None
□ If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME
**Sarah J. Lulloff**

EX K-041
Best Case Bankruptcy

B7 (Official Form 7) (04/13)

6

## 17. Environmental Information.

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None
■
a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None
■
b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None
■
c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

## 18 . Nature, location and name of business

None
☐
a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| **MSB Killion Partners, LP** | **20-3746776** | **c/o Jack Benadon 3500 W. Olive Avenue #1190 Burbank, CA 91505** | **Limited Partnership**<br><br>**Ownership: Mark Handel, as trustee of The Handel Family Trust dated March 21, 2005.** | **Beginning date: 11-5-05** |

Software Copyright (c) 1996-2014 Best Case, LLC - www.bestcase.com

EX K-042
Best Case Bankruptcy

B7 (Official Form 7) (04/13)
7

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| **MSB Bloomfield Partners, LP** | **20-3587404** | c/o Jack Benadon<br>3500 W. Olive Avenue<br>#1190<br>Burbank, CA 91505 | **Limited Partnership**<br><br>**Ownership: Mark Handel, as trustee of The Handel Family Trust" dated March 21, 2005** | **Beginning date:**<br>**9-30-05** |
| **MB Valley Partners** | **20-3587319** | c/o Jack Benadon<br>3500 W. Olive Avenue<br>#1190<br>Burbank, CA 91505 | **Partnership**<br><br>**Ownership: Mark Handel, as trustee of The Handel Family Trust" dated March 21, 2005** | **Beginning date:**<br>**10-1-05** |

None    b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.
■

NAME                                    ADDRESS

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date ___4 - 13 - 15___                  Signature _____

                                        **Mark Handel**
                                        Debtor

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

EX K-043

Form B203 - Disclosure of Compensation of Attorney for Debtor - (1/98)                    1998 USBC, Central District of California

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| In re | Case No.: |
|---|---|
| **Mark Handel** Debtor. | **DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR** |

1.  Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

    For legal services, I have agreed to accept ............................................................ $         75,000.00

    Prior to the filing of this statement I have received ....................................... $         75,000.00

    Balance Due ................................................................................................................. $              0.00

2.  $ **1,717.00** of the filing fee has been paid.

3.  The source of the compensation paid to me was:

    ■ Debtor        ☐ Other (specify):

4.  The source of compensation to be paid to me is:

    ■ Debtor        ☐ Other (specify):

5.  ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

    ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

6.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
    a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
    b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
    c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
    d. Representation of the debtor in adversary proceedings and other contested bankruptcy matters;
    e. [Other provisions as needed]
        **Advising the Debtor with regard to the requirements of the Bankruptcy Court, Bankruptcy Code, Bankruptcy Rules and the Office of the United States Trustee as they pertain to the Debtor; advising the Debtor with regard to certain rights and remedies of its bankruptcy estate and the rights, claims and interests of creditors; representing the Debtor in any proceeding or hearing in the Bankruptcy Court involving its estate unless the Debtor is represented in such proceeding or hearing by other special counsel; conducting examinations of witnesses, claimants or adverse parties and representing the Debtor in any adversary proceeding except to the extent that any such adversary proceeding is in an area outside of LNBYB's expertise or which is beyond LNBYB's staffing capabilities; preparing and assisting the Debtor in the preparation of reports, applications, pleadings and orders including, but not limited to, applications to employ professionals, interim statements and operating reports, initial filing requirements, schedules and statement of financial affairs, lease pleadings, cash collateral pleadings, financing pleadings, and pleadings with respect to the Debtor's use, sale or lease of property outside the ordinary course of business; representing the Debtor with regard to obtaining use of debtor in possession financing and/or cash collateral including, but not limited to, negotiating and seeking Bankruptcy Court approval of any debtor in possession financing and/or cash collateral pleading or stipulation and preparing any pleadings relating to obtaining use of debtor in possession financing and/or cash collateral; assisting the Debtor in the negotiation, formulation, preparation and confirmation of a plan of reorganization and the preparation and approval of a disclosure statement in respect of the plan; and performing any other services which may be appropriate in LNBRB's representation of the Debtor during its bankruptcy case.**

EX K-044

**Form B203 Page Two - Disclosure of Compensation of Attorney for Debtor - (1/88)**     **1998 USBC, Central District of California**

7.    By agreement with the debtor(s), the above-disclosed fee does not include the following services
        **Matters which are outside of LNBYB's specialization**

---

**CERTIFICATION**

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

_4 - 13 - 15_

_Date_                                            **David L. Neale 141225**
                                                       *Signature of Attorney*
                                                       **Levene, Neale, Bender, Yoo & Brill LLP**
                                                       *Name of Law Firm*
                                                       **10250 Constellation Blvd.**
                                                       **Suite 1700**
                                                       **Los Angeles, CA 90067**
                                                       **(310) 229-1234**

---

February 2006                                                                    2006 USBC Central District of California

## United States Bankruptcy Court
### Central District of California

In re  **Mark Handel**                                                          Case No.

                                            Debtor(s)          Chapter      **11**

## DEBTOR'S CERTIFICATION OF EMPLOYMENT INCOME
## PURSUANT TO 11 U.S.C. § 521 (a)(1)(B)(iv)

Please fill out the following blank(s) and check the box next to one of the following statements:

I,  **Mark Handel** , the debtor in this case, declare under penalty of perjury under the laws of the United States of America that:

☐      I have attached to this certificate copies of my pay stubs, pay advices and/or other proof of employment income for the 60-day period prior to the date of the filing of my bankruptcy petition.
       (NOTE: the filer is responsible for blacking out the Social Security number on pay stubs prior to filing them.)

☐      I was self-employed for the entire 60-day period prior to the date of the filing of my bankruptcy petition, and received no payment from any other employer.

■      I was unemployed for the entire 60-day period prior to the date of the filing of my bankruptcy petition.

I, _____, the debtor in this case, declare under penalty of perjury under the laws of the United States of America that:

☐      I have attached to this certificate copies of my pay stubs, pay advices and/or other proof of employment income for the 60-day period prior to the date of the filing of my bankruptcy petition.
       (NOTE: the filer is responsible for blacking out the Social Security number on pay stubs prior to filing them.)

☐      I was self-employed for the entire 60-day period prior to the date of the filing of my bankruptcy petition, and received no payment from any other employer.

☐      I was unemployed for the entire 60-day period prior to the date of the filing of my bankruptcy petition.

Date ___4.13.15___          Signature _____

                                            **Mark Handel**
                                            Debtor

EX K-046

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 **Mark Handel** | |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: Central District of California | |
| Case number (if known) | ☐ Check if this is an amended filing |

## Official Form 22B
## Chapter 11 Statement of Your Current Monthly Income                    12/14

You must file this form if you are an individual and are filing for bankruptcy under Chapter 11. If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On top of any additional pages, write your name and case number (if known).

| Part 1: | Calculate Your Average Monthly Income |
|---|---|

1. **What is your marital and filing status?** Check one only.

   ☐ **Not married.** Fill out Column A, lines 2-11.

   ☐ **Married and your spouse is filing with you.** Fill out both Columns A and B, lines 2-11.

   ■ **Married and your spouse is NOT filing with you.** Fill out Column A, lines 2-11.

Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case. 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

|  | | | Column A Debtor 1 | | Column B Debtor 2 |
|---|---|---|---|---|---|
| 2. **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | | | $ | **0.00** | $ |
| 3. **Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | | | $ | **0.00** | $ |
| 4. **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Include regular contributions from a spouse only if Column B is not filled in. Do not include payments you listed on line 3. | | | $ | **0.00** | $ |
| 5. **Net income from operating a business, profession, or farm** | | | | | |
| Gross receipts (before all deductions) | $ | 0.00 | | | |
| Ordinary and necessary operating expenses | -$ | 0.00 | | | |
| Net monthly income from a business, profession, or farm | $ | 0.00 | Copy here -> $ | **0.00** | $ |
| 6. **Net income from rental and other real property** | | | | | |
| Gross receipts (before all deductions) | $ | 0.00 | | | |
| Ordinary and necessary operating expenses | -$ | 0.00 | | | |
| Net monthly income from rental or other real property | $ | 0.00 | Copy here -> $ | **0.00** | $ |

Debtor 1  **Mark Handel**

Case number (*if known*)

|  | | Column A<br>Debtor 1 | Column B<br>Debtor 2 |
|---|---|---|---|
| 7. | Interest, dividends, and royalties | $ 560.00 | $ |
| 8. | Unemployment compensation | $ 0.00 | $ |

Do not enter the amount if you contend that the amount received was a benefit under the Social Security Act. Instead, list it here:

For you ................................................................. $ _____ 0.00

For your spouse ................................................... $ _____

9. **Pension or retirement income.** Do not include any amount received that was a benefit under the Social Security Act.

$ 0.00    $

10. **Income from all other sources not listed above.** Specify the source and amount. Do not include any benefits received under the Social Security Act or payments received as a victim of a war crime, a crime against humanity, or international or domestic terrorism. If necessary, list other sources on a separate page and put the total on line 10c.

| 10a. | Gifts from wife | $ 3,000.00 | $ |
|---|---|---|---|
| 10b. | | $ 0.00 | $ |
| 10c. | Total amounts from separate pages, if any. | + $ 0.00 | $ |

11. **Calculate your total average monthly income.** Add lines 2 through 10 for each column. Then add the total for Column A to the total for Column B.

$ 3,560.00  + $ _____ = $ 3,560.00

**Total current monthly income**

---

**Part 2:**    Deduct any applicable marital adjustment

12. **Copy your total average monthly income from Line 11.**

$ 3,560.00

13. **Calculate the marital adjustment.** Check one:

☐ You are not married. Fill in 0 in line 13d.

☐ You are married and your spouse is filing with you. Fill in 0 in line 13d.

■ You are married and your spouse is NOT filing with you.

Fill in the amount of the income listed in line 11, Column B, that was NOT regularly paid for the household expenses of you or your dependents, such as payment of the spouse's tax liability or the spouse's support of someone other than you or your dependents.

In lines 13a-c, specify the basis for excluding this income and the amount of income devoted to each purpose. If necessary, list additional adjustments on a separate page.

If this adjustment does not apply, enter 0 on line 13 d.

| 13a. | | $ _____ |
|---|---|---|
| 13b. | | $ _____ |
| 13c. | | + $ _____ |

13d. Total .......................................................................... $ _____    Copy here. => 13d. -    0.00

14. **Your current monthly income.** Subtract line 13d from line 12.    14. $ 3,560.00

---

Software Copyright (c) 1996-2014 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Debtor 1    **Mark Handel** _____    Case number (*if known*) _____

---

**Part 3:**    **Sign Below**

By signing here, under penalty of perjury I declare that the information on this statement and in any attachments is true and correct.

X _____

**Mark Handel**
Signature of Debtor 1

Date  4 · 13 · 15
    MM / DD / YYYY

---

EX K-049

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **David L. Neale**<br>**10250 Constellation Blvd.**<br>**Suite 1700**<br>**Los Angeles, CA 90067**<br>**(310) 229-1234**<br>California State Bar Number: **141225** | |

☐ *Debtor(s) appearing without an attorney*

■ *Attorney for Debtor(s):*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| In re:<br><br>**Mark Handel**<br><br><br><br><br><br>Debtor(s). | CASE NO.:<br>CHAPTER: **11**<br><br><br>**VERIFICATION OF MASTER<br>MAILING LIST OF CREDITORS**<br><br>**[LBR 1007-1(d)]** |
|---|---|

Pursuant to LBR 1007-1(d), the Debtor, or the Debtor's attorney if applicable, certifies under penalty of perjury that the master mailing list of creditors filed in this bankruptcy case, consisting of __4__ sheet(s) is complete, correct, and consistent with the Debtor's schedules and I/we assume all responsibility for errors and omissions.

Date: ___4 · 13 · 15___

_____
Debtor's signature

Date: _____

_____
Joint Debtor's signature (if applicable)

Date: _____

_____
Attorney's signature (if applicable)

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2014*    **F 1007-1.MAILING.LIST.VERIFICATION**    EXH.1-050

Mark Handel
23575 Parksouth St.
Calabasas, CA 91302

David L. Neale
Levene, Neale, Bender, Yoo & Brill LLP
10250 Constellation Blvd.
Suite 1700
Los Angeles, CA 90067

Office of the U.S. Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

Adler Law, APC
24007 Ventura Blvd. Suite 270
Calabasas, CA 91302

AT&T
PO Box 537104
Atlanta, GA 30353

Bank of the West  Indy Mac
P.O. Box 615274
Los Angeles, CA 90051

Bendadon, Shapiro, Villalobos
3500 W. Olive Avenue, #1190
Burbank, CA 91505

Bruce Tolchin
c/o Onyx capital corp
11777 San Vicente Blvd. suite 640
Los Angeles, CA 90049

California Bank and Trust
c/o Barry Smith  Buchalter Nemer
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA 90017

Chase Paymentech
PO Box 78420
Phoenix, AZ 85062

Chase Slate
PO Box 94014
Palatine, IL 60094

Citi Advantage
Processing Center
Des Moines, IA 50363

Comerica Bank
2321 Rosecrans Ave., Suite 5000
El Segundo, CA 90245

De Lage Landen Financial Services
111 Old Eagle School Rd.
Wayne, PA 19087

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Farmers Insurance
7524 Southyby Dr.
attn:  Fred Yeger
Canoga Park, CA 91304

EX K-052

Franchise Tax Board
Special Procedures - Insolvency
P.O. Box 2952
Sacramento, CA 95812-2952


Internal Revenue Service
Insolvency I Stop 5022
300 N. Los Angeles St., # 4062
Los Angeles, CA 90012


Jack Benadon  Appian Group
3500 W. Olive Avenue #1190
Burbank, CA 91505


Jack Benadon  Indy Mac
3500 W. Olive Avenue #1190
Burbank, CA 91505


Jack Benadon  Korogluyan
3500 W. Olive Avenue #1190
Burbank, CA 91505


Jack Benadon  M Ghosn
3500 W. Olive Avenue #1190
Burbank, CA 91505


Jack Benadon  Weyerhauser
3500 W. Olive Avenue #1190
Burbank, CA 91505


Los Angeles County Treasurer
225 N. Hill Street
Los Angeles, CA 90012

Los Virgenes Water District
4232 Las Virgenes Rd.
Calabasas, CA 91302

Nationstar Mortgage
P.O. Box 60516
City of Industry, CA 91716-0516

Phoenix Pavement Company
c/o Law Offices of Nolan E. Clark
2001 Financial Way, Ste. 102
Glendora, CA 91741

Sheboygan County Tax Collector
Administration Building
508 New York Avenue
Sheboygan, WI 53081

State Farm General Inc. Co.
c/o Reese Law Group
3168 Lionshead Ave.
Carlsbad, CA 92010

Sunnyside Development
c/o Robert A. Sall Law Firm
32351 Coast Highway
Laguna Beach, CA 92651

Time Warner Cable
PO Box 986
Toledo, OH 43697

Waste Management
PO Box 541008
Los Angeles, CA 90054

Wisconsin Public Service
PO Box 19003
Green Bay, WI 54307

**B1 (Official Form 1)(04/13)**

| United States Bankruptcy Court<br>Central District of California | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Handel, Mark** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all)<br>**xxx-xx-5897** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State):<br>**23575 Parksouth St.**<br>**Calabasas, CA**<br><br>ZIP Code **91302** | Street Address of Joint Debtor (No. and Street, City, and State):<br><br>ZIP Code |
| County of Residence or of the Principal Place of Business:<br>**Los Angeles** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br><br>ZIP Code | Mailing Address of Joint Debtor (if different from street address):<br><br>ZIP Code |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

**Type of Debtor**
(Form of Organization) (Check one box)
- ■ Individual (includes Joint Debtors)
  *See Exhibit D on page 2 of this form.*
- ☐ Corporation (includes LLC and LLP)
- ☐ Partnership
- ☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.)

**Chapter 15 Debtors**
Country of debtor's center of main interests:

Each country in which a foreign proceeding by, regarding, or against debtor is pending:

**Nature of Business**
(Check one box)
- ☐ Health Care Business
- ☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)
- ☐ Railroad
- ☐ Stockbroker
- ☐ Commodity Broker
- ☐ Clearing Bank
- ■ Other

**Tax-Exempt Entity**
(Check box, if applicable)
- ☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

**Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box)
- ☐ Chapter 7
- ☐ Chapter 9
- ■ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13
- ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

**Nature of Debts**
(Check one box)
- ☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."
- ■ Debts are primarily business debts.

**Filing Fee** (Check one box)
- ■ Full Filing Fee attached
- ☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- ☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

**Chapter 11 Debtors**
Check one box:
- ☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
- ■ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

Check if:
- ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 *(amount subject to adjustment on 4/01/16 and every three years thereafter).*

Check all applicable boxes:
- ☐ A plan is being filed with this petition.
- ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

**Statistical/Administrative Information**
- ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ■ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

**Estimated Number of Creditors**

| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | OVER 100,000 |

**Estimated Assets**

| ☐ | ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

**Estimated Liabilities**

| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

EX K-001

| B1 (Official Form 1)(04/13) | | Page 2 |
|---|---|---|
| **Voluntary Petition** | Name of Debtor(s): **Handel, Mark** | |
| *(This page must be completed and filed in every case)* | | |

| All Prior Bankruptcy Cases Filed Within Last 8 Years (If more than two, attach additional sheet) | | |
|---|---|---|
| Location<br>Where Filed:  **- None -** | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br>**- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

<table>
<tr>
<td>

**Exhibit A**

(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)

☐ Exhibit A is attached and made a part of this petition.

</td>
<td>

**Exhibit B**

(To be completed if debtor is an individual whose debts are primarily consumer debts.)

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b).

**X** _____<br>Signature of Attorney for Debtor(s)          (Date)

</td>
</tr>
</table>

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

■ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

■ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**

(Check any applicable box)

■   Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐   There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐   Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**

(Check all applicable boxes)

☐   Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____<br>(Name of landlord that obtained judgment)

_____<br>(Address of landlord)

☐   Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐   Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.     EX K-002

☐   Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

B1 (Official Form 1)(04/13)

Page 3

| **Voluntary Petition** | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | **Handel, Mark** |

Signatures

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7. [If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor **Mark Handel**

X _____
Signature of Joint Debtor

Telephone Number (If not represented by attorney)

4 - 13 - 15
Date

**Signature of Attorney\***

X _____
Signature of Attorney for Debtor(s)

**David L. Neale 141225**
Printed Name of Attorney for Debtor(s)

**Levene, Neale, Bender, Yoo & Brill LLP**
Firm Name

**10250 Constellation Blvd.
Suite 1700
Los Angeles, CA 90067**

_____
Address

**(310) 229-1234**
Telephone Number

4 - 14 - 15                141225
Date

\*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11. United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of bankruptcy petition preparer or officer, principal, responsible person,or partner whose Social Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. §110; 18 U.S.C. §156.*

EX K-003

B 1D (Official Form 1, Exhibit D) (12/09)

## United States Bankruptcy Court
### Central District of California

In re **Mark Handel**

Debtor(s)

Case No. _____

Chapter **11**

### EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

■ 1. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

□ 2. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 14 days after your bankruptcy case is filed.*

□ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the seven days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Summarize exigent circumstances here.]* ___

**If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency. Failure to fulfill these requirements may result in dismissal of your case. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.**

□ 4. I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.]* *[Must be accompanied by a motion for determination by the court.]*

EX K-004

B 1D (Official Form 1, Exhibit D) (12/09) - Cont.                                                                 Page 2

      ☐ Incapacity. (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);

      ☐ Disability. (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);

      ☐ Active military duty in a military combat zone.

      ☐ 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor: _____
**Mark Handel**

Date:     9 - 13 - 15

EX K-005

Certificate Number: 14751-CAC-CC-025357289



14751-CAC-CC-025357289

# CERTIFICATE OF COUNSELING

I CERTIFY that on <u>April 6, 2015</u>, at <u>2:24</u> o'clock <u>PM PDT</u>, <u>Mark Handel</u> received from <u>$0$ BK Class Inc.</u>, an agency approved pursuant to 11 U.S.C. § 111 to provide credit counseling in the <u>Central District of California</u>, an individual [or group] briefing that complied with the provisions of 11 U.S.C. §§ 109(h) and 111.

A debt repayment plan <u>was not prepared</u>. If a debt repayment plan was prepared, a copy of the debt repayment plan is attached to this certificate.

This counseling session was conducted <u>by internet</u>.

Date:  <u>April 13, 2015</u>          By:    <u>/s/AMEY AIONO</u>

                                      Name:  <u>AMEY AIONO</u>

                                      Title:  <u>Certified Credit Counselor</u>

* Individuals who wish to file a bankruptcy case under title 11 of the United States Bankruptcy Code are required to file with the United States Bankruptcy Court a completed certificate of counseling from the nonprofit budget and credit counseling agency that provided the individual the counseling services and a copy of the debt repayment plan, if any, developed through the credit counseling agency. *See* 11 U.S.C. §§ 109(h) and 521(b).

EX K-006

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
## Central District of California

In re    **Mark Handel**                                Case No.

                                        Debtor(s)                  Chapter    **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or* chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | *Amount of claim [if secured, also state value of security]* |
| **Jack Benadon (Weyerhauser) 3500 W. Olive Avenue #1190 Burbank, CA 91505** | **Jack Benadon (Weyerhauser) 3500 W. Olive Avenue #1190 Burbank, CA 91505 818-973-4500** | **23575 Parksouth St., Calabassas, CA 91302 Principal residence title vested in Handel Family Trust, dated March 21, 2005** | | **25,276,287.00 (3,200,000.00 secured) (6,019,619.60 senior lien)** |
| **Jack Benadon (Appian Group) 3500 W. Olive Avenue #1190 Burbank, CA 91505** | **Jack Benadon (Appian Group) 3500 W. Olive Avenue #1190 Burbank, CA 91505 818-973-4500** | **Resolved by Judgment** | | **24,711,940.00** |
| **Comerica Bank 2321 Rosecrans Ave., Suite 5000 El Segundo, CA 90245** | **Comerica Bank 2321 Rosecrans Ave., Suite 5000 Los Angeles, CA 90071 (310) 297-2200** | | | **8,288,295.00** |
| **Comerica Bank 2321 Rosecrans Ave., Suite 5000 El Segundo, CA 90245** | **Comerica Bank 2321 Rosecrans Ave., Suite 5000 El Segundo, CA 90245 (310) 297-2200** | | | **8,065,660.00** |
| **Comerica Bank 2321 Rosecrans Ave., Suite 5000 El Segundo, CA 90245** | **Comerica Bank 2321 Rosecrans Ave., Suite 5000 El Segundo, CA 90245 (310) 297-2200** | | | **6,892,065.00** |
| **California Bank and Trust c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017** | **California Bank and Trust c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017 (213) 891-0700** | | **Disputed** | **4,665,338.00** |
| **Comerica Bank 2321 Rosecrans Ave., Suite 5000 El Segundo, CA 90245** | **Comerica Bank 2321 Rosecrans Ave., Suite 5000 El Segundo, CA 90245 (310) 297-2200** | | | **3,599,927.00** |

**B4 (Official Form 4) (12/07) - Cont.**

In re    **Mark Handel**                             Case No.                 

                              Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | *Amount of claim [if secured, also state value of security]* |
| **California Bank and Trust** c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017 | **California Bank and Trust** c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017 (213) 891-0700 | 279 Vicorian Village Dr. #44, Elkhart Lake, Wisconson 4-bedroom condo title vested in Sarah J. Lulloff and Mark Handel, and assigned, transferred an | **Disputed** | 3,276,599.00 (525,000.00 secured) (344,216.46 senior lien) |
| **Bank of the West (Indy Mac)** P.O. Box 615274 Los Angeles, CA 90051 | **Bank of the West (Indy Mac)** P.O. Box 615274 Los Angeles, CA 90051 (310) 208-4111 | | | 2,851,887.00 |
| **Jack Benadon (Indy Mac)** 3500 W. Olive Avenue #1190 Burbank, CA 91505 | **Jack Benadon (Indy Mac)** 3500 W. Olive Avenue #1190 Burbank, CA 91505 818-973-4500 | **Resolved by Judgment** | | 2,781,239.00 |
| **California Bank and Trust** c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017 | **California Bank and Trust** c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017 (213) 891-0700 | | **Disputed** | 2,157,658.00 |
| **Jack Benadon (Korogluyan)** 3500 W. Olive Avenue #1190 Burbank, CA 91505 | **Jack Benadon (Korogluyan)** 3500 W. Olive Avenue #1190 Burbank, CA 91505 818-973-4500 | 23575 Parksouth St., Calabassas, CA 91302 **Principal residence** title vested in **Handel Family Trust, dated March 21, 2005** | | 2,000,000.00 (3,200,000.00 secured) (4,019,619.60 senior lien) |
| **Jack Benadon (Korogluyan)** 3500 W. Olive Avenue #1190 Burbank, CA 91505 | **Jack Benadon (Korogluyan)** 3500 W. Olive Avenue #1190 Burbank, CA 91505 818-973-4500 | 23575 Parksouth St., Calabassas, CA 91302 **Principal residence** title vested in **Handel Family Trust, dated March 21, 2005** | | 600,000.00 (3,200,000.00 secured) (3,171,316.04 senior lien) |
| **Sunnyside Development** c/o Robert A. Sall Law Firm 32351 Coast Highway Laguna Beach, CA 92651 | **Sunnyside Development** c/o Robert A. Sall Law Firm 32351 Coast Highway Laguna Beach, CA 92651 (949) 499-2942 | 23575 Parksouth St., Calabassas, CA 91302 **Principal residence** title vested in **Handel Family Trust, dated March 21, 2005** | | 248,303.56 (3,200,000.00 secured) (3,771,316.04 senior lien) |

           EX K-008   

**B4 (Official Form 4) (12/07) - Cont.**

In re **Mark Handel**

Debtor(s)

Case No. _____

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

(Continuation Sheet)

| (1)<br><br>Name of creditor and complete mailing address including zip code | (2)<br><br>Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3)<br><br>Nature of claim (trade debt, bank loan, government contract, etc.) | (4)<br><br>Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5)<br><br>Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Adler Law, APC<br>24007 Ventura Blvd. Suite 270<br>Calabasas, CA 91302 | Adler Law, APC<br>24007 Ventura Blvd. Suite 270<br>Calabasas, CA 91302<br>818-968-5562 | legal fees and costs | | 7,448.00 |
| Bendadon, Shapiro, Villalobos<br>3500 W. Olive Avenue, #1190<br>Burbank, CA 91505 | Bendadon, Shapiro, Villalobos<br>3500 W. Olive Avenue, #1190<br>Burbank, CA 91505<br>(818) 973-4500 | | | 2,975.00 |
| Farmers Insurance<br>7524 Southyby Dr.<br>attn: Fred Yeger<br>Canoga Park, CA 91304 | Farmers Insurance<br>7524 Southyby Dr.<br>attn: Fred Yeger<br>Canoga Park, CA 91304 | | | 1,311.18 |
| Los Virgenes Water District<br>4232 Las Virgenes Rd.<br>Calabasas, CA 91302 | Los Virgenes Water District<br>4232 Las Virgenes Rd.<br>Calabasas, CA 91302<br>(818) 251-2100 | | | 817.97 |
| AT&T<br>PO Box 537104<br>Atlanta, GA 30353 | AT&T<br>PO Box 537104<br>Atlanta, GA 30353<br>888-826-0132 | | | 540.62 |
| Waste Management<br>PO Box 541008<br>Los Angeles, CA 90054 | Waste Management<br>PO Box 541008<br>Los Angeles, CA 90054<br>(213) 634-3113 | | | 121.90 |

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, **Mark Handel**, the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date _____4 - 13 - 15_____     Signature _____

**Mark Handel**
Debtor

*Penalty for making a false statement or concealing property*: Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

## United States Bankruptcy Court
### Central District of California

In re  **Mark Handel**                                                          Case No. _____

                                                      Debtor

                                                                                Chapter_____**11**_____

## LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with Rule 1007(a)(3) for filing in this chapter 11 case.

| Name and last known address<br>or place of business of holder | Security<br>Class | Number<br>of Securities | Kind of<br>Interest |
| --- | --- | --- | --- |

**None**

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the  of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing
List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date____4 . 13 . 15_____                     Signature_____

                                                                **Mark Handel**
                                                                Debtor

*Penalty for making a false statement or concealing property:*  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C §§ 152 and 3571.

____**0**____ continuation sheets attached to List of Equity Security Holders

EX K-010

## STATEMENT OF RELATED CASES
### INFORMATION REQUIRED BY LBR 1015-2
### UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA

1. A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, his/her spouse, his or her current or former domestic partner, an affiliate of the debtor, any copartnership or joint venture of which debtor is or formerly was a general or limited partner, or member, or any corporation of which the debtor is a director, officer, or person in control, as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature thereof, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

**None**

2. (If petitioner is a partnership or joint venture) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor or an affiliate of the debtor, or a general partner in the debtor, a relative of the general partner, general partner of, or person in control of the debtor, partnership in which the debtor is a general partner, general partner of the debtor, or person in control of the debtor as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature of the proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

**None**

3. (If petitioner is a corporation) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, or any of its affiliates or subsidiaries, a director of the debtor, an officer of the debtor, a person in control of the debtor, a partnership in which the debtor is general partner, a general partner of the debtor, a relative of the general partner, director, officer, or person in control of the debtor, or any persons, firms or corporations owning 20% or more of its voting stock as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

**None**

4. (If petitioner is an individual) A petition under the Bankruptcy Reform Act of 1978, including amendments thereof, has been filed by or against the debtor within the last 180 days: (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

**None**

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed at ___Los Angeles___ , California.

Date: ___4-13-15___

**Mark Handel**
Signature of Debtor

Signature of Joint Debtor

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012* Page 1 **F 1015-2.1.STMT.RELATED CASES**

B6 Summary (Official Form 6 - Summary) (12/14)

# United States Bankruptcy Court
## Central District of California

In re    **Mark Handel**

Debtor

Case No. _____

Chapter_____**11**_____

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 3,725,000.00 | | |
| B - Personal Property | Yes | 4 | 20,000.00 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 3 | | 34,916,722.06 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 2 | | 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 5 | | 64,027,463.72 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 2 | | | 4,417.92 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 2 | | | 3,000.00 |
| Total Number of Sheets of ALL Schedules | | 22 | | | |
| | | Total Assets | 3,745,000.00 | | |
| | | | Total Liabilities | 98,944,185.78 | |

EX K-012

B 6 Summary (Official Form 6 - Summary) (12/14)

# United States Bankruptcy Court
## Central District of California

In re    **Mark Handel**

Case No. _____

Debtor

Chapter _____ **11** _____

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C.§ 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

■ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | |
| Student Loan Obligations (from Schedule F) | |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | |
| TOTAL | |

**State the following:**

| | |
|---|---|
| Average Income (from Schedule I, Line 12) | |
| Average Expenses (from Schedule J, Line 22) | |
| Current Monthly Income (from Form 22A-1 Line 11; OR, Form 22B Line 14; OR, Form 22C-1 Line 14 ) | |

**State the following:**

| | | |
|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column | | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | |
| 4. Total from Schedule F | | |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | |

EX K-013

B6A (Official Form 6A) (12/07)

In re   **Mark Handel** _____,   Case No. _____
                                            Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **23575 Parksouth St., Calabassas, CA 91302 Principal residence title vested in Handel Family Trust, dated March 21, 2005** | **Fee simple** | - | **3,200,000.00** | **31,295,906.60** |
| **279 Vicorian Village Dr. #44, Elkhart Lake, Wisconson 4-bedroom condo title vested in Sarah J. Lulloff and Mark Handel, and assigned, transferred and set over to Handel Family Trust, dated March 21, 2005** | **Fee simple** | - | **525,000.00** | **3,620,815.46** |

|  | Sub-Total > | **3,725,000.00** | (Total of this page) |
|---|---|---|---|
|  | Total > | **3,725,000.00** | |

<span style="color:red">EX K-014</span>

_____**0**_____ continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com                                                    Best Case Bankruptcy

B6B (Official Form 6B) (12/07)

In re    **Mark Handel**                                                    Case No. _____

                              Debtor

## SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| | Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|---|
| 1. | Cash on hand | | **Cash on hand $3000** | - | **3,000.00** |
| 2. | Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | X | | | |
| 3. | Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. | Household goods and furnishings, including audio, video, and computer equipment. | | **Household goods** | - | **7,000.00** |
| 5. | Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | | **Art** | - | **3,000.00** |
| 6. | Wearing apparel. | X | | | |
| 7. | Furs and jewelry. | | **Jewelry** | - | **2,000.00** |
| 8. | Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. | Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | **Lincoln Benefit Life - Term Life Insurance Policy - No Value ($5 million if pays out)** | - | **0.00** |
| 10. | Annuities. Itemize and name each issuer. | X | | | |

                                                              Sub-Total >        **15,000.00**
                                                           (Total of this page)

__**3**__  continuation sheets attached to the Schedule of Personal Property

EX K-015

B6B (Official Form 6B) (12/07) - Cont.

In re   **Mark Handel**                                                    Case No. _____
                                    Debtor

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | | **Allstar Growth Fund LLC** **0.138492% ownership** | - | 0.00 |
| 14. Interests in partnerships or joint ventures. Itemize. | | **MSB Killion Partners, LP** **Limited Partnership** **Tax ID #20-3746776** **Beginning date: 11-5-05** | - | 0.00 |
| | | Limited Partner: Mark Handel, as trustee of The Handel Family Trust dated March 21, 2005 33% | | |
| | | **MSB Bloomfield Partners, LP** **Tax ID #20-3587404** **Beginning date:    9-30-05** | - | 0.00 |
| | | Limited Partner: Mark Handel, as trustee of The Handel Family Trust dated March 21, 2005 33% | | |
| | | **MB Valley Partners** **Partnership** **Tax ID #20-3587319** **Beginning date:    10-1-05** | - | 0.00 |
| | | Limited Partner: Mark Handel, as trustee of The Handel Family Trust dated March 21, 2005 50% | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |

Sub-Total >         **0.00**
(Total of this page)

Sheet __1__ of __3__ continuation sheets attached
to the Schedule of Personal Property

EX K-016

B6B (Official Form 6B) (12/07) - Cont.

In re  **Mark Handel**                                                      Case No. _____
                                                              Debtor

## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | | **See #9 regarding life insurance policy** | - | 0.00 |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **Cross claims against State Farm General Inc. Co. in lawsuit, State Farm General Inc. Co. v. MWH Development Corp. et al., LC100714** | - | **Unknown** |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | **2003 Mercedez** | - | **5,000.00** |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |

|  | Sub-Total >  | **5,000.00** |
|---|---|---|
|  | (Total of this page) | |

Sheet __2__ of __3__ continuation sheets attached
to the Schedule of Personal Property

<span style="color:red">EX K-017</span>

B6B (Official Form 6B) (12/07) - Cont.

In re    **Mark Handel**                                                          Case No. _____

Debtor

# SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

Sheet __3__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Sub-Total >                              **0.00**
(Total of this page)
Total >                          **20,000.00**
EX K-018
(Report also on Summary of Schedules)

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

B6C (Official Form 6C) (04/13)

In re **Mark Handel** _____    Case No. _____
                                    Debtor(s)

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:        ☐ Check if debtor claims a homestead exemption that exceeds
(Check one box)                                    $155,675.*
☐   11 U.S.C. §522(b)(2)
☒   11 U.S.C. §522(b)(3)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Real Property** | | | |
| 23575 Parksouth St., Calabassas, CA 91302 **Principal residence** title vested in Handel Family Trust, dated March 21, 2005 | C.C.P. § 704.730 | Up to $175,000 if funds are available | 3,200,000.00 |
| **Household Goods and Furnishings** | | | |
| Household goods | C.C.P. § 704.020 | 7,000.00 | 7,000.00 |
| **Interests in Insurance Policies** | | | |
| Lincoln Benefit Life - Term Life Insurance Policy - No Value ($5 million if pays out) | C.C.P. § 704.100 | 100% of benefits payable upon death; currently $0 | Contingent |
| **Automobiles, Trucks, Trailers, and Other Vehicles** | | | |
| 2003 Mercedez | C.C.P. § 704.010 | 2,900.00 | 5,000.00 |
| **Other Property** | | | |
| Any vested or contingent interests in pensions and retirement plans that the Debtor now has or may ever have | C.C.P. § 704.110 | unknown, depending on market performance | Unknown |
| Jewelry and Art | C.C.P. § 704.040 | 7,625.00 | 5,000.00 |
| | Total: | 17,525.00 | 3,217,000.00 |

*Amount subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.
Schedule of Property Claimed as Exempt consists of 1 total page(s)                    EX K-019

B6D (Official Form 6D) (12/07)

In re **Mark Handel**                                                                          Case No. _____
                                                    ,
                                              Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
| | | H W J C | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Account No. | | | **Deed of Trust** | | | | | | |
| **Bruce Tolchin** c/o Onyx capital corp 11777 San Vicente Blvd. suite 640 Los Angeles, CA 90049 | | | - | **23575 Parksouth St., Calabassas, CA 91302 Principal residence title vested in Handel Family Trust, dated March 21, 2005** | | | | | |
| | | | Value $ | 3,200,000.00 | | | | 393,267.13 | 0.00 |
| Account No. | | | **1/27/2015 Judgment Lien** | | | | | | |
| **California Bank and Trust** c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017 | | | - | **279 Vicorian Village Dr. #44, Elkhart Lake, Wisconson 4-bedroom condo title vested in Sarah J. Lulloff and Mark Handel, and assigned, transferred and set over to Handel Family Trust, dated** | | | X | | |
| | | | Value $ | 525,000.00 | | | | 3,276,599.00 | 3,276,599.00 |
| Account No. 683104913 (Formerly WAMU) | | | **Deed of Trust** | | | | | | |
| **Chase Paymentech** PO Box 78420 Phoenix, AZ 85062 | | | - | **23575 Parksouth St., Calabassas, CA 91302 Principal residence title vested in Handel Family Trust, dated March 21, 2005** | | | | | |
| | | | Value $ | 3,200,000.00 | | | | 1,532,700.42 | 0.00 |
| Account No. **Notice Purposes Only** | | | | | | | | | |
| **De Lage Landen Financial Services** 111 Old Eagle School Rd. Wayne, PA 19087 | | | - | | | | X | | |
| | | | Value $ | 0.00 | | | | 0.00 | 0.00 |

**2** continuation sheets attached

Subtotal
(Total of this page)                                                    **5,202,566.55** | **3,276,599.00**

EX K-020

B6D (Official Form 6D) (12/07) - Cont.

