No. 24-6972

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IN RE LOS ANGELES TIMES COMMUNICATIONS, LLC,
*Petitioner*,

*v.*

UNITED STATES DISTRICT COURT FOR THE CENTRAL
DISTRICT OF CALIFORNIA,
*Respondent.*

*ON PETITION FOR WRIT OF MANDAMUS FROM A DECISION OF
THE U.S. DISTRICT COURT FOR CENTRAL DISTRICT OF
CALIFORNIA (NO. 2:20-CR-00612-ODW)*

## RESPONSE FOR THE UNITED STATES AS REAL PARTY IN INTEREST TO THE PETITION FOR WRIT OF MANDAMUS

JOSEPH T. MCNALLY
Acting United States Attorney

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

THOMAS F. RYBARCZYK
Assistant United States Attorney
Deputy Chief, Public Corruption &
Civil Rights Section

1500 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-8452
Email: thomas.rybarczyk@usdoj.gov

Attorneys for Real Party in Interest
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

**DESCRIPTION**                                                    **PAGE**

I.      INTRODUCTION AND ARGUMENT SUMMARY ........................ 1

II.     ISSUES PRESENTED ........................................................ 4

III.    JURISDICTION ............................................................... 5

IV.     STATEMENT OF FACTS ................................................... 5

        A.      Investigation and Indictment ................................. 5

        B.      Handel's Discovery Motion ................................... 7

        C.      Handel's Sentencing............................................. 9

        D.      Petitioner's Motion to Unseal .............................. 11

                1.      Petitioner's motion and the government's
                        proposed resolution ...................................... 11

                2.      Government's opposition ............................... 13

                3.      Court's ruling ............................................. 14

V.      ARGUMENT................................................................... 16

        A.      The Drastic Remedy of Mandamus Is Reserved for
                Extraordinary Circumstances ............................... 16

        B.      Legal Standards For Public Rights of Access ....... 17

        C.      Mandamus is Not Warranted With Respect to the
                Discovery Motion Documents ............................... 20

                1.      Petitioner has not shown a clear First
                        Amendment right of access to discovery materials..... 20

# TABLE OF CONTENTS (continued)

**DESCRIPTION**                                                      **PAGE**

2.  Petitioner has not shown a clear common law right of access to discovery materials ..........................27

    a.  Discovery materials do not fall within the common law right of access ................................27

    b.  Including a document in a judicial filing is insufficient to bring it within the common law right of access................................29

D.  Mandamus Is Not Warranted With Respect To The Wholly Sealed Documents .....................................30

E.  Mandamus is Not Warranted With Respect to The District Court's Redaction of Uncharged Third Parties' Names ...................................................................32

    1.  Because there is no presumptive right of access to any of the discovery motion materials, this Court need not reach the redaction question .......................32

    2.  Even if there is a right of access to some of the discovery motion exhibits, the district court was not clearly wrong in ordering the redactions..............32

    3.  The sentencing exhibit redactions do not pertain to uncharged parties in the corruption investigation.................................................40

F.  Mandamus Is Not Warranted With Respect To The District Court's Findings .......................................40

    1.  Absent a constitutional or common law right of access, findings were not required ...............................40

# TABLE OF CONTENTS (continued)

**DESCRIPTION**                                                    **PAGE**

2.    Even if findings were required to support the
court's redactions, there was no clear error.................41

VI.    CONCLUSION ....................................................................45

# TABLE OF AUTHORITIES

**DESCRIPTION**                                                    **PAGE(S)**

## Cases

*Hagestad v. Trafesser,*
  49 F.3d 1430 (9th Cir. 1995) ............................................................. 43

*Matter of New York Times Co.,*
  828 F.2d 110 (2d Cir. 1987) ......................................................... 31, 32

*Allied Chemical Corp. v. Daiflon, Inc.,*
  449 U.S. 33 (1980) ........................................................................... 40

*Application of Newsday, Inc.,*
  895 F.2d 74 (2d Cir. 1990) .......................................................... 31, 34

*Associated Press v. United States District Court for Central District of
  California,*
  705 F.2d 1143 (9th Cir. 1983) ........................................ 23, 24, 27, 44

*Bauman v. U.S. Dist. Ct.,*
  557 F.2d 650 (9th Cir. 1977) .......................................... 16, 17, 26, 44

*Center for Auto Safety v. Chrysler Group, LLC,*
  809 F.3d 1092 (9th Cir. 2016) .......................................................... 29

*Cheney v. U.S. Dist. Ct. for Dist. of Columbia,*
  542 U.S. 367 (2004) ........................................................................ 16

*Forbes Media LLC v. United States,*
  61 F.4th 1072 (9th Cir. 2023) ................................................... passim

*In re Copley Press, Inc.,*
  518 F.3d 1022 (9th Cir. 2008) .......................................................... 18

iv

## TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                     **PAGE(S)**

*In re Creech,*
  119 F.4th 1114 (9th Cir. 2024) .........................................16, 17, 30, 38

*In re Granick,*
  388 F. Supp. 3d 1107 (N.D. Cal. 2019).................................................34

*In re L.A. Times Commc'ns LLC,*
  628 F. Supp. 3d 55 (D.D.C. 2022)....................................................37, 38

*In re McClatchy Newspapers, Inc.,*
  288 F.3d 369 (9th Cir. 2002)....................................................36, 37, 39

*In re New York Times Co. to Unseal Wiretap & Search Warrant
  Materials,*
  577 F.3d 401 (2d Cir. 2009) ................................................................31

*In re New York Times Co.,*
  No. MC 21-91 (JEB), 2021 WL 5769444 (D.D.C. 2021)......................35

*In Re Time Inc.,*
  182 F.3d 270 (4th Cir. 1999)................................................................23

*Matter of the Application of WP Co. LLC,*
  201 F. Supp. 3d 109 (D.D.C. 2016).................................................35, 38

*Nixon v. Warner Commc'ns, Inc.,*
  435 U.S. 589 (1978)..........................................................19, 36, 37, 39

*North Jersey Media Group, Inc. v. United States,*
  836 F.3d 421 (3d Cir. 2016) ..............................................21, 22, 30, 32

*Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.,*
  307 F.3d 1206 (9th Cir. 2002)..............................................................43

## TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                    **PAGE(S)**

*Press-Enter. Co. v. Superior Court,*
  478 U.S. 1 (1986) .............................................................. 17, 18

*Romero v. Drummond Co.,*
  480 F.3d 1234 (11th Cir. 2007) ............................................. 29

*Seattle Times Co. v. Rhinehart,*
  467 U.S. 20 (1983) ................................................................. 28

*Times Mirror Co. v. United States,*
  873 F.2d 1210 (9th Cir. 1989) ...................................... passim