In re **Mark Handel** , Case No. _____

Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| | | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | | | | | | |
| Account No. | | **Deed of Trust** | | | | | | | |
| Jack Benadon (Korogluyan) 3500 W. Olive Avenue #1190 Burbank, CA 91505 | | 23575 Parksouth St., Calabassas, CA 91302 **Principal residence** title vested in Handel Family Trust, dated March 21, 2005 | | | | | | | |
| | | Value $ | 3,200,000.00 | | | | | 600,000.00 | 571,316.04 |
| Account No. | | **Abstract of Judgment** | | | | | | | |
| Jack Benadon (Korogluyan) 3500 W. Olive Avenue #1190 Burbank, CA 91505 | | 23575 Parksouth St., Calabassas, CA 91302 **Principal residence** title vested in Handel Family Trust, dated March 21, 2005 | | | | | | | |
| | | Value $ | 3,200,000.00 | | | | | 2,000,000.00 | 2,000,000.00 |
| Account No. | | **Deed of Trust** | | | | | | | |
| Jack Benadon (M Ghosn) 3500 W. Olive Avenue #1190 Burbank, CA 91505 | | 23575 Parksouth St., Calabassas, CA 91302 **Principal residence** title vested in Handel Family Trust, dated March 21, 2005 | | | | | | | |
| | | Value $ | 3,200,000.00 | | | | | 1,245,348.49 | 0.00 |
| Account No. | | **Abstract of Judgment** | | | | | | | |
| Jack Benadon (Weyerhauser) 3500 W. Olive Avenue #1190 Burbank, CA 91505 | | 23575 Parksouth St., Calabassas, CA 91302 **Principal residence** title vested in Handel Family Trust, dated March 21, 2005 | | | | | | | |
| | | Value $ | 3,200,000.00 | | | | | 25,276,287.00 | 25,276,287.00 |
| Account No. **Notice Purposes Only** | | **Tax Lien** | | | | | | | |
| Los Angeles County Treasurer 225 N. Hill Street Los Angeles, CA 90012 | | 23575 Parksouth St., Calabassas, CA 91302 **Principal residence** title vested in Handel Family Trust, dated March 21, 2005 | | | | | | | |
| | | Value $ | 3,200,000.00 | | | | | 0.00 | 0.00 |

Sheet 1 of 2 continuation sheets attached to
Schedule of Creditors Holding Secured Claims

Subtotal
(Total of this page)

| 29,121,635.49 | 27,847,603.04 |
|---|---|

EX K-021

B6D (Official Form 6D) (12/07) - Cont.

In re **Mark Handel**                                          Case No. _____

                          Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | Husband, Wife, Joint, or Community DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | | |
| Account No. **596497066**<br><br>**Nationstar Mortgage**<br>P.O. Box 60516<br>City of Industry, CA 91716-0516 | | | | Deed of Trust<br>279 Vicorian Village Dr. #44, Elkhart Lake, Wisconson<br>4-bedroom condo<br>title vested in Sarah J. Lulloff and Mark Handel, and assigned, transferred and set over to Handel Family Trust, dated March 21, 2005 | | | | | |
| | | | | Value $            525,000.00 | | | | 344,216.46 | 0.00 |
| Account No. **(lawsuit)**<br><br>**Phoenix Pavement Company**<br>c/o Law Offices of Nolan E. Clark<br>2001 Financial Way, Ste. 102<br>Glendora, CA 91741 | | | | Lis Pendens | X | X | X | | |
| | | | | Value $            0.00 | | | | 0.00 | 0.00 |
| Account No. **Notice Purposes Only**<br><br>**Sheboygan County Tax Collector**<br>**Administration Building**<br>508 New York Avenue<br>Sheboygan, WI 53081 | | | | Tax Lien<br>279 Vicorian Village Dr. #44, Elkhart Lake, Wisconson<br>4-bedroom condo<br>title vested in Sarah J. Lulloff and Mark Handel, and assigned, transferred and set over to Handel Family Trust, dated March 21, 2005 | | | | | |
| | | | | Value $            525,000.00 | | | | 0.00 | 0.00 |
| Account No.<br><br>**Sunnyside Development**<br>c/o Robert A. Sall Law Firm<br>32351 Coast Highway<br>Laguna Beach, CA 92651 | | | | Abstract of Judgment<br><br>23575 Parksouth St., Calabassas, CA 91302<br>Principal residence<br>title vested in Handel Family Trust, dated March 21, 2005 | | | | | |
| | | | | Value $            3,200,000.00 | | | | 248,303.56 | 248,303.56 |
| Account No. | | | | | | | | | |
| | | | | Value $ | | | | | |

Sheet **2** of **2** continuation sheets attached to
Schedule of Creditors Holding Secured Claims

|  |  |  |
|---|---|---|
| Subtotal<br>(Total of this page) | 592,520.02 | 248,303.56 |
| Total<br>(Report on Summary of Schedules) | 34,916,722.05 | K-31,372,505.60 |

B6E (Official Form 6E) (4/13)

In re **Mark Handel** ,                                                    Case No. _____
                        Debtor

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts <u>not</u> entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐ **Domestic support obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $12,475* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $6,150* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

Claims of individuals up to $2,775* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

■ **Taxes and certain other debts owed to governmental units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**

Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

* Amount subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.          EX K-023

B6E (Official Form 6E) (4/13) - Cont.

In re   **Mark Handel**                                             Case No. _____
_____,
                              Debtor

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
(Continuation Sheet)

**Taxes and Certain Other Debts
Owed to Governmental Units**

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | Husband, Wife, Joint, or Community — DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY / AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|
| Account No. | | | For Notice Purposes Only | | | | | |
| **Employment Development Dept. Bankruptcy Group MIC 92E P.O. Box 826880 Sacramento, CA 94280-0001** | | - | | | | | | 0.00 |
| | | | | | | | 0.00 | 0.00 |
| Account No. | | | For Notice Purposes Only | | | | | |
| **Franchise Tax Board Special Procedures - Insolvency P.O. Box 2952 Sacramento, CA 95812-2952** | | - | | | | | | 0.00 |
| | | | | | | | 0.00 | 0.00 |
| Account No. | | | For Notice Purposes Only | | | | | |
| **Internal Revenue Service Insolvency I Stop 5022 300 N. Los Angeles St., # 4062 Los Angeles, CA 90012** | | - | | | | | | 0.00 |
| | | | | | | | 0.00 | 0.00 |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |

Sheet __1__ of __1__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

Subtotal
(Total of this page)                                    0.00        0.00

Total
(Report on Summary of Schedules)              0.00        0.00

0.00
0.00

EXK-024

B6F (Official Form 6F) (12/07)

In re    **Mark Handel**                                              Case No. _____

                                        Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐    Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
| | | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | | | | |
| Account No. | | | legal fees and costs | | | | |
| **Adler Law, APC** **24007 Ventura Blvd. Suite 270** **Calabasas, CA 91302** | | - | | | | | 7,448.00 |
| Account No. **568786943** | | | | | | | |
| **AT&T** **PO Box 537104** **Atlanta, GA 30353** | | - | | | | | 540.62 |
| Account No. | | | 7/1/07 | | | | |
| **Bank of the West (Indy Mac)** **P.O. Box 615274** **Los Angeles, CA 90051** | | - | | | | | 2,851,887.00 |
| Account No. **3105** | | | | | | | |
| **Bendadon, Shapiro, Villalobos** **3500 W. Olive Avenue, #1190** **Burbank, CA 91505** | | - | | | | | 2,975.00 |

**4**__ continuation sheets attached

Subtotal
(Total of this page)                                         **2,862,850.62**

EX K-025

B6F (Official Form 6F) (12/07) - Cont.

In re __Mark Handel_____ ,                          Case No. _____
                              Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| | | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | | | | |
| Account No. | | | 6/11/10 | | | | |
| **California Bank and Trust** c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017 | | - | | | | X | 2,157,658.00 |
| Account No. **OCSC 30-2010-00354824** | | | 7/7/10 | | | | |
| **California Bank and Trust** c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017 | | - | | | | X | 4,665,338.00 |
| Account No. **4266-8412-5916-7862** | | | | | | | |
| **Chase Slate** PO Box 94014 Palatine, IL 60094 | | - | | | | | 29.99 |
| Account No. **5466-1601-3119-1734** | | | | | | | |
| **Citi Advantage** **Processing Center** Des Moines, IA 50363 | | - | | | | | 78.29 |
| Account No. | | | 3/27/08 | | | | |
| **Comerica Bank** 2321 Rosecrans Ave., Suite 5000 El Segundo, CA 90245 | | - | | | | | 6,892,065.00 |

Sheet no. __1__ of __4__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                13,715,169.28

EX K-026

Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re    **Mark Handel**                                                          Case No. _____

_____,
Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | Husband, Wife, Joint, or Community DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | 11/28/10 | | | | |
| **Comerica Bank 2321 Rosecrans Ave., Suite 5000 El Segundo, CA 90245** | - | | | | | | 8,065,660.00 |
| Account No. | | | 4/12/10 | | | | |
| **Comerica Bank 2321 Rosecrans Ave., Suite 5000 El Segundo, CA 90245** | - | | | | | | 8,288,295.00 |
| Account No. | | | 7/10/10 | | | | |
| **Comerica Bank 2321 Rosecrans Ave., Suite 5000 El Segundo, CA 90245** | - | | | | | | 3,599,927.00 |
| Account No. **A139916308** | | | | | | | |
| **Farmers Insurance 7524 Southyby Dr. attn: Fred Yeger Canoga Park, CA 91304** | - | | | | | | 1,311.18 |
| Account No. **SFSC CGC 12-520727** | | | 5/24/12 **Resolved by Judgment** | | | | |
| **Jack Benadon (Appian Group) 3500 W. Olive Avenue #1190 Burbank, CA 91505** | - | | | | | | 24,711,940.00 |

Sheet no. __2__ of __4__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)         **44,667,133.18**

EX K-027

B6F (Official Form 6F) (12/07) - Cont.

In re __Mark Handel_____,                 Case No. _____
                            Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | Husband, Wife, Joint, or Community — DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. **LASC SC 104809** <br><br> **Jack Benadon (Indy Mac)** <br> **3500 W. Olive Avenue #1190** <br> **Burbank, CA 91505** | | - | **3/18/10** <br> **Resolved by Judgment** | | | | **2,781,239.00** |
| Account No. **350168** <br><br> **Los Virgenes Water District** <br> **4232 Las Virgenes Rd.** <br> **Calabasas, CA 91302** | | - | | | | | **817.97** |
| Account No. **Lawsuit** <br><br> **State Farm General Inc. Co.** <br> **c/o Reese Law Group** <br> **3168 Lionshead Ave.** <br> **Carlsbad, CA 92010** | | - | **State Farm General Inc. Co. v. MWH Development Corp. et al.** <br> **Subject to setoff.** | X | X | X | **0.00** |
| Account No. **8448200184980690** <br><br> **Time Warner Cable** <br> **PO Box 986** <br> **Toledo, OH 43697** | | - | | | | | **96.94** |
| Account No. **500-0151800-0283-2** <br><br> **Waste Management** <br> **PO Box 541008** <br> **Los Angeles, CA 90054** | | - | | | | | **121.90** |

Sheet no. __3__ of __4__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)            **2,782,275.81**

EX K-028

B6F (Official Form 6F) (12/07) - Cont.

In re    **Mark Handel**                                              Case No. _____

                                                    Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
| | | H W | J C | | | | | |
| Account No. **41058319500002** | | | | | | | | |
| **Wisconsin Public Service** **PO Box 19003** **Green Bay, WI 54307** | | - | | | | | | 34.83 |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |

Sheet no. **4** of **4** sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page) **34.83**

Total
(Report on Summary of Schedules) EX K-1029 **64,027,463.72**

B6G (Official Form 6G) (12/07)

In re     **Mark Handel**                                                                  Case No. _____

                                                    Debtor

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|

**0**     continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

EX K-030

B6H (Official Form 6H) (12/07)

In re **Mark Handel** Case No. _____

_____
Debtor

## SCHEDULE H - CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|

**Codebtors and/or Guarantors**
   **Guarantors and co-debtors may exist on certain**
**debts, but such entities are generally defunct or**
**have no assets**

**0**

_____ continuation sheets attached to Schedule of Codebtors

EX K-031

Fill in this information to identify your case:

Debtor 1      **Mark Handel**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA

Case number
(if known)

Check if this is:

☐ An amended filing

☐ A supplement showing post-petition chapter 13 income as of the following date:

MM / DD/ YYYY

# Official Form B 6I

## Schedule I: Your Income

12/13

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Describe Employment

| 1. Fill in your employment information. | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| If you have more than one job, attach a separate page with information about additional employers. | **Employment status** | ☐ Employed ☑ Not employed | ☑ Employed ☐ Not employed |
| | Occupation | | **Administrative Assistant** |
| Include part-time, seasonal, or self-employed work. | Employer's name | | **Center for Suorragate Parenting** |
| Occupation may include student or homemaker, if it applies. | Employer's address | | **15821 Ventura Blvd., Suite 625 Encino, CA 91436** |
| | How long employed there? | | **2 years 7 months** |

### Part 2:    Give Details About Monthly Income

**Estimate monthly income as of the date you file this form.** If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $   0.00 | $ | 960.00 |
| 3. | Estimate and list monthly overtime pay. | 3. | +$   0.00 | +$ | 0.00 |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. | $   0.00 | $ | 960.00 |

EX K-032

Debtor 1    **Mark Handel**    Case number (if known) _____

|  |  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| | Copy line 4 here | 4. | $ 0.00 | $ 960.00 |

5. List all payroll deductions:

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 5a. | Tax, Medicare, and Social Security deductions | 5a. | $ 0.00 | $ 82.08 |
| 5b. | Mandatory contributions for retirement plans | 5b. | $ 0.00 | $ 0.00 |
| 5c. | Voluntary contributions for retirement plans | 5c. | $ 0.00 | $ 0.00 |
| 5d. | Required repayments of retirement fund loans | 5d. | $ 0.00 | $ 0.00 |
| 5e. | Insurance | 5e. | $ 0.00 | $ 0.00 |
| 5f. | Domestic support obligations | 5f. | $ 0.00 | $ 0.00 |
| 5g. | Union dues | 5g. | $ 0.00 | $ 0.00 |
| 5h. | Other deductions. Specify: _____ | 5h.+ | $ 0.00  + | $ 0.00 |

6. **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h.    6.    $ 0.00    $ 82.08

7. **Calculate total monthly take-home pay.** Subtract line 6 from line 4.    7.    $ 0.00    $ 877.92

8. List all other income regularly received:

8a. Net income from rental property and from operating a business, profession, or farm
Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income.    8a.    $ 0.00    $ 0.00

8b. Interest and dividends    8b.    $ 540.00    $ 0.00

8c. Family support payments that you, a non-filing spouse, or a dependent regularly receive
Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement.    8c.    $ 0.00    $ 0.00

8d. Unemployment compensation    8d.    $ 0.00    $ 0.00

8e. Social Security    8e.    $ 0.00    $ 0.00

8f. Other government assistance that you regularly receive
Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies.
Specify: _____    8f.    $ 0.00    $ 0.00

8g. Pension or retirement income    8g.    $ 0.00    $ 0.00

8h. Other monthly income. Specify: _____    8h.+    $ 0.00  +    $ 0.00

9. **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h.    9.    $ 540.00    $ 0.00

10. **Calculate monthly income.** Add line 7 + line 9.    10.    $ 540.00  +  $ 877.92  =  $ 1,417.92
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11. State all other regular contributions to the expenses that you list in Schedule J.
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in Schedule J.
Specify:    gifts from wife    11.  +$ 3,000.00

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
Write that amount on the Summary of Schedules and Statistical Summary of Certain Liabilities and Related Data, if it applies    12.    $ 4,417.92

Combined monthly income

13. Do you expect an increase or decrease within the year after you file this form?

■ No.

□ Yes. Explain: [_____]

EX K-033

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Mark Handel** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | |

Check if this is:

☐ An amended filing

☐ A supplement showing post-petition chapter 13 expenses as of the following date:

MM / DD / YYYY

☐ A separate filing for Debtor 2 because Debtor 2 maintains a separate household

## Official Form B 6J
## Schedule J: Your Expenses                                                   12/13

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:   Describe Your Household

1. **Is this a joint case?**

   ■ No. Go to line 2.
   ☐ Yes. **Does Debtor 2 live in a separate household?**

      ☐ No
      ☐ Yes. Debtor 2 must file a separate Schedule J.

2. **Do you have dependents?**   ☐ No

| Do not list Debtor 1 and Debtor 2. Do not state the dependents' names. | ■ Yes. | Fill out this information for each dependent............. | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|---|---|---|
| | | | **Wife** | | ☐ No  ■ Yes |
| | | | **Daughter** | 11 | ☐ No  ■ Yes |
| | | | **Son** | 11 | ☐ No  ■ Yes |
| | | | **Son** | 16 | ☐ No  ■ Yes |
| | | | **Daughter** | 19 | ■ No  ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**   ☐ No   ■ Yes

### Part 2:   Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 6I.)

**Your expenses**

| | | | |
|---|---|---|---|
| 4. | The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4. $ | 0.00 |
| | **If not included in line 4:** | | |
| 4a. | Real estate taxes | 4a. $ | 0.00 |
| 4b. | Property, homeowner's, or renter's insurance | 4b. $ | 0.00 |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c. $ | 0.00 |
| 4d. | Homeowner's association or condominium dues | 4d. $ | 0.00 |
| 5. | Additional mortgage payments for your residence, such as home equity loans | 5. $ | 0.00 |

EX K-034

Debtor 1    **Mark Handel**                              Case number (if known) _____

| 6. | **Utilities:** | | |
|---|---|---|---|
| | 6a. | Electricity, heat, natural gas | 6a. $ | 0.00 |
| | 6b. | Water, sewer, garbage collection | 6b. $ | 0.00 |
| | 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. $ | 0.00 |
| | 6d. | Other. Specify: _____ | 6d. $ | 0.00 |
| 7. | **Food and housekeeping supplies** | | 7. $ | 1,600.00 |
| 8. | **Childcare and children's education costs** | | 8. $ | 1,300.00 |
| 9. | **Clothing, laundry, and dry cleaning** | | 9. $ | 50.00 |
| 10. | **Personal care products and services** | | 10. $ | 50.00 |
| 11. | **Medical and dental expenses** | | 11. $ | 0.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | | 12. $ | 0.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | | 13. $ | 0.00 |
| 14. | **Charitable contributions and religious donations** | | 14. $ | 0.00 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a. | Life insurance | 15a. $ | 0.00 |
| | 15b. | Health insurance | 15b. $ | 0.00 |
| | 15c. | Vehicle insurance | 15c. $ | 0.00 |
| | 15d. | Other insurance. Specify: _____ | 15d. $ | 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: _____ | | 16. $ | 0.00 |
| 17. | **Installment or lease payments:** | | | |
| | 17a. | Car payments for Vehicle 1 | 17a. $ | 0.00 |
| | 17b. | Car payments for Vehicle 2 | 17b. $ | 0.00 |
| | 17c. | Other. Specify: _____ | 17c. $ | 0.00 |
| | 17d. | Other. Specify: _____ | 17d. $ | 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5,** *Schedule I, Your Income* **(Official Form 6I).** | | 18. $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** Specify: _____ | | 19. $ | 0.00 |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on** *Schedule I: Your Income.* | | | |
| | 20a. | Mortgages on other property | 20a. $ | 0.00 |
| | 20b. | Real estate taxes | 20b. $ | 0.00 |
| | 20c. | Property, homeowner's, or renter's insurance | 20c. $ | 0.00 |
| | 20d. | Maintenance, repair, and upkeep expenses | 20d. $ | 0.00 |
| | 20e. | Homeowner's association or condominium dues | 20e. $ | 0.00 |
| 21. | **Other:** Specify: _____ | | 21. +$ | 0.00 |
| 22. | **Your monthly expenses.** Add lines 4 through 21. The result is your monthly expenses. | | 22. $ | 3,000.00 |
| 23. | **Calculate your monthly net income.** | | | |
| | 23a. | Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. $ | 4,417.92 |
| | 23b. | Copy your monthly expenses from line 22 above. | 23b. -$ | 3,000.00 |
| | 23c. | Subtract your monthly expenses from your monthly income. The result is your *monthly net income.* | 23c. $ | 1,417.92 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.

☐ Yes.
Explain: _____

EX K-035

B6 Declaration (Official Form 6 - Declaration). (12/07)

# United States Bankruptcy Court
## Central District of California

In re __Mark Handel__                                                        Case No. _____

                                    Debtor(s)                    Chapter     __11__

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of __23__ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date __4 - 13 - 15__          Signature _____

                                           **Mark Handel**
                                           Debtor

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

EX K-036
Best Case Bankruptcy

B7 (Official Form 7) (04/13)

# United States Bankruptcy Court
### Central District of California

In re   **Mark Handel**                                                  Case No.

                                             Debtor(s)          Chapter   **11**

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any persons in control of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(2), (31).

---

**1. Income from employment or operation of business**

None
■   State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

     AMOUNT          SOURCE

---

**2. Income other than from employment or operation of business**

None
☐   State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| $6,774.00 | 2013: Husband Interest / Dividends |
| $7,000.00 | 2014: Interest/Dividends: approximately |
| $0.00 | 2015 to date |

Software Copyright (c) 1996-2014 Best Case, LLC - www.bestcase.com

B7 (Official Form 7) (04/13)
2

### 3. Payments to creditors

None
■

*Complete a. or b., as appropriate, and c.*

a. *Individual or joint debtor(s) with primarily consumer debts:* List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None
☐

b. *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $6,225*. If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|---|
| **American Express**<br>**Box 0001**<br>**Los Angeles, CA 90096** | 1/8/2015<br>1/20/2015<br>1/20/2015<br>2/18/2015<br>2/18/2015<br>2/18/2015<br>3/24/2015<br>3/24/2015<br>3/24/2015<br>4/7/2015 | 23,777.20<br>365.35<br>219.67<br>16,743.05<br>434.72<br>49.90<br>14,066.95<br>647.83<br>219.67<br>31,630.32 | **$88,154.66** | **$0.00** |
| **Chase Mortgage**<br>**PO Box 78420**<br>**Phoenix, AZ 85062** | 1/8/2015<br>2/4/2015<br>3/4/2015<br>3/24/2015 | 11,601.25<br>11,601.25<br>11,601.25<br>11,601.25 | **$46,405.00** | **$0.00** |
| **Investor Capital Group**<br>**3500 W. Olive Avenue, Suite 1190**<br>**Burbank, CA 91505** | 2/25/2015<br>3/16/2015 | 150,000.00<br>72,000.00 | **$222,000.00** | **$0.00** |
| **Lincoln Benefit Title**<br>**PO Box 5708**<br>**Carol Stream, IL 60197** | 1/20/2015 | 8,552.25 | **$8,552.25** | **$0.00** |
| **Nationstar Mortgage**<br>**P.O. Box 60516**<br>**City of Industry, CA 91716-0516** | 1/8/2015<br>2/4/2015<br>3/4/2015<br>3/24/2015 | 2,540.67<br>2,540.67<br>2,540.67<br>2,540.67 | **$10,162.68** | **$0.00** |

None
■

c. *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

---

* *Amount subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

EX K-038

Best Case Bankruptcy

B7 (Official Form 7) (04/13)
3

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

**4. Suits and administrative proceedings, executions, garnishments and attachments**

None ☐    a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| **State Farm General Inc. Co. v. MWH Development Corp. et al., LC100714** | **Insurance Coverage** | **Los Angeles Superior Court (Van Nuys Courthouse), 6230 Sylmar Ave., Van Nuys, CA 91401; Dept. Q** | **Pending** |
| **Sunnyside Development Partners LLC et al. v. MWH Development Corp. et al., BC375270** | **Contractual Fraud** | **Los Angeles Superior Court; Dept. 44; 111 North Hill Street, Los Angeles, CA 90012** | **Judgment against Debtor; case still active and pending** |

None ☐    b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **California Bank and Trust c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017** | **January 27, 2015** | **lien was recorded on Condo in Wisconsin, valued at $525,000** |

**5. Repossessions, foreclosures and returns**

None ■    List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**6. Assignments and receiverships**

None ■    a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None ■    b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

EX K-039

B7 (Official Form 7) (04/13)

4

### 7. Gifts

None  ■    List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

### 8. Losses

None  ■    List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

### 9. Payments related to debt counseling or bankruptcy

None  ☐    List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYER IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| Levene, Neale, Bender, Yoo & Brill 10250 Constellation Blvd. Suite 1700 Los Angeles, CA 90067 | 4/2/2015 | $75,000 |
| Levene, Neale, Bender, Yoo & Brill 10250 Constellation Blvd. Suite 1700 Los Angeles, CA 90067 | 11/3/2014, DTMM Construction, Inc. | $10,000 |

### 10. Other transfers

None  ■    a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

None  ■    b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

B7 (Official Form 7) (04/13)
5

**11. Closed financial accounts**

None   List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or
■      otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other
       financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds,
       cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must
       include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed,
       unless the spouses are separated and a joint petition is not filed.)

|  | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, | AMOUNT AND DATE OF SALE |
| NAME AND ADDRESS OF INSTITUTION | AND AMOUNT OF FINAL BALANCE | OR CLOSING |

**12. Safe deposit boxes**

None   List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year**
■      immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or
       depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not
       filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |

**13. Setoffs**

None   List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the
■      commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both
       spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |

**14. Property held for another person**

None   List all property owned by another person that the debtor holds or controls.
■

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |

**15. Prior address of debtor**

None   If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor
■      occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate
       address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |

**16. Spouses and Former Spouses**

None   If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho,
□      Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the
       commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in
       the community property state.

NAME
**Sarah J. Lulloff**

EX K-041
Best Case Bankruptcy

B7 (Official Form 7) (04/13)

6

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None   a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable
■      or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None   b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous
■      Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None   c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which
■      the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

**18 . Nature, location and name of business**

None   a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and
☐      ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| **MSB Killion Partners, LP** | **20-3746776** | **c/o Jack Benadon 3500 W. Olive Avenue #1190 Burbank, CA 91505** | **Limited Partnership**<br><br>**Ownership: Mark Handel, as trustee of The Handel Family Trust dated March 21, 2005.** | **Beginning date: 11-5-05** |

EX K-042

Best Case Bankruptcy

B7 (Official Form 7) (04/13)

7

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| **MSB Bloomfield Partners, LP** | **20-3587404** | c/o Jack Benadon 3500 W. Olive Avenue #1190 Burbank, CA 91505 | **Limited Partnership** **Ownership: Mark Handel, as trustee of The Handel Family Trust" dated March 21, 2005** | **Beginning date: 9-30-05** |
| **MB Valley Partners** | **20-3587319** | c/o Jack Benadon 3500 W. Olive Avenue #1190 Burbank, CA 91505 | **Partnership** **Ownership: Mark Handel, as trustee of The Handel Family Trust" dated March 21, 2005** | **Beginning date: 10-1-05** |

None ■   b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

NAME                                                        ADDRESS

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date ___4 - 13 - 15___          Signature _____

**Mark Handel**
Debtor

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

Form B203 - Disclosure of Compensation of Attorney for Debtor - (1/98)                    1998 USBC, Central District of California

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| In re | Case No.: |
|---|---|
| **Mark Handel** Debtor. | **DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR** |

1.  Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

    For legal services, I have agreed to accept .............................................. $        75,000.00

    Prior to the filing of this statement I have received ........................... $        75,000.00

    Balance Due ...................................................................................... $             0.00

2.  $ **1,717.00** of the filing fee has been paid.

3.  The source of the compensation paid to me was:

    ■ Debtor     ☐ Other (specify):

4.  The source of compensation to be paid to me is:

    ■ Debtor     ☐ Other (specify):

5.  ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

    ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

6.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
    a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
    b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
    c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
    d. Representation of the debtor in adversary proceedings and other contested bankruptcy matters;
    e. [Other provisions as needed]
        **Advising the Debtor with regard to the requirements of the Bankruptcy Court, Bankruptcy Code, Bankruptcy Rules and the Office of the United States Trustee as they pertain to the Debtor; advising the Debtor with regard to certain rights and remedies of its bankruptcy estate and the rights, claims and interests of creditors; representing the Debtor in any proceeding or hearing in the Bankruptcy Court involving its estate unless the Debtor is represented in such proceeding or hearing by other special counsel; conducting examinations of witnesses, claimants or adverse parties and representing the Debtor in any adversary proceeding except to the extent that any such adversary proceeding is in an area outside of LNBYB's expertise or which is beyond LNBYB's staffing capabilities; preparing and assisting the Debtor in the preparation of reports, applications, pleadings and orders including, but not limited to, applications to employ professionals, interim statements and operating reports, initial filing requirements, schedules and statement of financial affairs, lease pleadings, cash collateral pleadings, financing pleadings, and pleadings with respect to the Debtor's use, sale or lease of property outside the ordinary course of business; representing the Debtor with regard to obtaining use of debtor in possession financing and/or cash collateral including, but not limited to, negotiating and seeking Bankruptcy Court approval of any debtor in possession financing and/or cash collateral pleading or stipulation and preparing any pleadings relating to obtaining use of debtor in possession financing and/or cash collateral; assisting the Debtor in the negotiation, formulation, preparation and confirmation of a plan of reorganization and the preparation and approval of a disclosure statement in respect of the plan; and performing any other services which may be appropriate in LNBRB's representation of the Debtor during its bankruptcy case.**

EX K-044

**Form B203 Page Two - Disclosure of Compensation of Attorney for Debtor - (1/88)**   1998 USBC, Central District of California

7.   By agreement with the debtor(s), the above-disclosed fee does not include the following services
   **Matters which are outside of LNBYB's specialization**

| CERTIFICATION |
|---|
| I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding. |

_4 - 13 - 15_

| | |
|---|---|
| *Date* | **David L. Neale 141225** |
| | *Signature of Attorney* |
| | **Levene, Neale, Bender, Yoo & Brill LLP** |
| | *Name of Law Firm* |
| | **10250 Constellation Blvd.** |
| | **Suite 1700** |
| | **Los Angeles, CA 90067** |
| | **(310) 229-1234** |

EX K-045

February 2006

2006 USBC Central District of California

## United States Bankruptcy Court
### Central District of California

In re __Mark Handel__

Debtor(s)

Case No. _____

Chapter __11__

## DEBTOR'S CERTIFICATION OF EMPLOYMENT INCOME
## PURSUANT TO 11 U.S.C. § 521 (a)(1)(B)(iv)

Please fill out the following blank(s) and check the box next to one of the following statements:

I, __Mark Handel__, the debtor in this case, declare under penalty of perjury under the laws of the United States of America that:

☐    I have attached to this certificate copies of my pay stubs, pay advices and/or other proof of employment income for the 60-day period prior to the date of the filing of my bankruptcy petition.
(*NOTE: the filer is responsible for blacking out the Social Security number on pay stubs prior to filing them.*)

☐    I was self-employed for the entire 60-day period prior to the date of the filing of my bankruptcy petition, and received no payment from any other employer.

■    I was unemployed for the entire 60-day period prior to the date of the filing of my bankruptcy petition.

I, _____, the debtor in this case, declare under penalty of perjury under the laws of the United States of America that:

☐    I have attached to this certificate copies of my pay stubs, pay advices and/or other proof of employment income for the 60-day period prior to the date of the filing of my bankruptcy petition.
(*NOTE: the filer is responsible for blacking out the Social Security number on pay stubs prior to filing them.*)

☐    I was self-employed for the entire 60-day period prior to the date of the filing of my bankruptcy petition, and received no payment from any other employer.

☐    I was unemployed for the entire 60-day period prior to the date of the filing of my bankruptcy petition.

Date __4.13.15__      Signature _____

**Mark Handel**
Debtor

EX K-046

Fill in this information to identify your case:

Debtor 1    **Mark Handel**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    Central District of California

Case number
(if known)

☐ Check if this is an amended filing

## Official Form 22B
## Chapter 11 Statement of Your Current Monthly Income                    12/14

You must file this form if you are an individual and are filing for bankruptcy under Chapter 11. If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On top of any additional pages, write your name and case number (if known).

| Part 1: | Calculate Your Average Monthly Income |
|---|---|

1. **What is your marital and filing status?** Check one only.

   ☐ **Not married.** Fill out Column A, lines 2-11.

   ☐ **Married and your spouse is filing with you.** Fill out both Columns A and B, lines 2-11.

   ☐ **Married and your spouse is NOT filing with you.** Fill out Column A, lines 2-11.

Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case. 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

|  | Column A Debtor 1 | Column B Debtor 2 |
|---|---|---|
| 2. **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $ 0.00 | $ |
| 3. **Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | $ 0.00 | $ |
| 4. **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Include regular contributions from a spouse only if Column B is not filled in. Do not include payments you listed on line 3. | $ 0.00 | $ |

5. **Net income from operating a business, profession, or farm**

| Gross receipts (before all deductions) | $ | 0.00 | | | |
| Ordinary and necessary operating expenses | -$ | 0.00 | | | |
| Net monthly income from a business, profession, or farm | $ | 0.00 | Copy here -> $ | 0.00 | $ |

6. **Net income from rental and other real property**

| Gross receipts (before all deductions) | $ | 0.00 | | | |
| Ordinary and necessary operating expenses | -$ | 0.00 | | | |
| Net monthly income from rental or other real property | $ | 0.00 | Copy here -> $ | 0.00 | $ |

Debtor 1 __**Mark Handel**_____    Case number (*if known*) _____

|  |  | Column A<br>Debtor 1 | Column B<br>Debtor 2 |
|---|---|---|---|

7. **Interest, dividends, and royalties**    $ 560.00    $ _____

8. **Unemployment compensation**    $ 0.00    $ _____

Do not enter the amount if you contend that the amount received was a benefit under
the Social Security Act. Instead, list it here:

For you ................................................. $ _____ 0.00

For your spouse ........................................ $ _____

9. **Pension or retirement income.** Do not include any amount received that was a
benefit under the Social Security Act.    $ 0.00    $ _____

10. **Income from all other sources not listed above.** Specify the source and amount.
Do not include any benefits received under the Social Security Act or payments
received as a victim of a war crime, a crime against humanity, or international or
domestic terrorism. If necessary, list other sources on a separate page and put the
total on line 10c.

10a. __Gifts from wife_____    $ 3,000.00    $ _____

10b. _____    $ 0.00    $ _____

10c. Total amounts from separate pages, if any.    **+** $ 0.00    $ _____

11. **Calculate your total average monthly income.** Add lines 2 through 10 for
each column. Then add the total for Column A to the total for Column B.    $ 3,560.00    **+** $ _____    **=** $ 3,560.00

                                                                           Total current monthly
                                                                          income

---

**Part 2:**    **Deduct any applicable marital adjustment**

12. **Copy your total average monthly income from Line 11.**    $ 3,560.00

13. **Calculate the marital adjustment. Check one:**

☐ You are not married. Fill in 0 in line 13d.

☐ You are married and your spouse is filing with you. Fill in 0 in line 13d.

■ You are married and your spouse is NOT filing with you.

Fill in the amount of the income listed in line 11, Column B, that was NOT regularly paid for the household expenses
of you or your dependents, such as payment of the spouse's tax liability or the spouse's support of someone other
than you or your dependents.

In lines 13a-c, specify the basis for excluding this income and the amount of income devoted to each purpose. If
necessary, list additional adjustments on a separate page.

If this adjustment does not apply, enter 0 on line 13 d.

13a. _____    $ _____

13b. _____    $ _____

13c. _____    **+** $ _____

13d. Total ..................................................    $ _____    Copy here. => 13d. -    0.00

14. **Your current monthly income.** Subtract line 13d from line 12.    14. $ 3,560.00

Debtor 1 **Mark Handel** _____   Case number (*if known*) _____

---

**Part 3:** **Sign Below**

By signing here, under penalty of perjury I declare that the information on this statement and in any attachments is true and correct.