*United States v. Anderson,*
  799 F.2d 1438 (11th Cir. 1986) ................................. 20, 22, 23

*United States v. Bus. of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.,*
  658 F.3d 1188 (9th Cir. 2011) ........................... 14, 32, 33, 36

*United States v. Gonzales,*
  150 F.3d 1246 (10th Cir. 1998) ............................................. 22

*United States v. Guerrero,*
  693 F.3d 990 (9th Cir. 2012) ................................................. 17

*United States v. King,*
  687 F.3d 1189 (9th Cir. 2012) ............................................... 25

*United States v. Kott,*
  135 F. App'x 69 (9th Cir. 2005) ............................................ 39

*United States v. Kravetz,*
  706 F.3d 47 (1st Cir. 2013) ................................. 20, 21, 22, 28

## TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                    **PAGE(S)**

*United States v. McClatchy Newspapers, Inc.*,
  2 F. App'x 745 (9th Cir. 2001) ............................................................ 43

*United States v. Padilla-Lopez*,
  2023 WL 8594402 (9th Cir. 2023) ...................................................... 26

*United States v. Rivera*,
  682 F.3d 1223 (9th Cir. 2012) ............................................................ 40

*United States v. Schlette*,
  842 F.2d 1574 (9th Cir. 1988) ......................................................... 5, 9

*United States v. Sleugh*,
  896 F.3d 1007 (9th Cir. 2018) ..................................................... passim

*United States v. Shryock*,
  342 F.3d 948 (9th Cir. 2003) .............................................................. 19

*United States v. Smith*,
  776 F.2d 1104 (3d Cir. 1985) ............................................................. 34

*United States v. Wecht*,
  484 F.3d 194 (3d Cir. 2007) ......................................................... 25, 26

**Statutes**

18 U.S.C. § 152 ............................................................................... 6, 9

18 U.S.C. § 2518(8)(b) ...................................................................... 31

18 U.S.C. § 7206(1) ............................................................................. 9

**Rules**

Fed. R. Crim. P. 17(c) .......................................................... 20, 27, 28, 41

No. 24-6972

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

IN RE LOS ANGELES TIMES COMMUNICATIONS, LLC,
*Petitioner*,

*v.*

UNITED STATES DISTRICT COURT FOR THE CENTRAL
DISTRICT OF CALIFORNIA,
*Respondent*.

*ON PETITION FOR WRIT OF MANDAMUS FROM A DECISION OF
THE U.S. DISTRICT COURT FOR CENTRAL DISTRICT OF
CALIFORNIA (No. 2:20-CR-00612-ODW)*

RESPONSE FOR THE UNITED STATES AS REAL PARTY
IN INTEREST TO THE PETITION FOR WRIT OF
MANDAMUS

## I

## INTRODUCTION AND ARGUMENT SUMMARY

In the course of a public corruption investigation that did not

result in charges against any public officials, defendant Mark Handel, a

real estate developer, was intercepted over a wiretap. Handel was later

charged with, and pleaded guilty to, bankruptcy fraud and filing a false

tax return.  No public officials were alleged to be co-conspirators or to have helped facilitate Handel's fraud.

During pretrial proceedings, Handel filed a discovery motion.  The motion, the government's opposition, and Handel's reply attached sealed exhibits, including investigative reports, wiretap applications, and search warrant applications.  The district court denied Handel's discovery motion without reaching the merits for failure to comply with the local rules.

Many months later, petitioner Los Angeles Times Communications LLC moved to unseal the exhibits filed in connection with Handel's discovery motion.  The government agreed to unseal certain materials; subsequently, the district court denied petitioner's motion in part and unsealed other documents but redacted the names/identities of uncharged persons.

Petitioner now seeks the extraordinary remedy of a writ of mandamus ordering the district court to unseal the remaining fully sealed documents and to remove the redactions of uncharged individuals' names.  Invocation of that drastic remedy is not warranted here.

Petitioner's arguments rest on the premise that there is a First Amendment and/or common law right of access to the filings and exhibits it seeks, but the district court was not clearly wrong in concluding otherwise. This Court and others have held that there is no First Amendment right of access to discovery motions and materials, reasoning that discovery is a private process with no historical tradition of public access, and that public access does not play a positive role in the criminal discovery process. On similar grounds, this Court and others have rejected the argument that there is a common law right of access to discovery materials, which often have little to do with a party's substantive rights. Simply attaching a document to a discovery motion is insufficient to bring it within the common law right of access.

Absent a public right of access to the discovery pleadings and exhibits attached thereto, there is no need to address whether those exhibits were properly redacted or for the court to have made specific findings to support continued sealing.

Even if there is a public right of access to some of the discovery motion or its exhibits, however, the district court was not clearly wrong in redacting the names of uncharged individuals in those exhibits.

Those individuals' privacy, reputational, and due process interests are sufficiently compelling to outweigh the public's right of access to any materials that have been redacted. And, contrary to petitioner's suggestion, the district court provided sufficient reasoning for this Court to review its redaction orders based on its adoption of the government's opposition to petitioner's motion and the other relevant sealing order in the case.

## II

## ISSUES PRESENTED

A.     Whether the district court committed a clear error of law, where numerous courts have found that there is neither a First Amendment nor common law right of access to discovery materials.

B.     If there is a right of public access to any of the exhibits at issue, whether (1) the district court clearly erred in redacting the names/identities of uncharged persons who had compelling due process, reputational, and privacy rights in not having their names publicly associated with an uncharged public corruption investigation without an opportunity to prove their innocence; and (2) the district court clearly erred as a matter of law in providing reasons for the redaction.

4

## III

## JURISDICTION

Third-party petitioner lacks standing to appeal but does have standing to seek review of the district court's order via petition for a writ of mandamus. *United States v. Schlette*, 842 F.2d 1574, 1576 (9th Cir. 1988).[1]

## IV

## STATEMENT OF FACTS

### A.    Investigation and Indictment

The government conducted a public corruption investigation that did not result in charges against the public officials. (GEX-105.)[2] However, in reviewing calls intercepted pursuant to wiretap orders, investigators heard Handel talking about his real estate business and discussing using his accountant for straw campaign contributions. (GEX-107.) The government obtained two search warrants for Handel's email account. (EX 8, G & H.) Investigators learned that Handel filed

---

[1] Handel does not oppose petitioner's motion to unseal.

[2] "GEX" refers to the attached exhibits, "EX" refers to petitioner's exhibits, and "CR" refers to the district court Clerk's Record.

for bankruptcy and made several false statements, including that he had not worked or earned income since 2008. (GEX-1-2; GEX-107; EX 8, H-039-046.) The second search warrant for Handel's email account permitted investigators to seize materials related to Handel's bankruptcy fraud as well as the government's corruption investigation. (*Compare* EX 8, G-005-006 (subject offenses) *with* EX 8, H-006-007 (adding 18 U.S.C. §§ 152 (concealment of assets), 157 (bankruptcy fraud), 1621 (perjury), and 1623 (false declaration before court) to the subject offenses).)