X _____
**Mark Handel**
Signature of Debtor 1

Date  4 · 13 - 15
MM / DD / YYYY

---

EX K-049

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **David L. Neale**<br>**10250 Constellation Blvd.**<br>**Suite 1700**<br>**Los Angeles, CA 90067**<br>**(310) 229-1234**<br>California State Bar Number: **141225** | |
| ☐ *Debtor(s) appearing without an attorney*<br>■ *Attorney for Debtor(s):* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re:<br><br>**Mark Handel**<br><br><br><br><br><br><br>Debtor(s). | CASE NO.:<br>CHAPTER: **11**<br><br><br>**VERIFICATION OF MASTER MAILING LIST OF CREDITORS**<br><br>**[LBR 1007-1(d)]** |
|---|---|

Pursuant to LBR 1007-1(d), the Debtor, or the Debtor's attorney if applicable, certifies under penalty of perjury that the master mailing list of creditors filed in this bankruptcy case, consisting of __4__ sheet(s) is complete, correct, and consistent with the Debtor's schedules and I/we assume all responsibility for errors and omissions.

Date: _____4 · 13 · 15_____

_____
Debtor's signature

Date: _____

_____
Joint Debtor's signature (if applicable)

Date: _____

_____
Attorney's signature (if applicable)

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2014*                                                    **F 1007-1.MAILING.LIST.VERIFICATION**

Mark Handel
23575 Parksouth St.
Calabasas, CA 91302

David L. Neale
Levene, Neale, Bender, Yoo & Brill LLP
10250 Constellation Blvd.
Suite 1700
Los Angeles, CA 90067

Office of the U.S. Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

Adler Law, APC
24007 Ventura Blvd. Suite 270
Calabasas, CA 91302

AT&T
PO Box 537104
Atlanta, GA 30353

Bank of the West  Indy Mac
P.O. Box 615274
Los Angeles, CA 90051

Bendadon, Shapiro, Villalobos
3500 W. Olive Avenue, #1190
Burbank, CA 91505

Bruce Tolchin
c/o Onyx capital corp
11777 San Vicente Blvd. suite 640
Los Angeles, CA 90049

California Bank and Trust
c/o Barry Smith  Buchalter Nemer
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA 90017

Chase Paymentech
PO Box 78420
Phoenix, AZ 85062

Chase Slate
PO Box 94014
Palatine, IL 60094

Citi Advantage
Processing Center
Des Moines, IA 50363

Comerica Bank
2321 Rosecrans Ave., Suite 5000
El Segundo, CA 90245

De Lage Landen Financial Services
111 Old Eagle School Rd.
Wayne, PA 19087

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Farmers Insurance
7524 Southyby Dr.
attn: Fred Yeger
Canoga Park, CA 91304

EX K-052

Franchise Tax Board
Special Procedures - Insolvency
P.O. Box 2952
Sacramento, CA 95812-2952


Internal Revenue Service
Insolvency I Stop 5022
300 N. Los Angeles St., # 4062
Los Angeles, CA 90012


Jack Benadon  Appian Group
3500 W. Olive Avenue #1190
Burbank, CA 91505


Jack Benadon  Indy Mac
3500 W. Olive Avenue #1190
Burbank, CA 91505


Jack Benadon  Korogluyan
3500 W. Olive Avenue #1190
Burbank, CA 91505


Jack Benadon  M Ghosn
3500 W. Olive Avenue #1190
Burbank, CA 91505


Jack Benadon  Weyerhauser
3500 W. Olive Avenue #1190
Burbank, CA 91505


Los Angeles County Treasurer
225 N. Hill Street
Los Angeles, CA 90012

EX K-053

Los Virgenes Water District
4232 Las Virgenes Rd.
Calabasas, CA 91302


Nationstar Mortgage
P.O. Box 60516
City of Industry, CA 91716-0516


Phoenix Pavement Company
c/o Law Offices of Nolan E. Clark
2001 Financial Way, Ste. 102
Glendora, CA 91741


Sheboygan County Tax Collector
Administration Building
508 New York Avenue
Sheboygan, WI 53081


State Farm General Inc. Co.
c/o Reese Law Group
3168 Lionshead Ave.
Carlsbad, CA 92010


Sunnyside Development
c/o Robert A. Sall Law Firm
32351 Coast Highway
Laguna Beach, CA 92651


Time Warner Cable
PO Box 986
Toledo, OH 43697


Waste Management
PO Box 541008
Los Angeles, CA 90054

Wisconsin Public Service
PO Box 19003
Green Bay, WI 54307

EX K-055

# EXHIBIT L:

Transcript of Bankruptcy
341(a) Creditor's Hearing,
Dated 5/21/15

# EXHIBIT 1

Case: 24-6972, 11/18/2024, DktEntry: 2.1, Page 240 of 368

Case 1:15-bk-11292-MT   Doc 44-1   Filed 08/05/15   Entered 08/05/15 16:41:54   Desc
Exhibit Exhibit and Proof of Service   Page 2 of 36

BARRY A. SMITH (SBN:  48697)
    bsmith@buchalter.com
SCOTT O. SMITH (SBN:  62839)
    ssmith@buchalter.com
ANTHONY J. NAPOLITANO (SBN 227691)
    Email: anapolitano@buchalter.com
BUCHALTER NEMER
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

Attorneys for creditor
CALIFORNIA BANK & TRUST

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:15-bk-11292-MT |
| MARK HANDEL, | Chapter 11 |
| Debtor. | **TRANSCRIPT OF 341(A) MEETING OF CREDITORS** |
| | Date:       May 21, 2015 |
| | Time:       1:00 p.m. |
| | Place:      Office of the U.S. Trustee |
| | 21041 Burbank Blvd., Suite 100 |
| | Woodland Hills, California 91367 |

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3                    1

**TRANSCRIPT OF 341(A) MEETING OF CREDITORS**

EX L-002

Case: 24-6972, 11/18/2024, DktEntry: 2.1, Page 241 of 368

Case 1:15-bk-11292-MT    Doc 44-1    Filed 08/05/15    Entered 08/05/15 16:41:54    Desc
            Exhibit Exhibit and Proof of Service    Page 3 of 36

TRANSCRIPT OF PROCEEDINGS
BEFORE THE UNITED STATES TRUSTEE

Debtor:                                MARK HANDEL
                                       23575 Parksouth Street
                                       Calabasas, California 91302

Counsel for Debtor:                    DAVID L. NEALE, ESQ
                                       Levene Neale Bender Yoo & Brill LLP
                                       10250 Constellation Blvd., Suite 1700
                                       Los Angeles, California 90067


Counsel for creditor                   SCOTT O. SMITH, ESQ.
California Bank & Trust                 Buchalter Nemer, P.C.
                                       1000 Wilshire Boulevard, Suite 1500
                                       Los Angeles, California 90017

United States Trustee                  KATHERINE BUNKER, ESQ.
                                       Office of the U.S. Trustee
                                       915 Wilshire Boulevard, Suite 1850
                                       Los Angeles, California 90017


Proceedings recorded by electronic sound recording;
Transcript produced by Buchalter Nemer.

Recorder:                              Office of the United States Trustee

Transcriber:                           Buchalter Nemer, P.C.
                                       1000 Wilshire Blvd., Suite 1500
                                       Los Angeles, CA 90017
                                       (213) 891-0700


U.S. TRUSTEE:   Today is May the 21st, 2015 at approximately 1:00 pm.   This is the

meeting of creditors set forth under Section 341(a) for the bankruptcy case Mark Handel, Case

No. 1:15-bk-11292-MT.   My name is Kate Bunker of the United States Trustee – representing the

United States Trustee assigned to this case.   This is an administrative hearing to allow me and

interested creditors to ask questions regarding the schedules and statements to be filed under

penalty of perjury.   Please know that you will be answering questions under oath and either

making a false statement here by a verbal testimony or on your bankruptcy petition is a federal

crime punishable by imprisonment and/or fines.   At this time I'm swearing in the Debtor, please

state your first and last name for the record.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3                                1

1    DEBTOR:  Mark Handel.

2    U.S. TRUSTEE:  Please raise your right hand.  In the testimony you are about to give, do

3    you solemnly swear to tell the truth, the whole truth and nothing but the truth?

4    DEBTOR:  I do.

5    U.S. TRUSTEE:  Ok.  You can put your hand down.  And I verified that the Debtor has

6    California driver's license at this time.  And who is representing the Debtor here as counsel?

7    MR. NEALE:  David Neale, Levene Neale Bender Yoo & Brill on behalf of the Debtor.

8    U.S. TRUSTEE:  Thank you.  Mr. Handel, have you previously filed for bankruptcy?

9    DEBTOR:  No.

10    U.S.  TRUSTEE:   Are  you  personally  familiar  with  the  information  contained  in  the

11    petitions, schedules, statements and related documents filed with the Bankruptcy Court?

12    DEBTOR:  The ones I filed?

13    U.S. TRUSTEE:  Yes.

14    DEBTOR:  Yes.

15    U.S.  TRUSTEE:   To  the  best  of  your  knowledge  the  information  contained  in  those

16    documents are true and correct.

17    DEBTOR:  Yes.

18    U.S. TRUSTEE:  Did you sign the petition or related documents that were filed with the

19    Court.

20    DEBTOR:  Yes.

21    U.S. TRUSTEE:  Did you read those documents before you signed them?

22    DEBTOR:  Yes.

23    U.S. TRUSTEE:  Are there any errors or admissions to bring to my attention at this time?

24    DEBTOR:  Not to my knowledge.

25    U.S. TRUSTEE:  Are all of your assets identified?

26    DEBTOR:  Yes.

27    U.S. TRUSTEE:  Are all of your creditors listed?

28    DEBTOR:  Yes.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3                                    2

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-004

1    U.S. TRUSTEE:  Why do you seek bankruptcy protection?

2    DEBTOR:  Um, I'm unable to function uh, I'm unable to function under the umbrella of

3    my creditors so I need to be able to put my debts behind me and try to get a fresh start.

4    U.S. TRUSTEE:  So, to help expand a little, you currently don't have the funds to be able

5    to repay your creditors.

6    DEBTOR:  That's correct.

7    U.S. TRUSTEE:  Okay.  And how do you plan to reorganize?

8    DEBTOR:  Well, um, I'm working with a law firm and we are going to put forth a, uh,

9    Chapter 11 reorganization plan in which I will uh, call on family member, borrow a specific

10   amount of money and use it to pay my creditors and hopefully dismiss the remainder of the

11   judgments.

12   U.S. TRUSTEE:  And you don't have to disclose who the family member is but have

13   there been negotiations already in the process of working out getting those funds or still kind of a

14   hypothetical . . .

15   DEBTOR:  There . . . I can't speak for the other party, but I, I believe that they're ready

16   and able to provide the funds necessary in the event a plan is confirmed.

17   U.S. TRUSTEE:  So you believe within the next three months, possibly six months, the

18   money would be there necessary to confirm the plan.

19   DEBTOR:  I do, indeed.

20   U.S. TRUSTEE:  Okay.  And, I wanna go over a little some of your schedules.  Do you

21   own any real property?

22   DEBTOR:  Yes.

23   U.S. TRUSTEE:  And where is that located?

24   DEBTOR:  Along with my wife, I own a home in Calabasas and a condominium in

25   Elkhart Lake, Wisconsin.

26   U.S. TRUSTEE:  And is the Calabasas property the 23575 Park South Street property?

27   DEBTOR:  Yes.

28   U.S. TRUSTEE:  And what do you believe is the value of that property is?

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN 18702414v3                                  3

TRANSCRIPT OF 341(A) MEETING OF CREDITORS
EX L-005

Case: 24-6972, 11/18/2024, DktEntry: 2.1, Page 244 of 368

Case 1:15-bk-11292-MT    Doc 44-1    Filed 08/05/15    Entered 08/05/15 16:41:54    Desc
Exhibit Exhibit and Proof of Service    Page 6 of 36

1    DEBTOR:  Approximately 3-6, maybe 3-7, 3-3, it depends.  The property has ah, there's

2  structure – there's defect issues with it.

3    U.S. TRUSTEE:  And what are those defect issues?

4    DEBTOR:  It has structural ah, crack in the foundation and which would diminish the

5  value of the home slightly.  I don't want to speak too much but I'm in a real estate business and

6  when you sell a property, there are disclosure issues and, and this requires disclosure and it

7  diminishes the value of the home.

8    U.S. TRUSTEE:  Is that gonna cause any immediate safety . . .

9    DEBTOR:  No, absolutely not.

10    U.S. TRUSTEE:  And how much do you believe is owed against the property?

11    DEBTOR:  Well there is a myriad of notes and judgment liens that have been recorded

12  and it's ad infinitum over 20 million dollars.

13    U.S. TRUSTEE:  And how much do you believe is your mortgage, not judgment lien, just

14  the mortgage.

15    DEBTOR:  The mortgage I think is 1.6 million dollars.

16    U.S. TRUSTEE:  Do you have a second or just . . .

17    DEBTOR:  Yes, there is a second, that is non-performing and a third that is non-

18  performing.

19    U.S. TRUSTEE:  And at the time of filing, were you current on your first?

20    DEBTOR:  Yes.

21    U.S. TRUSTEE:  Were you current on your second?

22    DEBTOR:  No.

23    U.S. TRUSTEE:  Third?

24    DEBTOR:  No.

25    U.S. TRUSTEE:  Okay.  How much is the monthly mortgage on the first?

26    DEBTOR:  I believe it's in the neighborhood of 12,000 dollars.

27    U.S. TRUSTEE:  And were you current with property taxes on the property at time of

28  filing:

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3

4

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-006

Case: 24-6972, 11/18/2024, DktEntry: 2.1, Page 245 of 368

Case 1:15-bk-11292-MT    Doc 44-1    Filed 08/05/15    Entered 08/05/15 16:41:54    Desc
Exhibit Exhibit and Proof of Service    Page 7 of 36

1      DEBTOR:  I believe so.

2      U.S. TRUSTEE:  And the second property that you're talking about in Wisconsin, is that

3   the 279 Victorian Village Drive, No. 44 property?

4      DEBTOR:  Correct.

5      U.S. TRUSTEE:  And what do you believe the value of that property is?

6      DEBTOR:  Umm . . . I . . . thank you.  I was gonna say 500,000.

7      U.S. TRUSTEE:  Okay.

8      DEBTOR:  Thank you.

9      MR. NEALE:  You're welcome.

10      U.S. TRUSTEE:  And what do you believe the amount of debt owing against it?

11      DEBTOR:  I believe there's a first trust deed in the neighborhood, and I'm doing this from

12   memory and if so, I misspeak I would like very much an opportunity to correct the record, but

13   believe this first trust deed in the neighborhood of 380,000 dollars.

14      U.S. TRUSTEE:  And is there a second?

15      DEBTOR:  There is a judgment lien for I believe 2,000,000.

16      U.S. TRUSTEE:  Okay, and at the time of filing, were you current on the mortgage for the

17   Wisconsin property?

18      DEBTOR:  Yes.

19      U.S. TRUSTEE:  And how much is that per month?

20      DEBTOR:  I, I . . . candidly I can't tell you exactly that, that is paid through a business

21   office that my wife employs and, and I'm gonna guess it's for, I would, I would guess it's in the

22   neighborhood of a 400 dollars a month.  But that's an absolute guess.

23      U.S. TRUSTEE:  And can you explain a little bit of how with this business office that

24   your wife employs and how . . .

25      DEBTOR:  Sure.  Uh, well, many years ago, when I was very successful, I employed a

26   business manager and then when ah, when my debts exceeded my ability to pay back my debts

27   and I, and I continued to function over the last almost 7 – 8 years, this all occurred in 2007, I

28   made a concerted effort to attempt to work out settlements and agreements with all my creditors.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3                              5

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-007

Case: 24-6972, 11/18/2024, DktEntry: 2.1, Page 246 of 368

Case 1:15-bk-11292-MT    Doc 44-1    Filed 08/05/15    Entered 08/05/15 16:41:54    Desc
Exhibit Exhibit and Proof of Service    Page 8 of 36

1   And this process has taken over 7 or 8 years. In that period, because there were judgments

2   outstanding, I'm being very candid, it's difficult to – to – for me to ah . . . if I had, and I did not,

3   for example a million dollars, and I would have put it in the bank, it would be susceptible to

4   immediately being swept under one of the many judgments against me. So, uh and once again,

5   we didn't have that but what happened is that we, my wife set up ah, a corporation that she owns

6   wholly, separately, separate property agreement in which all the bills, the household bills except

7   for a modicum of them that's laid out on the schedule is paid through that office. And it's a

8   business management office.

9       U.S. TRUSTEE: And what's that office called?

10      DEBTOR: It's ah, my accountant. His name is Jack Benadon.

11      U.S. TRUSTEE: Okay. And, does that corporation earn any money, do anything?

12      DEBTOR: Very little. It ah, I don't wanna misspeak. I believe it was engaged in some

13  real estate activity approximately 3 or 4 years ago. I'm not sure. But recently it's simply been a

14  mechanism by which to pay household expenses.

15      U.S. TRUSTEE: Okay, I'll come back to that a little bit but I wanna finish about the

16  properties first.

17      DEBTOR: Sure.

18      U.S. TRUSTEE: For both of these properties, the Calabasas and Wisconsin, do you have

19  current property insurance for them?

20      DEBTOR: Yes, I do.

21      U.S. TRUSTEE: Okay. And do you know at the time of the filing, was the Victorian

22  Village, the property taxes on it, current?

23      DEBTOR: I believe it is.

24      U.S. TRUSTEE: Ok. Schedule B lists a 2003 Mercedes.

25      DEBTOR: Yes.

26      U.S. TRUSTEE: Do you have any other vehicles?

27      DEBTOR: I don't personally.

28      U.S. TRUSTEE: Okay. Are there other ones that you use?

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3

6

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-008

1    DEBTOR:  Yeah, the household owns, the household, for lack of a better term, term of

2    art.  My wife has a 2009 or 2010 minivan and my daughter has a 2009 Lexus.

3    U.S. TRUSTEE:  Is the 2009 minivan in your wife's name solely?

4    DEBTOR:  Correct.

5    U.S. TRUSTEE:  And the Lexus is in . . .

6    DEBTOR:  I believe it's in her name also.

7    U.S. TRUSTEE:  Okay.  And do you have current vehicle insurance.

8    DEBTOR:  Yes.  I got a teenage daughter.

9    U.S. TRUSTEE:  Yes.  Can you explain how you list interest in 3 different entities on the

10   Schedule B, MSB Killion Partners LP, MSB Bloomfield Partners LP and MB Valley Partners.

11   DEBTOR:  Correct.

12   U.S. TRUSTEE:  Can you explain a little bit what these limited partnerships are?

13   DEBTOR:  These uh, in the year 2007, I was a real estate developer and uh, uh, I believe

14   I, I was a partner and/or manager of approximately 35 entities.  Many of them were single use

15   entity, some of them were 2 or 3 property use entities.  And over the last 7 years, all of those have

16   been winding down, you know, in a concerted and measured process and these are the only 3

17   partnerships that have not have a final tax return filed.

18   U.S. TRUSTEE:  Okay and other than filing the final tax returns, is there anything else?

19   DEBTOR:  No.

20   U.S. TRUSTEE:  Ok so there is no income coming in, into these partnerships, no

21   ownership of any interests?

22   DEBTOR:  No.  No.

23   U.S. TRUSTEE:  They're basically shells.

24   DEBTOR:  Correct.

25   U.S. TRUSTEE:  Ok.  And you personally, don't it . . . you as the trustee of the Mark

26   Handel Trust that has the interest in it, not you personally.

27   DEBTOR:  I'm not a 100% sure but I'm going to say that, me, along with my counsel, and

28   along with the accountant that prepares these tax returns.  It's a different accounting firm.  I

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3                                    7

TRANSCRIPT OF 341(A) MEETING OF CREDITORS
EX L-009

Case: 24-6972, 11/18/2024, DktEntry: 2.1, Page 248 of 368

Case 1:15-bk-11292-MT    Doc 44-1    Filed 08/05/15    Entered 08/05/15 16:41:54    Desc
Exhibit Exhibit and Proof of Service    Page 10 of 36

1 would hope that they were extraordinarily careful and I would say that I believe that these are the

2 correct ownership titles.

3   U.S. TRUSTEE:  Okay.  So to the best of your knowledge, you personally don't have it,

4 it's just you as the trustee of the Mark Handel Trust.

5   DEBTOR:  Whatever it says, correct.

6   U.S. TRUSTEE:  Okay.  And what's the cross-claim you have against State Farm General

7 Incorporated Company in the pending lawsuit.  It's Case No. LC100714.

8   DEBTOR:  Construction defect lawsuit, in which a subcontractor created a bad loss on

9 one of the condominium building, I believe, was on Bloomfield Avenue in North Hollywood and

10 MWH was sued by the homeowners association and we cross-complained against the

11 subcontractor DIR Waterproofing.

12   U.S. TRUSTEE:  Okay.  And MWH Development Corporation, how were you involved?

13 Were you specifically named as a party in the complaint, are you just associated through MWH.

14   DEBTOR:  Me, personally?

15   U.S. TRUSTEE:  Uhum.

16   DEBTOR:  Well, I don't believe I was named personally.  MWH was uh, uh, sued and I,

17 you know there was ah, . . . there's an enormous amount of outstanding legal fees to the MWH's

18 counsel.  In addition to that, MWH settled with certain parties and there is a claim against the

19 subcontractor for that and consequently, that's why that continuously go on.  During the course of

20 this lawsuit MWH has fallen in and out of current status.  It had to be rekindled into current status

21 in order to be a party to the lawsuit and candidly, I'm not so certain that it's current now.  I'd

22 have to check.

23   U.S. TRUSTEE:  Okay, and when it was current, were you an officer, did you have an . . .

24   DEBTOR:  Yes, I was an officer.  I believe, I might have been either 50% or 100% owner.

25   U.S. TRUSTEE:  Okay.

26   DEBTOR:  Yeah.

27   U.S. TRUSTEE:  But currently now, there is no income that you know.

28   DEBTOR:  No.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3

8

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-010

1    U.S. TRUSTEE:  Ok.  Can you explain that there's an abstract of judgment that Jack

2  Benadon, which I believe, is that your accountant, or maybe . . .

3    DEBTOR:  Yes, it is my accountant.  Yes.

4    U.S. TRUSTEE:  He has a 25 million dollar judgment.  Can you explain what that

5  judgment is for?

6    DEBTOR:  I believe that Jack purchased ah, ah, the claim, ah, that Weyerhaeuser had

7  against me personally.  I was the third party guarantor on a 17 or 18 million dollar loan . . .

8    U.S. TRUSTEE:  Okay.

9    DEBTOR:  And ah, and they were interested in ah, ah, some kind of ah, resolution to that

10  and I had suggested that they could contact Mr. Benadon, he might be interested in buying that

11  and he did.

12    U.S. TRUSTEE:  Okay.  Do you know when the claim was brought?

13    DEBTOR:  Four years ago, five years ago.

14    U.S. TRUSTEE:  Okay.  And the 2 million dollar claim that Jack Benadon also holds,

15  that's for the second down on that page?

16    DEBTOR:  Yes.

17    U.S. TRUSTEE:  Is that Korogluyan, was that similar situation?

18    DEBTOR:  Yes.  Except Korogluyan is a, ah, successor in interest from Indymac.

19    U.S. TRUSTEE:  Okay.

20    DEBTOR:  So, Korogluyan bought the claim from Indymac and then Jack bought the

21  claim from Korogluyan.

22    U.S. TRUSTEE:  Okay.  And the M Ghosn claim that Jack Benadon owns that same

23  thing?

24    DEBTOR:  Correct.

25    U.S. TRUSTEE:  And was it directly from M Ghosn or was there another entity . . .

26    DEBTOR:  Directly from.

27    U.S. TRUSTEE:  Okay.  And Sunnyside Development, who were they?

28    DEBTOR:  Sunnyside Development, I, ah, is a real estate developer that purchased a

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN 18702414v3    9

TRANSCRIPT OF 341(A) MEETING OF CREDITORS
EX L-011

1   property from us in Fresno, California in 2007 when the real estate business took a slight

2   downturn. I was sued for fraud and a number of other things relating to the use of architecturals

3   that apparently were on another project. I'm not incredibly familiar with it because at the time, I

4   had a chief operating officer and so, in the aftermath of 2007, 2008, I simply stipulated to a

5   judgment so that I wasn't gonna pay to defend it in 2007-2008. And that judgment still exists.

6   And is accruing interest.

7      U.S. TRUSTEE:  Okay.

8      DEBTOR:  By the way, it, forgive me, that value is wrong. Oh, this is the value. Correct?

9      MR. NEALE:  Uhum, this is the value of the collateral in your house.

10     DEBTOR:  Yeah, very good.

11     U.S. TRUSTEE:  Okay. On Schedule F, on the second, was it page 1 of 4, so it's the

12  second page. Keep going, keep going, next page . . . you have 2 claims held by California Bank

13  of Trust.

14     DEBTOR:  Correct.

15     U.S. TRUSTEE:  And you list them as disputed. Can you explain why you believe

16  they're disputed?

17     DEBTOR:  On the advice of my attorney.

18     U.S. TRUSTEE:  Okay. Do you believe they hold a valid claim, or are you disputing the

19  amounts or . . .

20     DEBTOR:  Would you like me to answer that question?

21     MR. NEALE:  Probably not a productive discussion. Ah, it's gonna get into legal analysis

22  and probably advice of counsel.

23     U.S. TRUSTEE:  Okay. Now back to, you kind of mention a little bit about your monthly

24  expenses.

25     DEBTOR:  Sure.

26     U.S. TRUSTEE:  So, you have monthly expenses, you have your mortgage, you have, so

27  you do have these expenses . . .

28     DEBTOR:  Right. Correct.

1    U.S. TRUSTEE:  I believe Schedule J needs to be amended to list the expenses now,

2    whether you personally are paying for them or not, they are.  Right now you're not listing the

3    mortgage expense or, I assume you have utilities . . .

4    DEBTOR:  Right.

5    U.S. TRUSTEE:  Other things right.  So if you could amend counsel's Schedule J to list

6    what the monthly expenses actually are.

7    DEBTOR:  Okay, the absolute accurate monthly expenses, however, they're being paid.

8    U.S. TRUSTEE:  However, they're being paid and then, if they are from contributions,

9    regular contributions you're getting from a third source, and I know you do put down from your

10    wife on 11, but you should put whoever else coming in so it can show.

11    DEBTOR:  That's fine.

12    U.S. TRUSTEE: Because right now . . .

13    DEBTOR:  Yeah, there is a disconnect.  When would you like that?

14    U.S. TRUSTEE:  Usually, could you do it in a week?

15    DEBTOR:  Oh yes.  Yeah, I can't do it now.

16    U.S. TRUSTEE:  No, no, you would sit down with your counsel and go through it, and it

17    must be accurate and just file an amended Schedule I and J.

18    DEBTOR:  Right, very good.

19    U.S. TRUSTEE:  As to, I did invoke – gifts from your wife.  You put 3,000 dollars.

20    Who's giving the gifts?

21    DEBTOR:  Well, and I don't wanna misstep, I was forewarned not to be too, ah, ah, by

22    virtue of the fact that we're doing a Chapter 11, this is an absolute requirement to do this

23    schedule.  The fact of the matter is, is up until I filed, I wasn't responsible for any of the bills.

24    The bills were all paid out of DTMM, a subchapter as to my wife owns and it was paid in its

25    entirety.  My personal lifestyle and living style is effectively on a credit card and that bill is also

26    paid through that account.  However, because this is a requirement of the reorganization plan, we

27    thought that we needed to offer up something that was a semblance of the starting point.  But I'm

28    certainly happy to give you every expense and candidly I don't wanna be responsible for the

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3                                    11

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-013

Case: 24-6972, 11/18/2024, DktEntry: 2.1, Page 252 of 368

Case 1:15-bk-11292-MT    Doc 44-1    Filed 08/05/15    Entered 08/05/15 16:41:54    Desc
Exhibit Exhibit and Proof of Service    Page 14 of 36

1    2,900 dollars.  I'd like to be responsible for zero, but we'll provide that to you.  So you'll get an

2    idea of how it works.

3        U.S. TRUSTEE:  Okay, and you keep mentioning the company like the S corporation that

4    you're, say it again the D-

5        DEBTOR:  D-T-M-M Corp.

6        U.S. TRUSTEE:  Does that corp. do any business?  This is the corp. that just basically . . .

7        DEBTOR:  It hasn't done any business in 2 or 3 years

8        U.S. TRUSTEE:  Except that possible real estate.

9        DEBTOR:  Right, but I believe it was some real estate transactions 2 or 3 years ago.

10        U.S.  TRUSTEE:   So what, where's the money coming from, to be able to pay for

11    everything.

12        DEBTOR:  The money, ah, ah, my brother Bill, ah, and I brought them, and I don't know

13    if I'm supposed to proffer them today, has written 2.1 million dollars to them in the form of loans

14    starting in December 2010 and I'm embarrassed to say that, that has not been sufficient to pay all

15    of the obligations that I have, household, education, etc., and additional monies have been in the

16    form of loans from Jack Benadon to DTMM.

17        U.S.  TRUSTEE:   Okay.   So DTMM has been getting loans, whatever interest  and

18    agreements, third party whatever, and those funds have been used to pay living expenses.

19        DEBTOR:  Correct.  Correct.  Correct.  Correct.

20        U.S.  TRUSTEE:  And do you believe that will be the same way it will go forward in the

21    near future?

22        DEBTOR:  Well, that will stop if I'm, if I'm able to ah, extricate myself from my current

23    credit situation.

24        U.S. TRUSTEE:  Okay.  So, all checks are written for expenses and go from there directly

25    to the creditor and you're out of the loop for paying, how it works, right?  You don't have a bank

26    account or anything that money can be . . .

27        DEBTOR:  I have a bank account now.

28        U.S. TRUSTEE:  Okay.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3

12

EX L-014

1    DEBTOR: I mean, but it's a debtor in possession account. But all, all household bills are

2    paid with a DTMM check.

3    U.S. TRUSTEE: Okay. Just so you know, because you get the benefit from those, all

4    those disbursements, even though they technically the funds aren't running through the DIP

5    account, do you need to be put on a monthly operating report that are considered disbursements

6    for.

7    DEBTOR: Absolutely.

8    U.S. TRUSTEE: And then everyone has an idea too what's going on.

9    DEBTOR: Sure. Sure.

10   U.S. TRUSTEE: You haven't worked, at least according to the Statement of Financial

11   Affairs in the last 2 years, because there is no income from employment, when was the last time

12   you worked? Like had a job?

13   DEBTOR: Well, I've never had a job.

14   U.S. TRUSTEE: But you had income coming. When was the last time you had made on

15   a W-2 or something showing personal income.

16   DEBTOR: Probably 2008.

17   U.S. TRUSTEE: Okay, and that was dealing with your real estate development deals.

18   DEBTOR: Correct. Correct. Correct.

19   U.S. TRUSTEE: And since then you have not had one.

20   DEBTOR: Correct.

21   U.S. TRUSTEE: Okay. Do you plan on finding a job in the near future or . . .

22   DEBTOR: I'm gonna concentrate on trying to get through this process and then when this

23   process is over, I believe that I'll become a real estate developer again.

24   U.S. TRUSTEE: Okay. On your Statement of Financial Affairs, no. 3, you also list a

25   numerous amount of payments made in the 90 days prior to the filing, right there. Can you tell

26   me who the American Express payments were made, who made those payments to American

27   Express.

28   DEBTOR: DTMM made all the payments, correct.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN 18702414v3
13
TRANSCRIPT OF 341(A) MEETING OF CREDITORS
EX L-015

1    U.S. TRUSTEE:  Ok.  DTMM.  Based on monies that were loaned to it by Jack Benadon,

2  or your brother.

3    DEBTOR:  And Bill Handel.  Correct.

4    U.S. TRUSTEE:  And Chase Mortgage?  The monies paid to them?  The same?

5    DEBTOR:  Correct.

6    U.S. TRUSTEE:  I see.  Okay.  Investor Capital Group?  Monies paid to them, the DTMM

7  Corp.?

8    DEBTOR:  Correct.

9    U.S. TRUSTEE:  And what was the 222,000 dollars paid for?

10    DEBTOR:  That was, the Investor Capital Group, is being paid 150,000 dollars, correct?

11    U.S. TRUSTEE:  You have 2 payments were made.  One was 150,000 on February 25th

12  and then another 72,000 on March 16th.

13    DEBTOR:  Great.  I'm gonna suggest that ah, we were DTMM was waiting for a loan

14  from Bill Handel.  And, there was a shortfall in household obligations and I believe Investors

15  Capital ah, ah, loaned the money with the idea that when the Bill Handel loan came in it would be

16  used to pay back Investors Capital in that specific incident.  As much I would like Investors

17  Capital to be, ah, ah completely unabated spigot, that's not the case and so consequently, in this

18  particular case, I needed to suggest to my brother that he needed to help immediately.

19    U.S. TRUSTEE:  Okay.  And Lincoln Benefit Title, who was that paid by?

20    DEBTOR:  Certainly, DTMM.

21    U.S. TRUSTEE:  And that one is for life insurance?

22    DEBTOR:  I believe it's term insurance.  Correct.

23    U.S. TRUSTEE:  And Nation Star Mortgage, 10,000, is that DTMM Corp, too?

24    DEBTOR:  That's correct.

25    U.S. TRUSTEE:  Okay.  And I'm assuming that Chase Mortgage is for the Calabasas

26  property?

27    DEBTOR:  Correct.

28    U.S. TRUSTEE:  And the Nation Star Mortgage is for the Wisconsin property?

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3                                14

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-016

Case: 24-6972, 11/18/2024, DktEntry: 2.1, Page 255 of 368

Case 1:15-bk-11292-MT    Doc 44-1    Filed 08/05/15    Entered 08/05/15 16:41:54    Desc
Exhibit Exhibit and Proof of Service    Page 17 of 36

1    DEBTOR:  Yes.

2    U.S. TRUSTEE:  That seem about right.  Or, add the second on the –

3    DEBTOR:  It does, I'm not sure.  I don't wanna because it's a . . . this is too much money

4  for a mortgage on that.  So, if I could suggest that I would like to revisit that with Nation Star

5  Mortgage and how much payment, maybe we made an error, maybe we haven't.

6    U.S. TRUSTEE:  Okay.  Okay.

7    DEBTOR:  Yeah, we need to revisit that, that seems like it's too much money.

8    U.S. TRUSTEE:  Okay.  And then, your retainer to counsel, 75,000, was that directly

9  from you or is that also from DTMM construction.

10    DEBTOR:  Correct.  DTMM.

11    U.S. TRUSTEE:  And that, counsel, probably needs to be amended to make clear.

12    MR. NEALE:  Actually, I think what happened was DTMM advanced funds to Mr.

13  Handel and the check that we got was from Mr. Handel.

14    U.S. TRUSTEE:  Okay.

15    DEBTOR:  I misspoke.  I apologize.  Thank you for refreshing my memory.

16    U.S. TRUSTEE:  Okay.  And just for clarification, you know DTMM has no say in the

17  matter.  You are the client taking directions just to make sure . . .

18    MR. NEALE:  Oh, I'm absolutely . . .

19    U.S. TRUSTEE:  When there's payment from third parties, you think you wanna get

20  involved.

21    DEBTOR:  No, I made an error there.

22    U.S. TRUSTEE:  Okay.  And do you have any domestic support or obligations?

23    DEBTOR:  No.

24    U.S. TRUSTEE:  Okay.  Then at this time, I will turn the meeting over to creditors to ask

25  questions.  Are any creditors here today who would like to ask questions of the debtor.  Come sit

26  right here and please state your name for the record and if you aren't counsel . . .

27    MR. SABAH(SP?):  I'm not counsel.

28    U.S. TRUSTEE:  Then what creditor . . .

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3                                    15

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-017

1      MR. SABAH:  I'm Dan Sabah, I represent Sunnyside Development Corp.  I'm sorry for

2  being late, I thought it was 1:30, so I apologize.

3      U.S. TRUSTEE:  It's okay.

4      MR. SABAH:  I've noticed you have 3 kids, do they go to private school, or public

5  school?

6      DEBTOR:  They do go to private school.

7      MR. SABAH:  What school?

8      DEBTOR:  Viewpoint.

9      MR. SABAH:  And how do you pay for tuition?

10     DEBTOR:  It's paid through the DTMM account.

11     MR. SABAH:  I'm sorry I wasn't here for the DTMM, do you mind if I just . . .

12     U.S. TRUSTEE:  You can ask him.

13     MR. SABAH:  What is DTMM?

14     DEBTOR:  It's an S corporation that is owned by my wife that used to meet all our

15  household financial obligations.

16     MR. SABAH:  And what funds DTMM?

17     DEBTOR:  A personal loans from Bill Handel and Jack Benadon.

18     MR. SABAH:  And that's it?

19     DEBTOR:  That's it.

20     MR. SABAH:  Is it unlimited amount of funds or there's a specific amount?

21     DEBTOR:  There's an ongoing discussion with my brother Bill and Jack as to the level of

22  financial aid they'll provide.

23     MR. SABAH:  So they're paying your, the 11,000 dollar mortgage every month?

24     DEBTOR:  DTMM pays it but they, but DTMM borrows money from Bill Handel and

25  Jack Benadon in order to pay the mortgage.

26     MR. SABAH:   Okay.  Any ongoing real estate projects in which you are in any way

27  associated, where you've recently received or intend to receive any funds?