A grand jury charged Handel with bankruptcy fraud and money laundering relating to his bankruptcy case. (GEX-1-14.) The indictment alleged Handel concealed assets through numerous corporations and entities for which he used Individual A, Individual B (his accountant), and his wife as nominee partners, managers, and owners. (GEX-2-3.) To conceal these assets, Handel made false statements in his bankruptcy proceeding, including that he had not worked or earned an income since 2008, when, in fact, Handel had been working as a real estate developer. (GEX-4-9.) The indictment further alleged that Handel was instrumental in every step of these real estate

projects, including working with government authorities and politicians to obtain construction density and zoning changes.  (GEX-1-2.)  The indictment also included an introductory allegation that Handel bundled campaign contributions for those politicians, in part to benefit his real estate projects by gaining access to and having influence over these politicians.  (GEX-2.)

## B.    Handel's Discovery Motion

When the government obtained the indictment, it contemporaneously filed a document stating that Handel's case was a matter pending in the United States Attorney's Office ("USAO") on or before August 8, 2014, the date the Honorable André Birotte Jr. resigned as the United States Attorney for the Central District of California.  (CR-3.)  Later, Handel's case was assigned to Judge Birotte, who recused himself based on the government's representation.  (CR-8.)

Handel filed a sealed motion to compel discovery; in support, he submitted 19 exhibits under seal, including the two search warrant applications for his email account, a pen register application, and law enforcement reports.  (CR-61.)  The government moved to dismiss for

failure to comply with the local rules' meet and confer requirements. (GEX-15-16.)

After the government produced additional discovery, Handel filed a supplemental motion stating that the only discovery he still sought concerned Request 2 in his Second Discovery Request Letter (EX 8, D-002), specifically, evidence showing that Handel's matter was pending in the USAO while Judge Birotte was the United States Attorney. (GEX-17-18.)

The government filed its opposition under seal, along with seven exhibits—including wiretap linesheets, excerpts of wiretap applications, and a transcript of Handel's interview—demonstrating that the investigation leading to Handel's charges started while Judge Birotte was the United States Attorney. (CR-72-73.)

Handel filed his reply under seal along with another exhibit, a wiretap application. (CR-77-78.) Handel's sealing application stated that his reply and exhibit contained "sensitive, confidential information on law enforcement's investigation into politicians and their staffers, at least some of which is not public knowledge." (EX 4.) Handel's counsel further declared that public disclosure of "these documents would harm

8

my client irreparably and make public potentially sensitive information about both my client and targets of a government investigation." (*Id.*) The district court granted the sealing application, finding that Handel's application demonstrated "good cause" for sealing. (EX 5.)[3]

Without reaching the merits, the district court denied Handel's discovery motion for failure to comply with the local rules' meet-and-confer provisions. (GEX-19.)

Handel filed no further discovery (or substantive) motions.

## C.  Handel's Sentencing

Handel pled guilty pursuant to a plea agreement to a first superseding information charging him with making a false statement in bankruptcy, in violation of 18 U.S.C. § 152(3), and subscribing to a false tax return, in violation of 18 U.S.C. § 7206(1). (GEX-20-58; CR-107.) The charging document and plea agreement made no reference to public officials. (GEX-20-58.)

The government's sentencing papers addressed Handel's fraudulent conduct and did not mention his involvement with public

---

[3] The sealing applications for Handel's motion and the government's opposition remain under seal.

officials.  (GEX-59-79, 85-98.)  In connection with its sentencing

position, the government filed six sealed exhibits:

| Ex. | General Description |
| --- | --- |
| 1 | Grand Jury Transcript and Exhibit |
| 2 | FBI Report of Interview |
| 3 | IRS Memoranda of Interview |
| 4 | Declaration of IRS Special Agent Ashley Braver |
| 5 | FBI Report of Interview |
| 6 | Grand Jury Transcript |

(CR-125; *see also* GEX-80-84 (government sealing application and order

sealing documents).)   The investigative reports summarize interviews

of one of Handel's business partners and two employees of Handel's

accountant.  The agent's declaration summarizes her review of IRS

Schedule K-1s for the entities Handel used to shield his income from his

creditors and the IRS.  (*See* GEX-64-65, 71-72.)  Petitioner does not seek

access to the grand jury transcripts.

## D.    Petitioner's Motion to Unseal

### 1.    *Petitioner's motion and the government's proposed resolution*

Several months after Handel's sentencing, petitioner moved to intervene and unseal the materials filed in connection with Handel's discovery motion and the sealed sentencing exhibits filed by the government.  (CR-154.)

In an effort to reduce the number of disputed matters, the government agreed to (1) full unsealing of some exhibits attached to Handel's discovery motion, and (2) unsealing of other exhibits provided (as relevant here) that the names/identities of uncharged subjects of the investigation were redacted.[4]  Specifically the government agreed as follows:

| Ex. | General Description | Sealed | Unsealed |
|-----|---------------------|--------|----------|
| **CR 61, Exhibits to Handel's Discovery Motion** | | | |
| A | FBI Surveillance Log | Sealed | |
| B | Defendant Discovery Letter | | Unsealed with redactions |
| C | Government's Email Response to Defendant Discovery Letter | | Unsealed |

---

[4] The government sought additional redactions that are not at issue in petitioner's mandamus petition.  (GEX-123-27.)

| Ex. | General Description | Sealed | Unsealed |
|---|---|---|---|
| D | Defendant's Second Discovery Letter | | Unsealed with redactions |
| E | Government's Email Response to Second Discovery Letter | | Unsealed |
| F | Pen Register Application | Sealed | |
| G | Search Warrant Application | | Unsealed with redactions |
| H | Search Warrant Application | | Unsealed with redactions |
| I | FBI Evidence Log Documenting a Recorded Interview | Sealed | |
| J | FBI Evidence Log Documenting a Recorded Interview | Sealed | |
| K | Defendant's Bankruptcy Petition | | Unsealed |
| L | Defendant's Bankruptcy Hearing Transcript | | Unsealed |
| M | Defendant's Amended Bankruptcy Petition | | Unsealed |
| N | Materials Related to FBI Investigative Activity | Sealed | |
| O | FBI Report and Attachments | Sealed | |
| P | FBI Physical Surveillance Logs | Sealed | |
| Q | FDIC Office of Inspector General Report | | Unsealed |
| R | Purchase and Assumption Agreement for California Bank & Trust | | Unsealed |
| S | FBI Interview Report | Sealed | |
| **CR 73, Exhibits 1-7 to Government's Opposition** | | | |

| Ex. | General Description | Sealed | Unsealed |
|---|---|---|---|
| 1 | Wiretap Linesheet | Sealed | |
| 2 | Wiretap Linesheet | Sealed | |
| 3 | Government Response to Defendant's Second Discovery Letter | | Unsealed with redactions |
| 4 | Wiretap Application (Excerpt) | Sealed | |
| 5 | Wiretap Application (Excerpt) | Sealed | |
| 6 | Wiretap Application (Excerpt) | Sealed | |
| 7 | Transcript of Interview of Defendant | Sealed | |
| **CR 78, Exhibit T to Handel's Reply** | | | |
| T | Wiretap Application | Sealed | |