28     DEBTOR: No.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**TRANSCRIPT OF 341(A) MEETING OF CREDITORS**

EX L-018

1  MR. SABAH: Let me ask . . . I made a copy . . . this is a letter from the City of Calabasas

2  about a project at 23401 Mulholland . . .

3  DEBTOR: Correct.

4  MR. SABAH:  in which, it's dated January 5, 2015 about an application that you

5  submitted which was approved.  If you want a copy of it, feel free to keep a copy.  Can you tell

6  me about the project at 23401 Mulholland?

7  DEBTOR:  It's a three home project.  It's owned by Ben Salzbury and Jack Benadon.

8  They're the owners.  They own a 100% of it and pursuant to my relationship with Jack Benadon,

9  I consult and I facilitate any real estate transactions he might need me on and that's one of them

10  based on my relationship in Calabasas, my familiarity with the property, etc.

11  MR. SABAH:  You get paid?

12  DEBTOR:  Well, I don't but Jack does loan DTMM plenty of money.

13  MR. SABAH:  So in exchange for you representing this project, Jack Benadon funds

14  DTMM?

15  DEBTOR:  Correct.  There's no exchange, there's no exchange.  There's no agreement,

16  there's no written understanding, there's no verbal understanding.  None.

17  MR. SABAH:  So you just represented gratis.

18  DEBTOR:  Because he continues to lend DTMM money, yeah.  He sustains my wife and

19  myself, you know, to be able to function.  That's correct.

20  MR. SABAH:  Do you front money for this project?

21  DEBTOR:  I do not.

22  MR. SABAH:  You do not.

23  DEBTOR:  No.

24  MR. SABAH:  I'm sorry.  Do you mind if I grab, I'm sorry.  I didn't make copies of those

25  but let's just take a quick look at that.

26  DEBTOR:  I do, can I make a correction?

27  MR. SABAH:  Oh, yeah, of course.

28  DEBTOR:  There might small incidences where I might have written a small personal

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3                                    17

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-019

1    check or put a plan check fee on my credit card.  That was later paid by DTMM.  But ah, there's

2    difference between . . . did you use the word front or fund?

3    MR. SABAH:  Front.

4    DEBTOR:  Yeah, there are short and small circumstances if in order . . .

5    MR. SABAH:   What's the most you fronted for them?

6    DEBTOR:  I probably put a 14,000 dollar plan check fee on my credit card.

7    MR. SABAH:  Ok.  And you then you're reimbursed through DTMM.

8    DEBTOR:  DTMM paid that and Jack did the accounting.

9    MR. SABAH:  Okay.  As a consultant, is it normally a consultant's job to indemnify the

10   City of Calabasas for such a project?

11   DEBTOR:  I'm not sure.  But in order to get the permit if they wanted me to indemnify

12   them, I would have.

13   MR. SABAH:  You wouldn't have just have just BS Furcom do it or Ben Salsbury.

14   DEBTOR:  If I were at the counter and they ask me to indemnify them, I'm happy to do it.

15   MR. SABAH:  And knowing that you don't have assets to back up the indemnification.

16   DEBTOR:  That's correct.

17   MR. SABAH:  Have you ever represented the City of Calabasas where you were actually

18   the owner.

19   DEBTOR:  I did not.

20   MR. SABAH:   Alright, here's an application, a development application where it says,

21   where it has a place for the applicant to sign, and then below it says, consent by property owner.

22   And it says if applicant is other than property owner, owner must sign consenting to file it.  But

23   it's your signature as the owner.  How would you explain that?

24   DEBTOR:  It's nice to see you, by the way.

25   MR. SABAH:  Yeah, good to see you, too.

26   DEBTOR:  And I don't really mean that.

27   MR. SABAH:  I know that.

28   DEBTOR:  I'm employed as the agent for BS Furcom and Jack Benadon . . .

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3                                    18

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-020

1  MR. SABAH: Uhum.

2  DEBTOR: and if I signed this inadvertently in a hurry and didn't put agent and/or owner.

3  MR. SABAH: Well the top is for . . .

4  MR. NEALE: Let him finish.

5  DEBTOR: then it's simply an omission or an error. I don't wanna talk too detailed about

6 this but the property records, all the documents, everything that revolves in respect to ownership,

7 I am completely not involved.

8  MR. SABAH: Absolutely, I believe that 100%. But on documentation, you are not

9 involved whatsoever, there is no document except for the fact that you signed as owner on this

10 application.

11  DEBTOR: Then I either…

12  MR. NEALE: Is there a question, this isn't about arguing.

13  MR. SABAH: I don't need to argue. I'm just trying to get the relationship, so Ben

14 Salsbury, the owner of the BS Furcom, who is the single asset entity that's developing these 3

15 blocks, ah, did he used to be your employee?

16  DEBTOR: Umhm. That's correct.

17  MR. SABAH: Did he have any development experience before becoming our employee?

18  DEBTOR: None.

19  MR. SABAH: How did you know how he came to get these lots?

20  DEBTOR: Yeah.

21  MR. SABAH: How?

22  DEBTOR: He looks every single day and every time he finds a piece of property he calls

23 me and says, what do you think? And I give him my opinion.

24  MR. SABAH: Okay. Let me ask you just a couple of other questions on, as you know I

25 represent Sunnyside. On your filing, this might just be technicality, I am not a bankruptcy

26 lawyer, but you wrote that the case is still pending and ongoing on page 39 or 55.

27  DEBTOR: Where is that?

28  MR. SABAH: On page 39. It says judgment against debtor, case still active and pending.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3      19

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-021

Case: 24-6972, 11/18/2024, DktEntry: 2.1, Page 260 of 368

Case 1:15-bk-11292-MT    Doc 44-1    Filed 08/05/15    Entered 08/05/15 16:41:54    Desc
Exhibit Exhibit and Proof of Service    Page 22 of 36

1  Why would you say it's still active and pending?

2      DEBTOR:  I believe that your attorney had suggested they wanted to try the fraud claim

3  in bankruptcy court.

4      MR. SABAH:  But there is no ongoing litigation involved with that.

5      DEBTOR:  No.  I don't think so.

6      MR. SABAH:  So nothing has been filed.

7      DEBTOR:  No.

8      MR. SABAH:  So this is as of the time you signed this.

9      DEBTOR:  That's correct, it's a mistake.

10      MR. SABAH:  Okay.  And see where it says, the nature of proceeding, contractual fraud?

11      DEBTOR:  Correct.

12      MR. SABAH:  Is that your understanding that we have a judgment against you based on

13  contractual fraud?

14      DEBTOR:  No you do not have a fraud judgment, specifically do not.

15      MR. SABAH:  What did we sue you for?

16      MR. NEALE:  Those are two different questions.

17      MR. SABAH:  Oh.

18      MR. NEALE:  So, what you sued -

19      MR. SABAH:  Does the judgment specify what the nature of the judgment is?

20      MR. NEALE:  The judgment speaks for itself, and I think we're getting a little too . . .

21      MR. SABAH:  I just wanna know what it is . . .

22      MR. NEALE:  Excuse me.  This is a 341(a) meeting that deals with the general assets and

23  liabilities of the estate.  There are mechanisms available to you if you wanna get into issues that

24  deal with your specific claim.  So, if you have questions about the schedules, the statement of

25  financial affairs . . .

26      MR. SABAH:  I'm just asking questions about the filing.  I thought that's what this

27  meeting was.

28      MR. NEALE:  If can just finish.  You're asking him questions about your specific

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3                                           20

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-022

Case: 24-6972, 11/18/2024, DktEntry: 2.1, Page 261 of 368

Case 1:15-bk-11292-MT    Doc 44-1    Filed 08/05/15    Entered 08/05/15 16:41:54    Desc
Exhibit Exhibit and Proof of Service    Page 23 of 36

1  litigation what the litigation was about, what the judgment says, if there's a judgment.

2       MR. SABAH:  What his understanding is.

3       MR. NEALE:  If that's not relevant, the judgment is what it is.  You have the right to

4  assert a claim, I assume you'll do so.

5       MR. SABAH:  Absolutely.

6       MR. NEALE:  And we'll address it in the bankruptcy court.

7       MR. SABAH:  Okay, let me ask you about something about something that's not my

8  claim, it's something on this.  You have a claim, a lawsuit State Farm v. MWH.

9       DEBTOR:  Correct.

10       MR. SABAH:  And related cross-complaints.

11       DEBTOR:  Correct.

12       MR. SABAH:  Is MWH Builders your cross-complaining back against State Farm?

13       DEBTOR:  I believe so.

14       MR. SABAH:  Are you expecting to, are you trying to get money out of State Farm?

15       DEBTOR:  I was at one time.

16       MR. SABAH: That's done?

17       DEBTOR:  Well, I'm not certain that MWH is current.  I'm not certain that they can be

18  party to the lawsuit any longer.  The ah, and you're welcome to call the attorney.  It's Hamerick

19  & Evans.  And I believe that the legal, everyone is under the belief that the legal fees are

20  exceeding the, the size of the recovery.

21       MR. SABAH:  So you're saying that as far as you know, MWH . . .

22       DEBTOR:  Correct.

23       MR. SABAH:  is defunct?

24       DEBTOR:  I believe it's conceivable.  I don't wanna misspeak.  I'm you know. . .

25       MR. NEALE:  I don't know what defunct means?

26       U.S. TRUSTEE:  In MWH, do you still hold an ownership interest in it, you personally?

27       DEBTOR:  I do.

28       U.S. TRUSTEE:  Okay.  And . . .

Buchalter Nemer
A Professional Corporation
Los Angeles

BN 18702414v3

21

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-023

1   DEBTOR:  I believe I do.

2   U.S. TRUSTEE:   Okay.   And other than the value, this litigation claim ongoing, does

3   MWH have any other type of assets that you would . . .

4   DEBTOR:  No.

5   U.S. TRUSTEE:  So but for after all expenses are paid, that would be whatever interests

6   or value would be owed to you for this estate.

7   DEBTOR:  Correct.

8   U.S. TRUSTEE:  Counsel, if this claim is actually not pending and there is a judgment we

9   can probably since you're amending, you should amend so it's clear.

10   MR. NEALE:  Yeah, I'm not sure where . . . that's what I was gonna say

11   U.S. TRUSTEE:  So open on the docket, that's maybe why it's listed that way, just so you

12   know sometimes the judgment could be entered but the Court has not closed the case so that's

13   where they may have listed it as still an active case because it's not closed by the Court per se.

14   MR. SABAH:  Okay.  That's all I have.  Thank you.

15   DEBTOR:  Thank you.

16   U.S. TRUSTEE:  Creditors who have questions.

17   MR. YAHUS:  I just have a question.  Mr. Handel, Kior Yahus (sp?) with Pite Duncan

18   LLP, representing Chase on your Park South property.

19   DEBTOR:  How are you?  Uhum.

20   MR. YAHUS:  I just have a few questions regarding it.

21   DEBTOR:  Sure.

22   MR. YAHUS:  So it's your intent to remain current on the payments, correct?

23   DEBTOR:  Yes.

24   MR. YAHUS:  Okay.  And is it only you and your wife that maintain an interest in the

25   property or are there any grantees at all to DTM or any other property?

26   DEBTOR:  No.

27   MR. YAHUS:  Ok.  So, just you two, correct?

28   MR. NEALE:  I think it's actually the trust.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3

22

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-024

1    DEBTOR:  Right.  I'm very reticent about making an error.  I believe it's the Handel

2    Family Trust.  Yeah and obviously my wife and I are the only parties to the trust.

3    MR. YAHUS:  Okay got you.  So no other interest besides the trust.

4    DEBTOR:  No.

5    MR. YAHUS:  Okay.  And what is your intention with the property?

6    DEBTOR:  I'm sorry?

7    MR. YAHUS:  What is your intention with the property?

8    DEBTOR:  Well, I'm hopeful that we'll stay current and then, if and when I exit

9    bankruptcy, we're gonna live there.

10    MR. YAHUS:  Ok.  So you're planning on maintaining it as your primary residence.

11    DEBTOR:  Correct.

12    MR. YAHUS:  No intention to sell.

13    DEBTOR:  No.

14    MR. YAHUS:  Okay.

15    DEBTOR:  Unless we're forced to.

16    MR. YAHUS:  And the crack in the foundation, you referred to, do you know how that

17    came about.

18    DEBTOR:  I do.

19    MR. YAHUS:  Okay.

20    DEBTOR:  I do.

21    MR. YAHUS:  How did it come about, sir?

22    DEBTOR:  I built the house and this is gonna be about 5 months, it's a little technical but

23    if you would like it I'm happy to give it to you.  I purchased the lot from the Resolution Trust

24    Corporation in the early 1990s.  I bought the lots as is.  Unbeknownst to us, this particular lot, this

25    particular lot was what's known as a, it was a split lot, half of it was on bad rock, half of it was on

26    fill.  The fill wasn't compacted adequately, and when we built the house and El Nino came, it

27    literally broke the house in half.  We subsequently got a permit to repair the house and we did

28    indeed repair the house but unfortunately, the settlement and the hydrostatic pressure of water

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3                23

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-025

1    raising the slab had not, never subsided. So, there's a crack at the repair place, it is certainly not

2    as bad as the original crack. The original crack was almost 2 inches open. I mean it's very

3    habitable, it's just . . .

4    MR. YAHUS: There's a crack. Okay.

5    DEBTOR: Ok.

6    MR. YAHUS: Do you plan on getting that crack repaired or, until it's necessary, I'd

7    assume.

8    DEBTOR: Yeah, I'm, we can live with that. I mean it's not a big deal for us. It's just

9    that if you go sell the house, and I'm and this is artful, it has nothing to do with the proceedings or

10   whatever, if you go sell the house, it becomes a lever point of price negotiation. I mean it's

11   completely incidental.

12   MR. YAHUS: Okay. And is that, is the repair covered by insurance at all? Or -

13   DEBTOR: The first one might have been, I'm not certain.

14   MR. YAHUS: Okay.

15   DEBTOR: I'm not certain.

16   MR. YAHUS: And other than the crack in the foundation . . .

17   DEBTOR: I, I retract that, I'm speaking from a very, very old memory. But I believe that

18   we attempted to get insurance coverage but there was a, a soils, what do they . . .

19   MR. NEALE: Exclusion?

20   DEBTOR: Exclusion. And they attribute it to soils.

21   MR. YAHUS: Any other damage or any other noticeable repairs needed on the property?

22   DEBTOR: No, it's a lovely home.

23   MR. YAHUS: Okay. That's all I have. Thank you Mr. Handel.

24   DEBTOR: Thank you, sir.

25   U.S. TRUSTEE: Any other creditors have questions? Okay.

26   DEBTOR: I guess we're done now.

27   U.S. TRUSTEE: Not quite. [Laughing]

28   DEBTOR: We're old friends.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3

24

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-026

1      MR. SMITH:  My name is Barry Smith representing California Bank & Trust.  I do have a

2  few questions.  You mentioned that the DTMM is separate property of your wife.

3      DEBTOR:  Correct.

4      MR. SMITH:  When did that come up?  When was that created, was there a transmutation

5  agreement?  How did it become separate property?

6      DEBTOR:  It's in her name solely and specifically and we have a separate property

7  agreement dating back to when her brother died.

8      MR. SMITH:  And when was that?

9      DEBTOR:  Well, her brother died when she was 17 years old.

10     MR. SMITH:  Okay.

11     DEBTOR:  Yeah.  But what had happened is her brother had an asset that was discovered

12 and they, and that was distributed among the living heirs and when she was positioned to inherit

13 the shares of, I think it was U.S. Bancorp, I'm not sure, from her deceased brother, we did a

14 separate property agreement.

15     MR. SMITH:  Ok.  As to those shares or of all income coming in?

16     DEBTOR:  Well, we did a separate property agreement.  There was nothing else that was,

17 there was nothing else that was of mutual interest except for those at the time.  To be candid, the

18 DTMM was, was created in her name specifically so that we could be immune from someone

19 attempting to sweep accounts.

20     MR. SMITH:  I've seen your tax returns the past 4 years, 5 years, it has always been joint

21 returns.  Everything is community property.

22     DEBTOR:  Correct.

23     MR. SMITH:  So was there a separate return filed by hers that I just didn't see regarding

24 the separate property?

25     DEBTOR:  No.  No.

26     MR. SMITH:  With respect to DTMM, you mentioned - who maintains the books and

27 records?

28     DEBTOR:  Jack Benadon.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3                                        25

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-027

1   MR. SMITH:  Okay, and he has the . . . so the loans that are made by . . . that you've

2   indicated are made by him, those are signed promissory notes.  How do you keep, what kind of

3   records do you have . . .

4   DEBTOR:  That you know, that candidly is between Jack and Sarah.

5   MR. SMITH:  Okay.  You're not involved with it at all?

6   DEBTOR:  I try not to be.

7   MR. SMITH:  And um, as far as the same thing with your brother Bill and Sarah.  Same

8   thing?  You're not involved.

9   DEBTOR:  Correct.

10   MR. SMITH:  Good.  Does your wife ever loan any money to DTMM?  And the reason I

11   say that, just so, on Schedule L of your 2013 tax return, because you indicated that Sarah is the

12   only shareholder, it has the loan from shareholder, 278,000 dollars and then 388,000 dollars,

13   Sarah loaning money to DTMM, so my question is, do you know where that money came from?

14   DEBTOR:  Well, I'm certain . . .

15   MR. NEALE:  Excuse me.

16   DEBTOR:  Go ahead.

17   MR. SMITH:  This is your joint tax return.

18   MR. NEALE:  I'm gonna object.  To the extent you're asking about tax returns, that's

19   confidential information.  This is not the time or place to be asking those kinds of questions.  If

20   we had the appropriate protections in place so that his personal and confidential and proprietary

21   information can be maintained, that's a different story but if you're gonna ask questions about his

22   personal tax returns, this isn't the place for that.

23   MR. SMITH:  I'm just trying to clear up an inconsistency with respect to what he said that

24   the loans only come from, to DTMM, I wanna know where 600,000 dollars went to DTMM.

25   MR. NEALE:  In terms of an inconsistency that's your characterization of his testimony,

26   and in terms of what his tax returns say, he'll be happy to answer those questions with the

27   appropriate protections in place.

28   MR. SMITH:  Okay.  Um, let me talk about . . . the condo in Wisconsin.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3

26

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-028

1      DEBTOR:  Yes.

2      MR. SMITH:  That is again, according to your tax returns, it's rental property.  Is there

3  any rental coming in?

4      DEBTOR:  None.

5      MR. SMITH:  Okay, but you've listed as rental and you depreciated every year.  Is there

6  rental income?

7      MR. NEALE:  Again, I'm gonna object.  That is argumentative and it's been asked and

8  answered.  So, you've done plenty of discovery with regard to Mr. Handel.  So if you have

9  specific things that relate to the schedules of assets and liabilities or the statement of financial

10  affairs, why don't we confine to that?

11      MR. SMITH:  The 3,000 dollars a month that your wife gifts to you and her schedules

12  here indicate that she makes less than a thousand dollars a month, so does that come off of the

13  monies loaned by Bill and Ed?  Is that?

14      DEBTOR:  Bill and?

15      MR. SMITH:  Bill Handel and Ed Benadon, Jack Benadon, I'm sorry.

16      MR. NEALE:  Jack.  Jack.

17      DEBTOR:  Yes.

18      MR. SMITH:  That's the 3,000 dollars in –

19      DEBTOR:  Correct.

20      MR. SMITH:  You indicated when you were testifying earlier the 25,000 dollar judgment

21  of Mr. Benadon was a result of the Weyerhaeuser transaction.

22      MR. NEALE:  I think it is 25,000,000

23      MR. SMITH:  25,000,000, I'm sorry.  It is 25,000,000.  Actually it was 30,158,419

24  dollars.

25      DEBTOR:  It's a lot of money.

26      MR. SMITH:  Okay, a lot of money.  But you indicated to us when we met that

27  Mr. Benadon only 100,000 dollars for that.

28      MR. NEALE:  I'm going to object.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3                                          27

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-029

Case: 24-6972, 11/18/2024, DktEntry: 2.1, Page 268 of 368

Case 1:15-bk-11292-MT    Doc 44-1    Filed 08/05/15    Entered 08/05/15 16:41:54    Desc
Exhibit Exhibit and Proof of Service    Page 30 of 36

1    MR. SMITH: I'm trying to clear inconsistencies in what you're saying here. That's all.

2    MR. NEALE: First of all, it's not an inconsistency because he's not Jack Benadon but

3  Jack Benadon may or may not have paid for judgment as between Jack Benadon and creditors

4  who sold the judgment. So, that's a question that Mr. Handel is not in a position to answer. To

5  the extent he has any information about it, it's hearsay and again, it's beyond the scope of this

6  341(a) meeting. So, as I've said, Mr. Smith, you've done extensive discovery, you probably have

7  more information at this point than Mr. Handel does, so if you ask specific questions that go to

8  the schedules or statement of financial affairs, why don't you ask those questions.

9    MR. SMITH: The Ameritrade account which I did not see listed on the schedules. Your

10  wife adds a value of 270,000 dollars in Ameritrade account.

11    DEBTOR: Uhum.

12    MR. SMITH: Okay. Is that community property or separate property?

13    DEBTOR: Separate.

14    MR. SMITH: Okay, and what's the source of the money, DTMM also give her money.

15    DEBTOR: Her brother died and he had shares in US Bancorp and then when Sarah was

16  in her 40s, her living brother discovered it and it was distributed to all the kids.

17    MR. SMITH: And that was the source of it?

18    DEBTOR: Correct.

19    MR. SMITH: Okay. There is an account at City National Bank under your name and

20  with your social security number having to do with about 20 – 40,000 dollars with the Parkway

21  Calabasas Homeowners Association.

22    DEBTOR: Yes.

23    MR. SMITH: And that's, you're involved with the homeowners association?

24    DEBTOR: I'm a treasurer.

25    MR. SMITH: Treasurer? But the account is in your name.

26    DEBTOR: Uhum.

27    MR. SMITH: And your social security number.

28    DEBTOR: Uhum.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3                                    28

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-030

Case: 24-6972, 11/18/2024, DktEntry: 2.1, Page 269 of 368

Case 1:15-bk-11292-MT    Doc 44-1    Filed 08/05/15    Entered 08/05/15 16:41:54    Desc
Exhibit Exhibit and Proof of Service    Page 31 of 36

1    MR. SMITH:  You have no interest those monies.

2    DEBTOR:  No.

3    MR. SMITH:  Okay.

4    U.S. TRUSTEE:  Okay, can you amend the Statement of Financial Affairs to list that
5    account for monies held for benefit of another person?  Yeah.

6    MR. NEALE:  Sure. In trust. Yeah. Uhum.

7    MR. SMITH:  You are an owner at one time, you had an interest in Killian 45 Mark?

8    DEBTOR:  Uhum.

9    MR. SMITH:  Okay and according to your tax returns, that sold for 636, there's a profit of
10    666,000 dollars.  Where did that money go?

11    MR. NEALE:   Again, I'm gonna object to the extent it goes into his personal and
12    proprietary information set forth in his tax return.  This isn't the time or the place to ask those
13    questions.

14    MR. SMITH:  Give me a second, I'm trying to . . . there were some companies that I did
15    not see listed on the schedules.  And they still appear to be active so I don't know whether or not
16    you have an interest in them or not and that would be, MB Valley Partners, MSV Bloomfield
17    Partnership, MSB Killion and Allstar Grove Fund and Terra Vista Way.  Are any of those, do you
18    have any interest in any of those, producing any income?

19    MR. NEALE:  Do you wanna take a look at Schedule B because Allstar Grove Fund is on
20    there.  You read off the other ones fast so I couldn't write them down but MB Valley Partners is
21    on there.  What where the other ones?

22    MR. SMITH:  MSV Bloomfield Partnership.

23    MR. NEALE:  That's on there.

24    MR. SMITH:  And MSB Killion.

25    MR. NEALE:  That's on there.

26    MR. SMITH:  And Terra Vista, I don't know – Terra Vista Way.

27    MR. NEALE:  Is Terra Vista Way Inc., an existing entity?

28    DEBTOR:  I do not believe so.  It was a property that I sold many, many years ago.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3                                29

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-031

Case: 24-6972, 11/18/2024, DktEntry: 2.1, Page 270 of 368

Case 1:15-bk-11292-MT    Doc 44-1    Filed 08/05/15    Entered 08/05/15 16:41:54    Desc
Exhibit Exhibit and Proof of Service    Page 32 of 36

1        MR. SMITH:  And Duarte Development 15?

2        DEBTOR:  I don't have any interest.

3        MR. SMITH:  There's about 7 companies that your wife is either the managing member

4 or the CEO of the corporations.  Do you have, do you receive any funds from those?

5        DEBTOR:  No.

6        MR. SMITH:  No.  Okay.  Are you involved in those at all?

7        DEBTOR:  Tell what the companies are, please.

8        MR. SMITH:  This list is a long, long list and I don't want to . . . I'll have to get you, I'll

9 get you the information.

10       DEBTOR:  Please.

11       MR. SMITH:  Why are you not involved with them?

12       DEBTOR:  I would suggest that they probably don't exist anymore.

13       MR. SMITH:  Okay.  Well the list is…

14       DEBTOR:  It's a suggestion only.

15       MR. SMITH:  Okay.

16       U.S. TRUSTEE:  But you have no immediate involvement with any of the companies that

17 your wife as a CEO of or has a managing membership interest in?

18       DEBTOR:  That's correct.

19       MR. SMITH:  I have nothing further.

20       U.S. TRUSTEE:  Any other creditors have questions here today?

21       MR. SABAH:  I just have one more, I forgot.  Remember when we're talking about the

22 representation on BS Furcom for the Mulholland properties?  Are you a consultant for any other

23 properties?

24       DEBTOR:  Yes, I am.

25       MR. SABAH:  Which ones?

26       DEBTOR:  I consult on every single real estate deals that Jack Benadon does and he

27 probably has 35 ongoing real estate ventures right now.  Building houses in Echo Park, building

28 houses in San Juan Capistrano, building houses in Northern California, developing a deal in

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3

30

Case: 24-6972, 11/18/2024, DktEntry: 2.1, Page 271 of 368

Case 1:15-bk-11292-MT    Doc 44-1    Filed 08/05/15    Entered 08/05/15 16:41:54    Desc
Exhibit Exhibit and Proof of Service    Page 33 of 36

1   Arizona.

2       MR. SABAH:  All these consultancies, you do for no pay at all, no remuneration, no

3   interest, no nothing.

4       DEBTOR:  Not right now.  That's correct and there's a specific reason for that.  That's it.

5       MR. SABAH:  What's the reason?

6       DEBTOR:  I've a very generous guy.

7       MR. SABAH:  Nothing in Tujunga?

8       DEBTOR:  No.

9       MR. SABAH:  Nothing with Snowball Investments.

10       DEBTOR:  Nothing.

11       MR. SABAH:  Okay.

12       MR. SMITH:  I do have one, I'm sorry.  I found this this (inaudible)  number.  This is a

13   list of maybe.  Any of those companies, some I recognize are no longer in existence and there's

14   about 50 companies there.

15       MR. NEALE:  This is – this indicates that it's a document request and a litigation titled

16   California Bank & Trust versus Mark Handel.

17       MR. SMITH:  That was prepared for me by my own forensic accountant.  It's not

18   involved in litigation, it's my work product which I'm sharing just to give the names.  It's my list.

19       MR. NEALE:  So this is not Mr. Handel's list, this has nothing to do with him.  So this is

20   just yours.

21       MR. SMITH:  It was created by a forensic accountant.

22       MR. NEALE:  Well, you can look at it and if you have any understanding, you can

23   answer.

24       MR. SMITH:  The question, are any of those active that you're involved in or do you have

25   an interest in?

26       DEBTOR:  Allstar Grove that I believe is on the schedule and the ones that are on the

27   schedule, the . . . I am . . .man I was busy.

28       MR. NEALE:  Well, be careful by your answer, there's a lot of names on there.  So . . .

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18702414v3

31

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

EX L-033

1   DEBTOR:  Yeah.  I would like an opportunity to review each and every one carefully but

2   I can generally say that this is a, this appears to be my development history over the last 10 years

3   and by and large, I would suggest everything that exists to this day currently is on the schedule.

4   All of these are dead and gone.  But I'd like to reserve that, so I can review them all.

5   MR. SMITH:  I will send you a copy, and you a copy as well.

6   U.S. TRUSTEE:  It's up to you, if you want I can take a copy, and I can make a copy now

7   and I can keep it as, or none of the names were mentioned on the record, it's just, you know,

8   what.

9   MR. SMITH:  No.  That's fine.  We can make a copy.

10  U.S. TRUSTEE:  If you want, after you review it and you discuss it with counsel, if there

11  any that are still active, that you hold an interest in, then you can amend the Schedule B to include

12  them and whatever value you believe they're worth.  Otherwise I don't think we need the list

13  because I don't know the names, so you can keep the list but you can send it to the debtor and any

14  amendment then that can be done so everyone knows.

15  MR. SMITH:  Okay, we'll do it that way.  That works.

16  U.S. TRUSTEE:  Any other further questions?  Okay, then get those amendments in and

17  this will conclude the 341(a) meeting.  Thank you for coming today.

18  DEBTOR:  Thank you.

19

20

21

22

23

24

25

26

27

28

BN 18702414v3                                    32

TRANSCRIPT OF 341(A) MEETING OF CREDITORS

Case: 24-6972, 11/18/2024, DktEntry: 2.1, Page 273 of 368

Case 1:15-bk-11292-MT   Doc 44-1   Filed 08/05/15   Entered 08/05/15 16:41:54   Desc
Exhibit Exhibit and Proof of Service   Page 35 of 36

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
1000 Wilshire Blvd., Suite 1500, Los Angeles, CA 90017

A true and correct copy of the foregoing document entitled (*specify*):

**MOTION OF CALIFORNIA BANK & TRUST FOR AN ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING AND DIRECTING THE EXAMINATION OF THE DEBTOR AND CERTAIN THIRD PARTIES; DECLARATION OF ANTHONY J. NAPOLITANO**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On August 5, 2015, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- PLAINTIFF'S COUNSEL - Anthony J Napolitano    anapolitano@buchalter.com, IFS_filing@buchalter.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES CERTIFIED MAIL/RETURN RECEIPT REQUESTED**:
On August 5, 2015, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | |
|---|---|
| Defendant<br>Mark Handel<br>23575 Park South St.<br>Calabasas, CA 91302 | Sarah Lullof<br>23575 Park South St.<br>Calabasas, CA 91302 |
| Counsel to Defendant Mark Handel<br>David L. Neale<br>Levene Neale Bender Yoo & Brill LLP<br>10250 Constellation Blvd Ste 1700<br>Los Angeles, CA 90067 | Counsel for Jack Benadon, CPA<br>Landau Gottfried & Berger LLP<br>Attn:  Michael Gottfried, Esq.<br>1801 Century Park East, Suite 700<br>Los Angeles, CA 90067 |
| Jack Benadon, CPA<br>c/o Benadon Shapiro & Villalobos, CPAs<br>3500 W. Olive Avenue<br>Burbank, CA 91505 | Benadon Shapiro Villalobos P.C.<br>Attn:  Jack Benadon, CPA<br>3500 W. Olive Avenue<br>Burbank, CA 91505 |
| William Handel<br>c/o Center for Surrogate Parenting, Inc.<br>15821 Ventura Boulevard, Suite 625<br>Encino, CA 91436 | DTMM Construction, Inc.<br>Attn:  Sarah Lulloff<br>23575 Park South St.<br>Calabasas, CA 91302 |
| DTMM Construction, Inc.<br>Attn:  Jack Benadon, CPA<br>c/o Benadon Shapiro & Villalobos, CPAs<br>3500 W. Olive Avenue<br>Burbank, CA 91505 | Lone Pine Investors Group, LLC<br>Attn:  Mark Handel<br>23575 Park South St.<br>Calabasas, CA 91302 |
| Investor Capital Group<br>Attn:  Mark Handel<br>23575 Park South St.<br>Calabasas, CA 91302 | Lone Pine Investors Group, LLC<br>Attn:  Jack Benadon, CPA<br>c/o Benadon Shapiro & Villalobos, CPAs<br>3500 W. Olive Avenue<br>Burbank, CA 91505 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 5, 2015, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Maureen Tighe
United States Bankruptcy Court
Central District of California
21041 Burbank Boulevard, Suite 324
Woodland Hills, CA 91367

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 08/05/2015 | DEBBY BODKIN | /s/ DEBBY BODKIN |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                    EX L-036                    F 9013-3.1.PROOF.SERVICE

# EXHIBIT M:
Amended Bankruptcy Petition,
Dated 6/19/15

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Filer's Name: | **David L. Neale** |
| Street Address: | **10250 Constellation Blvd.**<br>**Suite 1700**<br>**Los Angeles, CA 90067** |
| Filer's Telephone No.: | **(310) 229-1234** |

| | |
|---|---|
| Atty Name (if applicable): | **David L. Neale** |
| CA Bar No. (if applicable): | **141225** |
| Atty Fax No. (if applicable): | |

| In re: | Case No. 15-11292 |
|---|---|
| **Mark Handel** | Chapter **11** |

## AMENDED SCHEDULE(S) AND/OR STATEMENT(S)

A filing fee of $30.00 is required to amend any or all of Schedules "D" through "F." An addendum mailing list is also required as an attachment if creditors are being added to the creditors list. Is/are creditor(s) being added? Yes ☑ No ☐

Indicate below which schedule(s) and/or statement(s) is(are) being amended.

A ☐ B ☐ C ☐ D ☐ E ☐ F ☑ G ☐ H ☐ I ☑ J ☑

Statement of Social Security Number(s) ☐     Statement of Financial Affairs ☑

Statement of Intention ☐     Other ☐

**NOTE:** IT IS THE RESPONSIBILITY OF THE DEBTOR TO MAIL COPIES OF ALL AMENDMENTS TO THE TRUSTEE AND TO NOTICE ALL CREDITORS LISTED IN THE AMENDED SCHEDULE(S) AND TO COMPLETE AND FILE WITH THE COURT THE PROOF OF SERVICE ON THE BACK OF THIS PAGE.

I/We, **Mark Handel**, the person(s) who subscribed to the foregoing Amended Schedule(s) and/or Statement(s) do hereby declare under penalty of perjury that the foregoing is true and correct.

DATED:  6/19/2015

/s/ Mark Handel

**Mark Handel**
*Debtor Signature*

*Co-Debtor Signature*

**\*\*FOR COURT USE ONLY\*\***

**\*\*SEE REVERSE SIDE\*\***

B-1008 *Revised November 2011*

EX M-001

Case: 24-6972 11/18/2024 DktEntry: 2.1 Page 277 of 368

## PROOF OF SERVICE

I hereby certify that a copy of the Amendment(s) was(were) mailed to the Trustee and that notice was given to the additional creditors listed.

DATED: 6/19/15

Jason Klassi
Print or Type Name

Signature

(SEE ATTACHED MAILING LIST.)