(GEX-112-13.)  Finally, the government agreed to unsealing the non-grand jury exhibits attached to its sentencing position (*i.e.*, Exhibits 2-5 in the chart in section III.D *supra*) with its proposed redactions, including uncharged subjects' names/identities.  (GEX-113.)

### 2. *Government's opposition*

In its opposition, the government argued that there is neither a First Amendment nor a common law right of access to discovery motions and attached exhibits or to wiretap materials.  (GEX-113-19.)

13

With respect to the redactions it sought for names/identities of uncharged subjects of the investigation, the government argued that even if a public right of access exists, this Court and others have found that uncharged parties' privacy, reputational, and due process interests are sufficiently compelling to outweigh any public right of access to sealed materials.  (GEX-119-22 (citing *United States v. Bus. of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.,* 658 F.3d 1188, 1194 (9th Cir. 2011)).)  The government argued that the disclosure of the names/identities of public officials and private citizens it investigated but did not prosecute would subject them to being stigmatized by insinuations of wrongdoing without any opportunity to clear their names at a trial.  (GEX-120-22.)  This was particularly true where Handel's criminal bankruptcy and tax fraud charges did not allege that any public officials were co-conspirators and their conduct was tangential to Handel's fraud.  (GEX-18-19.)

### 3.    *Court's ruling*

The district court fully agreed with the government's position. (EX 1.)  The court found that the press and public have no right of

access to the fully sealed materials, and further found good cause to keep them sealed.  (EX 1 at ¶ 1.)

With respect to redactions, the court found that there is a "qualified common law right of access to sealed search warrant materials after an investigation ends" and a "qualified First Amendment right of access to sentencing materials," and therefore ordered exhibits G and H to Handel's discovery motion (the search warrant applications) and exhibits 2-5 to the government's sentencing position unsealed.  (*Id.* at ¶ 4.)  In doing so, however, the district court found that the "the government has established compelling reasons and significant interests justifying the redactions" to those exhibits, including "names and identities of uncharged third parties who were then subjects of the federal investigation."  (*Id.* at ¶¶ 4-5.)

The court further found good cause to redact Exhibits B and D attached to Handel's discovery motion (Handel's discovery letters) and Exhibit 3 to the government's opposition to that motion (the government's response to Handel's second discovery letter).  (*Id.* at ¶ 3.)

15

# V

## ARGUMENT

### A.   The Drastic Remedy of Mandamus Is Reserved for Extraordinary Circumstances

Mandamus "is a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 380 (2004) (citation omitted).  Petitioner has the "burden of showing that his right to the issuance of the writ is clear and indisputable." *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 656 (9th Cir. 1977) (cleaned up).

In deciding whether to grant mandamus, this Court considers the five factors enumerated in *Bauman*:  whether (1) the petitioner has no other means to obtain the desired relief; (2) the petitioner will be damaged or prejudiced in a manner not correctable on appeal; (3) "the district court's order is clearly erroneous as a matter of law;" (4)  "the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules;" and (5) the district court's order "raises new and important problems" or issues of first impression.  *In re Creech*, 119 F.4th 1114, 1119-20 (9th Cir. 2024) (citing *Bauman*,  557 F.2d at 654-55).  This Court must "weigh the factors holistically to

16

determine whether, on balance, they justify the invocation of this extraordinary remedy." *Id.* at 1120 (cleaned up).  However, the third factor—clear error as a matter of law—is the most important, and "the absence of factor three will always defeat a petition for mandamus." *Id.* (cleaned up).

"The 'clear error as a matter of law' standard is demanding," and requires a "firm conviction that the district court misinterpreted the law or committed a clear abuse of discretion," meaning "one in which the error is clear to all." *Id.* at 1121 (cleaned up).  Thus, this Court need not resolve the underlying legal issue.  So long as [this Court is] not firmly convinced that the district court was wrong, [it] cannot hold the district court's interpretation to be clearly erroneous, and thus [it] cannot issue the writ, even though the district court's interpretation might be overruled later on direct appeal." *United States v. Guerrero*, 693 F.3d 990, 1000 (9th Cir. 2012) (cleaned up).

## B.    Legal Standards For Public Rights of Access

The First Amendment "provides a qualified right of public access to certain governmental proceedings." *Forbes Media LLC v. United States*, 61 F.4th 1072, 1077 (9th Cir. 2023) (citing *Press-Enter. Co. v.*

17

*Superior Court*, 478 U.S. 1, 7 (1986) ("*Press Enterprise II*")). "This right extends to some criminal proceedings, such as trials, jury-selection processes, and preliminary hearings." *Id.* "The First Amendment right of access also extends to various documents filed in criminal proceedings, such as plea agreements." *Id.* (cleaned up). "But the First Amendment is not an all-access pass to any court proceeding or court record." *Id.* Rather, it applies only when the "tests of experience and logic" have been met, that is, if (1) "the place and process have historically been open to the press and general public," and (2) "public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8-9; *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213 n.4 (9th Cir. 1989) (applying the "experience and logic" test to documents generated in a judicial proceeding). Even where a qualified First Amendment right of access exists, it "can still be 'overcome by a compelling governmental interest' in nondisclosure." *Forbes*, 61 F.4th at 1078 (quoting *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008)).

Courts have also recognized a separate qualified common law "right to inspect and copy public records and documents, including

18

judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978).  When a common law presumption of access attaches, the party seeking to overcome it must point to "compelling reasons" supporting sealing, supported by specific factual findings. *Forbes*, 61 F.4th at 1081 (citation omitted).  But this right, too, "is not absolute." *Nixon*, 435 U.S. at 598.  The common law presumption of access does not apply to court records "traditionally kept secret," which, in a manner roughly similar to the First Amendment analysis, means materials for which there is "neither a history of access nor an important public need justifying access." *Forbes*, 61 F.4th at 1081 (quoting *Times Mirror*, 873 F.2d at 1219).