EX M-002

United States Trustee (SV)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

OneWest Bank
John Spelke
2450 Broadway, Suite 500
Santa Monica, CA 90404

B6F (Official Form 6F) (12/07)

In re    **Mark Handel**                                                                    Case No.    **1:15-bk-11292-MT**
                                                                            ,
                                              Debtor

# AMENDED
## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | Codebtor | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | Contingent | Unliquidated | Disputed | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J C | | | | | | |
| Account No. | | | | | legal fees and costs | | | | |
| **Adler Law, APC** **24007 Ventura Blvd. Suite 270** **Calabasas, CA 91302** | | - | | | | | | | 7,448.00 |
| Account No. **568786943** | | | | | | | | | |
| **AT&T** **PO Box 537104** **Atlanta, GA 30353** | | | | | | | | | 540.62 |
| Account No. **3105** | | | | | | | | | |
| **Bendadon, Shapiro, Villalobos** **3500 W. Olive Avenue, #1190** **Burbank, CA 91505** | | - | | | | | | | 2,975.00 |
| Account No. | | 6/11/10 | | | | | | | |
| **California Bank and Trust** **c/o Barry Smith @ Buchalter Nemer** **1000 Wilshire Blvd., Suite 1500** **Los Angeles, CA 90017** | | - | | | | | | X | 2,157,658.00 |
| | | | | | Subtotal (Total of this page) | | | | 2,168,621.62 |

__4__  continuation sheets attached

EX M-004

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com                                                                    S/N:26717-150615   Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re __Mark Handel__ ,
Debtor

Case No. __1:15-bk-11292-MT__

# AMENDED
## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HWJC Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. **OCSC 30-2010-00354824** <br><br> **California Bank and Trust** <br> **c/o Barry Smith @ Buchalter Nemer** <br> **1000 Wilshire Blvd., Suite 1500** <br> **Los Angeles, CA 90017** | - | 7/7/10 | | | | X | 4,665,338.00 |
| Account No. **4266-8412-5916-7862** <br><br> **Chase Slate** <br> **PO Box 94014** <br> **Palatine, IL 60094** | - | | | | | | 29.99 |
| Account No. **5466-1601-3119-1734** <br><br> **Citi Advantage** <br> **Processing Center** <br> **Des Moines, IA 50363** | - | | | | | | 78.29 |
| Account No. <br><br> **Comerica Bank** <br> **2321 Rosecrans Ave., Suite 5000** <br> **El Segundo, CA 90245** | - | 3/27/08 | | | | | 6,892,065.00 |
| Account No. <br><br> **Comerica Bank** <br> **2321 Rosecrans Ave., Suite 5000** <br> **El Segundo, CA 90245** | - | 11/28/10 | | | | | 8,065,660.00 |

Sheet no. __1__ of __4__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)   19,623,171.28

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re **Mark Handel** ,  Case No. **1:15-bk-11292-MT**
                       Debtor

# AMENDED
## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. <br><br> Comerica Bank <br> 2321 Rosecrans Ave., Suite 5000 <br> El Segundo, CA 90245 | - | | 4/12/10 | | | | 8,288,295.00 |
| Account No. <br><br> Comerica Bank <br> 2321 Rosecrans Ave., Suite 5000 <br> El Segundo, CA 90245 | - | | 7/10/10 | | | | 3,599,927.00 |
| Account No. A139916308 <br><br> Farmers Insurance <br> 7524 Southyby Dr. <br> attn: Fred Yeger <br> Canoga Park, CA 91304 | | | | | | | 1,311.18 |
| Account No. SFSC CGC 12-520727 <br><br> Jack Benadon (Appian Group) <br> 3500 W. Olive Avenue #1190 <br> Burbank, CA 91505 | - | | 5/24/12 <br> Resolved by Judgment | | | | 24,711,940.00 |
| Account No. LASC SC 104809 <br><br> Jack Benadon (Indy Mac) <br> 3500 W. Olive Avenue #1190 <br> Burbank, CA 91505 | - | | 3/18/10 <br> Resolved by Judgment | | | | 2,781,239.00 |

Sheet no. __2__ of __4__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page) **39,382,712.18**

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com

EX M-006

Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re  __Mark Handel__ ,                                    Case No.  __1:15-bk-11292-MT__
                          Debtor

# AMENDED
## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HWJC | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. **350168**<br><br>Los Virgenes Water District<br>4232 Las Virgenes Rd.<br>Calabasas, CA 91302 | - | | | | | | 817.97 |
| Account No.<br><br>OneWest Bank<br>John Spelke<br>2450 Broadway, Suite 500<br>Santa Monica, CA 90404 | - | | 7/1/07 | | | | 2,851,887.00 |
| Account No. **Lawsuit**<br><br>State Farm General Inc. Co.<br>c/o Reese Law Group<br>3168 Lionshead Ave.<br>Carlsbad, CA 92010 | - | | State Farm General Inc. Co. v. MWH Development Corp. et al.<br>  Subject to setoff. | X | X | X | 0.00 |
| Account No. **8448200184980690**<br><br>Time Warner Cable<br>PO Box 986<br>Toledo, OH 43697 | - | | | | | | 96.94 |
| Account No. **500-0151800-0283-2**<br><br>Waste Management<br>PO Box 541008<br>Los Angeles, CA 90054 | - | | | | | | 121.90 |

Sheet no. __3__ of __4__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)            2,852,923.81

EX M-007

Case: 24-6972   11/18/2024   DktEntry: 2.1   Page 283 of 368

B6F (Official Form 6F) (12/07) - Cont.

In re __Mark Handel_____,   Case No. __1:15-bk-11292-MT_____
                              Debtor

# AMENDED
## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. **41058319500002** | | | | | | | | |
| **Wisconsin Public Service** **PO Box 19003** **Green Bay, WI 54307** | | - | | | | | | **34.83** |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |

Sheet no. __4__ of __4__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

|  | Subtotal (Total of this page) | **34.83** |
|---|---|---|
|  | Total (Report on Summary of Schedules) | **64,027,463.72** |

EX M-008

Case: 24-6972  11/18/2024  DktEntry: 2.1  Page 284 of 368

Fill in this information to identify your case:

Debtor 1 __Mark Handel__

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the:  CENTRAL DISTRICT OF CALIFORNIA

Case number __1:15-bk-11292-MT__
(If known)

Check if this is:

☐ An amended filing
☐ A supplement showing post-petition chapter 13 income as of the following date:
_____
MM / DD/ YYYY

## Official Form B 6I

## Schedule I: Your Income                                         12/13

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Describe Employment |
| --- | --- |

1. **Fill in your employment information.**

If you have more than one job, attach a separate page with information about additional employers.

Include part-time, seasonal, or self-employed work.

Occupation may include student or homemaker, if it applies.

|  | **Debtor 1** | **Debtor 2 or non-filing spouse** |
| --- | --- | --- |
| **Employment status** | ☐ Employed<br>■ Not employed | ■ Employed<br>☐ Not employed |
| **Occupation** | | **Administrative Assistant** |
| **Employer's name** | | **Center for Suorragate Parenting** |
| **Employer's address** | | **15821 Ventura Blvd., Suite 625 Encino, CA 91436** |
| **How long employed there?** | | **2 years 7 months** |

| Part 2: | Give Details About Monthly Income |
| --- | --- |

**Estimate monthly income as of the date you file this form.** If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

|  |  |  | **For Debtor 1** | **For Debtor 2 or non-filing spouse** |
| --- | --- | --- | --- | --- |
| 2. | **List monthly gross wages, salary, and commissions** (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ 0.00 | $ 960.00 |
| 3. | **Estimate and list monthly overtime pay.** | 3. | +$ 0.00 | +$ 0.00 |
| 4. | **Calculate gross income.** Add line 2 + line 3. | 4. | $ 0.00 | $ 960.00 |

EX M-009

Debtor 1 **Mark Handel**

Case number (*if known*) **1:15-bk-11292-MT**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| | Copy line 4 here | 4. | $ 0.00 | $ 960.00 |

5. **List all payroll deductions:**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 5a. | **Tax, Medicare, and Social Security deductions** | 5a. | $ 0.00 | $ 82.08 |
| 5b. | **Mandatory contributions for retirement plans** | 5b. | $ 0.00 | $ 0.00 |
| 5c. | **Voluntary contributions for retirement plans** | 5c. | $ 0.00 | $ 0.00 |
| 5d. | **Required repayments of retirement fund loans** | 5d. | $ 0.00 | $ 0.00 |
| 5e. | **Insurance** | 5e. | $ 0.00 | $ 0.00 |
| 5f. | **Domestic support obligations** | 5f. | $ 0.00 | $ 0.00 |
| 5g. | **Union dues** | 5g. | $ 0.00 | $ 0.00 |
| 5h. | **Other deductions.** Specify: _____ | 5h.+ | $ 0.00 + | $ 0.00 |

6. **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h.    6.    $ 0.00    $ 82.08

7. **Calculate total monthly take-home pay.** Subtract line 6 from line 4.    7.    $ 0.00    $ 877.92

8. **List all other income regularly received:**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 8a. | **Net income from rental property and from operating a business, profession, or farm** Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 0.00 | $ 0.00 |
| 8b. | **Interest and dividends** | 8b. | $ 540.00 | $ 0.00 |
| 8c. | **Family support payments that you, a non-filing spouse, or a dependent regularly receive** Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ 0.00 |
| 8d. | **Unemployment compensation** | 8d. | $ 0.00 | $ 0.00 |
| 8e. | **Social Security** | 8e. | $ 0.00 | $ 0.00 |
| 8f. | **Other government assistance that you regularly receive** Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: _____ | 8f. | $ 0.00 | $ 0.00 |
| 8g. | **Pension or retirement income** | 8g. | $ 0.00 | $ 0.00 |
| 8h. | **Other monthly income.** Specify: _____ | 8h.+ | $ 0.00 + | $ 0.00 |

9. **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h.    9.    $ 540.00    $ 0.00

10. **Calculate monthly income.** Add line 7 + line 9.    10.    $ 540.00 + $ 877.92 = $ 1,417.92
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11. **State all other regular contributions to the expenses that you list in Schedule J.**
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
Specify:   **$3,000 gift from wife**       11. +$ 3,000.00
         **$21,739 contribution from DTMM**       $ 21,739.00

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data,* if it applies      12.   $ 26,156.92

**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**

■ No.

☐ Yes. Explain: _____

EXM-010

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Mark Handel** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (If known) | **1:15-bk-11292-MT** |

Check if this is:

■ An amended filing

☐ A supplement showing post-petition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

☐ A separate filing for Debtor 2 because Debtor 2 maintains a separate household

# Official Form B 6J

## Schedule J: Your Expenses                                                                 12/13

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

### Part 1:    Describe Your Household

1. **Is this a joint case?**

    ■ No. Go to line 2.

    ☐ Yes. **Does Debtor 2 live in a separate household?**

        ☐ No
        ☐ Yes. Debtor 2 must file a separate Schedule J.

2. **Do you have dependents?**    ☐ No

    Do not list Debtor 1 and Debtor 2.    ■ Yes.    Fill out this information for each dependent.............

    Do not state the dependents' names.

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| **Wife** | | ☐ No  ■ Yes |
| **Daughter** | **11** | ☐ No  ■ Yes |
| **Son** | **11** | ☐ No  ■ Yes |
| **Son** | **16** | ☐ No  ■ Yes |
| **Daughter** | **19** | ☐ No  ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**    ☐ No    ■ Yes

### Part 2:    Estimate Your Ongoing Monthly Expenses

**Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.**

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 6I.)

| | | Your expenses |
|---|---|---|
| 4. | The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4. $ 11,601.00 |
| | If not included in line 4: | |
| 4a. | Real estate taxes | 4a. $ 0.00 |
| 4b. | Property, homeowner's, or renter's insurance | 4b. $ 655.00 |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c. $ 0.00 |
| 4d. | Homeowner's association or condominium dues | 4d. $ 0.00 |
| 5. | **Additional mortgage payments for your residence,** such as home equity loans | 5. $ 0.00 |

EX M-011

Case 1:15-bk-11292-MT   Doc 33   Filed 06/19/15   Entered 06/19/15 15:54:30   Desc
Main Document     Page 12 of 24

Debtor 1   __Mark Handel__                                    Case number (if known)   __1:15-bk-11292-MT__

| 6. | **Utilities:** | | | |
|----|----|----|----|----|
| | 6a. | Electricity, heat, natural gas | 6a. $ | 0.00 |
| | 6b. | Water, sewer, garbage collection | 6b. $ | 0.00 |
| | 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. $ | 0.00 |
| | 6d. | Other. Specify:  **The Gas Company** | 6d. $ | 185.00 |
| | | **AT&T Cell Phones** | $ | 550.00 |
| | | **AT&T Home Phone** | $ | 206.00 |
| | | **Pool Service** | $ | 210.00 |
| | | **AT&T Home Phone** | $ | 206.00 |
| | | **Las Virgenes Water** | $ | 500.00 |
| | | **Waste Management** | $ | 65.00 |
| | | **Accounting Services** | $ | 1,500.00 |
| | | **SoCal Ediston** | $ | 850.00 |
| 7. | **Food and housekeeping supplies** | | 7. $ | 1,600.00 |
| 8. | **Childcare and children's education costs** | | 8. $ | 1,300.00 |
| 9. | **Clothing, laundry, and dry cleaning** | | 9. $ | 50.00 |
| 10. | **Personal care products and services** | | 10. $ | 50.00 |
| 11. | **Medical and dental expenses** | | 11. $ | 0.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | | 12. $ | 0.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | | 13. $ | 0.00 |
| 14. | **Charitable contributions and religious donations** | | 14. $ | 0.00 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a. | Life insurance | 15a. $ | 0.00 |
| | 15b. | Health insurance | 15b. $ | 0.00 |
| | 15c. | Vehicle insurance | 15c. $ | 0.00 |
| | 15d. | Other insurance. Specify: | 15d. $ | 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | | 16. $ | 0.00 |
| 17. | **Installment or lease payments:** | | | |
| | 17a. | Car payments for Vehicle 1 | 17a. $ | 110.00 |
| | 17b. | Car payments for Vehicle 2 | 17b. $ | 105.00 |
| | 17c. | Other. Specify:  **American Express Cards** | 17c. $ | 1,500.00 |
| | 17d. | Other. Specify: | 17d. $ | 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5,** *Schedule I, Your Income* **(Official Form 6I).** | | 18. $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | | 19. $ | |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on** *Schedule I: Your Income.* | | | |
| | 20a. | Mortgages on other property | 20a. $ | 2,541.00 |
| | 20b. | Real estate taxes | 20b. $ | 0.00 |
| | 20c. | Property, homeowner's, or renter's insurance | 20c. $ | 0.00 |
| | 20d. | Maintenance, repair, and upkeep expenses | 20d. $ | 0.00 |
| | 20e. | Homeowner's association or condominium dues | 20e. $ | 900.00 |
| 21. | **Other:** Specify:  **WE Energies** | | 21. +$ | 55.00 |
| 22. | **Your monthly expenses.** Add lines 4 through 21. The result is your monthly expenses. | | 22. $ | 24,739.00 |
| 23. | **Calculate your monthly net income.** | | | |
| | 23a. | Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. $ | 26,156.92 |
| | 23b. | Copy your monthly expenses from line 22 above. | 23b. -$ | 24,739.00 |
| | 23c. | Subtract your monthly expenses from your monthly income. The result is your *monthly net income*. | 23c. $ | 1,417.92 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.
☐ Yes. Explain:

EX M-012

Case 1:15-bk-11292-MT    Doc 33    Filed 06/19/15    Entered 06/19/15 15:54:30    Desc
Main Document        Page 13 of 24

B6 Declaration (Official Form 6 - Declaration). (12/07)

# United States Bankruptcy Court
## Central District of California

In re __Mark Handel__           Case No. __1:15-bk-11292-MT__

Debtor(s)      Chapter __11__

## DECLARATION CONCERNING DEBTOR'S SCHEDULES - AMENDED

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

      I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of __24__ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date __6/19/2015__          Signature    __/s/ Mark Handel__

                                                   **Mark Handel**

                                                   Debtor

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

EX M-013

B7 (Official Form 7) (04/13)

# United States Bankruptcy Court
## Central District of California

| | | | |
|---|---|---|---|
| In re | **Mark Handel** | Case No. | **1:15-bk-11292-MT** |
| | Debtor(s) | Chapter | **11** |

## STATEMENT OF FINANCIAL AFFAIRS - AMENDED

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any persons in control of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(2), (31).

---

**1. Income from employment or operation of business**

None ■

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                SOURCE

---

**2. Income other than from employment or operation of business**

None □

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| **$6,774.00** | **2013: Husband Interest / Dividends** |
| **$7,000.00** | **2014: Interest/Dividends: approximately** |
| **$0.00** | **2015 to date** |

EX M-014

B7 (Official Form 7) (04/13)
2

### 3. Payments to creditors

**None**
■* **Complete a. or b., as appropriate, and c.**

a.  *Individual or joint debtor(s) with primarily consumer debts:*  List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

**None**
☐ b.  *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $6,225*.  If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency.  (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|---|
| **American Express** | 1/8/2015 | 23,777.20 | **$88,154.66** | **$0.00** |
| **Box 0001** | 1/20/2015 | 365.35 | | |
| **Los Angeles, CA 90096** | 1/20/2015 | 219.67 | | |
| | 2/18/2015 | 16,743.05 | | |
| | 2/18/2015 | 434.72 | | |
| | 2/18/2015 | 49.90 | | |
| | 3/24/2015 | 14,066.95 | | |
| | 3/24/2015 | 647.83 | | |
| | 3/24/2015 | 219.67 | | |
| | 4/7/2015 | 31,630.32 | | |
| | - | | | |
| **Chase Mortgage** | 1/8/2015 | 11,601.25 | **$46,405.00** | **$0.00** |
| **PO Box 78420** | 2/4/2015 | 11,601.25 | | |
| **Phoenix, AZ 85062** | 3/4/2015 | 11,601.25 | | |
| | 3/24/2015 | 11,601.25 | | |
| | - | | | |
| **Investor Capital Group** | 2/25/2015 | 150,000.00 | **$222,000.00** | **$0.00** |
| **3500 W. Olive Avenue, Suite 1190** | 3/16/2015 | 72,000.00 | | |
| **Burbank, CA 91505** | - | | | |
| **Lincoln Benefit Title** | 1/20/2015 | 8,552.25 | **$8,552.25** | **$0.00** |
| **PO Box 5708** | - | | | |
| **Carol Stream, IL 60197** | | | | |
| **Nationstar Mortgage** | 1/8/2015 | 2,540.67 | **$10,162.68** | **$0.00** |
| **P.O. Box 60516** | 2/4/2015 | 2,540.67 | | |
| **City of Industry, CA 91716-0516** | 3/4/2015 | 2,540.67 | | |
| | 3/24/2015 | 2,540.67 | | |
| | - | | | |

**None**
■ c.  *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

---

*  *Amount subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

EX M-015

Case 1:15-bk-11292-MT    Doc 33    Filed 06/19/15    Entered 06/19/15 15:54:30    Desc
Main Document    Page 16 of 24

B7 (Official Form 7) (04/13)
3

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

**4. Suits and administrative proceedings, executions, garnishments and attachments**

None ☐  a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| **State Farm General Inc. Co. v. MWH Development Corp. et al., LC100714** | **Insurance Coverage** | **Los Angeles Superior Court (Van Nuys Courthouse), 6230 Sylmar Ave., Van Nuys, CA 91401; Dept. Q** | **Pending** |
| **Sunnyside Development Partners LLC et al. v. MWH Development Corp. et al., BC375270** | **Contractual Fraud** | **Los Angeles Superior Court; Dept. 44; 111 North Hill Street, Los Angeles, CA 90012** | **Judgment against Debtor; case still active and pending** |

None ☐  b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **California Bank and Trust c/o Barry Smith @ Buchalter Nemer 1000 Wilshire Blvd., Suite 1500 Los Angeles, CA 90017** | **January 27, 2015** | **lien was recorded on Condo in Wisconsin, valued at $525,000** |

**5. Repossessions, foreclosures and returns**

None ■  List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**6. Assignments and receiverships**

None ■  a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None ■  b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

EX M-016

B7 (Official Form 7) (04/13)
4

---

### 7. Gifts

None ■

List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

---

### 8. Losses

None ■

List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

---

### 9. Payments related to debt counseling or bankruptcy

None ☐

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYER IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **Levene, Neale, Bender, Yoo & Brill 10250 Constellation Blvd. Suite 1700 Los Angeles, CA 90067** | **4/2/2015** | **$75,000** |
| **Levene, Neale, Bender, Yoo & Brill 10250 Constellation Blvd. Suite 1700 Los Angeles, CA 90067** | **11/3/2014, DTMM Construction, Inc.** | **$10,000** |

---

### 10. Other transfers

None ■

a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

None ■

b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

---

EX M-017

B7 (Official Form 7) (04/13)
5

**11.  Closed financial accounts**

None ■    List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
| --- | --- | --- |

**12.  Safe deposit boxes**

None ■    List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
| --- | --- | --- | --- |

**13.  Setoffs**

None ■    List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
| --- | --- | --- |

**14.  Property held for another person**

None ☐    List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
| --- | --- | --- |
| **Parksouth Calabasas Estates c/o Ross Morgan Co., Inc. as property manager 23901 Calabasas Rd., Suite 2004 Calabasas, CA 91302** | **$179,974.15 of HOA funds in HOA bank account, but to which the Debtor's social security number is linked.** | **3 HOA bank accounts at City National Bank** |

**15.  Prior address of debtor**

None ■    If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
| --- | --- | --- |

**16. Spouses and Former Spouses**

None ☐    If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME
**Sarah J. Lulloff**

B7 (Official Form 7) (04/13)
6

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None
■  a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None
■  b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None
■  c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

**18 . Nature, location and name of business**

None
☐  a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| **MSB Killion Partners, LP** | 20-3746776 | **c/o Jack Benadon 3500 W. Olive Avenue #1190 Burbank, CA 91505** | **Limited Partnership**<br><br>**Ownership: Mark Handel, as trustee of The Handel Family Trust dated March 21, 2005.** | **Beginning date: 11-5-05** |

EX M-019

B7 (Official Form 7) (04/13)
7

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| **MSB Bloomfield Partners, LP** | 20-3587404 | **c/o Jack Benadon 3500 W. Olive Avenue #1190 Burbank, CA 91505** | **Limited Partnership** <br><br> **Ownership:  Mark Handel, as trustee of The Handel Family Trust" dated March 21, 2005** | **Beginning date: 9-30-05** |
| **MB Valley Partners** | 20-3587319 | **c/o Jack Benadon 3500 W. Olive Avenue #1190 Burbank, CA 91505** | **Partnership** <br><br> **Ownership:  Mark Handel, as trustee of The Handel Family Trust" dated March 21, 2005** | **Beginning date: 10-1-05** |

None
■    b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

NAME                       ADDRESS

---

     The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor, or self-employed in a trade, profession, or other activity, either full- or part-time.

     *(An individual or joint debtor should complete this portion of the statement **only** if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

---

**19. Books, records and financial statements**

None
■    a. List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

NAME AND ADDRESS                                    DATES SERVICES RENDERED

None
■    b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

NAME                        ADDRESS                         DATES SERVICES RENDERED

None
■    c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

NAME                                            ADDRESS

None
■    d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

NAME AND ADDRESS                                         DATE ISSUED

EX M-020

B7 (Official Form 7) (04/13)
8

---

**20. Inventories**

None
■    a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

| DATE OF INVENTORY | INVENTORY SUPERVISOR | DOLLAR AMOUNT OF INVENTORY (Specify cost, market or other basis) |
|---|---|---|

None
■    b. List the name and address of the person having possession of the records of each of the inventories reported in a., above.

| DATE OF INVENTORY | NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY RECORDS |
|---|---|

---

**21 . Current Partners, Officers, Directors and Shareholders**

None
■    a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

| NAME AND ADDRESS | NATURE OF INTEREST | PERCENTAGE OF INTEREST |
|---|---|---|

None
■    b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
|---|---|---|

---

**22 . Former partners, officers, directors and shareholders**

None
■    a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |
|---|---|---|

None
■    b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |
|---|---|---|

---

**23 . Withdrawals from a partnership or distributions by a corporation**

None
■    If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

---

**24. Tax Consolidation Group.**

None
■    If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement of the case.

| NAME OF PARENT CORPORATION | TAXPAYER IDENTIFICATION NUMBER (EIN) |
|---|---|

EX M-021

B7 (Official Form 7) (04/13)
9

**25. Pension Funds.**

None  If the debtor is not an individual, list the name and federal taxpayer-identification number of any pension fund to which the debtor, as
■    an employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case.

NAME OF PENSION FUND                                    TAXPAYER IDENTIFICATION NUMBER (EIN)

* * * * * *

**DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR**

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto
and that they are true and correct.

Date   6/19/2015                           Signature   /s/ Mark Handel
                                                        **Mark Handel**
                                                        Debtor

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

EX M-022

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA

| Attorney or Party Name, Address, Telephone & FAX Nos., | CASE NO.: |
|---|---|
| **David L. Neale**<br>**Levene, Neale, Bender, Yoo & Brill LLP**<br>**10250 Constellation Blvd.**<br>**Suite 1700**<br>**Los Angeles, CA 90067**<br>**(310) 229-1234**<br>**141225**<br>Attorney for Debtor(s): | CHAPTER: **11**<br>ADVERSARY NO.:<br>*(if applicable)* |

| In re:<br><br>**Mark Handel**<br><br>Debtor(s). | **ELECTRONIC FILING DECLARATION**<br>**(INDIVIDUAL)**<br>**[LBR 1006-1(h)]** |
|---|---|

| ☑ | Petition, statement of affairs, schedules or lists | Date Filed: | **4/14/2015** |
|---|---|---|---|
| ☑ | Amendments to Schedule F, I and J and statement of affairs | Date Filed: | **6/19/2015** |
| ☐ | Other: | Date Filed: | |

### PART I - DECLARATION OF DEBTOR(S) OR OTHER PARTY

I (We), the undersigned Debtor(s) or other party on whose behalf the above-referenced document is being filed (Signing Party), declare under penalty of perjury that: (1) I have read and understand the above-referenced document being filed electronically (Filed Document); (2) the information provided in the Filed Document is true, correct and complete; (3) the "/s/," followed by my name, on the signature line(s) for the Signing Party in the Filed Document serves as my signature and denotes the making of such declarations, requests, statements, verifications and certifications to the same extent and effect as my actual signature on such signature line(s); (4) I have actually signed a true and correct printed copy of the Filed Document in such places and provided the executed printed copy of the Filed Document to my attorney; and (5) I have authorized my attorney to file the electronic version of the Filed Document and this *Declaration* with the United States Bankruptcy Court for the Central District of California. If the Filed Document is a petition, I further declare under penalty of perjury that I have completed and signed a *Statement of Social-Security Number(s)* (Form B21) and provided the executed original to my attorney.

(see attached signature)

_____
Date

Signature of Signing Party
**Mark Handel**
_____
Printed Name of Signing Party

### PART II - DECLARATION OF ATTORNEY FOR SIGNING PARTY

I, the undersigned attorney for the Signing Party, declare under penalty of perjury that: (1) the "/s/," followed by my name, on the signature lines for the attorney for the Signing Party in the Filed Document serves as my signature and denotes the making of such declarations, requests, statements, verifications and certifications to the same extent and effect as my actual signature on such signature lines; (2) the Signing Party signed *Part I - Declaration of Debtor(s) or Other Party of this Declaration* before I electronically submitted the Filed Document for filing with the United States Bankruptcy Court for the Central District of California; (3) I have actually signed a true and correct printed copy of the Filed Document in the locations that are indicated by "/s/," followed by my name, and have obtained the signature(s) of the Signing Party in the locations that are indicated by "/s/," followed by the Signing Party's name, on the true and correct printed copy of the Filed Document; (4) I shall maintain the executed originals of this *Declaration* and the Filed Document for a period of five years after the closing of the case in which they are filed; and (5) I shall make the executed originals of this *Declaration* and the Filed Document available for review upon request of the court or other parties. If the Filed Document is a petition, I further declare under penalty of perjury that: (1) the Signing Party completed and signed the Statement of Social Security Number(s) (Form B21) before I electronically submitted the Filed Document for filing with the United States Bankruptcy Court for the Central District of California; (2) I shall maintain the executed original of the *Statement of Social-Security Number(s) (form* B21) for a period of five years after the closing of the case in which they are filed; and (3) I shall make the executed original of the *Statement of Social-Security Number(s) (form B21)* available for review upon request of the court.

*6/19/2015*
_____
Date

Signature of Attorney for Signing Party
~~David L. Neale 141225~~   J. P. Fritz 245240
Printed Name of Attorney for Signing Party

•   This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.
**F 1002-1.DEC.ELEC.FILING.INDIVIDUAL**

EX M-023

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Attorney or Party Name, Address, Telephone & Fax Nos.:
David L. Neale
Levene, Neale, Bender, Yoo & Brill LLP
10250 Constellation Blvd.
Suite 1700
Los Angeles, CA 90067
(310) 229-1234
141225
Attorney for Debtor(s)

CASE NO.:
CHAPTER: 11
ADVERSARY NO.:
(if applicable)

In re:
**Mark Handel**
Debtor(s).

**ELECTRONIC FILING DECLARATION**
**(INDIVIDUAL)**
**[LBR 1006-1(h)]**

☑ Petition, statement of affairs, schedules or lists       Date Filed: **4/14/2015**
☑ Amendments to Schedule F, I and J and statement of affairs   Date Filed: **6/19/2015**
☐ Other: _____                                   Date Filed: _____

## PART I - DECLARATION OF DEBTOR(S) OR OTHER PARTY

I (We), the undersigned Debtor(s) or other party on whose behalf the above-referenced document is being filed (Signing Party), declare under penalty of perjury that: (1) I have read and understand the above-referenced document being filed electronically (Filed Document), (2) the information provided in the Filed Document is true, correct and complete, (3) the "/s/," followed by my name, on the signature line(s) for the Signing Party in the Filed Document serves as my signature and denotes the making of such declarations, requests, statements, verifications and certifications to the same extent and effect as my actual signature on such signature line(s), (4) I have actually signed a true and correct printed copy of the Filed Document in such places and provided the executed printed copy of the Filed Document to my attorney, and (5) I have authorized my attorney to file the electronic version of the Filed Document and this Declaration with the United States Bankruptcy Court for the Central District of California. If the Filed Document is a petition, I further declare under penalty of perjury that I have completed and signed a Statement of Social-Security Number(s) (form B21) and provided the executed original to my attorney.

6/19/15
Date

Signature of Signing Party
**Mark Handel**
Printed Name of Signing Party

## PART II - DECLARATION OF ATTORNEY FOR SIGNING PARTY

I, the undersigned attorney for the Signing Party, declare under penalty of perjury that: (1) the "/s/," followed by my name, on the signature lines for the attorney for the Signing Party in the Filed Document serves as my signature and denotes the making of such declarations, requests, statements, verifications and certifications to the same extent and effect as my actual signature on such signature lines; (2) the Signing Party signed Part I - Declaration of Debtor(s) or Other Party of this Declaration before I electronically submitted the Filed Document for filing with the United States Bankruptcy Court for the Central District of California; (3) I have actually signed a true and correct printed copy of the Filed Document in the locations that are indicated by "/s/," followed by my name, and have obtained the signature(s) of the Signing Party in the locations that are indicated by "/s/," followed by the Signing Party's name, on the true and correct printed copy of the Filed Document; (4) I shall maintain the executed originals of this Declaration and the Filed Document for a period of five years after the closing of the case in which they are filed, and (5) I shall make the executed originals of this Declaration and the Filed Document available for review upon request of the court or other parties. If the Filed Document is a petition, I further declare under penalty of perjury that: (1) the Signing Party completed and signed the Statement of Social Security Number(s) (Form B21) before I electronically submitted the Filed Document for filing with the United States Bankruptcy Court for the Central District of California; (2) I shall maintain the executed original of the Statement of Social-Security Number(s) (form B21) for a period of five years after the closing of the case in which they are filed, and (3) I shall make the executed original of the Statement of Social-Security Number(s) (form B21) available for review upon request of the court.

_____
Date

Signature of Attorney for Signing Party
**David L. Neale 141225**
Printed Name of Attorney for Signing Party

EX M-024

# EXHIBIT Q:

FDIC Office of Inspector General,
September 2009 Report,
"Material Loss Review of Alliance
Bank, Culver City, California"
(Excerpt)



# Office of
# Inspector General

**September 2009**
**Report No. AUD-09-022**

**Material Loss Review of Alliance Bank,**
**Culver City, California**

# AUDIT REPORT





**Report No. AUD-09-022**                    **September 2009**

# Material Loss Review of Alliance Bank, Culver City, California

**Federal Deposit Insurance Corporation**

## Why We Did The Audit

As required by section 38(k) of the Federal Deposit Insurance Act, the Office of Inspector General (OIG) conducted a material loss review of the failure of Alliance Bank, Culver City, California (Alliance). On February 6, 2009, the State of California, Department of Financial Institutions (DFI), closed Alliance and named the FDIC as receiver. On March 4, 2009, the FDIC notified the OIG that Alliance's total assets at closing were $1.2 billion, with a material loss to the Deposit Insurance Fund (DIF) estimated at $205.9 million.

The audit objectives were to:
(1) determine the causes of the financial institution's failure and resulting material loss to the DIF and (2) evaluate the FDIC's supervision of the institution, including implementation of the Prompt Corrective Action (PCA) provisions of section 38.

## Background

Alliance was insured on May 18, 1980 and was headquartered in Culver City, California. At closing, the bank had four branches located in the greater Los Angeles area of Southern California. Alliance provided traditional banking activities within its Southern California marketplace and focused primarily on commercial real estate (CRE), commercial and industrial, and other lending and specialized in acquisition, development, and construction (ADC) loans.

The FDIC and DFI alternated safety and soundness examinations of Alliance, conducting a total of four examinations from March 2004 to May 2007. The FDIC's off-site review of Alliance as of December 31, 2007, identified deteriorating conditions in the bank's loan portfolio. Based upon the results of the off-site review, the FDIC joined the DFI at the June 2008 examination, which originally had been scheduled as an independent DFI examination.

## Audit Results

**Causes of Failure and Material Loss -** The failure of Alliance and resulting material loss to the DIF were due to bank management's aggressive pursuit of asset growth concentrated in ADC lending without adequate risk management controls and sound credit administration practices. As of December 31, 2007, over 70 percent of the bank's $903 million loan portfolio was secured by real estate. The bank's ADC portfolio deteriorated quickly when the California residential real estate market began to decline in 2007. Total adverse loan classifications increased from $23 million to $176 million between the May 2007 and June 2008 examinations, with resulting losses causing examiners to conclude, at the latter examination, that capital was deficient. Further, the bank's liquidity became strained, and funding options were limited as the bank had fallen to the Adequately Capitalized category for PCA purposes as of June 30, 2008. Bank management had not implemented timely corrective actions in response to examiner recommendations from 2004 to 2008 related to the diversification of the bank's loan portfolio, credit administration weaknesses, and liquidity management. As a result of the large operating losses the bank incurred during 2008, the bank's capital levels steadily declined until the bank was deemed Critically Undercapitalized and closed on February 6, 2009.

**Assessment of FDIC Supervision -** The FDIC and DFI conducted timely examinations of Alliance and advised management of the need to adequately monitor the higher-risk lending profile of the institution. Also, examiners identified the problems, such as high growth and concentrations that ultimately led to Alliance's failure. Examiners made recommendations, in some cases, in multiple ROEs, to strengthen the bank's risk management practices and credit administration practices and limit its uses of wholesale funding. Further, the FDIC's off-site monitoring efforts and coordination with DFI in 2008 resulted in the FDIC joining the DFI's examination. In addition, the FDIC and DFI worked together in an effective manner during 2008 to downgrade Alliance's ratings based on its deteriorating financial condition, notify the bank of its declining capital, and implement a Cease & Desist Order in October 2008 to address the bank's critical asset quality, liquidity, and capital deficiencies and stem the bank's unsafe and unsound practices. The FDIC appropriately implemented PCA in reclassifying Alliance's capital levels and restricting Alliance's access to brokered deposits. Although the estimated loss to the DIF represented 17 percent of the bank's assets, the actions of regulators during 2008 helped avoid greater losses resulting from the bank's lending practices in the deteriorating Southern California economy.

In retrospect, the May 2007 FDIC examination could have resulted in additional supervisory action to address the significant risks posed by Alliance's aggressive growth concentrated in ADC lending, reliance on wholesale funding, and weak risk management practices. Although Alliance's reported financial condition was satisfactory at the time of the 2007 examination, the economic decline in its marketplace was becoming evident, including an increase in the bank's adverse loan classifications. The FDIC participated in the issuance of interagency guidance in December 2006, highlighting that institutions with CRE concentrations should focus additional attention on risk management practices and capital levels and establishing supervisory criteria for elevated supervisory oversight. Alliance's concentrations exceeded these supervisory criteria and left the bank unprepared to effectively address the risks associated with the economic decline in its market.

This report presents the FDIC OIG's analysis of Alliance's failure and the FDIC's efforts to ensure Alliance's management operated the bank in a safe and sound manner. We are not making recommendations. Instead, as major causes, trends, and common characteristics of financial institution failures are identified in our reviews, we will communicate those to management for its consideration. As resources allow, we may also conduct more in-depth reviews of specific aspects of the FDIC's supervision program and make recommendations, as warranted.

## Management Response

On August 27, 2009, the Director, Division of Supervision and Consumer Protection (DSC), provided a written response to the draft report. In its response, DSC summarized the OIG's conclusions regarding the causes of Alliance's failure and the resulting material loss to the DIF and DSC's supervisory activities related to Alliance. DSC also acknowledged the OIG position that the risk factors identified in 2007 could have led to earlier action.

*Contents*                                                              *Page*

BACKGROUND                                                                2
   **California Economic Conditions**                       3

CAUSES OF FAILURE AND MATERIAL LOSS                                       5
**Aggressive Growth in ADC Lending**                                      5
**Concentrations in CRE and ADC Loans**                                   6
**Risk Management/Credit Administration Weaknesses Noted in ADC Loans**   8
**Heavy Reliance on Wholesale Funding to Fuel Growth**                    10
**Underwriting Weaknesses**                                               11

ASSESSMENT OF FDIC SUPERVISION                                            12
**Examination History**                                                   13
**Concentrations and Credit Administration Weaknesses**                   15
**Liquidity and Use of Wholesale Funding**                                16
**Implementation of PCA**                                                 18
**Conclusion**                                                            19

CORPORATION COMMENTS                                                      20

APPENDICES

  **1. OBJECTIVES, SCOPE, AND METHODOLOGY**                      21

  **2. GLOSSARY OF TERMS**                                       24

  **3. CORPORATION COMMENTS**                                    25

  **4. ACRONYMS IN THE REPORT**                                  26

TABLES

  **1. Financial Condition of Alliance**                         3
  **2. Indicators of Economic Downturn in California**           4
  **3. Alliance's Cost of Funds**                                10
  **4. Examination History of Alliance**                         13
  **5. Examiner Comments and Recommendations Regarding Alliance's Loan**   14
     **Concentrations, Credit Administration Weaknesses, and Uses of**
     **Wholesale Funding**
  **6. Alliance's Funding Sources, by Examination Date**         17

FIGURES

  **1. Foreclosures Started for California – Compared to United States**   4
  **2. Total Assets**                                            6
  **3. Interest Income as a Percentage of Average Assets – Compared to Peer**   7
  **4. ADC Loans as a Percentage of Average Loans – Compared to Peer**   8
  **5. Net Charge-offs on Loans and Leases**                     10
  **6. Net Non-Core Funding Dependence**                         17



**Federal Deposit Insurance Corporation**
3501 Fairfax Drive, Arlington, VA 22226

Office of Audits
Office of Inspector General

**DATE:**  September 1, 2009

**MEMORANDUM TO:**  Sandra L. Thompson, Director
Division of Supervision and Consumer Protection

**FROM:**  /Signed/
Russell A. Rau
Assistant Inspector General for Audits

**SUBJECT:**  *Material Loss Review of Alliance Bank, Culver City, California*
(Report No. AUD-09-022)

As required by section 38(k) of the Federal Deposit Insurance Act (FDI Act), the Office of Inspector General (OIG) conducted a material loss[1] review of the failure of Alliance Bank (Alliance).  On February 6, 2009, the California Department of Financial Institutions (DFI) closed the institution and named the FDIC as receiver.  On March 4, 2009, the FDIC notified the OIG that Alliance's total assets at closing were $1.2 billion with an estimated loss to the Deposit Insurance Fund (DIF) estimated at $205.9 million.