Absent a constitutional or common law right of access, the district court has the inherent power to seal documents filed with the court, and a district court's decision to retain filings under seal is reviewed for abuse of discretion. *United States v. Shryock*, 342 F.3d 948, 983 (9th Cir. 2003).

19

**C.    Mandamus is Not Warranted With Respect to the Discovery Motion Documents**

### 1.    *Petitioner has not shown a clear First Amendment right of access to discovery materials*

Substantial authority supports the conclusion that there is no First Amendment right of access to discovery materials attached to criminal discovery motions.  In *United States v. Sleugh*—a case petitioner fails to address—this Court held that no presumption of public access under the First Amendment or common law attaches to Federal Rule of Criminal Procedure 17(c) subpoena applications and their supporting materials.  896 F.3d 1007, 1015 (9th Cir. 2018).  In analyzing the experience prong of the First Amendment test, this Court determined that there is no tradition of public access to criminal discovery.  *Id.* at 1013.  "To the contrary, '[d]iscovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation.'"  *Id.* (quoting *United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013) and *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986)).  As for the logic prong, this Court observed that public access would have a "deleterious effect . . . on the parties' search for and

exchange of information in the discovery process." *Id.* at 1013-14
(quoting *Kravetz*, 706 F.3d at 54).

The Third Circuit reached the same conclusion in a case arising
from the well-publicized "Bridgegate" political payback scheme, where
the government provided the defense and the court with a letter listing
individuals it considered co-conspirators. *N. Jersey Media Grp., Inc. v.
United States*, 836 F.3d 421, 425-26 (3d Cir. 2016). Under the
experience prong, the court reasoned, there is no tradition of access to
criminal discovery. *Id.* at 430. Under the logic prong, there were "real"
risks to providing a right of access to pretrial discovery materials: (1)
granting access too freely could undermine the purpose of the discovery
rules to avoid unnecessary surprise and level the playing field; (2)
"because the discovery rules are reciprocal, there is the risk that
unfettered public access could jeopardize a defendant's trial strategy"
(cleaned up); and (3) applying a right of access to pretrial discovery
"could well chill similar efforts by the government in the future to moot
pretrial motions through voluntary disclosure." *Id.* at 434. Therefore,
the Third Circuit found no First Amendment right of access to the

discovery letter. *Id.* at 434. "That is so," the court held, "even in a case affected by heightened public interest." *Id.* at 436.

Other courts have similarly concluded there is no tradition of public access to criminal discovery. *Kravetz*, 706 F.3d at 54 ("With respect to experience, there is no tradition of access to criminal discovery."); *Anderson*, 799 F.2d at 1441 (11th Cir. 1986) ("Discovery is neither a public process nor typically a matter of public record."); *see also United States v. Gonzales*, 150 F.3d 1246, 1260 (10th Cir. 1998) (observing that "[d]iscovery proceedings are fundamentally different from other proceedings to which courts have recognized a First Amendment right of access").

Similarly, courts have concluded that "public access has little positive role in the criminal discovery process." *Kravetz*, 706 F.3d at 54. Indeed, as the Eleventh Circuit noted, if "discovery information and discovery orders were readily available to the public and the press, the consequences to the smooth functioning of the discovery process would be severe," including leading to "voluntary discovery be[ing] chilled" and oral discovery orders from the court that would be "undesirable" and

potentially "create[] misunderstanding and surprise for the litigants and the trial judge." *Anderson*, 799 F.2d at 1441.

In light of the foregoing authorities refusing to recognize a First Amendment right of access to criminal discovery materials, petitioner cannot meet the demanding "clearly erroneous as a matter of law" standard necessary to obtain mandamus relief.

*In Re Time Inc.*, 182 F.3d 270 (4th Cir. 1999), the only case petitioner cites that found a First Amendment right of access in connection with a motion to compel discovery, does not mandate a different result. Although the Fourth Circuit summarily stated that motions to compel discovery were "pretrial motions" that are "part of the proceedings to which a First Amendment right of access applies," the order contains no analysis on that point and does not mention or discuss the experience and logic test. 182 F.3d at 271. The Fourth Circuit's cursory pronouncement does not firmly demonstrate that the district court's interpretation here (which *is* supported by ample precedent) was wrong.

Similarly, *Associated Press v. United States District Court for Central District of California*, 705 F.2d 1143 (9th Cir. 1983), fails to

establish any clear error of law. Not only does that case pre-date *Press-Enterprise II* and its "experience and logic" test, but it also makes no mention of discovery motions or other non-dispositive motions that a district court may consider. In determining whether a First Amendment (or common law) right of public access to judicial documents exists, this Court does not focus narrowly on categories of documents, but instead analyzes the nature or type of proceeding of which the documents are a part. *Forbes*, 61 F.4th at 1083-84. Here, as discussed above, discovery practice is not the type of proceeding to which a First Amendment right of access clearly attaches.

Alternatively, petitioner suggests that motions containing allegations of government misconduct give rise to a First Amendment right of access because they "are often important to a full understanding of the way in which the judicial process and the government as a whole are functioning" (Pet. 20 (quoting *Associated Press*, 705 F.2d at 1145 (cleaned up))), but that reasoning does not indisputably apply to Handel's discovery motion, which merely "invoked[d] the district court's authority to compel the production of evidence" in an attempt to support

24

Handel's theory regarding the commencement of the investigation.[5]
*Sleugh*, 896 F.3d at 1015.  As to promoting an understanding of the
judicial process and government functioning, little can be gleaned from
a discovery motion that was denied on procedural grounds for failing to
comply with the local rules.  (GEX-19.)

Finally, *United States v. Wecht*, 484 F.3d 194 (3d Cir. 2007), does
not establish any First Amendment (or common law) right of access to
the documents at issue here.  *Wecht* recognized that "documents filed
with the court are generally subject to the common law right of access,
*unless attached to a discovery motion*."  *Id.* at 209 (emphasis added).
As an exception to that general rule, *Wecht* found a common law (not
First Amendment) right of access to *Brady/Giglio* material that the

---

[5] Petitioner makes much of Handel's argument at sentencing that
the "prosecution was an effort by the Government to secure his
cooperation in its investigation into public corruption."  (Pet. 8, 20, 22.)
But even if the government had charged Handel in an effort to get him
to cooperate, that would not constitute government misconduct.  *See
United States v. Lopez*, 474 F.3d 1208, 1212 (9th Cir. 2007) ("A
prosecutor, and presumably field officers too, may threaten a defendant
with prosecution during an interview or plea negotiations, and if that
defendant chooses not to cooperate or plead guilty, the prosecutor is free
to initiate a prosecution"), *overruled on other grounds by United States
v. King*, 687 F.3d 1189 (9th Cir. 2012) (en banc).