When the DIF incurs a material loss with respect to an insured depository institution for which the FDIC is appointed receiver, the FDI Act states that the Inspector General of the appropriate federal banking agency shall make a written report to that agency which reviews the agency's supervision of the institution, including the agency's implementation of FDI Act section 38, *Prompt Corrective Action* (PCA); ascertains why the institution's problems resulted in a material loss to the DIF; and makes recommendations to prevent future losses.

The audit objectives were to:  (1) determine the causes of the financial institution's failure and resulting material loss to the DIF and (2) evaluate the FDIC's supervision[2] of the institution, including implementation of the PCA provisions of section 38.  Appendix 1 contains details on our objectives, scope, and methodology, and Appendix 2 contains a glossary of terms. Acronyms used in the report are listed in Appendix 4.

---

[1] As defined by section 38(k)(2)(B) of the FDI Act, a loss is material if it exceeds the greater of $25 million or 2 percent of an institution's total assets at the time the FDIC was appointed receiver.
[2] The FDIC's supervision program promotes the safety and soundness of FDIC-supervised institutions, protects consumers' rights, and promotes community investment initiatives by the institutions.  The FDIC's Division of Supervision and Consumer Protection (DSC) (1) performs examinations of FDIC-supervised institutions to assess their overall financial condition; management policies and practices, including internal control systems; and compliance with applicable laws and regulations; and (2) issues related guidance to institutions and examiners.

This report presents the FDIC OIG's analysis of Alliance's failure and the FDIC's efforts to ensure Alliance's management operated the bank in a safe and sound manner. We are not making recommendations. Instead, as major causes, trends, and common characteristics of financial institution failures are identified in our reviews, we will communicate those to management for its consideration. As resources allow, we may also conduct more in-depth reviews of specific aspects of the FDIC's supervision program and make recommendations, as warranted.

## BACKGROUND

Alliance was a state-chartered nonmember institution that became insured on May 18, 1980. Alliance, which was headquartered in Culver City, California:

- had one branch in Irvine, one branch in Woodland Hills, one branch in Burbank, and one branch in West Los Angeles;

- provided traditional banking activities within its Southern California marketplace and focused primarily on commercial real estate (CRE), commercial and industrial, and other lending; and

- specialized in acquisition, development, and construction (ADC) loans.

Alliance was a wholly-owned subsidiary of Alliance Bancshares California, a one-bank holding company created in 2000. Alliance's main market area were the Los Angeles and Orange counties of California, with more than 82 percent of the bank's deposits concentrated in Los Angeles County. The Chairman of the Board (Chairman), along with his father and the family trust, collectively controlled 18 percent of the holding company stock.

In the late 1990s, Alliance embarked on an aggressive growth strategy centered in ADC lending in its Southern California market. Management slowed asset growth briefly after the FDIC's 2000 examination; however, Alliance's asset growth increased by an average of 40 percent annually from 2003 to 2008. At the June 2008 examination, Alliance's CAMELS composite rating was downgraded to 5,[3] indicating extremely unsafe and unsound practices or conditions; critically deficient performance, often with inadequate risk management practices; and great supervisory concern. Institutions in this category pose a significant risk to the DIF and have a high probability of failure. Details on Alliance's financial condition, as of December 2008, and for the 5 preceding calendar years follow in Table 1.

---

[3] Financial institution regulators and examiners use the Uniform Financial Institutions Rating System (UFIRS) to evaluate a bank's performance in six components represented by the CAMELS acronym: **C**apital adequacy, **A**sset quality, **M**anagement practices, **E**arnings performance, **L**iquidity position, and **S**ensitivity to market risk. Each component, and an overall composite score, is assigned a rating of 1 through 5, with 1 having the least regulatory concern and 5 having the greatest concern.

# EXHIBIT R:

Purchase and Assumption Agreement
for California Bank & Trust
(Excerpt)

**PURCHASE AND ASSUMPTION AGREEMENT**

**WHOLE BANK**

**ALL DEPOSITS**

**AMONG**

**FEDERAL DEPOSIT INSURANCE CORPORATION,
RECEIVER OF ALLIANCE BANK,
CULVER CITY, CALIFORNIA**

**and**

**FEDERAL DEPOSIT INSURANCE CORPORATION**

**and**

**CALIFORNIA BANK & TRUST, SAN DIEGO, CALIFORNIA**

**DATED AS OF**

**FEBRUARY 6, 2009**

## TABLE OF CONTENTS

**ARTICLE I**    **DEFINITIONS** ................................................................................2

**ARTICLE II**    **ASSUMPTION OF LIABILITIES** ...............................................8

2.1    Liabilities Assumed by Assuming Bank ........................................8
2.2    Interest on Deposit Liabilities .....................................................10
2.3    Unclaimed Deposits ....................................................................10
2.4    Employee Plans ...........................................................................10

**ARTICLE III**    **PURCHASE OF ASSETS** ..........................................................11

3.1    Assets Purchased by Assuming Bank ..........................................11
3.2    Asset Purchase Price ...................................................................11
3.3    Manner of Conveyance; Limited Warranty;
         Nonrecourse; Etc. ...................................................................12
3.4    Puts of Assets to the Receiver ....................................................12
3.5    Assets Not Purchased by Assuming Bank ...................................13
3.6    Assets Essential to Receiver .......................................................14

**ARTICLE IV**    **ASSUMPTION OF CERTAIN DUTIES AND OBLIGATIONS**........15

4.1    Continuation of Banking Business ..............................................15
4.2    Agreement with Respect to Credit Card Business .......................16
4.3    Agreement with Respect to Safe Deposit Business .....................16
4.4    Agreement with Respect to Safekeeping Business ......................16
4.5    Agreement with Respect to Trust Business .................................16
4.6    Agreement with Respect to Bank Premises .................................17
4.7    Agreement with Respect to Leased Data
         Processing Equipment .............................................................19
4.8    Agreement with Respect to Certain
         Existing Agreements ...............................................................20
4.9    Informational Tax Reporting .......................................................21
4.10   Insurance .....................................................................................21
4.11   Office Space for Receiver and Corporation ................................21
4.12   Agreement with Respect to Continuation of Group
         Health Plan Coverage for Former Employees ...........................21
4.13   Agreement with Respect to Interim Asset Servicing ..................22

ARTICLE V **DUTIES WITH RESPECT TO DEPOSITORS**
 **OF THE FAILED BANK**...............................................23

 5.1 Payment of Checks, Drafts and Orders.....................................23
 5.2 Certain Agreements Related to Deposits ..................................23
 5.3 Notice to Depositors ...............................................................23

ARTICLE VI **RECORDS** ..............................................................24

 6.1 Transfer of Records..................................................................24
 6.2 Delivery of Assigned Records .................................................24
 6.3 Preservation of Records ...........................................................25
 6.4 Access to Records; Copies .......................................................25

ARTICLE VII **FIRST LOSS AMOUNT** ......................................25

ARTICLE VIII **RESERVED**............................................................25

ARTICLE IX **CONTINUING COOPERATION**..........................25

 9.1 General Matters.........................................................................25
 9.2 Additional Title Documents.....................................................26
 9.3 Claims and Suits......................................................................26
 9.4 Payment of Deposits ................................................................26
 9.5 Withheld Payments ..................................................................26
 9.6 Proceedings with Respect to Certain Assets
  and Liabilities..................................................................27
 9.7 Information ...............................................................................27

ARTICLE X **CONDITION PRECEDENT** ................................28

ARTICLE XI **REPRESENTATIONS AND WARRANTIES OF THE**
 **ASSUMING BANK** ...........................................28

ARTICLE XII **INDEMNIFICATION** .........................................29

 12.1 Indemnification of Indemnitees ...............................................29
 12.2 Conditions Precedent to Indemnification.................................32
 12.3 No Additional Warranty ..........................................................33
 12.4 Indemnification of Corporation and Receiver .........................33
 12.5 Obligations Supplemental .......................................................33
 12.6 Criminal Claims.......................................................................33
 12.7 Limited Guaranty of the Corporation ......................................34
 12.8 Subrogation ..............................................................................34

ARTICLE XIII **MISCELLANEOUS** ..........................................34

| | | |
|---|---|---|
| 13.1 | Entire Agreement | 34 |
| 13.2 | Headings | 34 |
| 13.3 | Counterparts | 34 |
| 13.4 | Governing Law | 34 |
| 13.5 | Successors | 34 |
| 13.6 | Modification; Assignment | 35 |
| 13.7 | Notice | 35 |
| 13.8 | Manner of Payment | 36 |
| 13.9 | Costs, Fees and Expenses | 36 |
| 13.10 | Waiver | 36 |
| 13.11 | Severability | 36 |
| 13.12 | Term of Agreement | 36 |
| 13.13 | Survival of Covenants, Etc. | 37 |

**SCHEDULES**

| | | |
|---|---|---|
| 2.1 | Certain Liabilities Assumed | 39 |
| 3.1 | Certain Assets Purchased | 40 |
| 3.2 | Purchase Price of Assets or Assets | 42 |
| 4.15A | Single Family Loss Share Loans | 50 |
| 4.15B | Non-Single Family Loss Share Loans | 51 |

**EXHIBITS**

| | | |
|---|---|---|
| 4.13 | Interim Asset Servicing Arrangement | 46 |
| 4.15A | Single Family Share-Loss Agreement | 48 |
| 4.15B | Non-Single Family Loss Share Agreement | 79 |

## PURCHASE AND ASSUMPTION AGREEMENT

## WHOLE BANK

## ALL DEPOSITS

**THIS AGREEMENT**, made and entered into as of the 6th of February, 2009, by and among the **FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER of Alliance Bank, Culver City, California** (the "Receiver"), **California Bank & Trust, San Diego, California**, organized under the laws of the United States of America, and having its principal place of business in **San Diego, California** (the "Assuming Bank"), and the **FEDERAL DEPOSIT INSURANCE CORPORATION**, organized under the laws of the United States of America and having its principal office in Washington, D.C., acting in its corporate capacity (the "Corporation").

### WITNESSETH:

**WHEREAS**, on Bank Closing, the Chartering Authority closed **Alliance Bank** (the "Failed Bank") pursuant to applicable law and the Corporation was appointed Receiver thereof; and

**WHEREAS**, the Assuming Bank desires to purchase certain assets and assume certain deposit and other liabilities of the Failed Bank on the terms and conditions set forth in this Agreement; and

**WHEREAS**, pursuant to 12 U.S.C. Section 1823(c)(2)(A), the Corporation may provide assistance to the Assuming Bank to facilitate the transactions contemplated by this Agreement, which assistance may include indemnification pursuant to Article XII; and

**WHEREAS**, the Board of Directors of the Corporation (the "Board") has determined to provide assistance to the Assuming Bank on the terms and subject to the conditions set forth in this Agreement; and

**WHEREAS**, the Board has determined pursuant to 12 U.S.C. Section 1823(c)(4)(A) that such assistance is necessary to meet the obligation of the Corporation to provide insurance coverage for the insured deposits in the Failed Bank.

**NOW THEREFORE**, in consideration of the mutual promises herein set forth and other valuable consideration, the parties hereto agree as follows:

EX R-005

# ARTICLE I
## DEFINITIONS

Capitalized terms used in this Agreement shall have the meanings set forth in this Article I, or elsewhere in this Agreement. As used herein, words imparting the singular include the plural and vice versa.

**"Accounting Records"** means the general ledger and subsidiary ledgers and supporting schedules which support the general ledger balances.

**"Acquired Subsidiaries"** means Subsidiaries of the Failed Bank acquired pursuant to Section 3.1.

**"Adversely Classified"** means, with respect to any Loan or security, a Loan or security which, as of the date of the Information Package, has been designated in the most recent report of examination as "Substandard," "Doubtful" or "Loss" by the Failed Bank's appropriate Federal or State Chartering Authority or regulator.

**"Affiliate"** of any Person means any director, officer, or employee of that Person and any other Person (i) who is directly or indirectly controlling, or controlled by, or under direct or indirect common control with, such Person, or (ii) who is an affiliate of such Person as the term "affiliate" is defined in Section 2 of the Bank Holding Company Act of 1956, as amended, 12 U.S.C. Section 1841.

**"Agreement"** means this Purchase and Assumption Agreement by and among the Assuming Bank, the Corporation, and the Receiver, as amended or otherwise modified from time to time.

**"Assets"** means all assets of the Failed Bank purchased pursuant to Section 3.1. Assets owned by Subsidiaries of the Failed Bank are not "Assets" within the meaning of this definition.

**"Assumed Deposits"** means Deposits.

"**Bank Closing**" means the close of business of the Failed Bank on the date on which the Chartering Authority closed such institution.

"**Bank Premises**" means the banking houses, drive-in banking facilities, and teller facilities (staffed or automated) together with appurtenant parking, storage and service facilities and structures connecting remote facilities to banking houses, and land on which the foregoing are located, that are owned or leased by the Failed Bank and that are occupied by the Failed Bank as of Bank Closing.

"**Book Value**" means, with respect to any Asset and any Liability Assumed, the dollar amount thereof stated on the Accounting Records of the Failed Bank. The Book Value of any item shall be determined as of Bank Closing after adjustments made by the Receiver for differences in accounts, suspense items, unposted debits and credits, and other similar adjustments or corrections and for setoffs, whether voluntary or involuntary. The Book Value of a Subsidiary of the Failed Bank acquired by the Assuming Bank shall be determined from the investment in subsidiary and related accounts on the "bank only" (unconsolidated) balance sheet of the Failed Bank based on the equity method of accounting. Without limiting the generality of the foregoing, (i) the Book Value of a Liability Assumed shall include all accrued and unpaid interest thereon as of Bank Closing, and (ii) the Book Value of a Loan shall reflect adjustments for earned interest, or unearned interest (as it relates to the "rule of 78s" or add-on-interest loans, as applicable), if any, as of Bank Closing, adjustments for the portion of earned or unearned loan-related credit life and/or disability insurance premiums, if any, attributable to the Failed Bank as of Bank Closing, and adjustments for Failed Bank Advances, if any, in each case as determined for financial reporting purposes. The Book Value of an Asset shall not include any adjustment for loan premiums, discounts or any related deferred income or fees, or general or specific reserves on the Accounting Records of the Failed Bank.

"**Business Day**" means a day other than a Saturday, Sunday, Federal legal holiday or legal holiday under the laws of the State where the Failed Bank is located, or a day on which the principal office of the Corporation is closed.

"**Chartering Authority**" means (i) with respect to a national bank, the Office of the Comptroller of the Currency, (ii) with respect to a Federal savings association or savings bank, the Office of Thrift Supervision, (iii) with respect to a bank or savings institution chartered by a State, the agency of such State charged with primary responsibility for regulating and/or closing banks or savings institutions, as the case may be, (iv) the Corporation in accordance with 12 U.S.C. Section 1821(c), with regard to self appointment, or (v) the appropriate Federal banking agency in accordance with 12 U.S.C. 1821(c)(9).

"**Commitment**" means the unfunded portion of a line of credit or other commitment reflected on the books and records of the Failed Bank to make an extension of credit (or additional advances with respect to a Loan) that was legally binding on the Failed Bank as of Bank Closing, other than extensions of credit pursuant to the credit card business and overdraft protection plans of the Failed Bank, if any.

**"Credit Documents"** mean the agreements, instruments, certificates or other documents at any time evidencing or otherwise relating to, governing or executed in connection with or as security for, a Loan, including without limitation notes, bonds, loan agreements, letter of credit applications, lease financing contracts, banker's acceptances, drafts, interest protection agreements, currency exchange agreements, repurchase agreements, reverse repurchase agreements, guarantees, deeds of trust, mortgages, assignments, security agreements, pledges, subordination or priority agreements, lien priority agreements, undertakings, security instruments, certificates, documents, legal opinions, participation agreements and intercreditor agreements, and all amendments, modifications, renewals, extensions, rearrangements, and substitutions with respect to any of the foregoing.

**"Credit File"** means all Credit Documents and all other credit, collateral, or insurance documents in the possession or custody of the Assuming Bank, or any of its Subsidiaries or Affiliates, relating to an Asset or a Loan included in a Put Notice, or copies of any thereof.

**"Data Processing Lease"** means any lease or licensing agreement, binding on the Failed Bank as of Bank Closing, the subject of which is data processing equipment or computer hardware or software used in connection with data processing activities. A lease or licensing agreement for computer software used in connection with data processing activities shall constitute a Data Processing Lease regardless of whether such lease or licensing agreement also covers data processing equipment.

**"Deposit"** means a deposit as defined in 12 U.S.C. Section 1813(l), including without limitation, outstanding cashier's checks and other official checks and all uncollected items included in the depositors' balances and credited on the books and records of the Failed Bank; provided, that the term "Deposit" shall not include all or any portion of those deposit balances which, in the discretion of the Receiver or the Corporation, (i) may be required to satisfy it for any liquidated or contingent liability of any depositor arising from an unauthorized or unlawful transaction, or (ii) may be needed to provide payment of any liability of any depositor to the Failed Bank or the Receiver, including the liability of any depositor as a director or officer of the Failed Bank, whether or not the amount of the liability is or can be determined as of Bank Closing.

**"Failed Bank Advances"** means the total sums paid by the Failed Bank to (i) protect its lien position, (ii) pay ad valorem taxes and hazard insurance, and (iii) pay credit life insurance, accident and health insurance, and vendor's single interest insurance.

**"Fair Market Value"** means (i)(a) "Market Value" as defined in the regulation prescribing the standards for real estate appraisals used in federally related transactions, 12 C.F.R. § 323.2(g), and accordingly shall mean the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

(1) Buyer and seller are typically motivated;

(2) Both parties are well informed or well advised, and acting in what they consider their own best interests;

(3) A reasonable time is allowed for exposure in the open market;

(4) Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

(5) The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale;

as determined as of Bank Closing by an appraiser mutually acceptable to the Receiver and the Assuming Bank; any costs and fees associated with such determination shall be shared equally by the Receiver and the Assuming Bank, and (b) which, with respect to Bank Premises (to the extent, if any, that Bank Premises are purchased utilizing this valuation method), shall be determined not later than sixty (60) days after Bank Closing by an appraiser selected by the Receiver and the Assuming Bank within seven (7) days after Bank Closing; or (ii) with respect to property other than Bank Premises purchased utilizing this valuation method, the price therefore as established by the Receiver and agreed to by the Assuming Bank, or in the absence of such agreement, as determined in accordance with clause (i)(a) above.

**"First Loss Amount"** means the dollar amount of liability set forth in Article VII that the Assuming Bank will incur with respect the loss sharing agreements.

**"Fixtures"** means those leasehold improvements, additions, alterations and installations constituting all or a part of Bank Premises and which were acquired, added, built, installed or purchased at the expense of the Failed Bank, regardless of the holder of legal title thereto as of Bank Closing.

**"Furniture and Equipment"** means the furniture and equipment, other than motor vehicles, leased or owned by the Failed Bank and reflected on the books of the Failed Bank as of Bank Closing, including without limitation automated teller machines, carpeting, furniture, office machinery (including personal computers), shelving, office supplies, telephone, surveillance and security systems. Motor vehicles shall be considered other assets and pass at Book Value.

**"Indemnitees"** means, except as provided in paragraph (k) of Section 12.1, (i) the Assuming Bank, (ii) the Subsidiaries and Affiliates of the Assuming Bank other than any Subsidiaries or Affiliates of the Failed Bank that are or become Subsidiaries or Affiliates of the Assuming Bank, and (iii) the directors, officers, employees and agents of the Assuming Bank and its Subsidiaries and Affiliates who are not also present or former directors, officers, employees or agents of the Failed Bank or of any Subsidiary or Affiliate of the Failed Bank.

**"Information Package"** means the compilation of financial and other data with respect to the Failed Bank entitled "Information Package," as of September 30, 2008 and any amendments or supplements thereto provided to the Assuming Bank by the Corporation.

**"Legal Balance"** means the amount of indebtedness legally owed by an Obligor with respect to a Loan, including principal and accrued and unpaid interest, late fees, attorneys' fees and expenses, taxes, insurance premiums, and similar charges, if any.

**"Liabilities Assumed"** has the meaning provided in Section 2.1.

**"Lien"** means any mortgage, lien, pledge, charge, assignment for security purposes, security interest, or encumbrance of any kind with respect to an Asset, including any conditional sale agreement or capital lease or other title retention agreement relating to such Asset.

**"Loans"** means all of the following owed to or held by the Failed Bank as of Bank Closing:

     (i)     loans (including loans which have been charged off the Accounting Records of the Failed Bank in whole or in part prior to the date of the Information Package), participation agreements, interests in participations, overdrafts of customers (including but not limited to overdrafts made pursuant to an overdraft protection plan or similar extensions of credit in connection with a deposit account), revolving commercial lines of credit, home equity lines of credit, Commitments, United States and/or State-guaranteed student loans, and lease financing contracts;

     (ii)     all Liens, rights (including rights of set-off), remedies, powers, privileges, demands, claims, priorities, equities and benefits owned or held by, or accruing or to accrue to or for the benefit of, the holder of the obligations or instruments referred to in clause (i) above, including but not limited to those arising under or based upon Credit Documents, casualty insurance policies and binders, standby letters of credit, mortgagee title insurance policies and binders, payment bonds and performance bonds at any time and from time to time existing with respect to any of the obligations or instruments referred to in clause (i) above; and

     (iii)     all amendments, modifications, renewals, extensions, refinancings, and refundings of or for any of the foregoing.

**"Net Asset Value"** means the difference, expressed either as a positive or negative number, between the Assets purchased pursuant to Article III, and Liabilities Assumed.

**"Obligor"** means each Person liable for the full or partial payment or performance of any Loan, whether such Person is obligated directly, indirectly, primarily, secondarily, jointly, or severally.

**"Other Real Estate"** means all interests in real estate (other than Bank Premises and Fixtures) and loans on "in substance foreclosure" status as of Bank Closing as recorded on the Accounting Records of the Failed Bank, including but not limited to mineral rights, leasehold rights, condominium and cooperative interests, air rights and development rights that are owned by the Failed Bank.

**"Person"** means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, or government or any agency or political subdivision thereof, excluding the Corporation.

**"Primary Indemnitor"** means any Person (other than the Assuming Bank or any of its Affiliates) who is obligated to indemnify or insure, or otherwise make payments (including payments on account of claims made against) to or on behalf of any Person in connection with the claims covered under Article XII, including without limitation any insurer issuing any directors and officers liability policy or any Person issuing a financial institution bond or banker's blanket bond.

**"Proforma"** means producing a balance sheet that reflects a reasonably accurate financial statement of the Failed bank through the date of closing. The Proforma financial statements serve as a basis for the opening entries of both the Assuming Bank and the Receiver.

**"Put Date"** has the meaning provided in Section 3.4.

**"Put Notice"** has the meaning provided in Section 3.4.

**"Qualified Financial Contract"** means a qualified financial contract as defined in 12 U.S.C. Section 1821(e)(8)(D).

**"Record"** means any document, microfiche, microfilm and computer records (including but not limited to magnetic tape, disc storage, card forms and printed copy) of the Failed Bank generated or maintained by the Failed Bank that is owned by or in the possession of the Receiver at Bank Closing.

**"Related Liability"** with respect to any Asset means any liability existing and reflected on the Accounting Records of the Failed Bank as of Bank Closing for (i) indebtedness secured by mortgages, deeds of trust, chattel mortgages, security interests or other liens on or affecting such Asset, (ii) ad valorem taxes applicable to such Asset, and (iii) any other obligation determined by the Receiver to be directly related to such Asset.

**"Related Liability Amount"** with respect to any Related Liability on the books of the Assuming Bank, means the amount of such Related Liability as stated on the Accounting Records of the Assuming Bank (as maintained in accordance with generally accepted accounting principles) as of the date as of which the Related Liability Amount is being determined. With respect to a liability that relates to more than one asset, the amount of such Related Liability shall be allocated among such assets for the purpose of determining the Related Liability Amount with respect to any one of such assets. Such allocation shall be made by specific allocation, where

determinable, and otherwise shall be pro rata based upon the dollar amount of such assets stated on the Accounting Records of the entity that owns such asset.

**"Repurchase Price"** means, with respect to any Loan the Book Value, adjusted to reflect changes to Book Value after Bank Closing, plus (ii) any advances and interest on such Loan after Bank Closing, minus (iii) the total of amounts received by the Assuming Bank for such Loan, regardless of how applied, after Bank Closing, plus (iv) advances made by Assuming Bank, plus (v) total disbursements of principal made by Receiver that are not included in the Book Value.

**"Safe Deposit Boxes"** means the safe deposit boxes of the Failed Bank, if any, including the removable safe deposit boxes and safe deposit stacks in the Failed Bank's vault(s), all rights and benefits (other than fees collected prior to Bank Closing) under rental agreements with respect to such safe deposit boxes, and all keys and combinations thereto.

**"Settlement Date"** means the first Business Day immediately prior to the day which is one hundred eighty (180) days after Bank Closing, or such other date prior thereto as may be agreed upon by the Receiver and the Assuming Bank. The Receiver, in its discretion, may extend the Settlement Date.

**"Settlement Interest Rate"** means, for the first calendar quarter or portion thereof during which interest accrues, the rate determined by the Receiver to be equal to the equivalent coupon issue yield on twenty-six (26)-week United States Treasury Bills in effect as of Bank Closing as published in The Wall Street Journal; provided, that if no such equivalent coupon issue yield is available as of Bank Closing, the equivalent coupon issue yield for such Treasury Bills most recently published in The Wall Street Journal prior to Bank Closing shall be used. Thereafter, the rate shall be adjusted to the rate determined by the Receiver to be equal to the equivalent coupon issue yield on such Treasury Bills in effect as of the first day of each succeeding calendar quarter during which interest accrues as published in The Wall Street Journal.

**"Subsidiary"** has the meaning set forth in Section 3(w)(4) of the Federal Deposit Insurance Act, 12 U.S.C. Section 1813(w)(4), as amended.

## ARTICLE II
## ASSUMPTION OF LIABILITIES

2.1    **Liabilities Assumed by Assuming Bank.** The Assuming Bank expressly assumes at Book Value (subject to adjustment pursuant to Article VIII) and agrees to pay, perform, and discharge all of the following liabilities of the Failed Bank as of Bank Closing, except as otherwise provided in this Agreement (such liabilities referred to as "Liabilities Assumed"):

(a)    Assumed Deposits; provided, that as to any Deposits of public money which are Assumed Deposits, the Assuming Bank agrees to properly secure such Deposits with such of the Assets as appropriate which, prior to Bank Closing, were pledged as security therefor by the Failed Bank, or with assets of the

Assuming Bank, if such securing Assets, if any, are insufficient to properly secure such Deposits;

(b)     liabilities for indebtedness secured by mortgages, deeds of trust, chattel mortgages, security interests or other liens on or affecting any Assets, if any; provided, that the assumption of any liability pursuant to this paragraph shall be limited to the market value of the Assets securing such liability as determined by the Receiver;

(c)     borrowings from Federal Reserve Banks and Federal Home Loan Banks, if any, provided, that the assumption of any liability pursuant to this paragraph shall be limited to the market value of the assets securing such liability as determined by the Receiver; and overdrafts, debit balances, service charges, reclamations, and adjustments to accounts with the Federal Reserve Banks as reflected on the books and records of any such Federal Reserve Bank within ninety (90) days after Bank Closing, if any;

(d)     ad valorem taxes applicable to any Asset, if any; provided, that the assumption of any ad valorem taxes pursuant to this paragraph shall be limited to an amount equal to the market value of the Asset to which such taxes apply as determined by the Receiver;

(e)     liabilities, if any, for federal funds purchased, repurchase agreements and overdrafts in accounts maintained with other depository institutions (including any accrued and unpaid interest thereon computed to and including Bank Closing); provided, that the assumption of any liability pursuant to this paragraph shall be limited to the market value of the Assets securing such liability as determined by the Receiver;

(f)     United States Treasury tax and loan note option accounts, if any;

(g)     liabilities for any acceptance or commercial letter of credit (other than "standby letters of credit" as defined in 12 C.F.R. Section 337.2(a)); provided, that the assumption of any liability pursuant to this paragraph shall be limited to the market value of the Assets securing such liability as determined by the Receiver;

(h)     duties and obligations assumed pursuant to this Agreement including without limitation those relating to the Failed Bank's credit card business, overdraft protection plans, safe deposit business, safekeeping business or trust business, if any;

(i)     liabilities, if any, for Commitments;

(j)     liabilities, if any, for amounts owed to any Subsidiary of the Failed Bank acquired under Section 3.1;

(k)     liabilities, if any, with respect to Qualified Financial Contracts;

(l)     duties and obligations under any contract pursuant to which the Failed Bank provides mortgage servicing for others, or mortgage servicing is provided to the Failed Bank by others; and

(m)     all asset-related offensive litigation liabilities and all asset-related defensive litigation liabilities, but only to the extent such liabilities relate to assets subject to a loss share agreement, and provided that all other defensive litigation and any class actions with respect to credit card business are retained by the Receiver.

Schedule 2.1 attached hereto and incorporated herein sets forth certain categories of Liabilities Assumed and the aggregate Book Value of the Liabilities Assumed in such categories. Such schedule is based upon the best information available to the Receiver and may be adjusted as provided in Article VIII.

**2.2**     **Interest on Deposit Liabilities.** The Assuming Bank agrees that, from and after Bank Closing, it will accrue and pay interest on Deposit liabilities assumed pursuant to Section 2.1 at a rate(s) it shall determine; provided, that for non-transaction Deposit liabilities such rate(s) shall not be less than the lowest rate offered by the Assuming Bank to its depositors for non-transaction deposit accounts. The Assuming Bank shall permit each depositor to withdraw, without penalty for early withdrawal, all or any portion of such depositor's Deposit, whether or not the Assuming Bank elects to pay interest in accordance with any deposit agreement formerly existing between the Failed Bank and such depositor; and further provided, that if such Deposit has been pledged to secure an obligation of the depositor or other party, any withdrawal thereof shall be subject to the terms of the agreement governing such pledge. The Assuming Bank shall give notice to such depositors as provided in Section 5.3 of the rate(s) of interest which it has determined to pay and of such withdrawal rights.

**2.3**     **Unclaimed Deposits.** If, within eighteen (18) months after Bank Closing, any depositor of the Failed Bank does not claim or arrange to continue such depositor's Deposit assumed pursuant to Section 2.1 at the Assuming Bank, the Assuming Bank shall, within fifteen (15) Business Days after the end of such eighteen (18)-month period, (i) refund to the Corporation the full amount of each such Deposit (without reduction for service charges), (ii) provide to the Corporation a schedule of all such refunded Deposits in such form as may be prescribed by the Corporation, and (iii) assign, transfer, convey and deliver to the Receiver all right, title and interest of the Assuming Bank in and to Records previously transferred to the Assuming Bank and other records generated or maintained by the Assuming Bank pertaining to such Deposits. During such eighteen (18)-month period, at the request of the Corporation, the Assuming Bank promptly shall provide to the Corporation schedules of unclaimed deposits in such form as may be prescribed by the Corporation.

**2.4**     **Employee Plans.** Except as provided in Section 4.12, the Assuming Bank shall have no liabilities, obligations or responsibilities under the Failed Bank's health care, bonus, vacation, pension, profit sharing, deferred compensation, 401K or stock purchase plans or similar

plans, if any, unless the Receiver and the Assuming Bank agree otherwise subsequent to the date of this Agreement.

## ARTICLE III
## PURCHASE OF ASSETS

**3.1**    **Assets Purchased by Assuming Bank**. With the exception of certain assets expressly excluded in Sections 3.5 and 3.6, the Assuming Bank hereby purchases from the Receiver, and the Receiver hereby sells, assigns, transfers, conveys, and delivers to the Assuming Bank, all right, title, and interest of the Receiver in and to all of the assets (real, personal and mixed, wherever located and however acquired) including all subsidiaries, joint ventures, partnerships, and any and all other business combinations or arrangements, whether active, inactive, dissolved or terminated, of the Failed Bank whether or not reflected on the books of the Failed Bank as of Bank Closing. Schedules 3.1 and 3.1a attached hereto and incorporated herein. sets forth certain categories of Assets purchased hereunder. Such schedule is based upon the best information available to the Receiver and may be adjusted as provided in Article VIII. Assets are purchased hereunder by the Assuming Bank subject to all liabilities for indebtedness collateralized by Liens affecting such Assets to the extent provided in Section 2.1. The subsidiaries, joint ventures, partnerships, and any and all other business combinations or arrangements, whether active, inactive, dissolved or terminated being purchased by the Assuming Bank includes, but is not limited to, the entities listed on Schedule 3.1a. Notwithstanding Section 4.8, the Assuming Bank specifically purchases all mortgage servicing rights and obligations of the Failed Bank.

**3.2**    **Asset Purchase Price**.

(a)    All Assets and assets of the Failed Bank subject to an option to purchase by the Assuming Bank shall be purchased for the amount, or the amount resulting from the method specified for determining the amount, as specified on Schedule 3.2, except as otherwise may be provided herein. Any Asset, asset of the Failed Bank subject to an option to purchase or other asset purchased for which no purchase price is specified on Schedule 3.2 or otherwise herein shall be purchased at its Book Value. Loans or other assets charged off the Accounting Records of the Failed Bank prior to the date of the Information Package shall be purchased at a price of zero.

b)    The purchase price for securities (other than the capital stock of any Acquired Subsidiary) purchased under Section 3.1 by the Assuming Bank shall be the market value thereof as of Bank Closing, which market value shall be (i) the "Mid/Last", or "Trade" (as applicable), market price for each such security quoted at the close of the trading day effective on Bank Closing as published electronically by Bloomberg, L.P.; (ii) provided, that if such market price is not available for any such security, the Assuming Bank will submit a bid  for each such security within three days of notification/bid request by the Receiver (unless a different time period is agreed to by the Assuming Bank and the Receiver) and the Receiver, in its sole discretion will accept or reject each such bid; and (iii) further provided in the absence of an acceptable bid from the Assuming Bank, each such security shall not pass to the Assuming Bank and shall be deemed to be an excluded asset hereunder.

(c)    Qualified Financial Contracts shall be purchased at market value determined in accordance with the terms of Exhibit 3.2(c). Any costs associated with such valuation shall be shared equally by the Receiver and the Assuming Bank.

**3.3    Manner of Conveyance; Limited Warranty; Nonrecourse; Etc. THE CONVEYANCE OF ALL ASSETS, INCLUDING REAL AND PERSONAL PROPERTY INTERESTS, PURCHASED BY THE ASSUMING BANK UNDER THIS AGREEMENT SHALL BE MADE, AS NECESSARY, BY RECEIVER'S DEED OR RECEIVER'S BILL OF SALE, "AS IS", "WHERE IS", WITHOUT RECOURSE AND, EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS AGREEMENT, WITHOUT ANY WARRANTIES WHATSOEVER WITH RESPECT TO SUCH ASSETS, EXPRESS OR IMPLIED, WITH RESPECT TO TITLE, ENFORCEABILITY, COLLECTIBILITY, DOCUMENTATION OR FREEDOM FROM LIENS OR ENCUMBRANCES (IN WHOLE OR IN PART), OR ANY OTHER MATTERS.**

**3.4    Puts of Assets to the Receiver.**

(a)    **Puts Prior to the Settlement Date.**

(i) During the period from Bank Closing to and including the Business Day immediately preceding the Settlement Date, the Assuming Bank shall be entitled to require the Receiver to purchase any Asset which the Assuming Bank can establish is evidenced by forged or stolen instruments as of Bank Closing; provided, that, the Assuming Bank shall not have the right to require the Receiver to purchase any such Asset with respect to which the Assuming Bank has taken any action referred to in Section 3.4(a)(ii) with respect to such Asset.

(ii) At the end of the thirty (30)-day period following Bank Closing and at that time only, in accordance with this Section 3.4, the Assuming Bank shall be entitled to require the Receiver to purchase any remaining overdraft transferred to the Assuming Bank pursuant to 3.1 which both was made after the "as of" date of the Information Package and was not made pursuant to an overdraft protection plan or similar extension of credit.

The Assuming Bank shall transfer all such Assets to the Receiver without recourse, and shall indemnify the Receiver against any and all claims of any Person claiming by, through or under the Assuming Bank with respect to any such Asset, as provided in Section 12.4.