25

government had submitted for *in camera* review and the court had ordered the government to disclose to the defendant.  *Id.* at 199, 209. The Third Circuit stressed the "unique" constitutional nature of such documents and the fact that the court had ordered them disclosed, stating that its decision was "based on the particular facts of this case" and "[w]e certainly do not suggest that the common law right attaches when district courts determine that the government need not disclose materials." *Id.* at 209, 211; *accord United States v. Padilla-Lopez*, 2023 WL 8594402, *2 (9th Cir. 2023) (no First Amendment or common law right of access to sealed materials submitted for review under *Henthorn*, where court finds information need not be disclosed).  Here, the district court made no disclosure or even substantive ruling.

In sum, because this Court's authority undermines petitioner's claim and out-of-circuit cases have resulted in conflicting outcomes, any supposed error falls far short of demonstrating that the district court's order was "clearly erroneous as a matter of law." *Bauman*, 557 F.2d at 654-55.

26

### 2.    Petitioner has not shown a clear common law right of access to discovery materials

#### a.    Discovery materials do not fall within the common law right of access

For the same reasons that there is no First Amendment right of access to pretrial discovery materials, there is also no common law right of access.  There is neither a history of access to discovery materials nor an important public need justifying access to discovery motions and supporting exhibits.  *See Forbes*, 61 F.4th at 1081-82.  To the extent petitioner reads *Associated Press*, 705 F.2d at 1145, as permitting a common law right of access to *all* pretrial documents (Pet. 20), this Court has expressly rejected that reading.  *Times Mirror*, 873 F.2d at 1219.

This Court held in *Sleugh* that there is no common law right of access to Rule 17(c) subpoena materials.  896 F.3d at 1015.  The common-law qualified right of access only applies to "judicial records," which are those materials that "affect substantive rights" and are not merely "tangentially related to the underlying cause of action."  *Sleugh*, 896 F.3d at 1014 (cleaned up).  *Sleugh* agreed with the First Circuit that Rule 17(c) materials are not "materials on which a court relies in

27

determining the litigants' substantive rights," but rather "relate merely to the judge's trial management role," not the adjudication process. *Id.* (quoting *Kravetz*, 706 F.3d at 54-55). Indeed, "[m]aterials submitted to a court for its consideration of a discovery motion are actually one step further removed in public concern from the trial process than the discovery materials themselves." *Id.* at 1015 (quoting *Kravetz*, 706 F.3d at 54). This Court explained that although the actual evidence obtained from a Rule 17(c) subpoena could go to the merits of the case, the applications and supporting affidavits for the subpoena are ordinarily tangential to the underlying merits. *Id.* at 1014; *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1983) ("Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action.").

Here, applying *Sleugh*'s analysis, there is no common law right to the exhibits at issue. Handel's narrow motion to compel discovery was tangential to the merits of his case; it sought only documents aimed at determining whether Judge Birotte properly recused himself on the ground that the investigation was pending at the time he was the

United States Attorney.  (GEX-17-18.)  Moreover, the district court made only a procedural ruling on the discovery motion.  (GEX-19.)

### b. *Including a document in a judicial filing is insufficient to bring it within the common law right of access*

Petitioner's argument for a common law right of access rests on the premise that attaching a discovery document to a judicial filing brings it within the scope of the common law right of access to judicial records.  Despite the strong preference for public access to judicial records, however, this Court has "carved out an exception for sealed materials attached to a discovery motion unrelated to the merits of a case." *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (cleaned up).

Other courts agree that "[d]ocuments filed in connection with motions to compel discovery are not subject to the common-law right of access." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007).  The Third Circuit squarely rejected petitioner's premise, pointing out that discovery materials included in judicial discovery filings are generally not "judicial records" and do not fall within the common law right of access.  *N. Jersey Media Grp.*, 836 F.3d at 435.  A

29

contrary ruling, the Third Circuit reasoned, "would make raw discovery, ordinarily inaccessible to the public, accessible merely because it had to be included in motions precipitated by inadequate discovery responses or overly aggressive discovery demands." *Id.*

Accordingly, petitioner has not shown it is "clear to all," *Creech*, 119 F.4th at 1121, that a common law right of access applies to the supporting exhibits filed by both parties in connection with Handel's discovery motion.

## D.    Mandamus Is Not Warranted With Respect To The Wholly Sealed Documents

Because there is no constitutional or common law right of access to any of the documents attached to the discovery motion pleadings, the district court did not err, let alone clearly, in retaining exhibits consisting of wiretap materials, interview transcripts, and investigative reports wholly under seal.

Petitioner specifically contends that the wiretap applications and line sheets attached to the discovery motion pleadings are subject to a First Amendment or common law right of access.  (Pet. 22.)  Even if this Court concludes that these exhibits should be examined individually, there is no clear right of public access to wiretap materials.  *See In re*

*New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 405, 407, 411 (2d Cir. 2009) (reversing district court decision unsealing wiretap applications and concluding there is no First Amendment or common law right of access to wiretap applications; instead there is a categorical presumption against disclosure of sealed wiretap applications under 18 U.S.C. § 2518(8)(b)).

Petitioner's cases are not to the contrary. *In re Application of Newsday, Inc.*, 895 F.2d 74, 75 (2d Cir. 1990), involved intercepted *communications*, not the wiretap *applications* here. *See In re New York Times to Unseal Wiretap*, 577 F.3d at 407 n.3 (drawing this distinction). *In re New York Times Co.* found a qualified First Amendment right of access to wiretap "material to the extent it is contained in the motion papers filed with the court," reasoning that "the constitutional right of access [applies] to written documents submitted in connection with judicial proceedings that themselves implicate the right of access." 828 F.2d 110, 114-15 & n.1 (2d Cir. 1987*). In re New York Times* is inapposite because while a qualified First Amendment right of access attaches to the suppression hearings at issue there, *id.* at 113-14, no such right attaches to discovery proceedings, as demonstrated *supra*.

31

Again, petitioner has established no clear error as a matter of law.

## E.   Mandamus is Not Warranted With Respect to The District Court's Redaction of Uncharged Third Parties' Names

### 1.   *Because there is no presumptive right of access to any of the discovery motion materials, this Court need not reach the redaction question*

In *North Jersey Media Group*, the Third Circuit determined that because there was no right of access to a discovery letter, there was no need to weigh the public and private interests at stake to decide whether that right was overcome.  836 F.3d at 431 n.12.

The same is true here.  Because, as discussed *supra*, there is no First Amendment or common law right of access to any of the exhibits attached to the parties' discovery pleadings, there is no need to address whether those exhibits were properly redacted.