(b)    **Notices to the Receiver**. In the event that the Assuming Bank elects to require the Receiver to purchase one or more Assets, the Assuming Bank shall deliver to the Receiver a notice (a "Put Notice") which shall include:

(i)    a list of all Assets that the Assuming Bank requires the Receiver to purchase;

(ii)    a list of all Related Liabilities with respect to the Assets identified pursuant to (i) above; and

(iii)     a statement of the estimated Repurchase Price of each Asset identified pursuant to (i) above as of the applicable Put Date.

Such notice shall be in the form prescribed by the Receiver or such other form to which the Receiver shall consent. As provided in Section 9.6, the Assuming Bank shall deliver to the Receiver such documents, Credit Files and such additional information relating to the subject matter of the Put Notice as the Receiver may request and shall provide to the Receiver full access to all other relevant books and records.

(c)     **Purchase by Receiver**. The Receiver shall purchase Assets that are specified in the Put Notice and shall assume Related Liabilities with respect to such Assets, and the transfer of such Assets and Related Liabilities shall be effective as of a date determined by the Receiver which date shall not be later than thirty (30) days after receipt by the Receiver of the Put Notice (the "Put Date").

(d)     **Purchase Price and Payment Date**.  Each Asset purchased by the Receiver pursuant to this Section 3.4 shall be purchased at a price equal to the Repurchase Price of such Asset less the Related Liability Amount applicable to such Asset, in each case determined as of the applicable Put Date. If the difference between such Repurchase Price and such Related Liability Amount is positive, then the Receiver shall pay to the Assuming Bank the amount of such difference; if the difference between such amounts is negative, then the Assuming Bank shall pay to the Receiver the amount of such difference. The Assuming Bank or the Receiver, as the case may be, shall pay the purchase price determined pursuant to this Section 3.4(d) not later than the twentieth (20th) Business Day following the applicable Put Date, together with interest on such amount at the Settlement Interest Rate for the period from and including such Put Date to and including the day preceding the date upon which payment is made.

(e)     **Servicing**. The Assuming Bank shall administer and manage any Asset subject to purchase by the Receiver in accordance with usual and prudent banking standards and business practices until such time as such Asset is purchased by the Receiver.

(f)     **Reversals**. In the event that the Receiver purchases an Asset (and assumes the Related Liability) that it is not required to purchase pursuant to this Section 3.4, the Assuming Bank shall repurchase such Asset (and assume such Related Liability) from the Receiver at a price computed so as to achieve the same economic result as would apply if the Receiver had never purchased such Asset pursuant to this Section 3.4.

**3.5     Assets Not Purchased by Assuming Bank**. The Assuming Bank does not purchase, acquire or assume, or (except as otherwise expressly provided in this Agreement) obtain an option to purchase, acquire or assume under this Agreement:

(a)     any financial institution bonds, banker's blanket bonds, or public liability, fire, or extended coverage insurance policy or any other insurance policy of the Failed Bank, or premium refund, unearned premium derived from cancellation, or any proceeds payable with respect to any of the foregoing;

(b)    any interest, right, action, claim, or judgment against (i) any officer, director, employee, accountant, attorney, or any other Person employed or retained by the Failed Bank or any Subsidiary of the Failed Bank on or prior to Bank Closing arising out of any act or omission of such Person in such capacity, (ii) any underwriter of financial institution bonds, banker's blanket bonds or any other insurance policy of the Failed Bank, (iii) any shareholder or holding company of the Failed Bank, or (iv) any other Person whose action or inaction may be related to any loss (exclusive of any loss resulting from such Person's failure to pay on a Loan made by the Failed Bank) incurred by the Failed Bank; provided, that for the purposes hereof, the acts, omissions or other events giving rise to any such claim shall have occurred on or before Bank Closing, regardless of when any such claim is discovered and regardless of whether any such claim is made with respect to a financial institution bond, banker's blanket bond, or any other insurance policy of the Failed Bank in force as of Bank Closing;

(c)    prepaid regulatory assessments of the Failed Bank, if any;

(d)    legal or equitable interests in tax receivables of the Failed Bank, if any, including any claims arising as a result of the Failed Bank having entered into any agreement or otherwise being joined with another Person with respect to the filing of tax returns or the payment of taxes;

(e)    amounts reflected on the Accounting Records of the Failed Bank as of Bank Closing as a general or specific loss reserve or contingency account, if any;

(f)    leased or owned Bank Premises and leased or owned Furniture and Equipment and Fixtures and data processing equipment (including hardware and software) located on leased or owned Bank Premises, if any; provided, that the Assuming Bank does obtain an option under Section 4.6, Section 4.7 or Section 4.8, as the case may be, with respect thereto;

(g)    owned Bank Premises which the Receiver, in its discretion, determines may contain environmentally hazardous substances;

(h)    any "goodwill," as such term is defined in the instructions to the report of condition prepared by banks examined by the Corporation in accordance with 12 C.F.R. Section 304.4, and other intangibles;

(i)    any criminal/restitution orders issued in favor of the Failed Bank;

(j)    reserved;

(k)    assets essential to the Receiver in accordance with Section 3.6.

**3.6**    **Retention or Repurchase of Assets Essential to Receiver**.

(a)    The Receiver may refuse to sell to the Assuming Bank, or the Assuming Bank agrees, at the request of the Receiver set forth in a written notice to the Assuming Bank, to assign, transfer, convey, and deliver to the Receiver all of the Assuming Bank's right, title and interest in and to, any Asset or asset essential to the Receiver as determined by the Receiver in its

discretion (together with all Credit Documents evidencing or pertaining thereto), which may include any Asset or asset that the Receiver determines to be:

    (i)    made to an officer, director, or other Person engaging in the affairs of the Failed Bank, its Subsidiaries or Affiliates or any related entities of any of the foregoing;

    (ii)    the subject of any investigation relating to any claim with respect to any item described in Section 3.5(a) or (b), or the subject of, or potentially the subject of, any legal proceedings;

    (iii)    made to a Person who is an Obligor on a loan owned by the Receiver or the Corporation in its corporate capacity or its capacity as receiver of any institution;

    (iv)    secured by collateral which also secures any asset owned by the Receiver; or

    (v)    related to any asset of the Failed Bank not purchased by the Assuming Bank under this Article III or any liability of the Failed Bank not assumed by the Assuming Bank under Article II.

(b)    Each such Asset or asset purchased by the Receiver shall be purchased at a price equal to the Repurchase Price thereof less the Related Liability Amount with respect to any Related Liabilities related to such Asset or asset, in each case determined as of the date of the notice provided by the Receiver pursuant to Section 3.6(a). The Receiver shall pay the Assuming Bank not later than the twentieth (20th) Business Day following receipt of related Credit Documents and Credit Files together with interest on such amount at the Settlement Interest Rate for the period from and including the date of receipt of such documents to and including the day preceding the day on which payment is made. The Assuming Bank agrees to administer and manage each such Asset or asset in accordance with usual and prudent banking standards and business practices until each such Asset or asset is purchased by the Receiver. All transfers with respect to Asset or assets under this Section 3.6 shall be made as provided in Section 9.6. The Assuming Bank shall transfer all such Asset or assets and Related Liabilities to the Receiver without recourse, and shall indemnify the Receiver against any and all claims of any Person claiming by, through or under the Assuming Bank with respect to any such Asset or asset, as provided in Section 12.4.

## ARTICLE IV
## ASSUMPTION OF CERTAIN DUTIES AND OBLIGATIONS

The Assuming Bank agrees with the Receiver and the Corporation as follows:

**4.1**    **Continuation of Banking Business**. The Assuming Bank agrees to provide full service banking in the trade area of the Failed Bank commencing on the first banking business day after Bank Closing and to maintain such presence until it has received all necessary regulatory approvals to cease providing such banking services in the trade area. At the option of

the Assuming Bank, such banking services may be provided at any or all of the Bank Premises, or at other premises within such trade area.

**4.2** **Agreement with Respect to Credit Card Business**. The Assuming Bank agrees to honor and perform, from and after Bank Closing, all duties and obligations with respect to the Failed Bank's credit card business, and/or processing related to credit cards, if any, and assumes all outstanding extensions of credit with respect thereto.

**4.3** **Agreement with Respect to Safe Deposit Business**. The Assuming Bank assumes and agrees to discharge, from and after Bank Closing, in the usual course of conducting a banking business, the duties and obligations of the Failed Bank with respect to all Safe Deposit Boxes, if any, of the Failed Bank and to maintain all of the necessary facilities for the use of such boxes by the renters thereof during the period for which such boxes have been rented and the rent therefor paid to the Failed Bank, subject to the provisions of the rental agreements between the Failed Bank and the respective renters of such boxes; provided, that the Assuming Bank may relocate the Safe Deposit Boxes of the Failed Bank to any office of the Assuming Bank located in the trade area of the Failed Bank.

**4.4** **Agreement with Respect to Safekeeping Business**. The Receiver transfers, conveys and delivers to the Assuming Bank and the Assuming Bank accepts all securities and other items, if any, held by the Failed Bank in safekeeping for its customers as of Bank Closing. The Assuming Bank assumes and agrees to honor and discharge, from and after Bank Closing, the duties and obligations of the Failed Bank with respect to such securities and items held in safekeeping. The Assuming Bank shall be entitled to all rights and benefits heretofore accrued or hereafter accruing with respect thereto. The Assuming Bank shall provide to the Receiver written verification of all assets held by the Failed Bank for safekeeping within sixty (60) days after Bank Closing.

**4.5** **Agreement with Respect to Trust Business**.

(a) The Assuming Bank shall, without further transfer, substitution, act or deed, to the full extent permitted by law, succeed to the rights, obligations, properties, assets, investments, deposits, agreements, and trusts of the Failed Bank under trusts, executorships, administrations, guardianships, and agencies, and other fiduciary or representative capacities, all to the same extent as though the Assuming Bank had assumed the same from the Failed Bank prior to Bank Closing; provided, that any liability based on the misfeasance, malfeasance or nonfeasance of the Failed Bank, its directors, officers, employees or agents with respect to the trust business is not assumed hereunder.

(b) The Assuming Bank shall, to the full extent permitted by law, succeed to, and be entitled to take and execute, the appointment to all executorships, trusteeships, guardianships and other fiduciary or representative capacities to which the Failed Bank is or may be named in wills, whenever probated, or to which the Failed Bank is or may be named or appointed by any other instrument.

(c) In the event additional proceedings of any kind are necessary to accomplish the transfer of such trust business, the Assuming Bank agrees that, at its own expense, it will take

whatever action is necessary to accomplish such transfer. The Receiver agrees to use reasonable efforts to assist the Assuming Bank in accomplishing such transfer.

(d)     The Assuming Bank shall provide to the Receiver written verification of the assets held in connection with the Failed Bank's trust business within sixty (60) days after Bank Closing.

**4.6     Agreement with Respect to Bank Premises**.

(a)     **Option to Purchase.** Subject to Section 3.5, the Receiver hereby grants to the Assuming Bank an exclusive option for the period of ninety (90) days commencing the day after Bank Closing to purchase any or all owned Bank Premises, including all Furniture, Fixtures and Equipment located on the Bank Premises. The Assuming Bank shall give written notice to the Receiver within the option period of its election to purchase or not to purchase any of the owned Bank Premises. Any purchase of such premises shall be effective as of the date of Bank Closing and such purchase shall be consummated as soon as practicable thereafter, and in no event later than the Settlement Date.

(b)     **Option to Lease.** The Receiver hereby grants to the Assuming Bank an exclusive option for the period of ninety (90) days commencing the day after Bank Closing to cause the Receiver to assign to the Assuming Bank any or all leases for leased Bank Premises, if any, which have been continuously occupied by the Assuming Bank from Bank Closing to the date it elects to accept an assignment of the leases with respect thereto to the extent such leases can be assigned; provided, that the exercise of this option with respect to any lease must be as to all premises or other property subject to the lease. If an assignment cannot be made of any such leases, the Receiver may, in its discretion, enter into subleases with the Assuming Bank containing the same terms and conditions provided under such existing leases for such leased Bank Premises or other property. The Assuming Bank shall give notice to the Receiver within the option period of its election to accept or not to accept an assignment of any or all leases (or enter into subleases or new leases in lieu thereof). The Assuming Bank agrees to assume all leases assigned (or enter into subleases or new leases in lieu thereof) pursuant to this Section 4.6.

(c)     **Facilitation.** The Receiver agrees to facilitate the assumption, assignment or sublease of leases or the negotiation of new leases by the Assuming Bank; provided, that neither the Receiver nor the Corporation shall be obligated to engage in litigation, make payments to the Assuming Bank or to any third party in connection with facilitating any such assumption, assignment, sublease or negotiation or commit to any other obligations to third parties.

(d)     **Occupancy.** The Assuming Bank shall give the Receiver fifteen (15) days' prior written notice of its intention to vacate prior to vacating any leased Bank Premises with respect to which the Assuming Bank has not exercised the option provided in Section 4.6(b). Any such notice shall be deemed to terminate the Assuming Bank's option with respect to such leased Bank Premises.

(e)     **Occupancy Costs.**

(i)     The Assuming Bank agrees to pay to the Receiver, or to appropriate third parties at the direction of the Receiver, during and for the period of any occupancy by it of (x) owned Bank Premises the market rental value and all operating costs, and (y) leased Bank Premises, all operating costs with respect thereto and to comply with all relevant terms of applicable leases entered into by the Failed Bank, including without limitation the timely payment of all rent. Operating costs include, without limitation all taxes, fees, charges, utilities, insurance and assessments, to the extent not included in the rental value or rent. If the Assuming Bank elects to purchase any owned Bank Premises in accordance with Section 4.6(a), the amount of any rent paid (and taxes paid to the Receiver which have not been paid to the taxing authority and for which the Assuming Bank assumes liability) by the Assuming Bank with respect thereto shall be applied as an offset against the purchase price thereof.

(ii)     The Assuming Bank agrees during the period of occupancy by it of owned or leased Bank Premises, to pay to the Receiver rent for the use of all owned or leased Furniture and Equipment and all owned or leased Fixtures located on such Bank Premises for the period of such occupancy. Rent for such property owned by the Failed Bank shall be the market rental value thereof, as determined by the Receiver within sixty (60) days after Bank Closing. Rent for such leased property shall be an amount equal to any and all rent and other amounts which the Receiver incurs or accrues as an obligation or is obligated to pay for such period of occupancy pursuant to all leases and contracts with respect to such property. If the Assuming Bank purchases any owned Furniture and Equipment or owned Fixtures in accordance with Section 4.6(f) or 4.6(h), the amount of any rents paid by the Assuming Bank with respect thereto shall be applied as an offset against the purchase price thereof.

(f)     **Certain Requirements as to Furniture, Equipment and Fixtures.** If the Assuming Bank purchases owned Bank Premises or accepts an assignment of the lease (or enters into a sublease or a new lease in lieu thereof) for leased Bank Premises as provided in Section 4.6(a) or 4.6(b), or if the Assuming Bank does not exercise such option but within twelve (12) months following Bank Closing obtains the right to occupy such premises (whether by assignment, lease, sublease, purchase or otherwise), other than in accordance with Section 4.6(a) or (b), the Assuming Bank shall (i) effective as of the date of Bank Closing, purchase from the Receiver all Furniture and Equipment and Fixtures owned by the Failed Bank and located thereon as of Bank Closing, (ii) accept an assignment or a sublease of the leases or negotiate new leases for all Furniture and Equipment and Fixtures leased by the Failed Bank and located thereon, and (iii) if applicable, accept an assignment or a sublease of any ground lease or negotiate a new ground lease with respect to any land on which such Bank Premises are located; provided, that the Receiver shall not have disposed of such Furniture and Equipment and Fixtures or repudiated the leases specified in clause (ii) or (iii).

(g)     **Vacating Premises.**

(i)     If the Assuming Bank elects not to purchase any owned Bank Premises, the notice of such election in accordance with Section 4.6(a) shall specify the date upon which the Assuming Bank's occupancy of such premises shall terminate, which date shall not be later than ninety (90) days after the date of the Assuming Bank's notice not to exercise such option. The Assuming Bank promptly shall relinquish and release to the Receiver such premises and the

Furniture and Equipment and Fixtures located thereon in the same condition as at Bank Closing, normal wear and tear excepted. By occupying any such premises after the expiration of such ninety (90)-day period, the Assuming Bank shall, at the Receiver's option, (x) be deemed to have agreed to purchase such Bank Premises, and to assume all leases, obligations and liabilities with respect to leased Furniture and Equipment and leased Fixtures located thereon and any ground lease with respect to the land on which such premises are located, and (y) be required to purchase all Furniture and Equipment and Fixtures owned by the Failed Bank and located on such premises as of Bank Closing.

(ii)     If the Assuming Bank elects not to accept an assignment of the lease or sublease any leased Bank Premises, the notice of such election in accordance with Section 4.6(b) shall specify the date upon which the Assuming Bank's occupancy of such leased Bank Premises shall terminate, which date shall not be later than the date which is one hundred eighty (180) days after Bank Closing. Upon vacating such premises, the Assuming Bank shall relinquish and release to the Receiver such premises and the Fixtures and the Furniture and Equipment located thereon in the same condition as at Bank Closing, normal wear and tear excepted. By failing to provide notice of its intention to vacate such premises prior to the expiration of the option period specified in Section 4.6(b), or by occupying such premises after the one hundred eighty (180)-day period specified above in this paragraph (ii), the Assuming Bank shall, at the Receiver's option, (x) be deemed to have assumed all leases, obligations and liabilities with respect to such premises (including any ground lease with respect to the land on which premises are located), and leased Furniture and Equipment and leased Fixtures located thereon in accordance with this Section 4.6 (unless the Receiver previously repudiated any such lease), and (y) be required to purchase all Furniture and Equipment and Fixtures owned by the Failed Bank and located on such premises as of Bank Closing.

(h)     **Furniture and Equipment and Certain Other Equipment.** The Receiver hereby grants to the Assuming Bank an option to purchase all Furniture and Equipment or any telecommunications, data processing equipment (including hardware and software) and check processing and similar operating equipment owned by the Failed Bank and located at any leased Bank Premises that the Assuming Bank elects to vacate or which it could have, but did not occupy, pursuant to this Section 4.6; provided, that, the Assuming Bank shall give the Receiver notice of its election to purchase such property at the time it gives notice of its intention to vacate such Bank Premises or within ten (10) days after Bank Closing for Bank Premises it could have, but did not, occupy.

### 4.7     Agreement with Respect to Leased Data Processing Equipment

(a)     The Receiver hereby grants to the Assuming Bank an exclusive option for the period of ninety (90) days commencing the day after Bank Closing to accept an assignment from the Receiver of any or all Data Processing Leases to the extent that such Data Processing Leases can be assigned.

(b)     The Assuming Bank shall (i) give written notice to the Receiver within the option period specified in Section 4.7(a) of its intent to accept or decline an assignment or sublease of any or all Data Processing Leases and promptly accept an assignment or sublease of such Data

EX R-023

Processing Leases, and (ii) give written notice to the appropriate lessor(s) that it has accepted an assignment or sublease of any such Data Processing Leases.

(c)     The Receiver agrees to facilitate the assignment or sublease of Data Processing Leases or the negotiation of new leases or license agreements by the Assuming Bank; provided, that neither the Receiver nor the Corporation shall be obligated to engage in litigation or make payments to the Assuming Bank or to any third party in connection with facilitating any such assumption, assignment, sublease or negotiation.

(d)     The Assuming Bank agrees, during its period of use of any property subject to a Data Processing Lease, to pay to the Receiver or to appropriate third parties at the direction of the Receiver all operating costs with respect thereto and to comply with all relevant terms of the applicable Data Processing Leases entered into by the Failed Bank, including without limitation the timely payment of all rent, taxes, fees, charges, utilities, insurance and assessments.

(e)     The Assuming Bank shall, not later than fifty (50) days after giving the notice provided in Section 4.7(b), (i) relinquish and release to the Receiver all property subject to the relevant Data Processing Lease, in the same condition as at Bank Closing, normal wear and tear excepted, or (ii) accept an assignment or a sublease thereof or negotiate a new lease or license agreement under this Section 4.7.

### 4.8    Agreement with Respect to Certain Existing Agreements.

(a)     Subject to the provisions of Section 4.8(b), with respect to agreements existing as of Bank Closing which provide for the rendering of services by or to the Failed Bank, within ninety (90) days after Bank Closing, the Assuming Bank shall give the Receiver written notice specifying whether it elects to assume or not to assume each such agreement. Except as may be otherwise provided in this Article IV, the Assuming Bank agrees to comply with the terms of each such agreement for a period commencing on the day after Bank Closing and ending on: (i) in the case of an agreement that provides for the rendering of services by the Failed Bank, the date which is ninety (90) days after Bank Closing, and (ii) in the case of an agreement that provides for the rendering of services to the Failed Bank, the date which is thirty (30) days after the Assuming Bank has given notice to the Receiver of its election not to assume such agreement; provided, that the Receiver can reasonably make such service agreements available to the Assuming Bank. The Assuming Bank shall be deemed by the Receiver to have assumed agreements for which no notification is timely given. The Receiver agrees to assign, transfer, convey, and deliver to the Assuming Bank all right, title and interest of the Receiver, if any, in and to agreements the Assuming Bank assumes hereunder. In the event the Assuming Bank elects not to accept an assignment of any lease (or sublease) or negotiate a new lease for leased Bank Premises under Section 4.6 and does not otherwise occupy such premises, the provisions of this Section 4.8(a) shall not apply to service agreements related to such premises. The Assuming Bank agrees, during the period it has the use or benefit of any such agreement, promptly to pay to the Receiver or to appropriate third parties at the direction of the Receiver all operating costs with respect thereto and to comply with all relevant terms of such agreement.

(b)     The provisions of Section 4.8(a) regarding the Assuming Bank's election to assume or not assume certain agreements shall not apply to (i) agreements pursuant to which the

Failed Bank provides mortgage servicing for others or mortgage servicing is provided to the Failed Bank by others, (ii) agreements that are subject to Sections 4.1 through 4.7 and any insurance policy or bond referred to in Section 3.5(a) or other agreement specified in Section 3.5, and (iii) consulting, management or employment agreements, if any, between the Failed Bank and its employees or other Persons. Except as otherwise expressly set forth elsewhere in this Agreement, the Assuming Bank does not assume any liabilities or acquire any rights under any of the agreements described in this Section 4.8(b).

**4.9** **Informational Tax Reporting**. The Assuming Bank agrees to perform all obligations of the Failed Bank with respect to Federal and State income tax informational reporting related to (i) the Assets and the Liabilities Assumed, (ii) deposit accounts that were closed and loans that were paid off or collateral obtained with respect thereto prior to Bank Closing, (iii) miscellaneous payments made to vendors of the Failed Bank, and (iv) any other asset or liability of the Failed Bank, including, without limitation, loans not purchased and Deposits not assumed by the Assuming Bank, as may be required by the Receiver.

**4.10** **Insurance**. The Assuming Bank agrees to obtain insurance coverage effective from and after Bank Closing, including public liability, fire and extended coverage insurance acceptable to the Receiver with respect to owned or leased Bank Premises that it occupies, and all owned or leased Furniture and Equipment and Fixtures and leased data processing equipment (including hardware and software) located thereon, in the event such insurance coverage is not already in force and effect with respect to the Assuming Bank as the insured as of Bank Closing. All such insurance shall, where appropriate (as determined by the Receiver), name the Receiver as an additional insured.

**4.11** **Office Space for Receiver and Corporation**. For the period commencing on the day following Bank Closing and ending on the one hundred eightieth (180th) day thereafter, the Assuming Bank agrees to provide to the Receiver and the Corporation, without charge, adequate and suitable office space (including parking facilities and vault space), furniture, equipment (including photocopying and telecopying machines), email accounts, network access and technology resources (such as shared drive) and utilities (including local telephone service and fax machines) at the Bank Premises occupied by the Assuming Bank for their use in the discharge of their respective functions with respect to the Failed Bank. In the event the Receiver and the Corporation determine that the space provided is inadequate or unsuitable, the Receiver and the Corporation may relocate to other quarters having adequate and suitable space and the costs of relocation and any rental and utility costs for the balance of the period of occupancy by the Receiver and the Corporation shall be borne by the Assuming Bank. Additionally, the Assuming Bank agrees to pay such bills and invoices on behalf of the Receiver and Corporation as the Receiver or Corporation may direct for the period beginning on the date of Bank Closing and ending on Settlement Date. Assuming Bank shall submit it requests for reimbursement of such expenditures pursuant to Article VIII of this Agreement.

**4.12** **Agreement with Respect to Continuation of Group Health Plan Coverage for Former Employees of the Failed Bank**.

(a)     The Assuming Bank agrees to assist the Receiver, as provided in this Section 4.12, in offering individuals who were employees or former employees of the Failed Bank, or any of its Subsidiaries, and who, immediately prior to Bank Closing, were receiving, or were eligible to receive, health insurance coverage or health insurance continuation coverage from the Failed Bank ("Eligible Individuals"), the opportunity to obtain health insurance coverage in the Corporation's FIA Continuation Coverage Plan which provides for health insurance continuation coverage to such Eligible Individuals who are qualified beneficiaries of the Failed Bank as defined in Section 607 of the Employee Retirement Income Security Act of 1974, as amended (respectively, "qualified beneficiaries" and "ERISA"). The Assuming Bank shall consult with the Receiver and not later than five (5) Business Days after Bank Closing shall provide written notice to the Receiver of the number (if available), identity (if available) and addresses (if available) of the Eligible Individuals who are qualified beneficiaries of the Failed Bank and for whom a "qualifying event" (as defined in Section 603 of ERISA) has occurred and with respect to whom the Failed Bank's obligations under Part 6 of Subtitle B of Title I of ERISA have not been satisfied in full, and such other information as the Receiver may reasonably require. The Receiver shall cooperate with the Assuming Bank in order to permit it to prepare such notice and shall provide to the Assuming Bank such data in its possession as may be reasonably required for purposes of preparing such notice.

(b)     The Assuming Bank shall take such further action to assist the Receiver in offering the Eligible Individuals who are qualified beneficiaries of the Failed Bank the opportunity to obtain health insurance coverage in the Corporation's FIA Continuation Coverage Plan as the Receiver may direct. All expenses incurred and paid by the Assuming Bank (i) in connection with the obligations of the Assuming Bank under this Section 4.12, and (ii) in providing health insurance continuation coverage to any Eligible Individuals who are hired by the Assuming Bank and such employees' qualified beneficiaries shall be borne by the Assuming Bank.

(c)     This Section 4.12 is for the sole and exclusive benefit of the parties to this Agreement, and for the benefit of no other Person (including any former employee of the Failed Bank or any Subsidiary thereof or qualified beneficiary of such former employee). Nothing in this Section 4.12 is intended by the parties, or shall be construed, to give any Person (including any former employee of the Failed Bank or any Subsidiary thereof or qualified beneficiary of such former employee) other than the Corporation, the Receiver and the Assuming Bank any legal or equitable right, remedy or claim under or with respect to the provisions of this Section.

**4.13     Agreement with Respect to Interim Asset Servicing.** At any time after Bank Closing, the Receiver may establish on its books an asset pool(s) and may transfer to such asset pool(s) (by means of accounting entries on the books of the Receiver) all or any assets and liabilities of the Failed Bank which are not acquired by the Assuming Bank, including, without limitation, wholly unfunded Commitments and assets and liabilities which may be acquired, funded or originated by the Receiver subsequent to Bank Closing. The Receiver may remove assets (and liabilities) from or add assets (and liabilities) to such pool(s) at any time in its discretion. At the option of the Receiver, the Assuming Bank agrees to service, administer, and collect such pool assets in accordance with and for the term set forth in Exhibit 4.13 "Interim Asset Servicing Arrangement".

4.14    Reserved.

4.15    **Agreement with Respect to Loss Sharing**.  The Assuming Bank shall be entitled to require reimbursement from the Receiver for loss sharing on certain loans in accordance with the Single Family Shared-Loss Agreement attached hereto as Exhibit 4.15A and the Non-SF Shared-Loss Agreement attached hereto as Exhibit 4.15B, collectively, the "Shared-Loss Agreements." The Loans that shall be subject to the Shared-Loss Agreements are identified on the Schedule of Loans 4.15A and 4.15B attached hereto.

## ARTICLE V
## DUTIES WITH RESPECT TO DEPOSITORS OF THE FAILED BANK

5.1    **Payment of Checks, Drafts and Orders.** Subject to Section 9.5, the Assuming Bank agrees to pay all properly drawn checks, drafts and withdrawal orders of depositors of the Failed Bank presented for payment, whether drawn on the check or draft forms provided by the Failed Bank or by the Assuming Bank, to the extent that the Deposit balances to the credit of the respective makers or drawers assumed by the Assuming Bank under this Agreement are sufficient to permit the payment thereof, and in all other respects to discharge, in the usual course of conducting a banking business, the duties and obligations of the Failed Bank with respect to the Deposit balances due and owing to the depositors of the Failed Bank assumed by the Assuming Bank under this Agreement.

5.2    **Certain Agreements Related to Deposits.** Subject to Section 2.2, the Assuming Bank agrees to honor the terms and conditions of any written escrow or mortgage servicing agreement or other similar agreement relating to a Deposit liability assumed by the Assuming Bank pursuant to this Agreement.

5.3    **Notice to Depositors.**

(a)    Within seven (7) days after Bank Closing, the Assuming Bank shall give (i) notice to depositors of the Failed Bank of its assumption of the Deposit liabilities of the Failed Bank, and (ii) any notice required under Section 2.2, by mailing to each such depositor a notice with respect to such assumption and by advertising in a newspaper of general circulation in the county or counties in which the Failed Bank was located. The Assuming Bank agrees that it will obtain prior approval of all such notices and advertisements from counsel for the Receiver and that such notices and advertisements shall not be mailed or published until such approval is received.

(b)    The Assuming Bank shall give notice by mail to depositors of the Failed Bank concerning the procedures to claim their deposits, which notice shall be provided to the Assuming Bank by the Receiver or the Corporation. Such notice shall be included with the notice to depositors to be mailed by the Assuming Bank pursuant to Section 5.3(a).

(c)    If the Assuming Bank proposes to charge fees different from those charged by the Failed Bank before it establishes new deposit account relationships with the depositors of the

Failed Bank, the Assuming Bank shall give notice by mail of such changed fees to such depositors.

**ARTICLE VI**
**RECORDS**

**6.1**    **Transfer of Records**.

(a)    In accordance with Section 3.1, the Receiver assigns, transfers, conveys and delivers to the Assuming Bank the following Records pertaining to the Deposit liabilities of the Failed Bank assumed by the Assuming Bank under this Agreement, except as provided in Section 6.4:

(i)    signature cards, orders, contracts between the Failed Bank and its depositors and Records of similar character;

(ii)    passbooks of depositors held by the Failed Bank, deposit slips, cancelled checks and withdrawal orders representing charges to accounts of depositors;

and the following Records pertaining to the Assets:

(iii)    records of deposit balances carried with other banks, bankers or trust companies;

(iv)    Loan and collateral records and Credit Files and other documents;

(v)    deeds, mortgages, abstracts, surveys, and other instruments or records of title pertaining to real estate or real estate mortgages;

(vi)    signature cards, agreements and records pertaining to Safe Deposit Boxes, if any; and

(vii)    records pertaining to the credit card business, trust business or safekeeping business of the Failed Bank, if any.

(b)    The Receiver, at its option, may assign and transfer to the Assuming Bank by a single blanket assignment or otherwise, as soon as practicable after Bank Closing, any other Records not assigned and transferred to the Assuming Bank as provided in this Agreement, including but not limited to loan disbursement checks, general ledger tickets, official bank checks, proof transactions (including proof tapes) and paid out loan files.

**6.2**    **Delivery of Assigned Records**. The Receiver shall deliver to the Assuming Bank all Records described in (i) Section 6.1(a) as soon as practicable on or after the date of this Agreement, and (ii) Section 6.1(b) as soon as practicable after making any assignment described therein.

**6.3** **Preservation of Records**. The Assuming Bank agrees that it will preserve and maintain for the joint benefit of the Receiver, the Corporation and the Assuming Bank, all Records of which it has custody for such period as either the Receiver or the Corporation in its discretion may require, until directed otherwise, in writing, by the Receiver or Corporation. The Assuming Bank shall have the primary responsibility to respond to subpoenas, discovery requests, and other similar official inquiries with respect to the Records of which it has custody.

**6.4** **Access to Records; Copies**. The Assuming Bank agrees to permit the Receiver and the Corporation access to all Records of which the Assuming Bank has custody, and to use, inspect, make extracts from or request copies of any such Records in the manner and to the extent requested, and to duplicate, in the discretion of the Receiver or the Corporation, any Record in the form of microfilm or microfiche pertaining to Deposit account relationships; provided, that in the event that the Failed Bank maintained one or more duplicate copies of such microfilm or microfiche Records, the Assuming Bank hereby assigns, transfers, and conveys to the Corporation one such duplicate copy of each such Record without cost to the Corporation, and agrees to deliver to the Corporation all Records assigned and transferred to the Corporation under this Article VI as soon as practicable on or after the date of this Agreement. The party requesting a copy of any Record shall bear the cost (based on standard accepted industry charges to the extent applicable, as determined by the Receiver) for providing such duplicate Records. A copy of each Record requested shall be provided as soon as practicable by the party having custody thereof.

## ARTICLE VII
## FIRST LOSS AMOUNT

The Assuming Bank has submitted to the Receiver a First Loss Amount bid of a negative Nine Million Nine Hundred Thousand and no/100 [($ 9,900,000.00)] Dollars for the Assets purchased and Liabilities Assumed hereunder. The First Loss Amount will be increased by the amount of uninsured deposits determined by the FDIC on or before Monday, February 9, 2009 (or such other date as the parties may agree), less a premium on the uninsured deposits. The uninsured deposit premium is to be the lesser of four percent (4%) of uninsured deposits or Two Hundred Eighty Thousand and no/100 ($280,000.00) Dollars. Since the First Loss Amount is a negative number, the increase will make the First Loss Position a larger negative number, larger by the amount of uninsured deposits, net of the deposit premium on the uninsured deposits.

## ARTICLE VIII
## RESERVED

## ARTICLE IX
## CONTINUING COOPERATION

**9.1** **General Matters**. The parties hereto agree that they will, in good faith and with their best efforts, cooperate with each other to carry out the transactions contemplated by this Agreement and to effect the purposes hereof.

**DKT. 71**

1

2

3

4

5

6

7

8

9

10

```
                              FILED
                    CLERK, U.S. DISTRICT COURT

                       3/8/22

                   CENTRAL DISTRICT OF CALIFORNIA
                   BY:      SE        DEPUTY
```

11                UNITED STATES DISTRICT COURT

12           FOR THE CENTRAL DISTRICT OF CALIFORNIA

13  UNITED STATES OF AMERICA,        No. CR 20-612-ODW

14          Plaintiff,               ORDER SEALING DOCUMENTS **(UNDER**

15              v.                   **SEAL)**

16  MARK HANDEL,

17          Defendants.

18

19  For good cause shown, IT IS HEREBY ORDERED THAT:

20       The government's <u>ex parte</u> application for sealed filing is

21  GRANTED.  The documents sought to be filed under seal and the

22  government's <u>ex parte</u> application for sealed filing shall be filed

23  under seal.  The government may produce the underlying document as

24  permitted or required by applicable law.

25

26   March 8, 2022

27   DATE                            HONORABLE OTIS D. WRIGHT II
                                     UNITED STATES DISTRICT JUDGE

28

# DKT. 73
# EXHIBIT 3

EXHIBIT 3



# United States Department of Justice

## United States Attorney's Office
## Central District of California

---

*Ruth C. Pinkel*
*Phone: (213) 894-6077*
*E-mail: ruth.pinkel@usdoj.gov*

*1500 United States Courthouse*
*312 North Spring Street*
*Los Angeles, California 90012*

November 30, 2021

**<u>VIA E-MAIL & USAfx</u>**

Mark Windsor
65 North Raymond Avenue
Suite 320
Pasadena, CA 91103
Windsorlaw@gmail.com

Re:     <u>United States v. Mark Handel</u>
         CR No. 20-00612-ODW

         Discovery Production # 7; Response to Defense Second Request for Discovery
         Letter

Dear Mr. Windsor:

Pursuant to your request for discovery, the Protective Order in this matter, and the Draft Transcript agreement, the government is producing via USAfx the discovery Bates numbered USAO_91221 to 96978, as detailed in the attached index.

The government will be happy to discuss this discovery production and arrangements for future discovery productions, if any, at a Rule 16.1 discovery conference.  Please contact us to schedule a meeting.

The government will make available for your inspection, where appropriate and/or if not already produced in discovery, any item of evidence referred to above, as well as any other evidence seized from your client and/or which the government intends to offer in its case-in-chief.  Please contact us to arrange a mutually convenient time for your inspection of such items.

This letter is also being sent in response to your to "Second Request for Discovery" letter dated October 12, 2021.   Your assertion that the government gave a "vague response" to your first discovery letter is inaccurate.  The government said it would produce additional discovery to you on an ongoing basis and then produced approximately 34,000 pages of your client's emails (see bates numbers 57137 to 91220), which prove your client worked as a real estate developer during the time in which he falsely stated to the bankruptcy court that he was not working.  The other items listed in your discovery letter are addressed below.