### 2.   *Even if there is a right of access to some of the discovery motion exhibits, the district court was not clearly wrong in ordering the redactions*

If this Court concludes that the exhibits must be examined individually, the district court correctly concluded that there is a common law right of access to sealed search warrant materials after an investigation has terminated.  *Custer Battlefield Museum*, 658 F.3d at 1194.  But that common-law presumption of access is not absolute, and

a party can overcome it by articulating "compelling reasons" supporting continued sealing of the materials and/or redaction of certain information. *See id.* at 1195. The court then balances the competing interests of the public and the party who seeks to keep the records secret. *Id.*

Petitioner challenges only the district court's order requiring redaction of uncharged third-party names/identities. (Pet. 4 n.3.) Where a common law right of access exists, this Court and others have recognized several concerns, including privacy and reputational interests of uncharged third parties, that may call for redaction of the materials or withholding of disclosure outright. *Custer Battlefield Museum*, 658 F.3d at 1195 n.5; *see Times Mirror*, 873 F.2d at 1216 (identifying various "risks" present "when search warrant materials are made public," including that "persons named in the warrant papers will have no forum in which to exonerate themselves," causing "possible injury to privacy interests").

For example, the Third Circuit upheld an order redacting the names of unindicted co-conspirators, including elected officials, from a bill of particulars, concluding that "risk of serious injury to third parties

33

from disclosure outweighs the interest of the public in access to this limited segment of the bill of particulars." *United States v. Smith*, 776 F.2d 1104, 1105-06, 1114 (3d Cir. 1985). *Smith* observed that the list of co-conspirators would communicate to the general public that these individuals are or may be guilty of felonies, and without an opportunity to prove their innocence at trial, the injury to their reputations would likely be irreparable. *Id.* at 1113-14. In *Newsday*, the court found no abuse of discretion in redacting references to innocent third parties from a search warrant affidavit, noting that all the parties harmed by disclosure are typically not before the court. 895 F.2d at 79-80.

District courts have also repeatedly found that uncharged parties' privacy, reputational, and due process interests are sufficiently compelling to outweigh the public's right of access to sealed materials. *E.g.*, *In re Granick*, 388 F. Supp. 3d 1107, 1119 (N.D. Cal. 2019) (denying petition to unseal search warrant materials given, among other factors, the government's compelling interest in protecting "the privacy, reputational and due process interests of individuals who were the subject of closed investigations that did not result in criminal charges"); *In re New York Times Co.*, No. MC 21-91 (JEB), 2021 WL

5769444, at *5 (D.D.C. 2021) (in an investigation related to a former presidential candidate, denying newspaper's application to unseal government's redactions of "detailed information about subjects of the investigation— including information that could identify them, the extent of their cooperation with law enforcement, and their private activities"—based, in part, on privacy interests of the uncharged subjects in an investigation involving a former presidential candidate); *Matter of the Application of WP Co. LLC,* 201 F. Supp. 3d 109, 129 (D.D.C. 2016) (in a high-profile campaign finance investigation involving the D.C. mayoral election, "compelling privacy and due process interests of persons who have not been charged outweigh[ed] any limited public interest in further disclosure"). Indeed, in the same opinion it ruled the common-law right of access applies to search warrant materials post-investigation, this Court explained that "the privacy interests of the individuals identified in the warrants and supporting affidavits" are "important" and endorsed protecting those interests "through a court's discretion either to release redacted versions of the documents or, if necessary, to deny access altogether." *Custer Battlefield Museum*, 658 F.3d at 1194.

35

Petitioner argues the district court clearly erred because the underlying investigation involved public corruption allegations, and this Court has stated that "[t]he high public official has no privacy interest in freedom from accusations, baseless though they may be, that touch on his conduct in public office or in his campaign for public office" and that private individuals "do[ing] much business with public bodies, [have] no privacy interest in allegations, baseless though they may be, bearing on the way he does business with public bodies." *In re McClatchy Newspapers, Inc.*, 288 F.3d 369, 373 (9th Cir. 2002).

But reading *McClatchy* as a *per se* rule is inconsistent with the Supreme Court's opinion in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978). There, the Court stressed that "every court has supervisory power over its own records and files," and a court's "discretion" in weighing whether access is appropriate must be "exercised in the light of the relevant facts and circumstances of the particular case." *Id.* at 598-99. Thus, rather than a *per se* rule, *McClatchy* is best understood as holding that "the need to protect individual privacy rights may, in some circumstances, rise to the level of a substantial governmental interest and defeat First Amendment

36

right of access claims" but no such justification had been made in that case.  288 F.3d at 374.

Petitioner further argues there is a "weighty public interest[]" here in favor of transparency to determine if the "'the government had the evidence but nevertheless pulled its punches'" with respect to its charging decision.  (Pet. 17 (quoting *In re L.A. Times Commc'ns LLC*, 628 F. Supp. 3d 55, 66 (D.D.C. 2022).)  That public interest, however, must be balanced against all of the other relevant considerations. *Nixon*, 435 U.S. at 599.   In reality, search warrants "simply do not reflect whatever countervailing information subsequently informed the prosecutorial decision to close the investigation without charges." *Los Angeles Times*, 628 F. Supp. 3d at 65.  Instead "search warrant materials—particularly the affidavit in support of the warrant— amount to only a snapshot in time of the Department's understanding of the conduct at issue in the investigation*." Id.*  (cleaned up).

The district court did not commit a "clear abuse of discretion" in balancing the facts and circumstances in this particular case and ordering redactions.  *Creech*, 119 F.4th at 1121.  If the names and identities of the uncharged public officials and private citizens had not

37

been ordered redacted by the district court, the public would likely draw

the mistaken but understandable conclusion that they are guilty of

crimes simply by being subjects of the federal investigation.  Such

disclosure exposes the uncharged persons to "the unfairness of being

stigmatized from sensationalized and potentially out-of-context

insinuations of wrongdoing" when they "lack the opportunity to clear

their names at trial," *WP Co.,* 201 F. Supp. 3d at 124 (cleaned up),

offending the uncharged subjects' privacy, reputational, and due process

interests.  Additionally, petitioner has not established that those

individuals have publicly disclosed the facts of the federal corruption

investigation.  *Cf. Los Angeles Times*, 628 F. Supp. 3d at 68-69 ("the

significant public disclosure and acknowledgement of key facts"

concerning the investigation by the targets, including a Senator,

"diminishe[d] both the privacy and due process interests of those

targets").