<u>Overbroad and Premature Objection</u>

As a general matter, the government objects to your entire discovery request as (1) overbroad in that you fail to explain why the requested items fall under Rule 16; and (2) premature as the

November 30, 2021
Letter to Mark Windsor
Discovery Production # 7
Page 2

government has produced 96,978 pages of discovery, will continue to produce discovery on a rolling basis, and some of the items requested are only produced prior to trial, currently scheduled for July 12, 2022.

Item 1:  Wiretap Evidence

**GOVERNMENT RESPONSE TO ITEM NO. 1**: The government will produce wiretap evidence, if any, that falls under the government's discovery obligations.  As the government has previously mentioned, it has produced, to date, 96,978 pages of, among other items, documents, reports, and transcripts in addition to recordings.  It will continue to produce discovery on a rolling basis.

Item 2:  Investigation Prior to August 8, 2014

**GOVERNMENT RESPONSE TO ITEM NO. 2**: The government objects to this response as overbroad and requesting information not discoverable. The government will produce all evidence that falls under its discovery obligations.  However, you have no entitlement to any internal USAO written policies or any other information about determinations regarding conflicts for AUSAs who become Article III or magistrate judges.  You also have no entitlement to any internal USAO information.  Without waiving any objections, the investigation was opened in the U.S. Attorney's Office no later than July 17, 2014.

Items 3 and 4:  Phone, SMS, All Other Chat Communications, Phone Records, GPS, and Cell Site Data

**GOVERNMENT RESPONSE TO ITEM NOS. 3 & 4**: The government will produce all evidence, if any, that falls under its discovery obligations and will continue to produce discovery on a rolling basis.

Item 5: Individual A

**GOVERNMENT RESPONSE TO ITEM NO. 5**: The government will produce all evidence, if any, that falls under its discovery obligations and will continue to produce discovery on a rolling basis.

Item 6:  Interviews with Mark Handel

**GOVERNMENT RESPONSE TO ITEM NO. 6**: Discovery Production 7 contains recordings and draft transcripts of interviews dated January 22, 2015, February 23, 2015, and July 23, 2018 (see Bates 91221-91425, 96903-96978).

//
//

November 30, 2021
Letter to Mark Windsor
Discovery Production # 7
Page 3

Item 7:  Law Enforcement Cooperator Files for Mark Handel
    **GOVERNMENT RESPONSE TO ITEM NO. 7**: The government will produce all evidence, if any, that falls under its discovery obligations and will continue to produce discovery on a rolling basis.

Items 8 and 9: ▮▮▮▮▮▮▮ and ▮▮▮▮▮
    **GOVERNMENT RESPONSE TO ITEM NOS. 8 & 9**: The government will produce all evidence, if any, that falls under its discovery obligations and will continue to produce discovery on a rolling basis.

Item 10:  Evidence regarding ▮▮▮▮▮▮ and ▮▮▮▮▮▮
    **GOVERNMENT RESPONSE TO ITEM NO. 10**: The government will produce all evidence, if any, that falls under its discovery obligations and will continue to produce discovery on a rolling basis.

Items 12, 15 and 16:  Discovery of informants, cooperating witnesses and co-conspirators
**GOVERNMENT RESPONSE TO ITEM NOS. 12, 15 & 16**: The government objects to this request as overbroad.  Nonetheless, the government will produce all evidence, if any, that falls under its discovery obligations and will continue to produce discovery on a rolling basis.

Item 14:  Exculpatory or favorable evidence (including evidence of mental illness, alcoholism, etc.) of any prospective witness, confidential informant or cooperating witness
**GOVERNMENT RESPONSE TO ITEM NO. 14**: The government objects to this request as overbroad.  Nonetheless, the government will produce all evidence, if any, that falls under its discovery obligations and that is within its possession.  the government has already produced witness statements and will continue to produce discovery on a rolling basis.

Item 18:  Statements or alleged confessions
**GOVERNMENT RESPONSE TO ITEM NO. 18**: The government objects to this request as overbroad.  Additionally, the government objects to this request as vague as to the "which relate to" language.  This request is also duplicative as far as it intends to cover discovery already requested in items numbers 1 and 6, among others.

Items 11, 13, 14, 16, 17, 19-24:  General discovery requests relating to, among other items, potential witnesses/expert witnesses, trial witnesses, exhibit and witness list

November 30, 2021
Letter to Mark Windsor
Discovery Production # 7
Page 4


Aside from being overbroad, your requests for this information are either premature, not the proper subject of discovery and/or you will receive this information (exhibits lists, exhibits, witness lists), as is customary, on the first day of trial.


The government will produce to you any additional <u>Jencks</u> material—including any relevant grand jury transcripts, assuming a Rule 6(e) order has been issued—one week before trial if you agree to the production of reciprocal <u>Jencks</u> material at that time or affirmatively represent that you have no <u>Jencks</u> material to produce.  Please inform me whether such an arrangement is acceptable to you.

The enclosed materials and any future discovery provided to you that may exceed the scope of discovery mandated by the Federal Rules of Criminal Procedure, federal statute, or relevant case law are provided voluntarily and solely as a matter of discretion.  By producing such materials to you, the government does not waive its right to object to any future discovery requests beyond the ambit of its legal obligations.

With this letter the government requests all reciprocal discovery to which it is entitled under Rules 16(b) and 26.2 of the Federal Rules of Criminal Procedure.  The government also requests notice of any intention of your client to rely on an entrapment defense, or a defense involving mental condition or duress, and/or an alibi defense.  Pursuant to Federal Rule of Criminal Procedure 12.1, the dates, times, and places of the charged offenses are detailed within the documents included within the discovery.  Please contact me immediately if you believe that this notice is insufficient.

Please let us know if you have any questions or would like to further discuss any of the matters raised above.

Very truly yours,



RUTH C. PINKEL
Assistant United States Attorney
Public Corruption & Civil Rights Section

# DKT. 125

# EXHIBITS 2-5

# EXHIBIT 2

194B-LA-5287935 Serial 366

-1 of 7-

FD-302 (Rev. 5-8-10)

## FEDERAL BUREAU OF INVESTIGATION

Date of entry    12/13/2019

███████████████████ date of birth (DOB) ████████ , was
interviewed at the FBI Los Angeles Office located at 11000 Wilshire Blvd,
Suite 1700, Los Angeles, California 90024. With ████████ was ████████
attorney, ERIC S. PETTIT, of Boies, Schiller, Flexner, LLP. Also present
was Special Agent Christian Amaya, Special Agent David Wong, and FBI
Forensic Accountant Joan O'Dowd. After being advised of the identity of the
interviewing Agent and the nature of the interview, ████████ provided the
following information:

*[Agent Note: Prior to the interview ████████ was advised that the interview
was voluntary. ████████ was instructed that he could leave at any time and
that he had the right to consult with his attorney. ████████ was advised
that lying to the FBI was a federal offense and that lying included omitting
information. ████████ affirmatively acknowledged he understood all of these
admonishments and that he must be completely truthful.]*

████████ **and MARK HANDEL**

████████ grew up in the construction industry and eventually attended
the University of Nebraska. ████████ then worked for Promoworks, which did
promotions for Red Bull energy drinks, and worked to open up new markets.
Around 2003, ████████ met ████████████████ through his(████████
father-in-law. ████ was a former partner of MARK HANDEL(HANDEL).
████████ began to work with MWH Development, HANDEL's old company, at which
████████ handled the construction aspect of the company. After two years,
████████ wanted to go out on his own. ████████ still partnered with
HANDEL even after leaving. ████████ moved home for about six months to a
year. HANDEL bought office space in Woodland Hills, and ████████ started
working there. During the economic downtown, HANDEL either sold or lost the
office. Eventually, ████████ wanted to separate with HANDEL after becoming
involved in a lawsuit that ████████ was drawn into.

Investigation on  11/22/2019  at  Los Angeles, California, United States (In Person)

File #  194B-LA-5287935                                      Date drafted  11/25/2019

by  WONG DAVID D, AMAYA CHRISTIAN ROBERTO

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

FD-302a (Rev. 5-8-10)

194B-LA-5287935

(U) November 22, 2019 Interview of ▮▮▮

Continuation of FD-302 of ▮▮▮▮▮▮▮▮▮▮ , On  11/22/2019 , Page  2 of 7

▮▮▮▮▮▮ had met HANDEL's ▮▮▮▮ ▮▮▮▮▮▮▮▮ and HANDEL's
children. ▮▮▮▮▮ was never involved in construction. ▮▮▮▮▮ went into
teaching around 2009 or 2010. ▮▮▮▮▮ was not a partner on projects, but
sometimes her name would pop up in documents.

▮▮▮▮▮ primarily communicated with HANDEL by telephone calls, but also
by direct emails. ▮▮▮▮▮▮ did not remember forwarding emails instead of
carbon copying people on them. The meetings between the two would either
occur at the job site or at the office.

At the time of the interview, ▮▮▮▮▮▮▮▮ company was Oakhill
Construction, LLC. ▮▮▮▮▮▮▮ prior companies were: ELBS LLC, EBS
Calabasas LLC, and ▮▮▮▮▮▮ Development Company Inc. ▮▮▮▮▮▮ did not
have a particular naming convention for his businesses.

▮▮▮▮▮ had multiple projects between 2010 and 2016. The projects
were: San Fernando Mission Villas (a 19 unit development), SJC Peppertree,
three Mulholland lots in Calabasas, BSVercom 3387 and 3389 Old Topanga; and
5800 Jedd Smith in Hidden Hills.

No one knew where HANDEL got his money from.

One of HANDEL's companies, DTMM Construction(DTMM), stood for "Don't
Touch My Money".

HANDEL also did projects with ▮▮▮▮▮▮ and ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ was "MARK HANDEL's lap dog". ▮▮▮▮▮▮ was a civil engineer
that HANDEL hired, who had the following projects: a project in Fenton on
Lake View Terrace, a project in Duarte that ▮▮▮▮▮ and HANDLE had bought
out ▮▮▮▮▮▮▮▮▮▮▮ four lots on Chapter Drive in Woodland Hills,
the Harbor City Project, and a project where ▮▮▮▮▮ was hired on as a
general contractor to finish the project.

▮▮▮▮▮▮▮▮

▮▮▮▮▮ met ▮▮▮▮ around the time that he(▮▮▮▮▮ started working
with HANDEL. ▮▮▮▮ was a real estate agent who owned lots of apartment

194B-LA-5287935 Serial 366

FD-302a (Rev. 5-8-10)

194B-LA-5287935

(U) November 22, 2019 Interview of ████

Continuation of FD-302 of ████████████████████████ , On 11/22/2019 , Page 3 of 7

buildings on Chandler near the Van Nuys Boulevard area. █████████ did not know if █████ was a partner or owner on any of the projects.

████████████████

████████ was the accountant for HANDEL and HANDEL's ████████. ████████ was █████████ accountant for three years, from approximately 2010 to 2013. █████████ eventually changed accountants to get further away from HANDEL. █████████ relationship with █████ was entirely through HANDEL. ████████ had put together a fund for people to invest in real estate, but █████████ did not know what entity was used for the investment. ████████████ and █████████ invested in ████████ fund.

When █████████ needed money for projects that he found, he would go to HANDEL and provide HANDEL with a "draw package". Then, HANDEL would go and borrow funds from either █████ █████ or Lone Oak. █████████ always felt like he was getting "hosed" because the terms always changed.

█████████ was a █████████ on BSVercom, Big Tujunga Villas, and the Jedd Smith Account.

█████████ did not know when █████████ moved, and did not know what █████████ was doing anymore. █████████ attorney was ███████████.

On paper, it seemed that █████████ was the lead on projects, however, HANDEL was the person that █████████ always dealt with. In addition, when █████████ was going through the separation with HANDEL, all of the negotiation was with HANDEL, though on paper it was all with █████████.

█████████ was the █████████ on Future Growers, LLC.

**Separation Agreement**

█████████ wanted to separate from HANDEL because HANDEL was a "slimeball" in his(HANDEL's) dealings in pornography and paying for women for his(HANDEL's) friends. █████████ always felt like he was getting "screwed". HANDEL also treated ████████████, ████████████ superintendent, poorly. The "straw that broke the camel's back" was MSB La Meida, an apartment building project in North Hollywood on the corner of 4820 Bellflower. █████████ and HANDEL had worked the project together, and there



FD-302a (Rev. 5-8-10)

194B-LA-5287935 Serial 366

194B-LA-5287935

(U) November 22, 2019 Interview of ▮

Continuation of FD-302 of ▮▮▮▮▮▮▮▮▮▮ , On  11/22/2019  , Page  4 of 7

was a lawsuit filed against ▮▮▮▮▮ and HANDEL.  Though the separation
agreement had ▮▮▮▮▮ name on it, the separation was actually with
HANDEL.  A copy of the separation agreement has been attached as a 1A.

▮▮▮▮▮ came up with values for all of the projects that he shared with
HANDEL, and then they divvied up the properties.  The properties were: Big
Tujunga Villas, a parcel of land that went to HANDEL; SJC Peppertree owned
the Peppertree Bend project went to HANDEL; SJC Peppertree also owned the
5800 Jed Smith project that went to ▮▮▮▮▮ and BSVercom, which included
"Mulholland Lot 2" (23401 Mulholland) which was transferred to Future
Growers LLC and 23421 Mulholland, which went to HANDEL.  ▮▮▮▮▮ kept a $2.1
million note on the Jed Smith property, which ▮▮▮▮▮ paid off with the
sale of the property.

▮▮▮▮▮ found out about the SJC Peppertree project from HANDEL.  It was
a short sale that ▮▮▮▮▮ and HANDEL bought that was a gut remodel.  They
were able to get a loan for the property from Lone Oak.  ▮▮▮▮▮ may have
signed for the loan from Lone Oak to "take down" the property.  ▮▮▮▮▮
was pretty sure that the construction funds came from ▮▮▮▮▮  Because
▮▮▮▮▮ was still working under ▮▮▮▮▮ Development, HANDEL was giving
checks and sending wires to ▮▮▮▮▮ Development.

On a typical custom home, the process began with finding a property, then
dealing with engineers, and finally dealing with plans and permitting.
Consultants were not used frequently when constructing custom homes.
However, on at least one home ▮▮▮▮▮ was using a land use consultant.
Consultants were more commonly used in sub-divisions, since you were dealing
with more people and interested parties.

**Documents**

▮▮▮▮▮ was shown the following marked exhibits:

#1-3: Emails between ▮▮▮▮▮ and HANDEL regarding SJC Peppertree.
▮▮▮▮▮ was not aware of any prior relationship between HANDEL and ▮▮▮▮▮
and the original owners of Peppertree.

#4: Would have been ▮▮▮▮▮ turning over all the files to ▮▮▮▮▮
HANDEL would have owned and run the project, ▮▮▮▮▮ would have to be the

194B-LA-5287935 Serial 366

FD-302a (Rev. 5-8-10)

194B-LA-5287935

(U) November 22, 2019 Interview of 

Continuation of FD-302 of _____ , On  11/22/2019 , Page   5 of 7

one to finish it

#5: A list of everything that HANDEL and _____ needed to finish on their projects.

## Mulholland Project

HANDEL was involved from the beginning. _____ and HANDEL bought the note from the bank and started foreclosure proceedings on the owner. _____ did not remember how much money HANDEL put up, nor did _____ know where HANDEL got the money from, but it may have been from _____ BSVercom owned it and _____ and HANDEL both had equity in it.  BSVercom owned lot #1, Future Growers owned lot #2(Document #7: _____ assumed that HANDEL's family was going to live there), and EBS Calabasas owned lot #3, which was for _____ family.  _____ did not keep the lot because his wife did not like it and _____ did not have enough to get a loan on the house. HANDEL represented the project to the City Council because HANDEL was a partner on the project.  _____ invested in some of the projects through _____ was involved in a donation of land on Mulholland, which may have occurred in 2012.

#6 Draw payments or reimbursals, through _____ _____ and HANDEL.

BSVercom was originally started to do a deal with HANDEL in Verdugo Hills.  However, the project never happened, but _____ and HANDEL still used it for other projects.

_____ was aware that HANDEL filed for bankruptcy, but did not know the details of it.

#8: _____ did not know why _____ was a signatory on a Secretary of State filing for BSVercom.

#9: A check signed by _____ _____ speculated that it was probably HANDEL who was signing _____ name on documents.

#10: _____ did not know why _____ was a signatory for BSVercom.

#11:  ARC account was a blueprint company, and HANDEL was using _____


194B-LA-5287935 Serial 366

FD-302a (Rev. 5-8-10)

194B-LA-5287935

(U) November 22, 2019 Interview of █████

Continuation of FD-302 of ███████████ , On  11/22/2019 , Page  6 of 7


ARC account.

#12: ████████ talked to Loan Oak's ███████████ one or two times.

#13,14: ████████ communicating with his partners.

#15-18: When ████████ owned Big Tujunga, he and HANDEL were trying to get rid of property that they were not going to use. Nothing happened at the time.

#19: ████████ consulting checks to HANDEL were for reimbursements on the five condo project to finish the project.

#20: Check that may have been for the condo project.

*[Agent Note: Exhibits #21,22 were not located after the interview, and may have been a result of the mislabeling of exhibits]*

#23,24: Checks from San Fernandon Mission Village. HANDEL was ███████████ partner in that. HANDEL directed ███████ to cut checks to DTMM.

#25-27: Checks for profits from the sales of homes. The direction of checks would have come from HANDEL.

#28: A check from ███████ paying rent on ████████ and HANDEL's office on 24007 Ventura Boulevard.

#29: A check from Investor Capital Group, which was ████████ company.

#30: ████████ did not know why his name would be on the Memo line on a check from Esplanade Productions, Inc. to Investor Capital Group.

#31,32: Lists of reimbursements.

#33-36: Checks in which the money was going to ████████ Development to possibly reimburse HANDEL.

#37: A Check for possible reimbursement.

#38: A check for money from ███████ to HANDEL for money needed for the project. ████████ did not know why payments went to ████████ Development first.

USAO_0028774

194B-LA-5287935 Serial 366

FD-302a (Rev. 5-8-10)

194B-LA-5287935

(U) November 22, 2019 Interview of ██

Continuation of FD-302 of ████████ , On 11/22/2019 , Page 7 of 7

#39,40: Checks for proceeds from the sale of the Jedd Smith Property

#41,42:  HANDEL working out a deal if he and ████████ could get the property on Big Tujunga Villas.

**Prior ████████ Deposition**

████████  had been informally disposed by a company, possibly called Sunnyside Development, LLC.  This company had lent HANDEL money on a project, and felt that HANDEL had just taken the money.  The disposition was related to HANDEL's bankruptcy filing.

# EXHIBIT 3

 ███████████████ **MOI-1.20.2-LAFO-GR11DEPARTMENT OF THE TREASURY**
**Internal Revenue Service**
**Criminal Investigation**

# Memorandum of Interview

---

| | | | |
|---|---|---|---|
| **Investigation #:** | ████████████ | **Location:** | **Phone Call** |
| **Investigation Name:** | MARK HANDEL | | |
| **Date:** | April 13, 2020 | | |
| **Time:** | ~11:15-11:31am | | |
| **Participant(s):** | ████████████ Former Bookkeeper at ████████ and ████████ | | |
| | Ashley Braver, Special Agent IRS-CI | | |
| | Stephanie Posey, Special Agent IRS-CI | | |

On the above date and approximately time, Special Agent Ashley Braver (SA Braver) and Special Agent Stephanie Posey (SA Posey) introduced themselves over the phone to ████ ████ (██████████ provided us with the following information:

1. ████ is 61 years old. She graduated from high school and took a few college courses at Valley College.

2. ████ worked at ██████████████████ (██ from 1991 until 2018. She left after about 25 years of working at ██ because she wanted to get out of working in business management. While working at ██ she provided bookkeeping services and business management services for many celebrity clients.

3. ████ prepared the books and records for DTMM Construction (DTMM) for five to seven years. MARK HANDEL (MARK) is the owner of DTMM. MARK was a tax client of ██ before he was a business management client. ████ prepared MARK's tax returns for several years and MARK obtained ████ services to help with paying his bills.

4. Journal entries for DTMM or MARK were only made when it was time for tax returns to be prepared. Aside from that, ████ would just enter the deposits and cut checks.

5. When money came into DTMM and ████ deposited a check into the DTMM account, ████ would code "Loan from ██ or "Loan from ████████ She would do this unless there was another reason for the deposit or wire. The instructions for what to code the money as usually was written with the memo or wire. Sometimes there were verbal or emailed instructions to ████ from MARK or ██████████ If ████ had any questions on how to classify a transaction, she would call MARK.

6. ████ did not question why the money that was deposited into DTMM was being called loans. It is not ████ business to question what the deposits were called because she is not responsible for the tax returns.

7. ████ did not work on Elara or any entity related to ██████████

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER
USAO_0097654

8.  █████ knew that MARK filed for bankruptcy because she saw it in his file. █████ was not involved in assisting with anything related to the bankruptcy and is not sure if the bankruptcy was ever accepted.

9.  █████ often had face to face meetings with MARK when using █████ business management services. █████ had a good working relationship with MARK.

10. Because █████ often works with celebrity clients, her clients often have low self-esteem and are paranoid. She did not consider MARK to have low self-esteem or think that he was paranoid.

11. MARK owned other entities besides DTMM Construction. She believes one of the companies MARK owned was called Handel Construction. █████ only prepared books and records for MARK and DTMM.

12. When MARK had personal expenses paid out of his DTMM account, █████ would code the transaction as a loan. For example, sometimes the DTMM account would be used to pay for MARK's personal home mortgage, MARK's personal home expenses, or sometimes MARK would use the wrong credit card. In any of these circumstances █████ would code each of these transactions in the "Due To & Due From" accounts to track amounts paid for personal use by DTMM. █████ would keep track of the personal expenses in the "Due To & Due From" accounts because that way, at the end of the year, MARK could pay back the amount he used for personal expenses or it could be part of MARK's salary from DTMM.

13. At the end of the year, if a Company has income or a loss, the Company would pay the officer a bonus or withhold the loan the officer took because they used Company funds to pay personal expenses and the "Due To/From" account would be reduced from the officer's gross salary.

14. █████ would not have found it odd if MARK had around $1.5 million in personal expenses being paid by DTMM in any given year. She has had other clients do this.

15. █████ never worked with █████

16. If MARK or any bookkeeping client wanted an adjustment to be made for their books, it would go straight to █████ boss.

17. MARK and █████ talked all the time. They knew what each other were up to.

I prepared this memorandum on April 15, 2020 after refreshing my memory from notes made during and immediately after the interview with █████

Ashley Braver

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER
USAO_0097655

Special Agent



N    MO

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER
USAO_0097656



**DEPARTMENT OF THE TREASURY**
**Internal Revenue Service**
**Criminal Investigation**

## Memorandum of Interview

---

**Investigation #:** ███████████   **Location:** **WebEx**
**Investigation Name:** MARK HANDEL
**Date:** January 20, 2021
**Time:** ~4:34-4:59pm
**Participant(s):** ███████████ Former Bookkeeper at ██████ ██████ and ██████
Ashley Braver, Special Agent IRS-CI
Christian Amaya, Special Agent FBI

**Investigation #:** ███████████

On the above date and approximately time, Special Agent Ashley Braver (SA Braver) and Special Agent Christian Amaya (SA Amaya) introduced themselves over the phone to ███████████ (███████████ provided us with the following information:

1. When ██████ was the bookkeeper for DTMM Construction (DTMM), MARK HANDEL (MARK) had two homes; one in California and one in Wisconsin.

2. There was only one bank account for DTMM. Both business and personal expenses were paid out of the same DTMM bank account. ██████ created separate account codes for the different expenses so that the personal expenses would not be mistaken for business expenses.

3. ██████ named the accounts in a way that it would be easy to differentiate the business from personal expenses paid out of DTMM. For example, she named one of the accounts "Home Expenses" and one of the accounts "Wisconsin Expenses," because this made it clear that it was a personal expense since you would not have paid for home expenses out of a business account.

4. The "Home Expenses" account included transactions that were personal expenses paid out of DTMM that were directly related to MARK's personal residence in California. The transactions included payments for his home mortgage and home electricity payments.

5. SA Braver shared the Adobe PDF application on WebEx for ██████ to see. The PDF displayed a document called "Tax Data," returned from the ██████ ██████ and ██████ subpoena. The file was located within the folder "2014" within the "DTMM Construction" folder. ██████ coded the transactions that created the ledger report. ██████ explained the following from the document:

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER
USAO_0097661

a. All transactions under "Home Expenses" were personal expenses paid for out of the DTMM bank account. This is true for each year that ▮▮▮▮ coded the transactions.

b. All transactions under "Wisconsin Expenses" were personal expenses paid for out of the DTMM bank account. This is true for each year that ▮▮▮▮ coded the transactions.

c. The "Terra Vista," "MWH 100," ▮▮▮▮BSVercom," "Duarte Development," "Foothill 26 Project," "Kambria/Killion/MLTVP39," "Harbor City Townhomes," and "Pepper Tree Project" accounts were from entities that MARK had an interest in. ▮▮▮▮ did not know if MARK owned the entities, but she knew the entities were associated with MARK. ▮▮▮▮ could not say that the expenses from these accounts were personal expenses because she knew MARK had an interest in the entities.

d. Some of these accounts had opening balances when ▮▮▮▮ received DTMM's books prior to her being the bookkeeper. ▮▮▮▮ kept the opening balances on the balance sheet even though some of the accounts did not have transactions for several years.

e. The "Due To/From Officers" account were all personal expenses paid out of the DTMM bank account. All transactions under this header, such as the one on page 20 of the "Tax Data" [exhibit called *2014 Tax Data*], were personal expenses.

f. Any personal expense paid through a business, whether it be by error or by choice, would get billed to the "Officer Loan" account and then be worked out with the accountant of how to reclassify the amounts as income at the end of the year.

g. The "Description" column of ledger report was created by ▮▮▮▮ She would enter something in the description when payments were made, or money was received. She wanted to make it easy to understand what the transactions were when there were out-of-the-ordinary transactions. ▮▮▮▮ sometimes referenced an invoice number that would have been scanned in, in the "Description" column. This is how ▮▮▮▮ would prepare the books for all her clients.

h. The "Due To/From Officers Credit Card Payments" account are 100% personal expenses of MARK and his family. ▮▮▮▮ would code the minimum credit card payments to this account because all the expenses were personal.

i. DTMM paid mostly personal expenses from the business bank account. For this reason, ▮▮▮▮ created separated accounts instead of overcrowding everything and putting it in the "Due To/From Officers" account.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

6. ██████ stated that she was not going to push personal expenses to a business expense account when she knew what the expense was for real. She stated that this was not her way of doing things. She coded personal expenses to a "30" account when she knew that the expenses were personal.

7. SA Braver shared the Adobe PDF application on WebEx for ██████ to see. The PDF displayed was a document called "11_15███," returned from the ██████ ██████ and ██████ subpoena. The file was located within the folder "Paid Bills" folder for "2014" within the "DTMM Construction Handel" folder. ██████ explained the following from the document:

   a. On page 28, ██████ was able to see that the payment of $15,689.93 reconciled with the ledger report for the American Express payment made on November 15, 2014. This was coded as a personal expense because the credit card expenses were for personal expenses of MARK and his family.

8. SA Braver shared the Adobe PDF application on WebEx for ██████ to see. The PDF displayed was a document called "06_1██" returned from the ██████ ██████ and ██████ subpoena. The file was located within the folder "Paid Bills" folder for "2016" within the "DTMM Construction Handel" folder. ██████ explained the following from the document:

   a. The Chaminade College Preparatory check paid out of the DTMM account on 6/1/2016 was a personal expense. ██████ coded the expense as a personal expense.

   b. The scanned in invoice showed that the payment was to the parent of ██████

9. ██████ did not recall who ██████ was even though $250,000 in checks were made out to her in 2014 from the DTMM account. She coded the expenses as personal expenses at the time, but does not recall what the payments were for.

I prepared this memorandum on January 21, 2021, after refreshing my memory from notes made during and immediately after the interview with ██████

notes.pdf    2014 Tax Data.pdf    11_15██ pdf    06_01██ pdf

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER
USAO_0097663

Ashley Braver
Special Agent

*email received 1/22/2021 at 3:01pm SA Amaya agreed to MOI

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER
USAO_0097664

# EXHIBIT 4

1

<u>DECLARATION OF ASHLEY J. BRAVER</u>

2    I, ASHLEY J. BRAVER, declare as follows:

3    1.   I am an Internal Revenue Service ("IRS"), Criminal

4 Investigation Special Agent assigned to Los Angeles Field Office.  I

5 submit this declaration in support of the government's sentencing

6 position in <u>United States v. Mark Handel</u>, Case No. CR 20-612-ODW.  I

7 have knowledge of the facts set forth herein and could and would

8 testify to those facts fully and truthfully if called and sworn as a

9 witness.

10    2.   Based on my review of the IRS form Schedule K-1s for Future

11 Growers, LLC ("Future Growers"), Duarte Development 15, LLC ("Duarte

12 Development"), Lone Pine Investors Group, LLC ("Lone Pine"), and

13 2013 Opportunity Fund A LLC ("2013 Opportunity Fund"), the following

14 is the ownership structure of these entities for the years listed

15 below:

16          a.   <u>Future Growers</u>: For tax years 2014 and 2015, ▮▮▮▮▮

17 ▮▮▮▮▮ owned 90 percent of Future Growers, and ▮▮▮▮▮▮▮▮ owned 10

18 percent of Future Growers.

19          b.   <u>Duarte Development</u>: For tax year 2014, Future Growers

20 was the 100 percent owner of Duarte Development.

21          c.   <u>Lone Pine</u>: For tax years 2014 and 2015, ▮▮▮▮▮▮▮▮▮

22 owned 90 percent of Lone Pine, and ▮▮▮▮▮▮▮ owned 10 percent of

23 Lone Pine.

24          d.   <u>2013 Opportunity Fund</u>: For tax year 2014, Lone Pine

25 owned 70 percent, Corken Investments LLC owned 11.1 percent, ▮▮▮▮▮

26 ▮▮▮▮▮ owned 9.5 percent, The Brown Family Trust owned 4.7 percent,

27 and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Trust owned 4.7 percent of the 2013

28

1  Opportunity Fund. By the end of tax year 2015, Lone Pine owned 100
2  percent of the 2013 Opportunity Fund.

3      I declare under penalty of perjury under the laws of the United
4  States of America that the foregoing is true and correct and that
5  this declaration is executed at Los Angeles, California on October
6  23, 2023.

8  _____
   ASHLEY J. BRAVER

EXHIBIT 5

194B-LA-5287935 Serial 371

-1 of 4 -

FD-302 (Rev. 5-8-10)

## FEDERAL BUREAU OF INVESTIGATION

Date of entry ___04/09/2020___

██████████████████████ date of birth (DOB) █████████, SSN: ████████
██, was interviewed at the FBI Los Angeles Office located at 11000
Wilshire Blvd, Suite 1700, Los Angeles, California 90024. Present was
Special Agent Christian Amaya, and FBI Forensic Accountant Joan O'Dowd.
After being advised of the identity of the interviewing Agent and the nature
of the interview, █████████ provided the following information:

*[Agent Note: Prior to the interview ██████ was advised that the interview
was voluntary. ███████ was instructed that she could leave at any time.
████████ was advised that lying to the FBI was a federal offense and that
lying included omitting information. ██████ affirmatively acknowledged she
understood all of these admonishments and that she must be completely
truthful.]*

*[Agent Note: On December 9th 2019 a ██████████████████████ was served
on ███████ (accepted by her husband ████ █████████████ brought a
copy of the ██████ and her laptop to access the necessary files to the
interview. However those files were unable to be downloaded at the time of
the interview, due to technical issues. ███████ agreed to provide those
files at a later time. A copy of the ███████ and all documents received
from ████████ will be uploaded in a separate 302 under the ████████
subfile in this case]*

## BACKGROUND

████████ had worked for ████████████ (███████ as both an office manager
and later a bookkeeper. Despite only the name of business entities (LLCs)
being listed on the subpoena ████████ identified that the investigation must
be focused on an individual named Mark HANDEL (HANDEL). All the entities
except one that were subpoenaed belonged to HANDEL.

---

Investigation on ___12/10/2019___ at ___Los Angeles, California, United States (In Person)___

File # ___194B-LA-5287935___                               Date drafted ___12/30/2019___

by ___AMAYA CHRISTIAN ROBERTO, ODOWD JOAN M___

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

USAO_0028473

194B-LA-5287935 Serial 371

FD-302a (Rev. 5-8-10)

194B-LA-5287935

(U) December 10, 2019 Interview of ███████

Continuation of FD-302 of ███████████████████████████ , On  12/10/2019 , Page  2 of 4

[Agent Note: prior to ███████ making this statement the name Mark Handel was never mentioned to ███████ in addition no identifying information associated with Mark Handel was listed on the subpoena].

███████ started working for ████████ █████ and ████████ CPA (█████ firm in December of 2000. ██████ was one of three partners at the accounting firm. ███████ began █████ career with ██ as an office manager. ███████ was responsible for daily operation of the office, planning office parties, organization, and general work flow. Gradually as ████████ and ████████ developed a personal friendship ██████ taught ███████ how to be a bookkeeper. Once trained ███████ took over the bookkeeping duties for a number of entities that ██████ was personally associated with:

2013 Opportunity Fund LLC
August Financial Group
Big Tujunga Villas LLC
Charter 4 LLC
Future Growers
Harbor City 10 LLC
MLTVP 39
SJC Peppertree LLC
Terra Vista Way Inc
Investor Capital Group
Duarte Development 15 LLC
Killion 45
Lone Pine Investor Group LLC

███████ also worked closely with the following accounts however the actual book keeping was handled by ████████████ (████████ at ████

DTMM Construction Inc
████████████ Trust

██████ was the accountant that handled the two accounts listed above and ████████ was his personal assistant at ███ that handled the bookkeeping.

It was not unusual for accountants of high end developers and actors to list their names on paperwork and applications instead of their clients. ████████ felt this was why ████████ name is listed on all accounts and

USAO_0028474

194B-LA-5287935 Serial 371

FD-302a (Rev. 5-8-10)

194B-LA-5287935

(U) December 10, 2019 Interview of 

Continuation of FD-302 of ███████████ , On  12/10/2019 , Page  3 of 4

properties that were in fact his client HANDEL'S. The partners at ██ were notoriously tight lipped and ███████ learned early not to ask many questions.

███████ left ██ in August of 2014 and opened her own bookkeeping service called ███████████. ████████ has only had two clients ████████ and a close friend (who was not named). All bookkeeping was done on QuickBooks and ████████ kept detailed notes in each of the files. For a short period of time (Jan 2016 to July 2017) ███████ took back all files and control of bookkeeping for all the entities listed above, there was no explanation given. In July of 2017 all files and bookkeeping requirements were turned back over to ███████████

**MARK HANDEL**

███████ considered all of the entities listed above as HANDEL'S (with the exception of INVESTOR CAPITAL GROUP) because they were associated with the construction projects that HANDEL was developing. HANDEL and ████████ would create single and multi use LLCs to help organize all the payments and expenses associated with each project. HANDEL and ███████ worked as partners. ████████ was a "money guy" he would gather money for projects that HANDEL wanted to develop. ████████ would solicit his wealthy clients to invest their money into INVESTOR CAPITAL GROUP (ICG) (a DBA account owned by ███████ which in turn would be invested in the construction projects developed by HANDEL. ████████ knew nothing about construction or development, that was HANDEL'S job. HANDEL managed all aspects of each project, while he had sub contractors and other developers that would assist, HANDEL ran everything. Two contractors that worked closely with HANDEL were ███ ██████████ (█████████ and █████████████ (█████████ However these individuals were the "boots on the ground type" they over saw the knitty-gritty day to day operation, while HANDEL was overall project manager.

Despite keeping the books for many entities that were assiociated with projects owned and ran by HANDEL, ████████ did not view him as her client and only answered to ████████ On occasion HANDEL would make requests of ████████ these included money transfers between entities, checks to be

194B-LA-5287935 Serial 371

FD-302a (Rev. 5-8-10)

194B-LA-5287935

(U) December 10, 2019 Interview of ███████

Continuation of FD-302 of ███████████ , On 12/10/2019 , Page 4 of 4

written and mailed out, and bills to be paid. In all of these cases ███████ would call ███████ prior to executing the action. This was done on ███████ own initiative and ███████ never said no to any of the requests made by HANDEL.

Checks would be cut out of ICG, and multiple other listed entites to DTMM Construction Inc, an entity that was HANDEL'S. ███████ was never given a reason for the checks, just that they needed to be made. ███████ assumed checks coming from all entities were part of HANDEL'S profits/ "salary" from the projects. Money was also transferred from ICG to the ███████████ Trust (an account in the name of HANDEL'S ███████). This money was used to pay living expenses for HANDEL'S ███████. ███████ would keep track of the funds going over and charge it against a "running tab" for DTMM Construction, however that money was never paid back. As mentioned previously ███████ was tight lipped as to the why behind transactions and would not ever give an explanation behind the money not being paid back.

By 2014-2018 money was short for projects due to losses suffered on projects ran by other developers that ███████ tried working with. So HANDEL took over the projects to finish them and try to create a profit. In order to keep the projects afloat ███████ began moving money around from all accounts and using investor funds to pay for expenses. ███████ recorded all of these transactions as loans between the entities but was unsure if they were actually repaid. While ███████ maintained the books for all the listed entities she did not submit the taxes returns every year. That was handled by accountants at ███.