Further weighing against disclosure here is that the public

officials' conduct is tangential to Handel's criminal bankruptcy and tax

fraud.  The present case is factually distinguishable from *McClatchy*,

where the defendant Coastal Commissioner pleaded guilty to seeking

bribes, the government later moved to reduce his sentence based in part on assistance provided to the government, and the court granted the reduction. The case involved redaction of proffer letters submitted by the defendant that described improper conduct by a political figure and a private developer who allegedly bribed the defendant. 288 F.3d at 372. Thus, the sealed letters related directly to the defendant's crimes and the sentence reduction motion before the court. Here, in contrast, the conduct of uncharged third parties proves that Handel was working and earning an income in which he interfaced with public officials, nothing more. None of the public officials were named as co-conspirators in Handel's indictment, nor were they central figures in his case.[6]

Finally, the decision to withhold access rests in the sound discretion of the district court. *Nixon*, 435 U.S. at 598-99. Mandamus review of such discretionary decisions is very rare, and is not warranted here, because "[w]here a matter is committed to discretion, it cannot be

---

[6] The government does not address *United States v. Kott*, 135 F. App'x 69 (9th Cir. 2005), which petitioner relies on in violation of Ninth Cir. Rule 36-3.

said that a litigant's right to a particular result is clear and indisputable." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) (cleaned up).

### 3. *The sentencing exhibit redactions do not pertain to uncharged parties in the corruption investigation*

As the district court stated, there is a qualified First Amendment right of access to sentencing proceedings. *United States v. Rivera*, 682 F.3d 1223, 1229 (9th Cir. 2012). However, none of the sentencing exhibits at issue involve redactions of uncharged, public officials in the corruption investigation, which are the only redactions petitioner challenges.

## F. Mandamus Is Not Warranted With Respect To The District Court's Findings

### 1. *Absent a constitutional or common law right of access, findings were not required*

As explained *supra*, there is neither a First Amendment nor a common law right of access to the materials filed in connection with Handel's discovery motion. Thus, the findings necessary to overcome a qualified right of access do not apply. *See Times Mirror*, 873 F.2d at 1212-19 & n.1 (affirming indefinite sealing without further findings

40

where court concluded public had no First Amendment or common law right of access to pre-indictment search warrant materials).

On the contrary, *Sleugh* held that absent a presumption of public access under the First Amendment or common law, the party seeking access to sealed Rule 17(c) materials must demonstrate a "special need." 896 F.3d at 1015.   Petitioner has not attempted to make any such showing.

## 2.   *Even if findings were required to support the court's redactions, there was no clear error*

Even assuming that the court was obligated to state why it found a "compelling reason" supporting redaction of uncharged third-party names/identities, there was no clear error.  This Court has a sufficient basis by which to evaluate the district court's decision.

In its opposition to petitioner's motion to unseal, the government spent three pages discussing the compelling privacy, reputation, and due process interests of uncharged subjects that warranted redacting their names/identities.  (GEX-119-22.)  Citing many of the same cases discussed *supra*, the government argued that redaction was necessary to avoid the privacy and reputational harm of being stigmatized by an accusation of crime without being provided a forum to refute that

41

allegation.  (*Id.*)  The district court stated in its order denying petitioner's motion that it had considered the parties' papers, including the government's opposition, and that "the government ha[d] established compelling reasons and significant interests justifying the redactions."  (EX 1 at 1-2.)  By adopting the government's showing, the district court provided adequate analysis and an ample basis for meaningful review by this Court.

Furthermore, in sealing Handel's reply brief in support of his discovery motion and its supporting exhibit, the district court found "good cause" for sealing based on Handel's sealing application.  (EX 5.)  That application stated, in part, that his reply and exhibit contained "sensitive, confidential information on law enforcement's investigation into politicians and their staffers, at least some of which is not public knowledge" and that public disclosure of "these documents would harm my client irreparably and make public potentially sensitive information about both my client and targets of a government investigation."  (EX 4 at 2.)  This order provides additional explanation for the redactions, as this Court has previously recognized that when a court grants a protective or sealing order for information produced in discovery, it has

42

already balanced the public and private interests and determined that "'good cause' exists to protect this information from being disclosed to the public." *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002).

The record here is far more developed than in the cases petitioner cites requiring remand for the district court to provide its findings. For example, in *Hagestad v. Tragesser*, a minute order stating "[o]rdered defendant's faxed motion to seal entire court record granted" was insufficient to meaningfully review the court's decision to seal, where the motion shed little light on the district court's reasons for sealing. 49 F.3d 1430, 1432, 1434-35 & n.8 (9th Cir. 1995).[7] Here, there is a three-page order setting forth the various bases by which certain records remain sealed, unsealed, and redacted. The order further indicates that the court reviewed the parties' detailed submissions on unsealing, and adopted the government's compelling need argument.

---

[7] Like *Kott*, the government does not address petitioner's reliance on *United States v. McClatchy Newspapers, Inc.*, 2 F. App'x 745 (9th Cir. 2001), which petitioner cites in violation of 9th Cir. Rule 36-3.

43

Similarly, in *Associated Press*, the district court initially imposed an order that all future filings in the case be *in camera*, with no explanation for its imposition of such prior restraint. 705 F.2d at 1144. Moreover, unlike here, the initial order did not give the parties or the press any opportunity to be heard. *Id.* Then, in its later order, it presumptively sealed documents, which, as this Court observed, "impermissibly reverse[s] the 'presumption of openness' that characterizes criminal proceedings." *Id.* at 1147. The district court never presumptively sealed the documents at issue here; instead, it made an individual decision to seal documents upon application by the government or Handel on each occasion.

The claimed absence of sufficient findings fails not only the third *Bauman* factor, but also others. The order here does not reflect any "oft-repeated error" or "persistent disregard of the federal rules." 557 F.2d at 655. Nor do the court's findings raise "new and important problems" or issues of first impression. *Id.*

In short, the record here provides no basis to invoke the drastic and extraordinary remedy of mandamus.

44

# VI

# CONCLUSION

For the foregoing reasons, petitioner's mandamus petition should be denied.

DATED: February 20, 2025        Respectfully submitted,

JOSEPH T. MCNALLY
Acting United States Attorney

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

/s/ Thomas F. Rybarczyk

THOMAS F. RYBARCZYK
Assistant United States Attorney
Deputy Chief, Public Corruption &
Civil Rights Section

Attorneys for Real Party in Interest
UNITED STATES OF AMERICA

## STATEMENT OF RELATED CASES

The government states, pursuant to Ninth Circuit Rule 28-2.6, that it is unaware of any cases related to this appeal.

## CERTIFICATE OF COMPLIANCE

I certify that:

1.    This brief complies with the length limits permitted by Ninth Circuit Rules 21-2(c) and 32-3 because the brief contains 8,164 words, including 247 words manually counted in any visual images, and excluding the portions exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016.


DATED: February 20, 2025          */s/ Thomas F. Rybarczyk*

                                   [THOMAS F. RYBARCZYK
                                   Attorneys for Real Party in Interest
                                   UNITED STATES OF AMERICA