No. 24-6972

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

IN RE LOS ANGELES TIMES COMMUNICATIONS, LLC,
*Petitioner*,

*v.*

UNITED STATES DISTRICT COURT FOR THE CENTRAL
DISTRICT OF CALIFORNIA,
*Respondent.*

*ON PETITION FOR WRIT OF MANDAMUS FROM A DECISION OF
THE U.S. DISTRICT COURT FOR CENTRAL DISTRICT OF
CALIFORNIA (NO. 2:20-CR-00612-ODW)*

### GOVERNMENT'S EXHIBITS

JOSEPH T. MCNALLY
Acting United States Attorney

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

THOMAS F. RYBARCZYK
Assistant United States Attorney
Deputy Chief, Public Corruption &
Civil Rights Section

1500 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-8452
Email: thomas.rybarczyk@usdoj.gov

Attorneys for Real Party in Interest
UNITED STATES OF AMERICA

# GOVERNMENT'S EXHIBITS

**DESCRIPTION**                                                        **PAGE**

1. INDICTMENT,
   filed December 9, 2020,
   Docket No. 1...........................................................................1

2. GOVERNMENT'S OBJECTION AND REQUEST TO STRIKE
   DEFENDANT'S MOTION TO COMPEL SPECIFIC DISCOVERY
   FOR FAILURE TO COMPLY WITH LOCAL RULE MEET AND
   CONFER REQUIREMENTS,
   filed December 1, 2021,
   Docket No. 62.........................................................................15

3. DEFENDANT'S SUPPLEMENT TO MOTION TO COMPEL
   SPECIFIC DISCOVERY,
   filed March 3, 2022,
   Docket No. 67.........................................................................17

4. CRIMINAL MINUTES - GENERAL,
   filed March 28, 2022,
   Docket No. 81.........................................................................19

5. FIRST SUPERSEDING INFORMATION,
   filed February 6, 2023,
   Docket No. 97.........................................................................20

6. PLEA AGREEMENT FOR DEFENDANT MARK HANDEL,
   filed February 6, 2023,
   Docket No. 100.......................................................................25

7. GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT
   MARK HANDEL,
   filed October 23, 2023,
   Docket No. 119.......................................................................59

8.    GOVERNMENT'S EX PARTE APPLICATION FOR ORDER
      SEALING DOCUMENTS, DECLARATION OF THOMAS F.
      RYBARCZYK
      filed October 23, 2023,
      Docket No. 120.................................................................................. 80

9.    ORDER SEALING DOCUMENTS,
      filed October 24, 2023,
      Docket No. 123.................................................................................. 83

10.   GOVERNMENT'S RESPONSE TO DEFENDANT'S ADDENDUM
      TO HIS SENTENCING POSITION,
      filed November 11, 2023,
      Docket No. 138.................................................................................. 85

11.   OPPOSITION TO MOTION OF NON-PARTY LOS ANGELES
      TIMES COMMUNICATIONS LLC TO INTERVENE AND
      UNSEAL,
      filed September 9, 2024,
      Docket No. 157.................................................................................. 99

Case 2:20-cr-00612-ODW    Document 1    Filed 12/09/20    Page 1 of 14    Page ID #:1

```
                                          ┌─────────────────────────┐
                                          │        F I L E D        │
                                          │ CLERK, U.S. DISTRICT COURT │
                                          │                         │
                                          │      12/9/2020          │
                                          │                         │
                                          │ CENTRAL DISTRICT OF CALIFORNIA │
                                          │ BY: _____ eva ____ DEPUTY │
                                          └─────────────────────────┘
```

1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9               FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                    September 2019 Grand Jury

11   UNITED STATES OF AMERICA,          CR No. 2:20-cr-00612-AB

12            Plaintiff,                I N D I C T M E N T

13            v.                        [18 U.S.C. § 152(3): False
                                        Statement in Bankruptcy; 18 U.S.C.
14   MARK HANDEL,                       § 152(1): Concealment of Assets in
                                        Bankruptcy; 18 U.S.C. § 152(2):
15            Defendant.                False Statements Under Oath; 18
                                        U.S.C. § 1956(a)(1)(B)(i): Money
16                                      Laundering; 18 U.S.C.
                                        §§ 981(a)(1)(C), 982, and 28
17                                      U.S.C. § 2461(c): Criminal
                                        Forfeiture]
18                                             UNDER SEAL

19        The United States Attorney charges:

20                      INTRODUCTORY ALLEGATIONS

21        At times relevant to this Indictment:

22        1.   Defendant MARK HANDEL was a real estate developer residing

23   in Los Angeles County.

24        2.   Defendant HANDEL worked as a real estate developer for more

25   than thirty years, engaging in the buying, selling, and developing of

26   commercial and residential real estate.  Defendant HANDEL was

27   instrumental in every step of these projects, including: (a) working

28   RCP:rcp

1  with government authorities and politicians for zoning changes and

2  construction density (e.g. the number of housing units allowed); (b)

3  construction financing, loan negotiations, loan re-financing; (c)

4  everyday construction decisions, such as about disbursement of loan

5  proceeds, pricing and sale of the properties, negotiation of final

6  sales offers, and disbursement of the proceeds from the sales.  Among

7  other things, defendant HANDEL approved payment of invoices,

8  discussed specifications with architects and designers, and pitched

9  new projects.

10     3.  Defendant HANDEL also solicited large amounts of donations

11  from his business associates and others to be paid to politicians,

12  which defendant HANDEL described as being a "bundler."  Defendant

13  HANDEL did this, at least in part, to benefit his real estate

14  projects by gaining access to and having influence over politicians.

15     4.  Defendant HANDEL's wife was a homemaker and/or worked as a

16  teacher.  Defendant HANDEL's wife did not have experience in real

17  estate development and did not work on defendant HANDEL's real estate

18  development projects.

19        **Limited Liability Companies, Corporations, and Nominees**

20     5.  With the assistance of others, defendant HANDEL used

21  multiple corporations and entities to conceal his involvement in real

22  estate development projects and his income.  Defendant HANDEL

23  purposely failed to put his name on the corporations and entities to

24  conceal and disguise his involvement and to deceive his creditors.

25  Among the non-exhaustive list of entities defendant HANDEL used or

26  caused to be used to conceal his involvement and income were: Future

27  Growers, LLC; BSVERCOM, LLC; Big Tujunga Villas, LLC; SJC Peppertree,

28  LLC; 2013 Opportunity Fund, LLC; 2013 Opportunity Fund A, LLC;

GEX 2

1  Charter 4 2014 LLC; Harbor City 10 LLC; Lone Pine Investors Group;

2  Lone Pine, LLC; Livermore Condor, LLC; and Investors Capital Group.

3  Defendant HANDEL used and caused to be used his wife as a nominee

4  partner, manager, and owner of LLCs.  Defendant HANDEL also used and

5  caused to be used Individual A and Individual B as nominee partners,

6  managers, and owners of LLCs.

7      6.    DTMM was a corporation that defendant HANDEL caused to be

8  registered in his wife's name, but through which defendant HANDEL ran

9  all of his personal expenses.  Defendant HANDEL told his friends and

10  business associates that DTMM stood for "Don't Touch My Money," and

11  defendant HANDEL controlled and owned it.

12      7.    Individual B was defendant HANDEL's business partner and

13  accountant.  Defendant HANDEL was a partner in real estate

14  development projects with Individual B and split the profits from

15  those projects.

16      **Concealed Assets and Properties Developed**

17      8.    Prior to and during the pendency of his bankruptcy, through

18  the use of the above-described entities, defendant HANDEL developed

19  properties including: 23555 Mulholland Highway, Calabasas; 23401

20  Mulholland Highway, Calabasas; 23421 Mulholland Highway, Calabasas;

21  5800 Jed Smith Road, Hidden Hills; 2716 Starpine Drive, Duarte

22  (Duarte Development 15, LLC); 2724 Starpine Drive, Duarte; 2732

23  Starpine Drive, Duarte; 32275 Peppertree Bend, San Juan Capistrano

24  (SJC Peppertree LLC and Future Growers LLC); 12400 Big Tujunga Canyon

25  Road, Tujunga; 1620 237th Street #1, Harbor City; 1620 237th Street

26  #2, Harbor City; 1620 237th Street #3 (and # 4 to #10), Harbor City,

27  and multiple parcels of land in Livermore, California.

28

GEX 3

9.    Beginning in the 2008 calendar year, defendant HANDEL reported a net operating loss of $9,502,795 on his Form 1040 United States Individual Tax Return and continued to report this loss on his Form 1040 for each and every calendar year through at least 2017.

10.   Beginning in 2008 and continuing through at least 2017, defendant HANDEL received income from Individual A as a "kickback" on a conservation easement donation deal he made with Individual A. Defendant HANDEL received income from Individual A related to the land sale and donation in the following amounts in the following years: $223,500 (2009), $518,000 (2010), $550,000 (2011), $588,000 (2012), $594,000 (2013), $540,500 (2014), $847,507 (2015), and $783,022 (2016).

**Filing of Bankruptcy Case**

11.   On or about April 14, 2015, in Los Angeles County, defendant HANDEL filed and caused to be filed a bankruptcy petition under Title 11, United States Code, namely, bankruptcy case number 1:15-bk-11292-MT, entitled In re Mark Handel, in the United States Bankruptcy Court for the Central District of California.  No trustee was appointed in that bankruptcy case.

12.   As the debtor in a chapter 11 case where no trustee was appointed, defendant HANDEL became the debtor-in-possession.  A debtor-in-possession was charged with almost the same obligations and duties of a trustee, including a fiduciary duty to the bankruptcy estate and its creditors, and a duty to preserve and conserve bankruptcy estate assets to maximize benefit to creditors.

13.   On April 14, 2015, defendant HANDEL filed a Statement and Schedules in support of his bankruptcy petition.  On June 19, 2015, defendant HANDEL filed an amended petition and schedules.  Defendant

4

GEX 4

1   HANDEL signed the bankruptcy petition, Statement and Schedules,

2   swearing the information to be true.

3       14.  Defendant HANDEL filed the bankruptcy to escape debt he

4   owed to California Bank and Trust ("CBT") and its collection efforts.

5   At the time of the initial bankruptcy filing, defendant HANDEL listed

6   in his petitions approximately $10 million in debt he owed to CBT

7   that he sought to discharge.

8       15.  On the petition, amended petition, during the creditors

9   hearing under Title 11, United States Code, Section 341(a) ("341(a)

10   hearing"), and during other parts of the proceedings, defendant

11   HANDEL knowingly and fraudulently made and willfully caused to be

12   made materially false declarations and statements under penalty of

13   perjury within the meaning of Title 28, United States Code, Section

14   1746.

15       16.  Throughout the bankruptcy, defendant HANDEL repeatedly

16   falsely stated, and caused to be stated, that he was unemployed, had

17   been unemployed for many years, had no business, and had no income.

18   Defendant HANDEL also concealed his interest in the entities and

19   assets described above, including the real property at 8554 Burnet

20   #124, North Hills, California.

21       17.  Defendant HANDEL made these false statements to defraud

22   CBT, Sunnyside Development Partners, LLC, and other creditors, and to

23   force them to settle his debts for much less than he owed.

24       18.  These Introductory Allegations are incorporated into each

25   count of this Indictment.

26

27

28

COUNT ONE

[18 U.S.C. §§ 152(3), 2(b)]

19.  On or about April 14, 2015, in Los Angeles County, within the Central District of California, defendant HANDEL knowingly and fraudulently made and willfully caused to be made a materially false declaration and statement under penalty of perjury within the meaning of Title 28, United States Code, Section 1746, in and in relation to a case under Title 11, United States Code, namely bankruptcy case number 1:15-bk-11292-MT in the United States Bankruptcy Court for the Central District of California, by submitting and declaring under penalty of perjury to be true a Statement of Financial Affairs, which represented that defendant HANDEL had no "gross amount of income" from "employment, trade, or profession, or from operation of [defendant HANDEL's] business, including part-time activities either as an employee or in independent trade or business" from 2013 to the time of filing.  In fact, as defendant HANDEL knew, he had received substantial income from employment or operation of a business for these periods.

GEX 6

COUNT TWO

[18 U.S.C. §§ 152(1), 2(b)]

20.  Beginning on or about April 14, 2015, and continuing through at least June 19, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant HANDEL knowingly and fraudulently concealed, and willfully caused to be concealed, from the United States Bankruptcy Court, the United States Trustee and creditors of bankruptcy case number 1:15-bk-11292-MT, a material amount of property belonging to the bankruptcy estate of defendant HANDEL, namely, defendant HANDEL's interests in partnerships and joint ventures by, among other means, on or about on or about April 14, 2015, submitting and causing to be submitted a Schedule B-Personal Property that failed to list his "interests in partnerships or joint ventures."

7

COUNT THREE

[18 U.S.C. §§ 152(1), 2(b)]

21.  Beginning on or about April 14, 2015, and continuing through at least June 19, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant HANDEL knowingly and fraudulently concealed, and willfully caused to be concealed, from the United States Bankruptcy Court, the United States Trustee and creditors of bankruptcy case number 1:15-bk-11292-MT, a material amount of property belonging to the bankruptcy estate of defendant HANDEL, namely, defendant HANDEL's interests in partnerships and joint ventures, by, among other means, on or about April 14, 2015, submitting and causing to be submitted a Schedule A-Real Property that failed to list all real property in which defendant HANDEL had "legal, equitable, or future interest."

GEX 8

COUNT FOUR

[18 U.S.C. § 152(2), 2(b)]

22.  On or about May 21, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant HANDEL knowingly and fraudulently made a false material oath and account, in and in relation to a case under Title 11, United States Code, namely, bankruptcy case number 1:15-bk-11292-MT, by falsely testifying under oath in a proceeding at a meeting of creditors that defendant HANDEL had not worked in years and that defendant HANDEL's personal expenses were funded by loans from Individuals A and B when, in fact, as defendant HANDEL knew, defendant HANDEL was working as a real estate developer and that the funds from Individuals A and B were not real loans but were instead income defendant HANDEL made from his work as a real estate developer, from his interest in real estate development businesses, and from the conservation easement donation deal.

9

GEX 9

COUNTS FIVE THROUGH NINE

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(a)]

23.  On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant HANDEL knowingly conducted, attempted to conduct, and aided, abetted, counseled, commanded, induced and procured the following financial transactions affecting interstate and foreign commerce, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, that is, concealment of assets, false oaths, and false statements in bankruptcy, in violation of Title 18, United States Code Section 152(1), (2), and (3), knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity:

| COUNT | DATE | TRANSACTION |
|-------|------|-------------|
| FIVE | 12/22/2015 | Deposit of check no. 5013, in the amount of $65,000.00, from Investors Capital Group, payable to DTMM, into a City National Bank Account, in the name of DTMM in Los Angeles, California. |
| SIX | 12/22/2015 | Wire transfer in the amount of $350,000, from Investors Capital Group, payable to CBT, for the benefit of Buchalter, Nemer, in Los Angeles, California. |
| SEVEN | 5/22/2018 | Deposit of check no. 07003321, in the amount of $97,117.46, from Ticor Title Company, payable to DTMM, into a City National Bank Account in the name of DTMM, in Los Angeles, California. |

GEX 10

| COUNT | DATE | TRANSACTION |
|-------|------|-------------|
| EIGHT | 5/22/2018 | Deposit of check no 07003360, in the amount of $3,960.00, from Ticor Title Company, payable to DTMM, into a City National Bank Account in the name of DTMM, in Los Angeles, California. |
| NINE | 5/22/2018 | Deposit of check no. 1001, in the amount of $4,205, from Park Ave. Properties Ltd. dba Foothill Realty, payable to DTMM, into a City National Bank Account in the name of DTMM, in Los Angeles, California. |

11

GEX 11

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the conviction of defendant MARK HANDEL, under any of Counts One through Four of this Indictment.  If so convicted, defendant HANDEL shall forfeit the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of each such offense.

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

2. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), defendant HANDEL shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of defendant HANDEL, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

GEX 12

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982 and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts Five through Nine of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) Any property, real or personal, involved in such offense, and any property traceable to such property; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an

13

GEX 13

1  intermediary who handled but did not retain the property in the

2  course of the money laundering offense unless the defendant, in

3  committing the offense or offenses giving rise to the forfeiture,

4  conducted three or more separate transactions involving a total of

5  $100,000.00 or more in any twelve-month period.

6

7

8                                            A TRUE BILL

9

10  _____
                                             Foreperson

11

12  NICOLA T. HANNA
    United States Attorney
13

14  *Brandon Fox*

15  BRANDON D. FOX
    Assistant United States Attorney
16  Chief, Criminal Division

17  MACK E. JENKINS
    Assistant United States Attorney
18  Chief, Public Corruption & Civil
    Rights Section
19
    RUTH C. PINKEL
20  AGUSTIN D. OROZCO
    Assistant United States Attorney
21  Public Corruption & Civil Rights
    Section
22

23

24

25

26

27

28

                              14

```
 1   TRACY L. WILKISON
     United States Attorney
 2   SCOTT M. GARRINGER
     Assistant United States Attorney
 3   Chief, Criminal Division
     RUTH C. PINKEL (Cal. Bar No. 164470)
 4   Assistant United States Attorney
     Acting Deputy Chief, Public Corruption and Civil Rights Section
 5        1500 United States Courthouse
          312 North Spring Street
 6        Los Angeles, California 90012
          Telephone:  (213) 894-6077
 7        Facsimile:  (213) 894-0141
          E-mail:    ruth.pinkel@usdoj.gov
 8
     Attorneys for Plaintiff
 9   UNITED STATES OF AMERICA
```

10                     UNITED STATES DISTRICT COURT

11              FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 12   UNITED STATES OF AMERICA, | No. CR 20-00612-ODW |
| 13          Plaintiff, | GOVERNMENT'S OBJECTION AND REQUEST TO STRIKE DEFENDANT'S "MOTION TO |
| 14          v. | COMPEL SPECIFIC DISCOVERY" FOR FAILURE TO COMPLY WITH LOCAL RULE |
| 15   MARK HANDEL, | MEET AND CONFER REQUIREMENTS |
| 16          Defendant. | [PROPOSED ORDER SUBMITTED SEPARATELY] |
| 17 | |

18

19        Plaintiff United States of America, by and through its counsel

20   of record, the United States Attorney for the Central District of

21   California and Assistant United States Attorney Ruth C. Pinkel,

22   hereby files its Objection and requests that the Court strike

23   Defendant's Motion to Compel Specific Discovery (filed under seal on

24   Thanksgiving Day) for failure to comply with the meet and confer

25   requirements of the Local Rules.  See Local Civ. Rule 7-3; Local

26   Crim. Rule 57-1 (requiring a meeting, "preferably in person," to

27   "thoroughly" discuss the substance of any motion and any potential

28   resolution "at least" seven days prior to filing the motion).

GEX 15

1    Defendant filed the present motion to compel without having

2  conducted the required meet and confer.  The only "advance" notice

3  given to the government was via an email sent at 10:47 a.m.

4  Thanksgiving Day asking the government its position on the under seal

5  filing and oversized nature of the brief.  There was no meet and

6  confer and no notice whatsoever about the contemplated filing of this

7  motion, which is surprising given that the government has produced

8  over 91,000 pages of discovery so far, including over 16,400 pages

9  produced pre-indictment, two detailed factual bases, and 34,000 pages

10  of defendant's emails.

11    Had defense counsel complied with the letter and spirit of the

12  meet and confer requirements, his instant motion may have been

13  avoided, as counsel would have learned: (1) his factual narrative is

14  incorrect and omitted material facts; (2) the AUSA overseeing

15  discovery production has been on emergency leave for over a month,

16  thus delaying production; and (3) even with the AUSA's emergency

17  absence, this Office has a production timetable in place to ensure

18  that all remaining discovery is produced well in advance of the July

19  12, 2022 trial date.

20   Dated: December 1, 2021          Respectfully submitted,

21                                    TRACY L. WILKISON
                                      United States Attorney
22
                                      SCOTT M. GARRINGER
23                                    Assistant United States Attorney
                                      Chief, Criminal Division
24

25                                     /s/ Ruth C. Pinkel
                                      RUTH C. PINKEL
26                                    Assistant United States Attorney

27                                    Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA
28

GEX 16

1  MARK WINDSOR (SBN 190589)
   Law Office of Mark Windsor
2  65 N. Raymond Ave., Ste. 320
   Pasadena, California 91103
3  Telephone: (626) 792-6700
   Email: mark@windsorlaw.us
4
   Attorney for Defendant
5  MARK HANDEL

6

7              **UNITED STATES DISTRICT COURT**

8         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

9  UNITED STATES OF AMERICA,       )  Case No.: 20-CR-612-ODW-1
                                    )
10                                  )
                                    )
11          Plaintiff,              )  **DEFENDANT'S SUPPLEMENT TO**
                                    )  **MOTION TO COMPEL SPECIFIC**
12                                  )  **DISCOVERY**
                                    )
13          v.                      )
                                    )
14                                  )  Hearing Date: March 28, 2022
                                    )  Time: 10:00 a.m.
15  MARK HANDEL,                    )  Department: 5D
                                    )
16                                  )
                                    )
17          Defendant.              )
   _____ )

18

19      TO THE HONORABLE OTIS D. WRIGHT, II, UNITED STATES DISTRICT

20  COURT JUDGE, AND THE UNITED STATES ATTORNEY FOR THE CENTRAL

21  DISTRICT OF CALIFORNIA AND/OR HIS AUTHORIZED REPRESENTATIVES:

22      Defendant Mark Handel, by and through his attorney of record, Mark Windsor,

23  hereby files this supplemental brief to his Motion to Compel Specific Discovery (Dkt 61)

24  to apprise the Court of developments concerning the defense's discovery requests.

25      On November 25, 2021 the defense filed its Motion to Compel Specific Discovery

26  (Dkt 61).  On December 1, 2021, the government filed its Opposition in the form of an

27  Objection and Motion to Strike (Dkt 62).  On December 29, 2021 and February 28, 2022,

28

_____
       DEFENDANT'S MOTION TO COMPEL SPECIFIC DISCOVERY
                              1

                                                          GEX 17

1  the parties met and conferred regarding the specific requests outlined in Defendant's

2  discovery motion.

3       Since the filing of the Defense's Motion to Compel, the defense has received

4  voluminous discovery.  Specifically, the government has produced four productions in

5  response to the defense's motion.  The defense received these productions on or about

6  December 1, 2021, December 17, 2021, February 4, 2022, and February 18, 2022; the

7  productions encompassed approximately 15,556 pages in total.  The government further

8  indicated to the defense that it intends to produce additional discovery imminently.  Both

9  parties are cooperating together to limit the scope of the hearing on the Motion to

10  Compel.

11       At the present time, the defense asks that the scope of the upcoming hearing be

12  limited to Request Number 2 from his "Second Discovery Request Letter" (EXHIBIT D),

13  which is reproduced in relevant part below:

14      2.  **Investigation Prior to August 8, 2014**: Any and all evidence showing that
investigation into Mr. Handel was initiated, or that "a matter… was

15         pending in the United States Attorney's Office (USAO) on or before
August 8, 2014, the date the Honorable Andre Birotte Jr. resigned from his

16         position as the United States Attorney for the Central District of
California." (See Dkt 3: Memorandum filed by Plaintiff USA, dated

17         December 8, 2020).  Also, in connection with this request, I would like
copies of any written policies, guidelines, or other documentation

18         describing how your office determines whether a case was pending in your
office before a certain date for purposes of recusing U.S. Attorney

19         personnel who later become Article III or magistrate judges.

20  (Dkt 61, EXHIBIT D-002).

21      In conclusion, the parties have agreed to narrow the scope of the discovery hearing

22  to only the issue of the defense's Request Number Two, which is the only request that

23  remains entirely unresolved.

24  DATED: March 3, 2022               Respectfully submitted,

25                            /s/

26                     MARK WINDSOR
                   Attorney for Defendant

27

28

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CRIMINAL MINUTES - GENERAL

| Case No. | CR 20-00612-ODW | Date | March 28, 2022 |
|---|---|---|---|

Present: The Honorable    Otis D. Wright, II, United States District Judge

Interpreter    None

| Sheila English | Court Smart | Ruth C. Pinkel/ Thomas F. Rybarczyk |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Mark Handel | X | | X | Mark Handel | X | X | |

**Proceedings:**    MOTION TO COMPEL[61]

Case is called, appearances made. The Motion is denied pursuant to Local Rule 37-2.4.

**IT IS SO ORDERED.**

|  | : | 07 |
|---|---|---|
| Initials of Deputy Clerk | | se |

GEX 19

Case 2:20-cr-00612-ODW    Document 97    Filed 02/06/23    Page 1 of 5    Page ID #:782

**F I L E D**
CLERK, U.S. DISTRICT COURT

2/6/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ VAV _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 20-612(A)-ODW |
| Plaintiff, | F I R S T |
| v. | S U P E R S I D I N G |
| | I N F O R M A T I O N |
| MARK HANDEL, | [18 U.S.C. § 152(3): False |
| Defendant. | Statement in Bankruptcy; 26 U.S.C. § 7206(1): Subscribing to False Tax Return; 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. §§ 152(3), 2(b)]

On or about April 14, 2015, in Los Angeles County, within the Central District of California, defendant MARK HANDEL knowingly and fraudulently made and willfully caused to be made a materially false declaration and statement under penalty of perjury within the meaning of Title 28, United States Code, Section 1746, in and in relation to a case under Title 11, United States Code, namely bankruptcy case number 1:15-bk-11292-MT in the United States Bankruptcy Court for the Central District of California, by submitting and declaring under penalty of perjury to be true a Statement of Financial Affairs, which

GEX 20

1  represented that defendant HANDEL had no "gross amount of income"

2  from "employment, trade, or profession, or from operation of

3  [defendant HANDEL's] business, including part-time activities either

4  as an employee or in independent trade or business" from 2013 to the

5  time of filing.  In fact, as defendant HANDEL then knew, he had

6  received substantial income from employment and operation of a

7  business during this time period.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GEX 21

COUNT TWO

[26 U.S.C. § 7206(1)]

On or about October 13, 2016, in Los Angeles County, within the Central District of California, defendant MARK HANDEL willfully made and subscribed to a materially false United States Individual Income Tax Return, Form 1040, for the calendar year 2015, which defendant HANDEL verified by a written declaration that it was made under penalty of perjury, which was filed with the Internal Revenue Service, and which defendant HANDEL did not believe to be true and correct as to every material matter, namely, in that line 22 of the Form 1040 reported his total income of negative (or a loss of) $9,441,623 when, in fact, as defendant HANDEL then knew, he did not have a total income of negative $9,441,623 but had a positive income of $1,096,175 for calendar year 2015.

3

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count One of this First Superseding Information.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any such offense, including without limitation, the $3,545,712.44 in funds which represents the net proceeds of the sale of the real property located at the intersection of Comcast Place and North Canyons Parkway in Livermore, California, which property was sold pursuant to the Order for Interlocutory Sale entered on May 10, 2021; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be

4

GEX 23

Case 2:20-cr-00612-ODW    Document 97    Filed 02/06/23    Page 5 of 5    Page ID #:786

1  located upon the exercise of due diligence; (b) has been transferred,

2  sold to or deposited with a third party; (c) has been placed beyond

3  the jurisdiction of the court; (d) has been substantially diminished

4  in value; or (e) has been commingled with other property that cannot

5  be divided without difficulty.

6

7                              E. MARTIN ESTRADA
                               United States Attorney

8

9

10                             MACK E. JENKINS
                               Assistant United States Attorney
11                             Chief, Criminal Division

12                             LINDSEY GREER DOTSON
                               Assistant United States Attorney
13                             Chief, Public Corruption & Civil
                               Rights Section
14
                               THOMAS F. RYBARCZYK
15                             Assistant United States Attorney
                               Public Corruption & Civil Rights
16                             Section

17

18

19

20

21

22

23

24

25

26

27

28

GEX 24

**F I L E D**
CLERK, U.S. DISTRICT COURT

2/6/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ VAV _____ DEPUTY

1   E. MARTIN ESTRADA
    United States Attorney
2   MACK E. JENKINS
    Assistant United States Attorney
3   Chief, Criminal Division
    THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
4   Assistant United States Attorney
    Public Corruption and Civil Rights Section
5        1500 United States Courthouse
         312 North Spring Street
6        Los Angeles, California 90012
         Telephone: (213) 894-8452
7        Facsimile: (213) 894-0141
         E-mail:   thomas.rybarczyk@usdoj.gov
8
    Attorneys for Plaintiff
9   UNITED STATES OF AMERICA

10                 UNITED STATES DISTRICT COURT

11            FOR THE CENTRAL DISTRICT OF CALIFORNIA

12   UNITED STATES OF AMERICA,        No. CR 20-612-ODW

13            Plaintiff,              PLEA AGREEMENT FOR DEFENDANT
                                      MARK HANDEL
14            v.

15   MARK HANDEL,

16            Defendant.

17

18        1.    This constitutes the plea agreement between MARK HANDEL

19   ("defendant") and the United States Attorney's Office for the Central

20   District of California (the "USAO") in the above-captioned case.

21   This agreement is limited to the USAO and cannot bind any other

22   federal, state, local, or foreign prosecuting, enforcement,

23   administrative, or regulatory authorities.

24                      DEFENDANT'S OBLIGATIONS

25        2.    Defendant agrees to:

26            a.    Give up the right to indictment by a grand jury and,

27   at the earliest opportunity requested by the USAO and provided by the

28   Court, appear and plead guilty to a two-count First Superseding

GEX 25

Information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with False Statement in Bankruptcy in violation of 18 U.S.C. § 152(3) and Subscribing to a False Tax Return in violation of 26 U.S.C. § 7206(1).

　　　　　b.　Not contest the Factual Basis agreed to in this agreement.

　　　　　c.　Abide by all agreements regarding sentencing contained in this agreement.

　　　　　d.　Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

　　　　　e.　Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

　　　　　f.　Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

　　　　　g.　Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

　　　3.　Defendant further agrees:

　　　　　a.　To forfeit all right, title, and interest in $3,545,712.44, which represents the net proceeds of the sale of the real property located at the intersection of Comcast Place and North Canyons Parkway in Livermore, California, which property was sold pursuant to the Order for Interlocutory Sale entered on May 10, 2021 (Dkt. 49), (the "forfeitable property").

2

GEX 26

1          b.   To deliver to the undersigned Assistant United States

2    Attorney, within fourteen (14) calendar days of defendant's execution

3    of this plea agreement, a notarized release in the form of Exhibit B

4    attached to this agreement, or a substantially similar form, executed

5    by Sarah Jane Lulloff, waiving her and her entities' right to contest

6    the forfeiture of the forfeitable property.

7          c.   To the Court's entry of an order of forfeiture at or

8    before sentencing with respect to the forfeitable property and to the

9    forfeiture of the forfeitable property, which the parties agree

10   should be the full amount to be forfeited in this case.

11         d.   That the Preliminary Order of Forfeiture shall become

12   final as to the defendant upon entry.

13         e.   To take whatever steps are necessary to pass to the

14   United States clear title to the forfeitable property, including,

15   without limitation, the execution of a consent decree of forfeiture

16   and the completing of any other legal documents required for the

17   transfer of title to the United States.

18         f.   Not to contest any administrative forfeiture

19   proceedings or civil judicial proceedings commenced against the

20   forfeitable property.  If defendant submitted a claim and/or petition

21   for remission for all or part of the forfeitable property on behalf

22   of himself or any other individual or entity, defendant shall and

23   hereby does withdraw any such claims or petitions, and further agrees

24   to waive any right he may have to seek remission or mitigation of the

25   forfeiture of the forfeitable property.  Defendant further waives any

26   and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

27         g.   Not to assist any other individual in any effort

28   falsely to contest the forfeiture of the forfeitable property.

3

GEX 27

         h.   Not to claim that reasonable cause to seize the forfeitable property was lacking.

         i.   To prevent the transfer, sale, destruction, or loss of the forfeitable property to the extent defendant has the ability to do so.

         j.   To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

         k.   That forfeiture of forfeitable property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

         l.   With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the forfeitable property in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that the forfeiture of the forfeitable property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

GEX 28

m.    The parties further agree that, pursuant to the Asset Forfeiture Policy Manual (2021), Chapter 14, Sec. II.B.2 and 28 C.F.R. Part 9.8, upon a determination by the government that it can make the required representations set forth therein, and if requested by defendant, the government will submit a restoration request to the Money Laundering and Asset Recovery Section of the Department of Justice, seeking approval for any assets forfeited to be restored to the victims in this case, which may, in turn, satisfy in full or part any restitution order. Defendant has acknowledged that the Attorney General, or his designee, has the sole discretion to approve or deny the restoration request.

PAYMENT OF TAXES OWED

4.    Defendant admits that defendant received unreported income in the following amounts for the following time-periods or years: $624,676 for 2010; $1,025,148 for 2011; $558,652 for 2012; $1,074,062 for 2013; $909,049 for 2014; $1,096,175 for 2015; $978,095 for 2016; $621,020 for 2017.  Defendant further admits that he took an improper net operating loss deduction for tax year 2018 and therefore underreported his income by $1,411,050.  Defendant agrees that:

a.    Defendant will file, prior to the time of sentencing, amended returns for the years subject to the above admissions, correctly reporting unreported income and correcting improper deductions and credits; will, if requested to do so by the Internal Revenue Service, provide the Internal Revenue Service with information regarding the years covered by the returns; will pay to the Fiscal Clerk of the Court, if financially able, at or before sentencing all additional taxes and all penalties and interest assessed by the Internal Revenue Service on the basis of the returns.

GEX 29

Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, Room 1178, Los Angeles, California 90012.

b.    In the event Defendant's returns are inconsistent with the amounts reflected in paragraph 4, then this agreement does not foreclose or limit the ability of the IRS to examine and make adjustments to defendant's returns after they are filed.

c.    Defendant will not, after filing the returns, file any claim for refund of taxes, penalties, or interest for amounts attributable to the returns filed in connection with this plea agreement.

d.    Defendant is liable for the fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663 on the understatements of tax liability for 2010, 2012, 2013, 2015, 2017, and 2018.

e.    Defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

f.    Defendant will sign closing agreements with the Internal Revenue Service contemporaneously with the signing of this plea agreement, permitting the Internal Revenue Service to assess and collect the total sum of $1,450,070.25, which comprises the tax liabilities ($10,691 for tax year 2010, $44,664 for tax year 2012, $631 for tax year 2013, $927 for tax year 2015, $327,408 for tax year 2017, and $507,327 for tax year 2018) and assess and collects the civil fraud penalties for each year ($10,418.25 for tax year 2010, $14,596.50 for tax year 2012, $473.25 for tax year 2013, $1,653.75

6

GEX 30

for tax year 2015, $154,290 for tax year 2017, and $376,900.50 for tax year 2018).  Defendant further understands that he will have to pay statutory interest on his tax liabilities, which will be computed as provided by law.

THE USAO'S OBLIGATIONS

5.    The USAO agrees to:

a.    Not contest the Factual Basis agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, move to dismiss the underlying indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

NATURE OF THE OFFENSES

6.    Defendant understands that for defendant to be guilty of the crime charged in the count one, that is, False Statement in Bankruptcy, in violation of Title 18, United States Code, Section 152(3), the following must be true:  (1) the existence of a bankruptcy proceeding; (2) a statement or declaration under penalty

7

GEX 31

of perjury was made therein, or in relation thereto; (3) the statement or declaration was made as to a material fact; (4) the statement or declaration was false; and (5) that the statement or declaration was knowingly and fraudulently made.

7.   Defendant understands that for defendant to be guilty of the crime charged in the count two, that is, Subscribing to a False Tax Return, in violation of Title 26, United States Code, Section 7201(1), the following must be true:  (1) defendant signed and filed a tax return for the year 2015 that he knew contained false information as to a material matter; (2) the return contained a written declaration that it was being signed subject to the penalties of perjury; and (3) in filing the false tax return, defendant acted willfully.  A matter is material if it had a natural tendency to influence, or was capable of influencing, the decisions or activities of the Internal Revenue Service.  A defendant acts willfully when defendant knows that federal tax law imposed a duty on defendant and defendant intentionally and voluntarily violated that duty.

<u>PENALTIES AND RESTITUTION</u>

8.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 152(3), is: five years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 7206(1), is: three years imprisonment; a one-year period of supervised release; a fine of $250,000 or twice the gross

GEX 32

gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.  Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: eight years imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

11.  Defendant understands and agrees that the Court: (a) may order defendant to pay restitution in the form of any additional taxes, interest, and penalties that defendant owes to the United States based upon the count of conviction and any relevant conduct, and including defendant's improper net operating loss deduction from 2010 to 2018, and defendant's failure to report income for 2010 to 2017; and (b) must order defendant to pay the costs of prosecution, which may be in addition to the statutory maximum fine stated above.

12.  Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty.

13.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.   Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

14.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.   Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.   Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

15.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.   Defendant may also be denied United States citizenship and admission to the United States in the future.

Defendant understands that while there may be arguments that
defendant can raise in immigration proceedings to avoid or delay
removal, removal is presumptively mandatory and a virtual certainty
in this case.  Defendant further understands that removal and
immigration consequences are the subject of a separate proceeding and
that no one, including his/her attorney or the Court, can predict to
an absolute certainty the effect of his/her conviction[s] on his/her
immigration status.  Defendant nevertheless affirms that he/she wants
to plead guilty regardless of any immigration consequences that
his/her pleas may entail, even if the consequence is automatic
removal from the United States.

FACTUAL BASIS

16.  Defendant admits that defendant is, in fact, guilty of the
offenses to which defendant is agreeing to plead guilty.  Defendant
and the USAO agree to the statement of facts provided below and agree
that this statement of facts is sufficient to support pleas of guilty
to the charges described in this agreement and to establish the
Sentencing Guidelines factors set forth in paragraph 18 below but is
not meant to be a complete recitation of all facts relevant to the
underlying criminal conduct or all facts known to either party that
relate to that conduct.

**Background**

Defendant is a real estate developer residing in Los Angeles
County, within the Central District of California.  Defendant has
worked consistently as a real estate developer for over thirty years
engaging in the buying, selling, and developing of commercial real
estate.

1    DTMM Construction Inc. ("DTMM") was a corporation that defendant

2   caused to be registered in his wife's name but through which

3   defendant used to deposit the profits from his own work as a real

4   estate developer and to pay for defendant's and his family's living

5   expenses.  With the assistance of his accountant/business partner,

6   defendant purposefully concealed his income from Investors Capital

7   Group, Lone Pine Investors Group, LLC, Lone Pine Investors Group 2,

8   LLC, Duarte Development 15, LLC, 2013 Opportunity Fund A LLC, Future

9   Growers, LLC, BSVercom, LLC, Harbor City 10, LLC, and SJC Peppertree

10   LLC by depositing this income into DTMM and its accounts.

11    On or about April 14, 2015, in Los Angeles County, within the

12   Central District of California, defendant filed and caused to be

13   filed a bankruptcy petition under Title 11, United States Code,

14   namely bankruptcy case number 1:15-bk-11292-MT, entitled In re Mark

15   Handel, in the United States Bankruptcy Court for the Central

16   District of California (the "Bankruptcy Case").

17    **False Statements in Bankruptcy**

18    On or about April 14, 2015, in Los Angeles County, within the

19   Central District of California, defendant HANDEL knowingly and

20   fraudulently made and willfully caused to be made a materially false

21   declaration and statement under penalty of perjury within the meaning

22   of Title 28, United States Code, Section 1746, in and in relation to

23   a case under Title 11, United States Code, namely, the Bankruptcy

24   Case, by submitting and declaring under penalty of perjury to be true

25   a Statement of Financial Affairs, which represented that defendant

26   HANDEL had no "gross amount of income" from "employment, trade, or

27   profession, or from operation of [defendant's] business, including

28   part-time activities either as an employee or in independent trade or

12

GEX 36

business" from 2013 to the time of filing.  In fact, as defendant

HANDEL knew, he had received substantial income from employment or

operation of a business for these periods, income he received through

his company, DTMM.  Specifically, from January 2013 through April 14,

2015, defendant earned approximately $2,263,221 in income in

connection with his work as a real estate developer, which he

intentionally did not disclose during his bankruptcy case.  To

conceal that income, defendant with the assistance of his accountant

and others disguised his income from companies and entities,

including Investor Capital Group, Lone Pine Investors Group, LLC,

Lone Pine Investors Group 2, LLC, Duarte Development 15, LLC, 2013

Opportunity Fund A LLC, and Future Growers, LLC.

Defendant's false statements concerning his income and

employment were material to the activities or decisions of the

bankruptcy trustee and defendant's creditors; that is, they had a

natural tendency to influence, or were capable of influencing, the

decisions of the bankruptcy trustee and defendant's creditors.

In connection with his bankruptcy case, defendant intentionally

concealed assets from the bankruptcy trustee and his creditors,

including defendant's interest in the real property located at the

intersection of Comcast Place and North Canyons Parkway in Livermore,

California, namely, Assessor Parcel Number 905-0010-006, described

more particularly as Parcel 3, Parcel Map 5112, filed September 29,

1987, in Book 172, Pages 11 through 14, inclusive, of Maps, Alameda

County.

**Subscribing to a False Tax Return**

On or about October 13, 2016, in Los Angeles County, within the

Central District of California, defendant caused his and his wife's

13

GEX 37

United States Individual Income Tax Return, (Form 1040), for 2015, to be filed electronically with the IRS.  Prior to doing so, defendant had authorized his tax preparer to file his return electronically for him with the IRS.  Defendant willfully signed and subscribed to this tax return, which contained a written declaration that it was being signed under the penalty of perjury and which defendant knew contained materially false information, namely, he knew the return failed to disclose approximately $1,096,175 in additional income. Defendant understood that the false and fraudulent income information provided by defendant was material in that it affected the IRS's calculation of the amount of income earned and prevented the IRS from verifying the accuracy of the amount of tax claimed to be owed on defendant's return.  Defendant acted willfully in that defendant knew that the law required him to report all income accurately.  Defendant voluntarily and intentionally violated that duty.

For calendar years 2010 to 2017, defendant failed to report a total of approximately $6,886,877 of income on his Forms 1040, which consists of the following: $624,676 (2010); $1,025,148 (2011); $558,652 (2012); $1,074,062 (2013); $909,049 (2014); $1,096,175 (2015); $978,095 (2016); and $621,020 (2017).

As a result of defendant's conduct, the net operating loss associated with defendant's 2017 Form 1040 is reduced to $333,071, compared to $7,259,119 that is reported on the 2017 Form 1040.  Thus, the net operating loss deduction is disallowed for the tax year 2018. As a result of the net operating loss being disallowed in the 2018 tax year, defendant underreported his income by $1,411,050 and therefore failed to pay $460,408 in additional tax.

GEX 38

SENTENCING FACTORS

17.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

18.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

**Count One**

| | | |
|---|---|---|
| Base Offense Level: | 6 | [U.S.S.G. § 2B1.1(a)(2)] |
| Specific Offense Characteristics | | |
| Loss over $1.5 Million | +16 | [U.S.S.G. §2B1.1(b)(1)(I)] |
| Misrep. during Bankruptcy | +2 | [U.S.S.G. § 2B1.1(b)(9)(B)] |

**Count Two**

| | | |
|---|---|---|
| Base Offense Level: | 18 | [U.S.S.G. § 2T1.1(a)(1); U.S.S.G. § 2T4.1(G)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Specifically, the government will argue that a sophisticated means enhancement under

15

U.S.S.G. § 2B1.1(b)(10)(C) applies to defendant's bankruptcy crime and that a sophisticated means enhancement under U.S.S.G. § 2T1.1(b)(2) applies to defendant's tax crime.  The government also reserves the right to argue that a one or two-level multi-count adjustment applies pursuant to U.S.S.G. §§ 3D1.4(a) and (b).

19.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

21.  Defendant understands that by pleading guilty, defendant gives up the following rights:

     a.   The right to persist in a plea of not guilty.

     b.   The right to a speedy and public trial by jury.

     c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

     d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

     e.   The right to confront and cross-examine witnesses against defendant.

16

GEX 40

1      f.    The right to testify and to present evidence in

2 opposition to the charges, including the right to compel the

3 attendance of witnesses to testify.

4      g.    The right not to be compelled to testify, and, if

5 defendant chose not to testify or present evidence, to have that

6 choice not be used against defendant.

7      h.    Any and all rights to pursue any affirmative defenses,

8 Fourth Amendment or Fifth Amendment claims, and other pretrial

9 motions that have been filed or could be filed.

10                    WAIVER OF APPEAL OF CONVICTION

11    22.  Defendant understands that, with the exception of an appeal

12 based on a claim that defendant's guilty pleas were involuntary, by

13 pleading guilty defendant is waiving and giving up any right to

14 appeal defendant's convictions on the offenses to which defendant is

15 pleading guilty.  Defendant understands that this waiver includes,

16 but is not limited to, arguments that the statutes to which defendant

17 is pleading guilty are unconstitutional, and any and all claims that

18 the statement of facts provided herein is insufficient to support

19 defendant's pleas of guilty.

20              LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

21    23.  Defendant agrees that, provided the Court imposes a term of

22 imprisonment within or below the range corresponding to an offense

23 level of 24 and the criminal history category calculated by the

24 Court, defendant gives up the right to appeal all of the following:

25 (a) the procedures and calculations used to determine and impose any

26 portion of the sentence; (b) the term of imprisonment imposed by the

27 Court; (c) the fine imposed by the Court, provided it is within the

28 statutory maximum; (d) to the extent permitted by law, the

17

constitutionality or legality of defendant's sentence, provided it is
within the statutory maximum; (e) the term of probation or supervised
release imposed by the Court, provided it is within the statutory
maximum; and (f) any of the following conditions of probation or
supervised release imposed by the Court: the conditions set forth in
Second Amended General Order 20-04 of this Court; the drug testing
conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the
alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

24.   The USAO agrees that, provided (a) all portions of the
sentence are at or below the statutory maximum specified above and
(b) the Court imposes a term of imprisonment within or above the
range corresponding to an offense level of 24 and the criminal
history category calculated by the Court, the USAO gives up its right
to appeal any portion of the sentence.

RESULT OF WITHDRAWAL OF GUILTY PLEA

25.   Defendant agrees that if, after entering guilty pleas
pursuant to this agreement, defendant seeks to withdraw and succeeds
in withdrawing defendant's guilty pleas on any basis other than a
claim and finding that entry into this plea agreement was
involuntary, then (a) the USAO will be relieved of all of its
obligations under this agreement; and (b) should the USAO choose to
pursue any charge that was either dismissed or not filed as a result
of this agreement, then (i) any applicable statute of limitations
will be tolled between the date of defendant's signing of this
agreement and the filing commencing any such action; and
(ii) defendant waives and gives up all defenses based on the statute
of limitations, any claim of pre-indictment delay, or any speedy
trial claim with respect to any such action, except to the extent

18

that such defenses existed as of the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

26.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

27.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

28.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

19

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

29.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

30.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court; (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of

20

sentence; and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the sentencing calculations set forth above are consistent with the facts of this case.  This paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the Factual Basis or Sentencing Factors agreed to in this agreement.

31.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

32.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

GEX 45

1    <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2        33.   The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5    AGREED AND ACCEPTED

6    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
7    CALIFORNIA

8    E. MARTIN ESTRADA
     United States Attorney

9

10   _____          February 5, 2023
     THOMAS F. RYBARCZYK                       _____
11   Assistant United States Attorney          Date

12   _____          2-2-2023
     MARK HANDEL                                _____
13   Defendant                                  Date

14   _____          2/2/23
     JENNIFER LIESER                            _____
15   MARK WINDSOR                               Date
     Attorneys for Defendant MARK HANDEL
16

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24

25

26

27

28

                              22

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____            Feb 2 2023
MARK HANDEL                                  Date
Defendant

23

GEX 47

Case 2:20-cr-00612-ODW   Document 100   Filed 02/06/23   Page 24 of 34   Page ID #:813

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am MARK HANDEL's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

JENNIFER LIESER                                   2/3/23
Attorney for Defendant MARK HANDEL        Date

24

GEX 48

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 20-612(A)-ODW |
|---|---|
| Plaintiff, | F I R S T |
| | S U P E R S I D I N G |
| v. | I N F O R M A T I O N |
| MARK HANDEL, | [18 U.S.C. § 152(3): False Statement in Bankruptcy; 26 U.S.C. § 7206(1): Subscribing to False Tax Return; 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| Defendant. | |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 152(3), 2(b)]

On or about April 14, 2015, in Los Angeles County, within the Central District of California, defendant MARK HANDEL knowingly and fraudulently made and willfully caused to be made a materially false declaration and statement under penalty of perjury within the meaning of Title 28, United States Code, Section 1746, in and in relation to a case under Title 11, United States Code, namely bankruptcy case number 1:15-bk-11292-MT in the United States Bankruptcy Court for the Central District of California, by submitting and declaring under penalty of perjury to be true a Statement of Financial Affairs, which

1  represented that defendant HANDEL had no "gross amount of income"

2  from "employment, trade, or profession, or from operation of

3  [defendant HANDEL's] business, including part-time activities either

4  as an employee or in independent trade or business" from 2013 to the

5  time of filing.  In fact, as defendant HANDEL then knew, he had

6  received substantial income from employment operation of a business

7  for these periods.

2

COUNT TWO

[26 U.S.C. § 7206(1)]

On or about October 13, 2016, in Los Angeles County, within the Central District of California, defendant MARK HANDEL willfully made and subscribed to a materially false United States Individual Income Tax Return, Form 1040, for the calendar year 2015, which defendant HANDEL verified by a written declaration that it was made under penalty of perjury, which was filed with the Internal Revenue Service, and which defendant HANDEL did not believe to be true and correct as to every material matter, namely, in that line 22 of the Form 1040 reported his total income of negative $9,441,623 when, in fact, as defendant HANDEL then knew, he did not have a total income of negative $9,441,623 and had an income of $1,096,175 for calendar year 2015.

3

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count One of this First Superseding Information.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any such offense, including without limitation, the $3,545,712.44 in funds which represents the net proceeds of the sale of the real property located at the intersection of Comcast Place and North Canyons Parkway in Livermore, California, which property was sold pursuant to the Order for Interlocutory Sale entered on May 10, 2021; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be

4

GEX 53

1  located upon the exercise of due diligence; (b) has been transferred,

2  sold to or deposited with a third party; (c) has been placed beyond

3  the jurisdiction of the court; (d) has been substantially diminished

4  in value; or (e) has been commingled with other property that cannot

5  be divided without difficulty.

6

7                              E. MARTIN ESTRADA
                               United States Attorney
8

9

10                             MACK E. JENKINS
                               Assistant United States Attorney
11                             Chief, Criminal Division

12                             LINDSEY GREER DOTSON
                               Assistant United States Attorney
13                             Deputy Chief, Public Corruption &
                               Civil Rights Section
14
                               THOMAS F. RYBARCZYK
15                             Assistant United States Attorney
                               Public Corruption & Civil Rights
16                             Section

17

18

19

20

21

22

23

24

25

26

27

28

GEX 54

# EXHIBIT B

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 20-612-ODW |
|     Plaintiff, | WAIVER AND RELEASE OF CLAIMS TO CONTEST FORFEITURE OF FORFEITABLE PROPERTY |
|        v. | |
| MARK HANDEL, | |
|     Defendant. | |

1.    Mark Handel ("defendant") has entered into a plea agreement with the United States Attorney's Office for the Central District of California.

2.    As part of that agreement defendant has agreed to forfeit his interest in the $3,545,712.44 in funds which represents the net proceeds of the sale of the real property located at the intersection of Comcast Place and North Canyons Parkway in Livermore, California, which property was sold pursuant to the Order for Interlocutory Sale entered on May 10, 2021 (the "forfeitable property").

3.    DTMM Construction, Inc. through its Chief Executive Officer Sarah Jane Lulloff ("DTMM") and Sarah Jane Lulloff on behalf

GEX 56

1  of herself and any other entity in which Sarah Jane Lulloff has held

2  an ownership interest or has served as an officer, director,

3  manager, partner, trustee or other representative (which entities

4  are collectively referred to herein as the "Entities" and include,

5  without limitation, SDLT VII, LLC, Charter 4, LLC, and Future

6  Growers, LLC) by their signatures hereunder, hereby agree to the

7  forfeiture of any interest they may have in the forfeitable property

8  to the United States of America, and knowingly, voluntarily, and

9  intelligently waive, relinquish, and surrender all rights to contest

10 the forfeiture of the forfeitable property to the United States, as

11 well as any and all rights to judicial review of the forfeiture of

12 the forfeitable property.

13      4.    If DTMM, Sarah Jane Lulloff, or the Entities submitted a

14 claim or petition for remission with respect to the forfeitable

15 property, this Waiver and Release constitutes a complete withdrawal

16 of any such claim or petition, and DTMM, Sarah Jane Lulloff, and the

17 Entities agree and understand that their interest in the forfeitable

18 property shall be judicially forfeited to the United States of

19 America without any further notice.

20      5.    DTMM, Sarah Jane Lulloff, and the Entities agree that they

21 will execute further documents, to the extent necessary, to convey

22 clear title to the forfeitable property to the United States, and to

23 further implement the terms of the Order of Forfeiture.

24

25 Dated: 2/2 , 2023        SARAH JANE LULLOFF, on behalf of

26                          Herself, and DTMM Construction,
                            Inc., SDLT VII, LLC, Charter 4 LLC,

27                          Future Growers, LLC, and all other
                            Entities

28

2

GEX 57

*ATTACHED to WAIVER & RELEASE OF CLAIMS-*

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ Los Angeles _____ )

On ____ February 2, 2023 ____ before me, ____ Helen A. Dickerson, Notary Public ____
(insert name and title of the officer)

personally appeared ____ **Sarah Jane Lulloff- ONLY _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

HELEN A. DICKERSON
Notary Public - California
Los Angeles County
Commission # 2300320
My Comm. Expires Sep 1, 2023

GEX 58

E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
Assistant United States Attorney
Public Corruption and Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8452
    Facsimile: (213) 894-0141
    E-mail:    thomas.rybarczyk@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-00612(A)-ODW |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT MARK HANDEL |
| v. | |
| MARK HANDEL, | Sentencing: November 6, 2023 |
| Defendant. | Time:      8:30 a.m. |
| | Location:  Courtroom of the Hon. Otis D. Wright |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Thomas F. Rybarczyk, hereby files its sentencing position for defendant MARK HANDEL.

///

///

///

///

1    The government's sentencing position is based upon the attached

2  memorandum of points and authorities, the attached exhibits, the

3  files and records in this case, and such further evidence and

4  argument as the Court may permit.

5  Dated: October 23, 2023            Respectfully submitted,

6                                     E. MARTIN ESTRADA
                                       United States Attorney
7
                                       MACK E. JENKINS
8                                      Assistant United States Attorney
                                       Chief, Criminal Division
9

10                                     */s/ Thomas F. Rybarczyk*
                                       THOMAS F. RYBARCZYK
11                                     Assistant United States Attorney

12                                     Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

Case 2:20-cr-00612-ODW   Document 119   Filed 10/23/23   Page 3 of 21   Page ID #:949

# TABLE OF CONTENTS

I.   INTRODUCTION.....................................................1

II.  STATEMENT OF FACTS..............................................2

III. PROCEDURAL HISTORY..............................................7

IV.  ARGUMENT........................................................8

    A.   The Guidelines Calculation: Defendant's Total Offense
        Level Is 22, and His Guidelines Range Is 41 to 51
        Months..................................................8

        1.   The Parties Agreed Upon Sentencing Guidelines
            Factors...........................................8

        2.   Sophisticated Means Under U.S.S.G. §
            2B1.1(b)(10)(C)...................................10

        3.   Sophisticated Means Under U.S.S.G. § 2T1.1(b)(2)....12

        4.   Multi-Count Adjustment Under U.S.S.G. § 3D1.4.......13

        5.   Defendant's Guidelines Range Is 41 to 51 Months'
            Imprisonment.....................................14

    B.   The Government's Recommendation: A Sentence of 51
        Months' Imprisonment and a Fine of $20,000 Is
        Necessary to Punish and Deter..........................15

        1.   A Significant Sentence Imposed Must Punish
            Defendant for His Egregious Conduct................15

        2.   Defendant Needs a Significant Sentence to Deter
            Both Him and Others From Engaging in the Same
            Conduct...........................................16

        3.   The Court Should Impose a Fine of $20,000...........18

V.   CONCLUSION.....................................................18

i

GEX 61

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Defendant MARK HANDEL ("defendant") was the living embodiment of the company he created to defraud his creditors and the government -- DTTM.  According to those who knew him, defendant said DTMM stood for "Don't Touch My Money."  That is exactly what defendant had succeeded in doing to his creditors and the Internal Revenue Service ("IRS"), until the government uncovered the millions of dollars in income and other assets he lied about to the bankruptcy court and IRS.

For his fraudulent conduct, defendant pled guilty to a First Superseding Information charging him with a False Statement in Bankruptcy, in violation of 18 U.S.C. § 152(3), and Subscribing to a False Tax Return, in violation of 18 U.S.C. § 7206(1).  On October 2, 2023, the United States Probation Office ("USPO") filed a Presentence Investigation Report ("PSR") in which it determined that defendant's total offense level under the United States Sentencing Guidelines ("USSG") is 23, his criminal history category is I, and his Guidelines sentencing range is 41 to 51 months' imprisonment and a fine between $20,000 and $200,000.

While the government disagrees with the manner in which the USPO calculated the tax loss figure and therefore the total offense level, it otherwise concurs with the USPO's conclusions the regarding base offense level for defendant's bankruptcy fraud and specific offense characteristics for both of defendant's crimes as well as the criminal history category for defendant.  Given the premeditated nature of defendant's crimes, his sophistication in executing them, and how brazen he was in doing so, a significant sentence is necessary both to deter this specific defendant, who, according to

the USPO, continues to withhold information concerning his financial affairs.  Just as important, a significant sentence is needed to generally deter these types of crimes, especially since neither the bankruptcy trustee nor the IRS can police and bring to justice every fraudster and tax cheat.  Accordingly, for these reasons and others discussed below, the government believes a sentence of 51 months' imprisonment followed by a three-year term of supervised release and a fine of $20,000 is sufficient, but not greater than necessary, to comply with the factors set forth in 18 U.S.C. § 3553(a).[1]

## II.   STATEMENT OF FACTS[2]

### Background

Defendant is a real estate developer residing in Los Angeles County.  For over 30 years, defendant has bought, sold, and developed commercial real estate.

DTMM Construction Inc. ("DTMM") was a corporation that defendant caused to be registered in his wife's name but through which defendant used to deposit the profits from his own work as a real estate developer and to pay for defendant's and his family's living expenses.  Defendant told Individual A that DTMM means "Don't Touch My Money," which is what one of defendant's business partners understood it to mean, too. (Ex. 1 at USAO_0144990; Ex. 2 at USAO_0028770.[3])  With the assistance of his accountant/business

---

[1] The USPO recommended that defendant be sentenced to 46 months' imprisonment, three years' supervised release, and a $20,000 fine. (Dkt. 117.)

[2] Unless otherwise noted, the Statement of Facts is based on the Factual Basis in defendant's plea agreement and PSR.

[3] The government is seeking to file under seal all the exhibits referenced to herein.

2

GEX 63

1  partner (Individual B), defendant purposefully concealed his income

2  from Investors Capital Group, Lone Pine Investors Group, LLC, Lone

3  Pine Investors Group 2, LLC, Duarte Development 15, LLC, 2013

4  Opportunity Fund A LLC, Future Growers, LLC, BSVercom, LLC, Harbor

5  City 10, LLC, and SJC Peppertree LLC by depositing this income into

6  DTMM and its accounts.

7      According to one of Individual B's employees, Individual B had

8  her label all income going into DTMM as a "Loan from [Individual A]"

9  or "Loan from [Individual B]" (Ex. 3 at USAO_0097654).  Further, this

10  same employee confirmed that DTMM was used to pay defendant's

11  personal expenses. (Id. at USAO_0097661-USAO_0097663).  However, the

12  investigation uncovered no loan agreements.  In addition, the

13  investigation of defendant's email account found that defendant was

14  forwarded account information and asked to approve of payments to

15  service providers, as well as managing the transactions conducted

16  through various companies referenced above.

17      According to IRS filings, Future Growers, LLC, listed

18  defendant's brother as a 90 percent owner of this company, while

19  defendant's accountant was 10 percent owner.  (Ex. 4, Declaration of

20  Ashley J. Braver (hereinafter, "Braver Declaration") ¶ 2.a.)

21  However, Individual A testified that s/he never allowed his/her name

22  to be used in connection with this company, never played a role in

23  this company, and never authorized anyone to sign its operating

24  agreement for Individual A.  (Ex. 1 at USAO_0144997-USAO_0145001.)

25  IRS Filings also indicated that Future Growers, LLC owned 100 percent

26  of Duarte Development 15, LLC, (Braver Declaration ¶ 2.b.); however,

27  Individual A testified that s/he did not know s/he had ownership in

28  this company.  (Ex. 1 at USAO_0145002-USAO_0145003.)  Individual A

3

1  knew his/her name was on three companies because s/he was asked to

2  sign paperwork and checks but s/he did not know which companies.

3      IRS filings also indicated that Individual B owned 90 percent of

4  Lone Pine Investors Group, LLC with Individual A owning the remaining

5  10 percent.  (Braver Declaration ¶ 2.c.)  IRS filings indicate that

6  Lone Pine owned 70 percent of Opportunity Fund A, LLC in 2014 and

7  owned all of that company in 2015.  (Id. ¶ 2.d.)  Individual A

8  testified that s/he was not involved in these companies and did not

9  know s/he had any ownership in them.  (Ex. 1 at USAO_0145002-

10  USAO_0145004.)

11      **False Statements in Bankruptcy**

12      On or about April 14, 2015, in Los Angeles County, within the

13  Central District of California, defendant filed and caused to be

14  filed a bankruptcy petition under Title 11, United States Code,

15  namely bankruptcy case number 1:15-bk-11292-MT, entitled In re Mark

16  Handel, in the United States Bankruptcy Court for the Central

17  District of California (the "Bankruptcy Case").

18      On or about April 14, 2015, in Los Angeles County, defendant

19  knowingly and fraudulently made and willfully caused to be made a

20  materially false declaration and statement under penalty of perjury

21  within the meaning of Title 28, United States Code, Section 1746, in

22  and in relation to a case under Title 11, United States Code, namely,

23  the Bankruptcy Case, by submitting and declaring under penalty of

24  perjury to be true a Statement of Financial Affairs, which

25  represented that defendant had no "gross amount of income" from

26  "employment, trade, or profession, or from operation of [defendant's]

27  business, including part-time activities either as an employee or in

28  independent trade or business" from 2013 to the time of filing.  In

fact, as defendant knew, he had received substantial income from employment or operation of a business for these periods, income he received through his company, DTMM.  Specifically, from January 2013 through April 14, 2015, defendant earned approximately $2,263,221 in income in connection with his work as a real estate developer, which he intentionally did not disclose during the Bankruptcy Case.  To conceal that income, defendant, with the assistance of his accountant and others, disguised his income from companies and entities, including Investor Capital Group, Lone Pine Investors Group, LLC, Lone Pine Investors Group 2, LLC, Duarte Development 15, LLC, 2013 Opportunity Fund A, LLC, and Future Growers, LLC.

Defendant's false statements concerning his income and employment were material to the activities or decisions of the bankruptcy trustee and defendant's creditors; that is, they had a natural tendency to influence, or were capable of influencing, the decisions of the bankruptcy trustee and defendant's creditors.

In connection with the Bankruptcy Case, defendant intentionally concealed assets from the bankruptcy trustee and his creditors, including defendant's interest in the real property located at the intersection of Comcast Place and North Canyons Parkway in Livermore, California, namely, Assessor Parcel Number 905-0010-006, described more particularly as Parcel 3, Parcel Map 5112, filed September 29, 1987, in Book 172, Pages 11 through 14, inclusive, of Maps, Alameda County.[4]

---

[4] According to the Court's Preliminary Order of Forfeiture, this property was subsequently sold for $3,545,712.44, which represented the net proceeds of the sale of this property. (Dkt. 113.)  As the Stipulation Re Use of Proceeds From Interlocutory Sale of Real Property makes clear, defendant
*(footnote cont'd on next page)*

5

1    On May 21, 2015, during the first meeting of creditors in

2  connection with the Bankruptcy Case, defendant testified under oath

3  that he had not had personal income since 2008 and that all of his

4  personal expenses were paid through DTMM, which he described as his

5  wife's company.  Defendant also averred that DTMM was funded through

6  loans from Individual A and Individual B.  Defendant said he

7  facilitated real estate transactions without payment because

8  Individual B loaned DTMM money.

9    On August 19, 2016, defendant signed and filed the Disclosure

10  Statement Describing Debtor's Second Amended Chapter 11 Plan of

11  Reorganization in which he stated that he had been unemployed for

12  years.

13    **Subscribing to a False Tax Return**

14    On or about October 13, 2016, in Los Angeles County, defendant

15  caused his and his wife's United States Individual Income Tax Return,

16  (Form 1040) for 2015 to be filed electronically with the IRS.  Prior

17  to doing so, defendant had authorized his tax preparer to file his

18  return electronically for him with the IRS.  Defendant willfully

19  signed and subscribed to this tax return, which contained a written

20  declaration that it was being signed under the penalty of perjury and

21  which defendant knew contained materially false information, namely,

22  he knew the return failed to disclose approximately $1,096,175 in

23  additional income.  Defendant understood that the false and

24  fraudulent income information provided by defendant was material in

25  

26  engaged in transactions related to this property <u>after</u> he
learned from the FBI in July 2018 that it may be investigating

27  him for bankruptcy fraud.  (Dkt. 79 (describing real estate
transactions occurring in 2019); Dkt. 72 at 12-13, n.8

28  (describing when the FBI informed defendant of its knowledge of
his alleged bankruptcy fraud during July 2018 interview).)

that it affected the IRS's calculation of the amount of income earned and prevented the IRS from verifying the accuracy of the amount of tax claimed to be owed on defendant's return. Defendant acted willfully in that defendant knew that the law required him to report all income accurately. Defendant voluntarily and intentionally violated that duty.

For calendar years 2010 to 2017, defendant failed to report a total of approximately $6,886,877 of income on his Forms 1040, consisting of the following: $624,676 (2010); $1,025,148 (2011); $558,652 (2012); $1,074,062 (2013); $909,049 (2014); $1,096,175 (2015); $978,095 (2016); and $621,020 (2017).

As a result of defendant's conduct, the net operating loss associated with defendant's 2017 Form 1040 is reduced to $333,071, compared to $7,259,119 that is reported on the 2017 Form 1040. Thus, the net operating loss deduction is disallowed for the tax year 2018. As a result of the net operating loss being disallowed in the 2018 tax year, defendant underreported his income by $1,411,050 and therefore failed to pay $460,408 in additional tax.

**III. PROCEDURAL HISTORY**

On December 9, 2020, a federal grand jury returned a nine-count indictment charging defendant with False Statements in Bankruptcy, in violation of 18 U.S.C. §§ 152(3), 2(b); Concealment of Assets in Bankruptcy, in violation of 18 U.S.C. §§ 152(1), 2(b); False Statements Under Oath, in violation of 18 U.S.C. §§ 152(2), 2(b); and Money Laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 2(a).

On February 6, 2023, the government filed the First Superseding Information charging defendant with False Statements in Bankruptcy,

7

1  in violation of 18 U.S.C. § 152(3), 2(b), and one count of

2  Subscribing to a False Tax Return, in violation of 26 U.S.C.

3  § 7206(1).  On the same date, the government filed a plea agreement

4  in which defendant agreed to, among other things, forfeit his

5  interest in $3,545,712.44 and to pay all the taxes and penalties he

6  owed for tax years 2010, 2012, 2013, 2015, 2017, and 2018.

7        On February 13, 2022, defendant appeared at a hearing to

8  change his plea to guilty to the two-count First Superseding

9  Information pursuant to a plea agreement, but, due to uncertainty

10  concerning defendant's restitution obligations, this Court took the

11  matter off calendar.  (Dkt. 102.)  On February 23, 2023, defendant

12  entered his plea of guilty to both counts of the First Superseding

13  Information.  (Dkt. 107.)

14     On April 26, 2023, upon application by the government, this

15  Court entered a preliminary order of forfeiture in the amount of

16  $3,545,712.44 with the order to become final as to defendant at

17  sentencing.

18  **IV.   ARGUMENT**

19     **A.   The Guidelines Calculation: Defendant's Total Offense Level**

20          **Is 22, and His Guidelines Range Is 41 to 51 Months**

21          1.   The Parties Agreed Upon Sentencing Guidelines Factors

22        Pursuant to the terms of the plea agreement, the government and

23  defendant agreed to the following applicable Sentencing Guidelines

24  factors:

25  **Count One:**

26  Base Offense Level              6    [U.S.S.G. § 2B1.1(a)(2)]

27  *Specific Offense*
    *Characteristics*

28

8

GEX 69

Case 2:20-cr-00612-ODW   Document 119   Filed 10/23/23   Page 12 of 21   Page ID #:958

- Loss over $1.5 million           +16   [U.S.S.G. § 2B1.1(b)(1)(I)]
- Misrepresentation during        +2    [U.S.S.G. § 2B1.1(b)(9)(B)]
  Bankruptcy

**Count Two:**

Base Offense Level                 18    [U.S.S.G. § 2T1.1(a)(1);
                                          U.S.S.G. § 2T4.1(G)][5]

    The parties reserved the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  The government specifically highlighted in the plea agreement that it would be arguing that a sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(10)(C) applies to defendant's bankruptcy crime and that a sophisticated means enhancement under U.S.S.G. § 2T1.1(b)(2) applies to defendant's tax crime.  The government also reserved the right to argue that a one or two-level multi-count adjustment applies pursuant to U.S.S.G. §§ 3D1.4(a) and (b).

---

    [5] The base offense level for defendant's false subscription charge can be calculated by taking 28 percent of unreported gross income plus 100 percent of any false credits claimed against the tax, unless a more accurate determination of the loss can be made. U.S.S.G. §§ 2T4.1, 2T1.1(c)(1)(A), Note (A) (emphasis added).  While the USPO is correct that 28 percent of the unreported income in this case exceeds $1.5 million, (PSR ¶ 49), the government and defendant believe a more accurate determination of the tax loss can be made here based on defendant's unreported income in tax year 2018 when defendant's net operating loss was disallowed.  Defendant underreported $1,411,050 in income that year, which meant he owed $460,408 in taxes.  The government and defendant believe this is an accurate determination of defendant's tax loss, which is approximately 33 percent, not 28 percent, of the unreported $1,411,050 in income.  The government requests that the Court honor the parties' agreement to calculate the base offense level for Count Two based on the figures contained in the plea agreement.  Defendant should receive the benefit of his bargain.  (If the government stated during its call with USPO that the base offense level was based on 28 percent of the underreported income from the 2015 tax year, then the government misspoke and apologizes for the error.)

9

GEX 70

2.    Sophisticated Means Under U.S.S.G. § 2B1.1(b)(10)(C)

The USPO concluded that defendant's offense level for his bankruptcy fraud should be increased by two levels because "the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means."  U.S.S.G. § 2B1.1(b)(10)(C).  The USPO reasoned that defendant concealed his employment income as a real estate developer through companies purportedly owned by Individual A and Individual B and through payments characterized as "loans' from Individual A and Individual B paid to DTMM, a company purportedly owned by defendant's wife, warranting the adjustment.  (PSR ¶¶ 42-43.)

The government agrees with the USPO.  The notes of U.S.S.G. § 2B1.1 further support USPO's conclusion, as it defines "sophisticated means" to be "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense . . . . Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means."

Defendant's conduct here is the very definition of sophisticated means.  As discussed above, defendant and his accountant and co-conspirator, Individual B, created a labyrinth-like structure with multiple pass-through entities to conceal defendant's income from his creditors, the bankruptcy court, and the IRS, as the following chart demonstrates:

| Entity | Ownership (Tax Years) |
|---|---|
| Future Growers, LLC | Individual A 90% and Individual B 10% (2014 & 2015) |

10

| Entity | Ownership (Tax Years) |
|---|---|
| Duarte Development 15, LLC | Future Growers, LLC 100% (2014) |
| Lone Pine Investors Group, LLC | Individual A 10% and Individual B 90% (2014 & 2015) |
| 2013 Opportunity Fund A LLC | Lone Pine Investors Group, LLC 70% (2014); Lone Pine Investors Group, LLC 100% (2015) |

(Braver Declaration ¶ 2.a.-2.d.)  Despite IRS filings indicating that Individual A and Individual B owned these entities, as discussed above, Individual A said he had nothing to do with the entities and had no idea he had ownership in them.  Indeed, Individual A testified that if his/her name was on paperwork associated with this company and others, Individual A "believe[d] that it was used to conceal [defendant's] interest in them." (Ex. 1 at USAO_0145003.)  That is consistent with what Individual B's employee told investigators when she identified the entities listed above as being defendant's companies.[6]  (Ex. 5 at USAO_0028473-USAO_0028475.)  Further, defendant admitted in his plea agreement that he "conceal[ed]" approximately $2,263,221 in income he earned from January 2013 through April 2014 in connection with his work as a real estate developer.  (Dkt. 100 at p. 13.)  Defendant also admitted that to conceal that income, defendant, his accountant (Individual B), and others disguised the income from "companies and entities, including . . . Lone Pine Investors Group, LLC,. . . Duarte Development 15, LLC, 2013 Opportunity Fund A LLC, and Future Growers, LLC." (Id.)  By

---

[6] Individual C, a real estate agent that had worked with defendant, testified that he thought Duarte Development was owned by Individual B and defendant's wife, though he indicated he had no idea why it was in her name instead of defendant's and that defendant's wife had no real estate development experience.  (Ex. 6 at USAO_0106838-USAO_0106839.)

11

GEX 72

1  defendant's own admission, that income was paid to a company he

2  formed in his wife's name, DTMM, (id.), which, as Individual A

3  testified to and defendant's business partner confirmed, means "Don't

4  Touch My Money" (Ex. 1 at USAO_0144990 and Ex. 2 at USAO_0028770).

5  Finally, defendant admitted he had "disguised" the income received

6  from these various entities to conceal his assets from the bankruptcy

7  court and his creditors.  (Dkt. 100 p. 13.)

8      Defendant used pass-through entities to conceal his income and

9  defraud the bankruptcy court and his creditors.  Taken together, this

10  evidence supports the application of the sophisticated means

11  enhancement here.  See United States v. Pacheco-Martinez, 791 F.3d

12  171, 179 (1st Cir. 2015) (affirming application of the sophisticated

13  means enhancement where the defendant "set up multiple corporate

14  entities in order to facilitate his fraudulent schemes"); United

15  States v. McKye, 638 F. App'x 680, 685 (10th Cir. 2015) (holding

16  district court did not plainly error in applying sophisticated means

17  enhancement where, among other things, defendant "use[d] multiple

18  entities to coordinate the fraud").  Accordingly, defendant's

19  adjusted offense level for the bankruptcy fraud offense should be 26.

20  (See PSR ¶ 47.)

21          3.   Sophisticated Means Under U.S.S.G. § 2T1.1(b)(2)

22      The USPO also concluded that the Court should apply the

23  sophisticated means enhancement for defendant's tax crime.  The USPO

24  correctly reasoned that defendant's concealment of income using

25  several companies in the names of his wife and Individual A and

26  characterizing income as "loans" from Individual A and Individual B

27  constituted sophisticated means.

28

1    The government again agrees with USPO's conclusion.  The notes

2    to U.S.S.G. § 2T1.1(b)(2) define "sophisticated means" to be

3    "especially complex or especially intricate offense conduct

4    pertaining to the execution or concealment of an offense. . . .

5    Conduct such as hiding assets or transactions, or both, through the

6    use of fictitious entities, corporate shells, or offshore financial

7    accounts ordinarily indicates sophisticated means."  Here, the same

8    pass-through entities defendant used to conceal his income from the

9    bankruptcy court and his creditors, he used to defraud the IRS and

10   for many more years.  Accordingly, for the same reasons, the

11   sophisticated means enhancement applies under U.S.S.G. § 2T1.1(b).

12   See United States v. Lewis, 93 F.3d 1075, 1082 (2d Cir. 1996)

13   (district court should have applied the specific offense

14   characteristic where, among other things, the scheme "used numerous

15   fictitious entities and multiple checks with the sole purpose of

16   evading taxes and avoiding IRS detection").  Accordingly, defendant's

17   adjusted offense level for the tax fraud offense should be 20.

18        4.   Multi-Count Adjustment Under U.S.S.G. § 3D1.4

19        The USPO concluded that the bankruptcy fraud conduct and tax

20   fraud conduct do not group and applied a two-level upward adjustment

21   to defendant's bankruptcy fraud offense, bringing the combined

22   adjusted offense level to 28. (PSR ¶¶ 57-59.)

23        The USPO is correct that defendant's bankruptcy fraud and tax

24   fraud offenses do not group under U.S.S.G. § 3D1.2.  See United

25   States v. Doxie, 813 F.3d 1340, 1345 (11th Cir. 2016) (holding that

26   district court did not err in refusing to group tax offense counts

27   with mail fraud counts and observing that "majority of circuits to

28   address this issue have concluded that fraud counts and tax offense

GEX 74

counts involving the proceeds of the fraud should not be group together"); United States v. Smith, 424 F.3d 992, 1015 (9th Cir. 2005) (affirming decision not to group tax counts with mail fraud, wire fraud, and money laundering counts because victim of the former was the United States government whereas victims of the latter were the clients who had their money stolen by defendants). Here, defendant's crimes harmed two different types of victims. Defendant's bankruptcy fraud harmed creditors while his tax fraud harmed the United States. Given the differences in defendant's victims and the offense behavior, these two offenses should not group. Taken together, USPO's conclusion was correct, and these offenses do not group under U.S.S.G. § 3D1.4. Because the offenses do not group and the difference between defendant's bankruptcy fraud adjusted offense level and the tax fraud adjusted offense level is six, defendant's adjusted offense level for his bankruptcy fraud offense (the highest adjusted offense level) should be increased by one level, making it 27.

> 5.    Defendant's Guidelines Range Is 41 to 51 Months' Imprisonment

The government concurs that defendant falls in criminal history category I and that after the new Sentencing Guidelines take effect on November 1, 2023, defendant will be considered a zero-point offender under U.S.S.G. § 4C1.1 and should receive a two-level reduction. Finally, consistent with the plea agreement, assuming defendant continues to demonstrate acceptance of responsibility through sentencing, the government agrees that he should receive a three-level reduction pursuant to U.S.S.G. § 3E1.1, which combined with the zero-point offender reduction brings defendant's total

GEX 75

offense level down to 22.  Based on a total offense level of 22 and a criminal history category I, defendant's Guidelines Range is 41 months to 51 months' imprisonment.

**B.**    **The Government's Recommendation**: A Sentence of 51 Months' Imprisonment and a Fine of $20,000 Is Necessary to Punish and Deter

In determining a sufficient sentence, courts must consider the nature, circumstances, and seriousness of the offense.  18 U.S.C. § 3553(a).  So too must courts weigh the need for a sentence to afford adequate deterrence, just punishment, and promote respect for the law.  Id.  Given careful consideration of all these factors as well as the other Section 3553 factors, the government respectfully requests a sentence of 51 months' imprisonment and a fine of $20,000. Such a sentence is sufficient, but not greater than necessary, to adequately punish and deter.

1.    A Significant Sentence Imposed Must Punish Defendant for His Egregious Conduct

Given the nature, circumstances, and seriousness of the offense, a substantial sentence is imperative.  Defendant's crimes were not born out of desperation, nor done on a whim without much thought. His crimes required planning, calculation, and an almost insatiable drive to break the law time and time again.  Indeed, given the brazenness of his conduct, including bragging to others that his company stood for "Don't Touch My Money," defendant believed he was above the law.  And when he found out during his FBI interview in July 2018 the government may have caught on to his fraud scheme and that he may not actually be above the law, he sought to hide his

15

fraudulently procured assets in the form of the Livermore property transfers discussed above.

Not only were defendant's crimes ongoing and persistent, their scope was significant, involving millions of dollars. As discussed above, defendant concealed $2,263,221 in income he earned from January 2013 through April 14, 2015 from the bankruptcy court and his creditors. Even more egregious was defendant's tax fraud, as he succeeded for a number of years in not reporting approximately $6,886,877.

Even though defendant pled guilty to bankruptcy and tax fraud, his crime is not without victims. One of those victims was D.S., who had to litigate with defendant to recover his settlement with defendant, who sought the protection of bankruptcy court with lies and fraud.[7] Further, the government and the other taxpayers are victims here, including the majority of taxpayers that comply with the tax laws.

### 2. Defendant Needs a Significant Sentence to Deter Both Him and Others From Engaging in the Same Conduct

Although defendant is 69-years-old and has no other criminal history, he does not deserve a free pass for his misdeeds. The scope, length, and ease with which defendant executed his crimes militate in favor of a significant custodial sentence to send the message to him and others that this type of criminal activity, particularly criminal activity this egregious, has significant consequences. As for specific deterrence, even after being alerted

---

[7] Defense counsel has been provided a copy of the letter that we understood was sent to the Court by D.S. earlier this year. If the Court no longer has a copy, the government will be happy to provide D.S.'s letter.

that the government was investigating him, defendant took actions to conceal his Livermore assets. Further, given defendant's refusal to fully comply with this Court's General Order 03-01 mandating certain financial disclosures to the Court and USPO, including those discussing his businesses, (PSR ¶ 105),[8] the government still has concerns about what defendant is hiding. Indeed, as the USPO found, defendant "has substantial financial resources," including maintaining two residences and providing financial support to two adult children, (PSR 112), but yet he has not one, but two Court-appointed attorneys. Nevertheless, at this point, the government is unaware of additional assets that defendant has concealed. Still, defendant's refusal to comply with a mandated court order raises serious questions about his respect for the law and willingness to rejoin society as a law-abiding citizen.

As for general deterrence, it is particularly important to send the message to the public writ large that tax fraud and bankruptcy fraud have serious consequences, regardless of how old you are and whether you have previously engaged in misconduct. White-collar crime is still crime, and it just as deserving of deterrence – if not more – than other forms of illegality. Otherwise, the Court will be sending a message that criminals like defendant only risk receiving slaps on the wrist when they steal and hide millions of dollars. What is more, it is impossible to police all who may decide to engage in such fraud, which is why it is particularly important to make clear that those who are caught engaging in such fraud will face serious consequences, including significant custodial sentences.

---

[8] Defendant told the USPO that he would not be providing that information on the advice of counsel.

17

### 3. The Court Should Impose a Fine of $20,000

In addition to the custodial sentence discussed above, the Court should order defendant to pay a fine of $20,000. The Guidelines state that the Court "shall impose a fine in all cases, except where the defendant establishes that [s]he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). The government concurs with the PSR that defendant is able to pay a fine of $20,000. Such a fine is necessary to promote respect for the law and afford deterrence.

**V. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to 51 months' imprisonment, a three-year term of supervised release, and order defendant to pay a fine of $20,000. Such a sentence would be sufficient, but not greater than necessary, to adequately punish and deter. Anything less would be unjustified and far too lenient given the seriousness of defendant's crimes and the strong need for specific and general deterrence.

GEX 79

1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
4  Assistant United States Attorneys
   Public Corruption & Civil Rights Section
5       1500 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-8452
7       Facsimile: (213) 894-0141
        E-mail:   thomas.Rybarczyk@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10

                    UNITED STATES DISTRICT COURT
11
              FOR THE CENTRAL DISTRICT OF CALIFORNIA
12
   UNITED STATES OF AMERICA,          No. CR 20-0612-ODW
13
              Plaintiff,              GOVERNMENT'S *EX PARTE* APPLICATION
14                                    FOR ORDER SEALING DOCUMENTS;
              v.                      DECLARATION OF THOMAS F. RYBARCZYK
15
   MARK HANDEL,
16
                    Defendant.
17

18       Plaintiff United States of America, by and through its counsel

19  of record, the United States Attorney's Office for the Central

20  District of California and Assistant United States Attorney Thomas F.

21  Rybarczyk hereby applies ex parte for an order that the exhibits

22  attached to the Government's Sentencing Position for defendant MARK

23  HANDEL be filed under seal.

24  //

25  //

26  //

27  //

28

GEX 80

1          This ex parte application is based upon the attached declaration

2    of Thomas F. Rybarczyk.

3    Dated: October 23, 2023          Respectfully submitted,

4                                     E. MARTIN ESTRADA
                                      United States Attorney
5
                                      MACK E. JENKINS
6                                     Assistant United States Attorney
                                      Chief, Criminal Division
7
                                      /s/ Thomas F. Rybarczyk
8                                     THOMAS F. RYBARCZYK
                                      Assistant United States Attorney
9
                                      Attorneys for Plaintiff
10                                    UNITED STATES OF AMERICA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GEX 81

### DECLARATION OF THOMAS F. RYBARCZYK

I, Thomas F. Rybarczyk, declare as follows:

1.    I am an Assistant United States Attorney in the United States Attorney's Office for the Central District of California.  I am one of the attorneys representing the government in this case.

2.    The government requests leave to file the exhibits attached to the Government's Sentencing Position for defendant MARK HANDEL be filed under seal.  The exhibits include grand jury testimony of two witnesses that had been previously produced in discovery pursuant to this Court's order (Dkt. 90), witness interview reports detailing sensitive information concerning defendant and others, and a declaration detailing tax information concerning individuals who have not been charged with a crime.  Accordingly, due to the sensitive nature of the information, the government seeks to file the exhibits under seal.

3.    On October 23, 2023, I informed defense counsel, Jennifer Lieser, via email that the government would be filing the present ex parte application and asked for her position on the application.  On the same day, Ms. Lieser informed me via email that she did not oppose the application.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on October 23, 2023.

*/s/ Thomas F. Rybarczyk*
THOMAS F. RYBARCZYK

GEX 82

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 20-00612-ODW |
| Plaintiff, | ORDER SEALING DOCUMENTS |
| v. | |
| MARK HANDEL, | |
| Defendant. | |

For good cause shown, IT IS HEREBY ORDERED THAT:

The government's ex parte application for sealed filing is GRANTED.  The documents sought to be filed under seal shall be filed under seal.

October 24, 2023

_____
 DATE

_____
HONORABLE OTIS D. WRIGHT II
UNITED STATES DISTRICT JUDGE

GEX 83

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GEX 84

E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
Assistant United States Attorney
Public Corruption and Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-8452
     Facsimile: (213) 894-0141
     E-mail:    thomas.rybarczyk@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                  UNITED STATES DISTRICT COURT

              FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-00612(A)-ODW |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT'S ADDENDUM TO HIS SENTENCING POSITION |
| v. | |
| MARK HANDEL, | Sentencing: November 14, 2023 |
| Defendant. | Time:      11:30 a.m. |
| | Location:  Courtroom of the Hon. Otis D. Wright |

     Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorney Thomas F. Rybarczyk,
hereby files its Response to Defendant's Addendum to His Sentencing
Position (Dkt. 135).

///

///

///

///

GEX 85

1    The government's sentencing position is based upon the attached

2 memorandum of points and authorities, the attached exhibit, the files

3 and records in this case, and such further evidence and argument as

4 the Court may permit.

5 Dated: November 11, 2023          Respectfully submitted,

6                                   E. MARTIN ESTRADA
                                    United States Attorney
7
                                    MACK E. JENKINS
8                                   Assistant United States Attorney
                                    Chief, Criminal Division
9
10                                  */s/ Thomas F. Rybarczyk*
                                    THOMAS F. RYBARCZYK
11                                  Assistant United States Attorney

12                                  Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GEX 86

## MEMORANDUM OF POINTS AND AUTHORITIES

The government writes to provide the Court additional facts concerning two factual assertions made by defendant in his Addendum to his Sentencing Position (Dkt. 135, hereinafter "Addendum").

First, in his argument that the sophisticated means enhancement should not apply to his bankruptcy and tax fraud offenses, defendant argues that during the section 341(a) meeting of his creditors, he made them "fully aware of DTMM," that he used DTMM (or "Don't Touch My Money" as defendant would brag to others) to pay "household obligations," and "that the [DTMM] account was funded by his brother and his accountant." (Addendum at p. 3.) Defendant neglects, however, in the Addendum to provide critical context for his assertion concerning the "fund[ing]" provided by "his brother and his accountant," that is, that defendant lied under oath and claimed this so-called funding was loans from "his brother and his accountant." (In re Mark Handel, Case No. 1:15-bk-11292-MT (C.D. Cal.), Dkt. 44-1 ("341 Transcript").) For example, during the following exchange, defendant lied to the U.S. Trustee concerning the source of DTMM's funds:

> U.S. TRUSTEE: So what, where's the money coming from, to be able to pay for everything.
>
> Debtor [Defendant]: The money, ah, ah, my brother [], ah, and I brought them, and I don't know if I'm supposed to proffer them today, has written 2.1 million dollars to them in the form of loans starting in December 2010 and I'm embarrassed to say that, that has not been sufficient to pay all of the obligations that I have, household, education, etc., and additional monies have been in the form of loans from [my accountant] to DTMM.
>
> U.S. TRUSTEE: Okay. So DTMM has been getting loans, whatever interest and agreements, third party whatever, and those funds have been used to pay living expenses.
>
> DEBTOR [Defendant]: Correct. Correct. Correct. Correct.

GEX 87

1    (Id. at p. 12.)  Later, during the same hearing, when asked by the

2    U.S. Trustee how he paid his recent credit card expenses and

3    mortgage, defendant lied again and claimed he paid those expenses

4    with loans made to DTMM when, in fact, it was income defendant earned

5    and concealed through the labyrinth-like structure he had created.

6    (Id. at pp. 13-14.)  And when asked directly by a creditor "what

7    funds DTMM," defendant lied once more and claimed the funding was

8    loans, not income.  (Id. at p. 16.)

9        The fact that defendant characterized the "fund[s]" DTMM

10   received as loans was one relied upon by the United States Probation

11   Office ("USPO") in concluding that the sophisticated means

12   enhancement applied.  (Revised Presentence Report ("RPSR"), Dkt. 130

13   ¶¶ 43, 52.)  Defendant's avoidance of it in his Addendum along with

14   the fact that defendant had placed companies in the name of

15   Individual A to conceal his own income is telling and yet another

16   reason why this Court should conclude, as the USPO did, that the

17   sophisticated means enhancements should apply here.[1]

18       Second, defendant asserts in the Addendum that his transfer of

19   the Livermore property in 2019 had no connection to his knowledge

20   that he was the subject of a bankruptcy fraud investigation,

21   knowledge he obtained in July 2018.[2]  (Addendum at pp. 6-7.)  While

22   _____

23       [1] Defendant also argues the fact that he "provided [his
     creditors] with statements of all funds going through [the DTMM]
24   account from May 2015 onward" supports his argument that he did not
     use sophisticated means to commit bankruptcy fraud.  (Addendum at 3.)
25   It does not because, as he admitted in his plea agreement, he
     concealed $2,263,221 from his creditors through DTMM from January
26   2013 through April 2015, not May 2015 onward.

27       [2] Defendant's argument opposing the multi-count adjustment is
     without merit.  (Addendum at 4-5.)  He cites to application note 6,
28   which specifically applies to subsection (d) of U.S.S.G. § 3D1.2,
     which states in relevant part that "[w]hen the offense level is
                                          *(footnote cont'd on next page)*

                                    2

1  true that certain transactions occurred in 2017, including the

2  completion of the installment sale of the property in March 2017,

3  there was a transfer of the property's ownership in 2019, a fact

4  defendant himself admitted.  But in admitting this fact, defendant

5  once again omits critical context, this time concerning his interest

6  in the Livermore property -- an interest he concealed from his

7  creditors and bankruptcy court.  (RPSR ¶ 22.)  The property's

8  ownership transferred from a corporate ownership group, which

9  included a company managed by defendant, to the exclusive ownership

10 of defendant's wife[3] -- at defendant's request -- in April 2019,

11 (Dkt. 125 at Ex. 6 at USAO_0106869-70; USAO_0106900-03), and then

12 transferred to an entity in his wife's name, not his (Dkt. 79, ¶ 3).

13 Accordingly, defendant further concealed his ownership interest in an

14 asset he originally hid from his creditors and the bankruptcy court,

15 _____

16 determined largely on the basis of the total amount of harm or loss .
   . . or some other measure of aggregate harm" then the counts should
17 group.  (Emphasis added.)  Based on a review of the examples in the
   note section cited by defendant, this subsection is plainly designed
18 to ensure that counts of conviction group where the same offense
   level Guideline section is applied and therefore the harm wrought by
19 a defendant should be aggregated and not counted as multiple counts
   under the Guidelines.   In the two examples cited by defendant in the
20 addendum, the counts of conviction in both (2) and (3) would have
   been aggregated under U.S.S.G. § 2B1.1, "Larceny, Embezzlement, and
21 Other Forms of Theft; Offenses Involving Stolen Property; Property
   Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving
22 Altered or Counterfeit Instruments Other than Counterfeit Bearer
   Obligations of the United States."  That is not the case here, where
23 defendant's bankruptcy fraud is measured by U.S.S.G. § 2B1.1 and his
   tax fraud is measured by U.S.S.G. § 2T1.1.  Further, while the victims
24 in the examples provided by defendant may be different people, they
   are the same type of victim.  Again, that is not the case here where
25 the victims of defendant's bankruptcy fraud were his creditors, and
   the victim of his tax fraud was the IRS.

26      [3] Defendant's wife is an educator, not a real estate developer.
   (RPSR ¶ 85; Dkt. 125, Exhibits 1-6 to Government's Sentencing
27 Position for Defendant Mark Handel, at Ex. 1 USAO_0144991
   (defendant's wife was an educator and did not know about defendant's
28 work); Ex. 6 USAO_0106838-USAO_0106839 (defendant's wife had no real
   estate experience).)

3

GEX 89

less than a year after learning that the FBI was investigating him for fraud in connection with that very same bankruptcy proceeding. Defendant is free to assert the two have no connection, but the evidence shows otherwise.

Defendant's practice of using his wife as a straw for real estate transactions in which he has an interest has continued as recently as August 2023, which raises questions concerning defendant's respect for the law.  On August 2, 2023, defendant's wife received title to two properties in Woodland Hills, California, from a company called Charter 4, 2014 LLC.  (RPSR ¶ 110.a.-b.)  Defendant quitclaimed his interest in both properties, and a potential witness in this case, M.L., provided mortgages -- in other words, loans -- on the properties.  (Id.)  Charter 4, 2014 LLC was owned by a company associated with M.L. and by Future Growers LLC, (Ex. 7,[4] USAO_0098147-USAO_0098150), which, as discussed in the government's sentencing position, was a company controlled by defendant but which was placed in the names of Individuals A and B to conceal defendant's income from his creditors, the bankruptcy court, and the IRS (Dkt. 119, pp. 4-5, 10-12).  During an interview with investigators, M.L. further explained defendant's involvement in Charter 4, 2014 LLC, including how Future Growers LLC is now owned by defendant's wife on paper.  (Ex. 7, USAO_0098147-USAO_0098150.)  This transaction highlights the government's concern with defendant's refusal to provide additional information to the USPO concerning companies with which he is associated, as it demonstrates there may be even more,

---

[4] Relevant pages from the report have been excerpted as an exhibit and attached hereto.

4

1    considerable assets defendant is concealing from the USPO and the

2    Court.  (See RPSR ¶ 105.)

3         Just as troubling is defendant's refusal to provide information

4    concerning the Handel Family Trust.  (RPSR ¶ 102.)  It raises

5    substantial questions concerning defendant's entitlement to not just

6    one, but two court-appointed attorneys paid for by the government

7    when, at least according to the RPSR, defendant has a total net worth

8    of $6,450,624.  (Id.)  Taken together, defendant's conduct both after

9    learning of the investigation and after pleading guilty in this case

10   raises significant questions about his respect for the law and

11   supports a significant prison sentence to act as a specific

12   deterrent.[5]

13        For these reasons and those in the government's sentencing

14   position (Dkt. 119), the government respectfully requests that this

15   Court sentence defendant to 51 months' imprisonment, a three-year

16   term of supervised release, and order defendant to pay a fine of

17   $20,000.  Such a sentence would be sufficient, but not greater than

18   necessary, to adequately punish and deter.  Anything less would be

19   unjustified and far too lenient given the seriousness of defendant's

20   crimes and the strong need for specific and general deterrence.

21

22        [5] In his second sentencing addendum, defendant cites to the new
     application notes in U.S.S.G. § 5C1.1, which address the new zero-
23   point offender guidelines under U.S.S.G. § 4C1.1.  (Dkt. 137.)  In
     advocating for a probationary sentence, defendant highlights the note
24   that suggests a probationary sentence is generally appropriate if
     § 4C1.1 applies and defendant's Guidelines range falls within Zone A
25   or Zone B.  But even under his own incorrect Guidelines calculations,
     defendant's conduct would be 19, not even in Zone C let alone Zones A
26   or B.  (Dkt. 121 at 3.)  As for any suggestion that his crimes are
     not "serious," defendant defrauded creditors by lying about nearly
27   $2.3 million in income and engaged in massive tax fraud in which he
     failed to report nearly $7 million over several years.  His crimes
28   are serious, and any suggestion otherwise is meritless.  Therefore, a
     probationary sentence here would be wholly inappropriate and unjust.

# EXHIBIT 7



# DEPARTMENT OF THE TREASURY
## Internal Revenue Service
### Criminal Investigation

## Memorandum of Interview

---

**Investigation #:** ███████           **Location:**  WebEx
**Investigation Name:** MARK HANDEL
**Date:** May 12, 2021
**Time:** ~1:05-4:27pm
**Participant(s):** M██ L██████, Taxpayer
Ashley Braver, Special Agent
Christian Amaya, Special Agent
Joan O'Dowd, Supervisory Forensic Accountant
Ruth Pinkel, Assistant United States Attorney
Agustin Orozco, Assistant United States Attorney
Darren Kavinoky, Attorney for M██ L██
Donald Marks, Attorney for M██ L██████

On the above date and approximate time, Assistant United States Attorney Ruth Pinkel (AUSA Pinkel) introduced Assistant United States Attorney Agustin Orozco (AUSA Orozco), Special Agent Ashley Braver (SA Braver), Special Agent Christian Amaya (SA Amaya), and Supervisory Forensic Accountant Forensic Accountant Joan O'Dowd (SFoA O'Dowd) to M██ L██████ (L██████) and his attorney Darren Kavinoky (Kavinoky). L██████ provided the investigators with the following information:



GEX 93



Charter 4, 2014

56. L&#9608;&#9608;&#9608;&#9608; was involved in Charter 4, 2014, LLC from the creation of the entity. L&#9608;&#9608;&#9608;&#9608; found the land on Chapter and brought the deal to HANDEL. HANDEL told L&#9608;&#9608;&#9608;&#9608; that he would present the deal to B&#9608;&#9608;&#9608;&#9608; to become a

partner on the project. L████ was not part of HANDEL's presentation to B████.

57. B████ completed the paperwork to incorporate Charter 4, 2014, LLC. At the time of incorporation, Charter 4, 2014 was 50% owned by L██████'s LLC, LTPW Developers, and 50% owned by Future Growers. At the time of incorporation of Charter 4, 2014, LLC, L██████ believed that Future Growers belonged to B████.

58. HANDEL told L██████ that B████ offered a loan to Charter 4, 2014 to begin funding the development costs on the Chapter land. HANDEL told L██████ the loan B████ offered was a good deal. L██████ thought the structuring of the loan was odd. The loan was a $700,000 loan from Investor Capital Group and another $300,000 loan from Future Growers, which should have been equity and not debt to Charter 4, 2014 LLC. L██████ called HANDEL to discuss the fact that he thought the loan structuring was odd. HANDEL said that B████ thought the project would take too long to complete and wanted debt in addition to his equity.

59. When the units from the Harbor City, LLC were sold, L██████ reviewed the closing documents. L██████ learned for the first time when reading the title reports in the closing documents that a loan was taken out which was paid back by the sale of the Harbor units. L██████ asked HANDEL, not B████ or anyone else, why there was a loan secured by the Harbor sales that he was unaware of.

60. L██████ stated that he was embarrassed that he did not assert himself when he found out he was owed additional money from the Harbor sales due to the loan being paid back. However, L██████ had worked with HANDEL long enough that L██████ thought he would be made whole. HANDEL told L██████ he was screwed over in the Harbor deal. In order to make L██████ whole, HANDEL said that Future Growers would give up part of their interest in the Charter 4, 2014 properties. HANDEL said the Harbor loan would be rectified because Future Growers would give L██████ one lot.

61. The rectifying deal was for LTPW Developers to be the 100% owner of one of the four Charter 4, 2014 lots. The other three lots were split 50% Future Growers and 50% LTPW Developers. P██ L██████ amended the Charter 4, 2014 operating agreement to give LTPW Developers 62.5% ownership in Charter 4, 2014 and make L██████ the only manager.

62. L██████ also took out a personally secured loan to fund the Charter land development costs. The loan was for $100,000. S███ W██ [SP?] loaned LTPW Development the funds for this loan. The money from S███ W██

[SP?] came into LTPW Development's bank account. This loan was paid back from L████'s share of the profits from the Harbor City sales. There was no discussion on the loan being paid back by B██████ or HANDEL. L██████ felt he had to take this loan out because B██████ was sick and HANDEL was preoccupied with the Investor Capital Group problems.

63. It took a while to develop the Charter 4, 2014 lots before L██████ and HANDEL even applied for a construction loan because of B██████ getting sick.

64. In 2019, L██████ presented the case to a loan broker to obtain a construction loan. HANDEL was in the meeting. In 2019, Charter 4, 2014 received a construction loan from Center Street Capital.

65. When Charter 4, 2014 received the construction loan in 2019, L████ reviewed the loan documents that showed that B█ H██████ was the owner of Future Growers. L██████ believed that HANDEL was the manager of Future Growers at that time and that HANDEL had the authority to act on behalf of the entity.

66. There was also a land loan on the Charter 4, 2014 land of $1.2 million. Future Growers and L██████ are responsible for repaying the land loan.

67. HANDEL stopped by the Charter 4, 2014 construction site to discuss the loans with L██████.

68. As of the date of the interview, the Charter 4, 2014 LLC owns two homes that are partially complete and two properties that are just land. LTPW Developers is the 62% owner of Charter 4, 2014 and Sarah Lulloff (Lulloff) is the 38% owner. HANDEL's attorney, A█ C██████ (C██████) negotiated this ownership structure.

69. L██████ has never seen Lulloff on the Charter 4, 2014 project site. From 2001 through now, L██████ has never known Lulloff to be involved in any construction or real estate project. Lulloff was never at meetings to sign any documents related to the Charter 4, 2014 project. Future Growers is now owned by Lulloff. L██████ has never had a conversation with Lulloff about any project. L██████ has only ever met Lulloff at work events for MWH Construction when L██████ worked for HANDEL. Lulloff was a schoolteacher and a homemaker. She has four kids.

70. Any project owned by Future Growers is now owned by Lulloff on paper.

71. Throughout L██████'s years of working with HANDEL on the Chapter project and other projects owned by Future Growers, Future Growers changed

ownership three times. According to the paperwork seen by L████████, Future
Growers was first owned by B██████, then B█ H█████, and now Lulloff. During
all of these ownership changes, HANDEL's role in Future Growers did not
change. HANDEL remained the point of contact for Future Growers.

72. C██████ is HANDEL's lawyer. HANDEL introduced L██████ to C██████. The
only time C██████ may have represented L██████ was on a construction
defect matter, but L██████ does not believe he ended up hiring C██████.

I prepared this memorandum on June 1, 2021, after refreshing my memory from notes
made during and immediately after the interview with M██ L███████.

Ashley Braver
Special Agent

1   E. MARTIN ESTRADA
    United States Attorney
2   MACK E. JENKINS
    Assistant United States Attorney
3   Chief, Criminal Division
    THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
4   Assistant United States Attorney
    Public Corruption and Civil Rights Section
5        1500 United States Courthouse
         312 North Spring Street
6        Los Angeles, California 90012
         Telephone: (213) 894-8452
7        Facsimile: (213) 894-0141
         E-mail:    thomas.rybarczyk@usdoj.gov
8
    Attorneys for Plaintiff
9   UNITED STATES OF AMERICA

```
                        FILED
               CLERK, U.S. DISTRICT COURT

                    9/9/24

               CENTRAL DISTRICT OF CALIFORNIA
               BY:      SE       DEPUTY
```

10                  UNITED STATES DISTRICT COURT

11             FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,        No. CR 20-00612(A)-ODW

13          Plaintiff,               OPPOSITION TO MOTION OF NON-PARTY
                                     LOS ANGELES TIMES COMMUNICATIONS
14          v.                       LLC TO INTERVENE AND UNSEAL

15  MARK HANDEL,                     Hearing Date: September 30, 2024
                                     Hearing Time: 10:00 a.m.
16          Defendant.               Location:     Courtroom of the Hon.
                                                   Otis D. Wright, II
17

18

19       Plaintiff United States of America, by and through its counsel

20  of record, the United States Attorney for the Central District of

21  California and Assistant United States Attorney Thomas F. Rybarczyk,

22  hereby files its Opposition to Motion of Non-Party Los Angeles Times

23  Communications LLC to Intervene and Unseal.

24  ///

25  ///

26  ///

27

28

GEX 99

1    This Opposition is based upon the attached memorandum of points

2  and authorities, the files and records in this case, and such further

3  evidence and argument as the Court may permit.

4  Dated: September 9, 2024          Respectfully submitted,

5                                    E. MARTIN ESTRADA
                                     United States Attorney
6
                                     MACK E. JENKINS
7                                    Assistant United States Attorney
                                     Chief, Criminal Division
8

9                                    _____
                                     THOMAS F. RYBARCZYK
10                                   Assistant United States Attorney

11                                   Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

GEX 100

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

I.    INTRODUCTION.....................................................1

II.   STATEMENT OF FACTS..............................................3

      A.    The Investigation and Indictment.........................3

      B.    Defendant's Motion to Compel.............................4

      C.    Defendant's Sentencing...................................7

      D.    The Applicant and Government Met and Conferred
            Regarding the Sealed Materials...........................8

III.  ARGUMENT........................................................9

      A.    There Is No Qualified Right of Access to the MTC
            Materials................................................9

            1.    There Is No First Amendment Qualified Right of
                  Access to the MTC Materials.......................10

            2.    There Is No Common-Law Qualified Right of Access
                  to the MTC Materials..............................12

            3.    There Is No Qualified Right of Access to the
                  Wiretap Materials, Investigative Reports, and
                  Interview Transcripts.............................13

      B.    Compelling Reasons and Governmental Interests Exist to
            Redact Any Unsealed MTC Materials and Sentencing
            Materials...............................................15

            1.    Uncharged Subjects Have Compelling Privacy,
                  Reputational, and Due Process Interests that
                  Warrant Redacting Their Names/Identities..........16

            2.    There Are Compelling Reasons to Protect the
                  Identities of Individuals Who Cooperated in the
                  Federal Investigation.............................19

            3.    Compelling Reasons Exist to Redact Any Sensitive
                  Law Enforcement Techniques........................21

            4.    Victim Information Should be Redacted.............21

            5.    Individuals' Personal Identifying Information
                  Should Be Redacted................................22

IV.   CONCLUSION.....................................................23

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                                            PAGE

**CASES**

90, Exit 514, S. of Billings, Mont.,
  658 F.3d 1188 (9th Cir. 2011) ............................ 15, 18, 19

Activision Publ'g, Inc. v. EngineOwning UG,
  No. CV222CV00051MWFJCX, 2023 WL 2347134 (C.D. Cal. Feb. 27, 2023) 23

Associated Press v. U.S. Dist. Ct. for Cent. Dist. of Cal.,
  705 F.2d 1143 (9th Cir. 1983) ................................... 10

Bridgestone/Firestone, Inc.,
  263 F.3d 1304 (11th Cir. 2001) ................................. 11

Capitol Specialty Ins. Corp. v. GEICO Gen. Ins. Co.,
  No. CV 20-672-RSWL-EX, 2021 WL 7708484 (C.D. Cal. Apr. 14, 2021) . 22

Civ. Beat L. Ctr. for the Pub. Int., Inc. v. Maile,
  No. 23-15108, 2024 WL 3958954 (9th Cir. Aug. 28, 2024) ........... 9

Ctr. for Auto Safety v. Chrysler Grp., LLC,
  809 F.3d 1092 (9th Cir. 2016) ................................... 12

Heineke v. Santa Clara Univ.,
  CV-05285-LHK, 2017 WL 6026248 (N.D. Cal. Dec. 5, 2017) .......... 12

In re City of New York,
  607 F.3d 923 (2d Cir. 2010) .................................... 21

In re Press Application for Access to Jud. Recs. in Case No. 23-SC-31,
  No. MC 23-84 (JEB), 2023 WL 8254630, (D.D.C. Nov. 29, 2023) ...... 17

In re Granick,
  388 F. Supp. 3d 1107 (N.D. Cal. 2019) ................... 14, 17, 21

In re Granick,
  No. 16-MC-80206-KAW, 2018 WL 7569335, at *11 (N.D. Cal. Dec. 18, 2018) ............................................................ 14

In re Los Angeles Times Commc'ns LLC,
  628 F. Supp. 3d 55 (D.D.C. 2022) ............................... 20

In re New York Times Co. to Unseal Wiretap & Search Warrant Materials,
  577 F.3d 401 (2d Cir. 2009) .................................... 14

ii

GEX 102

Case 2:20-cr-00612-ODW   Document 157   Filed 09/09/24   Page 5 of 30   Page ID
#:1555

## TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                                  PAGE

In re New York Times Co.,
  No. MC 21-91 (JEB), 2021 WL 5769444 (D.D.C. Dec. 6, 2021) .... 17, 20

In re Time Inc.,
  182 F.3d 270 (4th Cir. 1999) ................................... 11

Kamakana v. City & Cnty. of Honolulu,
  447 F.3d 1172 (9th Cir. 2006) ......................... 12, 13, 15

Mahone v. Amazon.com, Inc.,
  No. C22-594 MJP, 2024 WL 965139 (W.D. Wash. Mar. 6, 2024) ....... 22

Matter of the Application of WP Co. LLC,
  201 F. Supp. 3d 109 (D.D.C. 2016) ................... 16, 17, 18, 19

Jones v. PGA Tour, Inc.,
  No. 22-CV-04486-BLF, 2023 WL 5520771, (N.D. Cal. Aug. 24, 2023) .. 13

Press Enterprise Co. v. Superior Court,
  478 U.S. 1 (1986) ....................................... 9, 10, 15

Reflex Media, Inc. v. Doe No. 1,
  218CV02423RFBBNW, 2022 WL 2985938 (D. Nev. July 28, 2022) ....... 23

Richards v. Cox,
  No.16CV01794JCMBWN, 2019 WL 2518110 (D. Nev. June 18, 2019) ...... 22

Richmond Newspapers, Inc. v. Virginia,
  448 U.S. 555 (1980) .......................................... 9

Roviaro v. United States,
  353 U.S. 53 (1957) .......................................... 19

Times Mirror Co. v. United States,
  873 F.2d 1210 (9th Cir. 1989) ............................. 10, 16

United States v. Anderson,
  799 F.2d 1438 (11th Cir. 1986) ................................ 11

United States v. Blagojevich,
  662 F. Supp. 2d 998 (N.D. Ill. 2009) ......................... 14

United States v. Carpenter,
  923 F.3d 1172 (2019) ......................................... 10

iii

## TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                                    PAGE

United States v. Gonzales,
  150 F.3d 1246 (10th Cir. 1998) ................................... 11

United States v. Hubbard,
  650 F.2d 293 (D.C. Cir. 1980) .................................... 21

United States v. Kravetz,
  706 F.3d 47 (1st Cir. 2013) ............................ 10, 11, 12

United States v. Miske,
  No. 19-cr-00099, 2022 WL 1073797 (D. Haw. Apr. 8, 2022) ......... 13

United States v. Nickens,
  809 F. App'x 584 (11th Cir. 2020) ............................... 10

United States v. Rigmaiden,
  844 F. Supp. 2d 982 (D. Ariz. 2012) ............................. 21

United States v. Sleugh,
  896 F.3d 1007 (9th Cir. 2018) ........................ 9, 11, 12, 13

United States v. Wecht,
  484 F.3d 194 (3d Cir. 2007) ..................................... 12

**STATUTES**

18 U.S.C. § 152................................................... 7

18 U.S.C. § 3771................................................. 22

18 U.S.C. § 7206................................................. 7

**RULES**

Federal Rule of Civil Procedure 5.2............................. 23

Federal Rule of Criminal Procedure 49.1........................ 23

GEX 104

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

In November 2023, defendant MARK HANDEL ("defendant"), a real estate developer, was convicted of bankruptcy and tax fraud and sentenced to 41 months' imprisonment.  The government first learned about defendant's fraud during a wiretap investigation of public officials that started in July 2014.  This investigation did not result in charges against those public officials.  The indictment charging defendant focused on his bankruptcy fraud and money laundering, making only passing reference to his political fundraising and how he sought to use that fundraising to gain access and influence over politicians.  Other than in the filings and proceeding associated with defendant's motion to compel discovery and a few passing references during his sentencing, defendant's intersection with these public officials had little relevance to defendant's case, other than proving that he was in fact working as a real estate developer and earning income contrary to his sworn assertions.  No public officials were alleged to be co-conspirators or alleged to have helped facilitate defendant's fraud.

Despite the limited role the public officials played in the litigation in defendant's case, the Los Angeles Times Communications LLC (the "Applicant") seeks to unseal select materials filed under seal in this case that the Applicant suspects -- sometimes incorrectly -- touch upon the government's public corruption investigation that resulted in those officials not being charged, nor even being named as co-conspirators' in defendant's bankruptcy and tax fraud case.  (Applicant's Mem. of Points & Authorities in Support of Motion to Intervene and Unseal (hereinafter, "Mot.").)

Specifically, the Applicant seeks: (1) pleadings, exhibits, and sealing materials associated with defendant's motion to compel (dkts. 59, 61, 70-73, 77-78 (collectively, the "MTC Materials"[1]); and (2) the government's sealed sentencing exhibits (dkt. 125) (the "Sentencing Exhibits," collectively with the MTC Materials, the "Sealed Materials").[2]

This Court should deny the Applicant's motion with respect to the MTC Materials and permit the government to make the redactions requested below.[3]  First, the MTC Materials are discovery materials that are not subject to the qualified right of access granted to the public and press under the First Amendment or common law. Accordingly, materials such as the wiretap materials, including linesheets, investigative reports, and an interview transcript do not transform from material that is otherwise not subject to a qualified right of access into material that is merely by its attachment to a discovery motion.  Second, for any material this Court deems subject to a qualified right of access, this Court should permit the government to make redactions of that material to protect: (1) the uncharged subjects of that investigation who face concrete privacy,

---

[1] As discussed more fully below, the government does not oppose the unsealing of the bankruptcy-related filings or the sealing order, and, subject to the requested redactions discussed below in Section III.B, does not oppose the unsealing of discovery letters.  The government also does not oppose the unsealing of the warrant applications filed at Exhibits G and H at Docket #61, subject to the requested redactions detailed in Section III.B below.  Accordingly, for purposes of this opposition, references to the MTC Materials do not include those items.

[2] As discussed more fully below, the government no longer opposes unsealing the non-grand jury-related materials filed with its sentencing position, subject to the proposed redactions discussed below in Section III.B.

[3] As the government informed the Applicant, it does not oppose its standing for the purposes of this case only.  (Mot., p. 5.)

2

1  reputational, and due-process concerns; (2) confidential sources and

2  cooperating third-party witnesses; (3) and any descriptions of

3  confidential investigative techniques, which if disclosed could

4  impact future federal criminal investigations; (4) victim

5  information; and (5) individual personal identifying information.[4]

6  Redacting the information for these compelling reasons strikes a

7  reasonable balance between any qualified right of access the public

8  and media may have against important governmental and third-party

9  interests.

10  **II.   STATEMENT OF FACTS**

11      **A.   The Investigation and Indictment**

12      Beginning around July 2014, the government started an

13  investigation involving cooperating individuals into allegations of

14  public corruption that led to lawful wiretap orders.  In reviewing

15  the intercepted calls, investigators heard defendant discussing his

16  real estate business and his use of his accountant as a straw donor

17  for campaign contributions as well as for his real estate development

18  companies.  As part of the government's investigation of defendant,

19  it obtained two search warrants for his email accounts.

20  Investigators also learned that defendant filed for bankruptcy in

21  April 2015 and made several false statements, including that he had

22  not worked or earned an income since 2008.

23      In 2020, defendant was charged with bankruptcy fraud and money

24  laundering relating to his personal bankruptcy case.  The indictment

25

---

26      [4] Should this Court order the unsealing any materials in dispute
here, the government respectfully requests that this Court give the
27  government six weeks to redact the materials and inform affected
parties about the impending disclosures.  Excluding the grand jury
28  materials, the filings and exhibits consist of 665 pages of documents
that will require careful review and redactions.

alleged defendant concealed assets through numerous corporations and entities for which he used Individual A, Individual B (his accountant), and his wife as nominee partners, managers, and owners. (Dkt. 1, ¶¶ 5-7.)  To conceal these assets, defendant made numerous false statements in his bankruptcy proceeding, including that defendant had not worked or earned an income since 2008.  (Id. ¶¶ 16, 22.)  The indictment alleged he had been working as a real estate developer of residential and commercial properties, which required him to work with government officials and politicians.  (Id. ¶ 2.) To curry favor and gain influence over those politicians for his real estate work, defendant would bundle campaign contributions for those politicians, (id. ¶ 3), a practice the government learned defendant engaged in during the investigation described above.

When the government sought and obtained the indictment, it contemporaneously filed a memorandum that indicated defendant's case was a matter that was pending in the United States Attorney's Office ("USAO") on or before August 8, 2014, the date the Honorable André Birotte Jr. resigned from his position as the United States Attorney for the Central District of California.  (Dkt. 3.)  Later, the case was assigned to Judge Birotte who recused himself based on the government's representation.  (Dkt. 8.)  The case was then reassigned to this Court.  (Id.)

**B.  Defendant's Motion to Compel**

Without meeting and conferring with the government, on November 25, 2021, defendant filed a motion to compel specific discovery. (Dkt. 61.)  Among defendant's arguments for seeking additional discovery was that the government falsely represented that his case was a matter pending in the USAO when Judge Birotte was the United

4

GEX 108

States Attorney.  In support of his motion, defendant filed under seal the following 19 exhibits:

| Ex. | General Description |
|---|---|
| A | FBI Surveillance Log |
| B | Defendant Discovery Letter |
| C | Government's Email Response to Defendant Discovery Letter |
| D | Defendant's Second Discovery Letter |
| E | Government's Email Response to Second Discovery Letter |
| F | Pen Register Application |
| G | Search Warrant Application |
| H | Search Warrant Application |
| I | FBI Evidence Log Documenting a Recorded Interview |
| J | FBI Evidence Log Documenting a Recorded Interview |
| K | Defendant's Bankruptcy Petition |
| L | Defendant's Bankruptcy Hearing Transcript |
| M | Defendant's Amended Bankruptcy Petition |
| N | Materials Related to FBI Investigative Activity |
| O | FBI Report and Attachments |
| P | FBI Physical Surveillance Logs |
| Q | FDIC Office of Inspector General Report |
| R | Purchase and Assumption Agreement for California Bank & Trust |
| S | FBI Interview Report |

The government filed its response less than a week later and argued that defendant failed to meet and confer. (Dkt. 62.)  The parties then met and conferred, and the government produced additional discovery.  (Dkt. 67.)  On March 2, 2022, defendant filed a supplemental motion in which he indicated the only area of

5

1  additional discovery he sought related to the government's

2  representation that his case was a matter pending in the USAO prior

3  to August 8, 2014.  (Id.)

4      On March 7, 2022, the government filed its opposition under

5  seal.  (Dkt. 72.)  The government also filed the following seven

6  exhibits under seal:

7

| Ex. | General Description |
|-----|---------------------|
| 1   | Wiretap Linesheet |
| 2   | Wiretap Linesheet |
| 3   | Government Response to Defendant's Second Discovery Letter |
| 4   | Excerpts from a Wiretap Application |
| 5   | Excerpts from a Wiretap Application |
| 6   | Excerpts from a Wiretap Application |
| 7   | Transcript of an Interview of Defendant |

16  (Dkt. 73.)  These exhibits demonstrated that contrary to defendant's

17  allegations, the investigation that led to defendant's charges

18  started in July 2014 while Judge Birotte was the United States

19  Attorney.

20      On March 14, 2022, defendant filed his reply in support of his

21  motion under seal along with Exhibit T, a wiretap application.

22  (Dkts. 77-78.)  Defendant's sealing application stated that his reply

23  and exhibit contained "sensitive, confidential information on law

24  enforcement's investigation into politicians and their staffers, at

25  least some of which is not public knowledge."  (Dkt. 75.)

26  Defendant's counsel further argued that public disclosure of "these

27  documents would harm my client irreparably and make public

28

6

1  potentially sensitive information about both my client and targets of

2  a government investigation." (Id.)

3      On March 28, 2022, the Court denied defendant's motion to compel

4  for failure to comply with the Local Rules. (Dkt. 81.[5])  Defendant

5  did not file any further motions to compel.

6      **C.  Defendant's Sentencing**

7      On February 23, 2023, defendant pled guilty to a first

8  superseding information charging him with a False Statement in

9  Bankruptcy, in violation of 18 U.S.C. § 152(3), and Subscribing to a

10 False Tax Return, in violation of 18 U.S.C. § 7206(1). (Dkt. 106.)

11     In preparation for defendant's sentencing, the government filed

12 a sentencing position, which did not mention defendant's involvement

13 with public officials and instead focused on his fraudulent conduct.

14 (Dkt. 119.)  In connection with that sentencing position, the

15 government filed the following six exhibits under seal:

| Ex. | General Description |
|---|---|
| 1 | Transcript of Grand Jury Testimony and Exhibits |
| 2 | FBI Report of Interview |
| 3 | Internal Revenue Service-Criminal Investigation ("IRS-CI") Memorandum of Interview |
| 4 | Declaration of IRS-CI Special Agent Ashley Braver |
| 5 | FBI Report of Interview |
| 6 | Transcript of Grand Jury Testimony and Exhibits |

---

[5] The Applicant has uploaded a 32 second clip of the hearing to a website. (Mot., p. 2.)  It appears to be a clip from the larger proceeding because it does not include the parties' appearances.  The government does not have a copy of the full recording, and the Applicant has not provided it.  Given the passage of time, the government is uncertain what else, if anything, was said during the hearing.

7

1   The sealed FBI or IRS-CI reports focus on defendant's fraud and are

2   summaries of interviews of third-party witnesses, namely, one of

3   defendant's business partners and two employees of defendant's

4   accountant.  Similarly, the agent declaration summarized her review

5   of the Internal Revenue Service ("IRS") form Schedule K-1s for the

6   entities defendant used to shield his income from his creditors and

7   the IRS, which is clear from the government's sentencing position.

8   (Dkt. 119, pp. 3-4, 11.)

9        On November 14, 2023, following a multiple hour sentencing

10  hearing, defendant was sentenced to 41 months' imprisonment.  (Dkt.

11  141.)

12       **D.    The Applicant and Government Met and Conferred Regarding**

13           **the Sealed Materials**

14       On August 1, 2024, the Applicant informed the government via

15  email that they intended to move to unseal the Sealed Materials.  The

16  parties then met and conferred on August 15, 2024 and August 26,

17  2024.  (Mot., p. 5.)  For the purposes of this case alone, and in an

18  effort to reach a resolution and reduce the number of issues this

19  Court must decide, the government agreed not to oppose the outright

20  unsealing of certain documents and to unseal others subject to the

21  categories of redactions proposed below in Section III.B.[6]  (Mot.,

22  pp. 5-6.)  Other than agreeing not to seek the grand jury

23

24

---

25       [6] As described in the accompanying proposed order, the
    government does not oppose the outright unsealing of Exhibits C, E,
26  K, L, M, Q, and R filed at Docket #61 and the Order Sealing Documents
    filed at Docket #71.  Further, the government does not oppose the
27  unsealing of Exhibits B and D filed Docket #61 and Exhibit 3 filed at
    Docket #73, provided the government is permitted to make the
28  requested redactions detailed in Section III.B. below to these
    materials.

1 transcripts, the Applicant did not agree to any of the proposed

2 redactions suggested by the government.

3     At this time, in an additional an effort to preserve the Court's

4 and parties' resources further, the government no longer opposes

5 unsealing the non-grand jury materials filed in connection with its

6 sentencing position, namely, Exhibits 2-5 filed at Docket #125,

7 provided it is permitted to redact those materials consistent with

8 the requested redactions in Section III.B.  The government also does

9 not oppose the unsealing of the warrant applications filed at

10 Exhibits G and H at Docket #61, subject to the requested redactions

11 detailed in Section III.B below.

12 **III. ARGUMENT**

13     **A.   There Is No Qualified Right of Access to the MTC Materials**

14     The First Amendment and common law provide the public and press

15 with a qualified right of access to criminal trial proceedings and

16 certain judicial records.  See <u>Richmond Newspapers, Inc. v. Virginia</u>,

17 448 U.S. 555 (1980) (First Amendment right to attend criminal

18 trials); <u>Press Enterprise Co. v. Superior Court</u>, 478 U.S. 1, 7-9

19 (1986) ("<u>Press-Enterprise II</u>") (First Amendment right of access to

20 <u>voir dire</u> examination of jurors in a criminal trial).  But neither

21 the First Amendment nor common law provide the public or press a

22 right to access discovery materials such as the pleadings involved in

23 defendant's motion to compel, nor any of the exhibits attached to

24 those pleadings.  <u>Civ. Beat L. Ctr. for the Pub. Int., Inc. v. Maile</u>,

25 No. 23-15108, 2024 WL 3958954, at *5 (9th Cir. Aug. 28, 2024) ("The

26 First Amendment right does not attach to certain proceedings and

27 records related to . . . discovery."); <u>United States v. Sleugh</u>, 896

28 F.3d 1007, 1013-14 (9th Cir. 2018) (no qualified right of access for

9

1  filings related to Federal Rule of Criminal Procedure 17(c) subpoenas

2  and finding "there is no tradition of access to criminal discovery");

3  United States v. Kravetz, 706 F.3d 47, 53-54 (1st Cir. 2013) (same);

4  United States v. Nickens, 809 F. App'x 584, 591 (11th Cir. 2020)

5  ("Discovery materials, however, do not fall within the scope of

6  either the First Amendment or the common law right of access.").[7]

7         1.   There Is No First Amendment Qualified Right of Access

8                to the MTC Materials

9      The right of access under the First Amendment applies only when

10 the "tests of experience and logic" have been met, that is, if (1)

11 "the place and process have historically been open to the press and

12 general public," and (2) "public access plays a significant positive

13 role in the functioning of the particular process in question."

14 Press-Enterprise II, 478 U.S. at 8-9; Times Mirror Co. v. United

15 States, 873 F.2d 1210, 1213 n.4 (9th Cir. 1989) (applying the

16 "experience and logic" test to documents generated in a judicial

17 proceeding).  As Ninth Circuit held in Sleugh, applying the so-called

18 "experience and logic" test to pre-trial filings related to Rule 17

19 subpoenas, it observed that contrary to there being any tradition of

20

21

22      [7] In its motion, the Applicant argues that the Ninth Circuit has found "'the public and press have a first amendment right of access to pretrial documents in general.'"  (Mot., p. 9 (quoting Associated Press v. U.S. Dist. Ct. for Cent. Dist. of Cal., 705 F.2d 1143, 1145 (9th Cir. 1983)).  This decision occurred before the Supreme Court's rulings in Press-Enter. Co. v. Superior Court, 478 U.S. 1 (1986) ("Press-Enterprise I") and Press-Enterprise II, which provided a framework for courts to analyze whether proceedings and filings are subject to the First Amendment's qualified right of access.  See United States v. Carpenter, 923 F.3d 1172, 1178-79 (2019) (acknowledging an excerpt from the same quotation from Associated Press before proceeding to apply the "experience and logic" test).  Accordingly, despite this broad statement of law, this Court must still apply the "experience and logic test" here to the materials in question.

10

1   public access to criminal discovery, "[d]iscovery, whether civil or

2   criminal, is essentially a private process because the litigants and

3   the courts assume that the sole purpose of discovery is to assist

4   trial preparation."  896 F.3d at 1013 (internal quotation marks

5   omitted.)  As for logic, the Ninth Circuit found that "[m]ore

6   broadly, public access would have a 'deleterious effect ... on the

7   parties' search for and exchange of information in the discovery

8   process.'"  Id. at 1013-14 (quoting Kravetz, 706 F.3d at 54).

9       Other circuits have similarly concluded that there is no First

10  Amendment qualified right of access to discovery materials and

11  proceedings.[8]  United States v. Anderson, 799 F.2d 1438, 1441 (11th

12  Cir. 1986) (observing that courts often order that discovery

13  information remain private because "[i]f it were otherwise and

14  discovery information and discovery orders were readily available to

15  the public and the press, the consequences to the smooth functioning

16  of the discovery process would be severe"); United States v.

17  Gonzales, 150 F.3d 1246, 1260 (10th Cir. 1998) ("Discovery

18  proceedings are fundamentally different from other proceedings to

19  which courts have recognized a First Amendment right of access.");

20  see also Chicago Trib. Co. v. Bridgestone/Firestone, Inc., 263 F.3d

21  1304, 1313 n.10 (11th Cir. 2001) ("The prospect of all discovery

22

23

24      [8] The Applicant relies upon the Fourth Circuit's order in In re
    Time Inc., 182 F.3d 270, 271 (4th Cir. 1999), for support that the

25  press and public have a qualified right of access to motions to
    compel discovery specifically.  (Mot., p. 9.)  In contrast to the

26  cases cited above, the Fourth Circuit provided no analysis for its
    decision that the qualified right of access applies to motions to

27  compel discovery, summarily stating that motions to compel discovery
    are "pretrial motions" that "are part of the proceedings to which the

28  traditional First Amendment right of access applies."  182 F.3d at
    271.

                                    11

1    material being presumptively subject to the right of access would

2    likely lead to an increased resistance to discovery requests.").

3              2.    There Is No Common-Law Qualified Right of Access to

4                  the MTC Materials

5       The common-law right of access also does not apply to discovery

6    materials like the MTC Materials here. Instead, it only applies to

7    "judicial records," which the court in Sleugh interpreted to be those

8    materials that "affect substantive rights", 896 F.3d at 1014, and not

9    "'tangentially related to the underlying cause of action,'" id.

10    (quoting Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092,

11    1099 (9th Cir. 2016)). Adopting reasoning from the First Circuit,

12    the Ninth Circuit noted that "'[m]aterials submitted to a court for

13    its consideration of a discovery motion are actually one step further

14    removed in public concern from the trial process than the discovery

15    materials themselves.'" Id. at 1015 (quoting Kravetz, 706 F.3d at

16    54).[9] This Court should conclude the same here and find that the MTC

17    Materials are "tangentially related to the underlying cause of

18    action" and therefore not subject to the qualified common-law right

19    of access. Id. at 1014. Accordingly, only good cause need exist to

20    keep the materials sealed and/or redacted, as the government seeks to

21    do here. Kamakana v. City & Cnty. of Honolulu, 447 F.3d 1172, 1179

22    (9th Cir. 2006). Good cause to keep materials sealed includes when

23

24

25

26        [9] The Applicant cites United States v. Wecht, 484 F.3d 194, 210
(3d Cir. 2007) for the proposition that criminal and civil discovery

27    is different, particularly criminal discovery's Constitutional
dimension. (Mot., p. 10.) While the Applicant's assertion is no

28    doubt true, it has not stopped numerous courts from analogizing the
two and finding that there is not a qualified right of access to
criminal discovery materials, including the Ninth Circuit.

1  unsealing would cause a person annoyance, embarrassment, oppression,

2  or undue burden or expense.  Id. at 1180.

3      The Applicant's reliance on United States v. Miske, No. 19-cr-

4  00099, 2022 WL 1073797, at *3 (D. Haw. Apr. 8, 2022) is misplaced.

5  (Mot., p. 10.)  There, unlike here, the district court appeared

6  prepared to substantively rule on the motion to compel.  As discussed

7  above, the district court here did not substantively rule on

8  defendant's arguments and instead dismissed it for violation of the

9  Local Rules.  (Dkt. 81.)  Defendant never re-filed and therefore the

10 Court never "determine[ed] the litigants' substantive rights."

11 Sleugh, 896 F.3d at 1014.  Accordingly, defendant's case is akin to

12 another unpublished district court decision from within this circuit,

13 Jones v. PGA Tour, Inc., where the court found that a litigant's

14 motion to dismiss should not be unsealed because it had not relied on

15 it to "determin[e] the litigants' substantive rights," since the

16 parties filed stipulated to dismiss the action.  No. 22-CV-04486-BLF,

17 2023 WL 5520771, at *4 (N.D. Cal. Aug. 24, 2023) (internal quotation

18 marks omitted).

19         3.   There Is No Qualified Right of Access to the Wiretap

20              Materials, Investigative Reports, and Interview

21              Transcripts[10]

22      Several courts have found that neither the First Amendment nor

23 common law provide the public or press a right to access to wiretap

24 _____

25      [10] As discussed below, the government does not dispute that there
   is a qualified, common-law right of access to post-investigation
26 search warrant materials after an investigation ends, nor does it
   dispute that there is a qualified, First Amendment right of access to
27 materials attached to its sentencing position.  For its part, the
   Applicant does not argue that the First Amendment right attaches to
28 post-investigation search warrants in the Ninth Circuit independent
                                        *(footnote cont'd on next page)*

                                   13

1  materials.  See In re New York Times Co. to Unseal Wiretap & Search

2  Warrant Materials, 577 F.3d 401, 411 (2d Cir. 2009) (reversing

3  district court decision unsealing wiretap materials and concluding

4  there is no common-law nor First Amendment right of access to wiretap

5  materials); In re U.S. Dep't of Just. Motion to Compel Facebook to

6  Provide Tech. Assistance in Sealed Case, 357 F. Supp. 3d 1041, 1043-

7  45 (E.D. Cal. 2019) (no common-law nor First Amendment right of

8  access to wiretap materials); United States v. Blagojevich, 662 F.

9  Supp. 2d 998, 1002-04 (N.D. Ill. 2009) (no common-law nor First

10 Amendment right of access to wiretap materials)[11]; see also In re

11 Granick, 388 F.Supp.3d 1107, 1126 (N.D. Cal. 2019) (no qualified

12 First Amendment right of access; petitioners did not argue for a

13 common law right of access).  Accordingly, the wiretap materials

14 should remain sealed because there is no qualified right of access to

15 them.[12]

16 _____

of its argument that attaching such materials to defendant's motion
17 to compel transformed them into such.  The Ninth Circuit has not yet
determined whether pen register applications are subject to a
18 qualified right of access, and one court from the Northern District
of California determined while there was no First Amendment right of
19 access to such materials, a common-law right of access exists.  In re
Granick, No. 16-MC-80206-KAW, 2018 WL 7569335, at *11 (N.D. Cal. Dec.
20 18, 2018), report and recommendation adopted, 388 F. Supp. 3d 1107
(N.D. Cal. 2019).  Regardless of whether there is a qualified right
21 of access to these records, for the reasons discussed herein, there
are compelling reasons to redact those materials in the manner
22 suggested by the government prior to unsealing them.

23 [11] In Blagojevich, the district court unsealed materials relating
to defendants' motion to suppress but order the materials to be
24 redacted to protect the identity of uncharged third parties because
the briefs would form "the basis of his decision."  662 F. Supp. 2d
25 at 1005.  As discussed above, the Court here did not reach the merits
of defendant's motion to compel and denied it for failure to comply
26 with the Local Rules.  Even if it had, this Court should follow the
reasoning of the Blagojevich court and order redactions of
27 identifying information of uncharged third parties.

[12] All the cases cited by the Applicant for why the Wiretap
28 Materials here should be unsealed require that the underlying records
*(footnote cont'd on next page)*

14

1    Similarly, the Applicant has provided no independent basis for

2    why the investigative reports and the interview transcript should be

3    subject to a qualified right of access.  Because these materials are

4    not subject to a right of access by their mere attachment to the MTC

5    Materials, this Court should not unseal them either.

6    **B.    Compelling Reasons and Governmental Interests Exist to**

7    **Redact Any Unsealed MTC Materials and Sentencing Materials**

8    The Ninth Circuit has held that the public has a qualified

9    common-law right of access to sealed search warrant materials after

10   an investigation has been terminated. United States v. Bus. of Custer

11   Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of

12   Billings, Mont. ("Custer Battlefield Museum"), 658 F.3d 1188, 1194

13   (9th Cir. 2011).  But that right of common-law access is not

14   absolute, and a party can overcome the strong presumption of access

15   by articulating "compelling reasons" supporting continued sealing of

16   the materials and/or redaction of certain information.  See id. at

17   1195 (citing Kamakana, 447 F.3d at 1178-79).  Similarly, the

18   qualified right of access under the First Amendment is not absolute

19   either.  Where the right exists, it may be "overcome only by an

20   overriding interest based on findings that closure is essential to

21   preserve higher values and is narrowly tailored to preserve that

22   interest." Press-Enterprise II, 478 U.S. at 9.

23   As detailed below, compelling reasons and governmental interests

24   support the limited and tailored redactions proposed by the

25   government here to any materials unsealed by the Court.

26   ────────────────

27   in which those materials are cited to be subject to a qualified right
     of access themselves.  (Mot., pp. 11-12.)  For the reasons discussed
     above, the MTC Materials are not subject to a qualified right of

28   access themselves and therefore the cases cited by Applicant are of
     no assistance to it.

15

1            1.   Uncharged Subjects Have Compelling Privacy,

2               Reputational, and Due Process Interests that Warrant

3               Redacting Their Names/Identities

4    Where an investigation does not lead to criminal charges against

5    a person, the uncharged person retains significant personal interests

6    that are implicated when a party seeks to unseal records regarding

7    the inquiry.  See Matter of the Application of WP Co. LLC ("WP Co."),

8    201 F. Supp. 3d 109, 122 (D.D.C. 2016).  Not only does the "mere

9    association with alleged criminal activity as the subject or target

10   of a criminal investigation carr[y] a stigma that implicates an

11   individual's reputational interest," as well as "an individual's

12   privacy interests," a related "a due process interest arises from an

13   individual being accused of a crime without being provided a forum in

14   which to refute the government's accusations."[13]  Id.; see Times

15   Mirror, 873 F.2d at 1216 (identifying various "risks" that are

16   present "when search warrant materials are made public," albeit in

17   the context of an ongoing investigation, including that "persons

18   named in the warrant papers will have no forum in which to exonerate

19   themselves," causing "possible injury to privacy interests"); In re

20   Press Application for Access to Jud. Recs. in Case No. 23-SC-31 ("In

---

[13] DOJ policy generally forbids prosecutors from identifying uncharged third parties in public documents and hearings to protect these same privacy and reputational interests.  See United States Department of Justice Manual § 9-27.760 (Limitation on Identifying Uncharged Parties Publicly) ("In all public filings and proceedings, federal prosecutors should remain sensitive to the privacy and reputation interests of uncharged third parties . . . As a series of cases makes clear, there is ordinarily 'no legitimate governmental interest served' by the government's public allegation of wrongdoing by an uncharged party . . . In most cases, any legitimate governmental interest in referring to uncharged third-party wrongdoers can be advanced through means other than those condemned in this line of cases.").

16

GEX 120

1    re Press Application"), No. MC 23-84 (JEB), 2023 WL 8254630, at *6

2    (D.D.C. Nov. 29, 2023) ("Although a search warrant is not a formal

3    allegation of a crime, the affidavit's narrative, if unsealed, would

4    essentially levy such allegations against unindicted individuals,"

5    implicating privacy interests that are "particularly weighty" for

6    uncharged subjects who have no forum to vindicate themselves)

7    (cleaned up).

8         Given the significant concerns at stake, courts have repeatedly

9    found that uncharged parties' (and other third parties') privacy,

10   reputational, and due process interests are sufficiently compelling

11   to outweigh the public's right of access to sealed materials.  See,

12   e.g., In re Granick, 388 F. Supp. 3d 1107, 1119 (N.D. Cal. 2019)

13   (denying petition to unseal search warrant materials filed between

14   2006 and 2018 given, among other factors, the government's compelling

15   interest in protecting "the privacy, reputational and due process

16   interests of individuals who were the subject of closed

17   investigations that did not result in criminal charges"); In re New

18   York Times Co., No. MC 21-91 (JEB), 2021 WL 5769444, at *5 (D.D.C.

19   Dec. 6, 2021) (denying newspaper's application to unseal government's

20   redactions of "detailed information about subjects of the [criminal]

21   investigation — including information that could identify them, the

22   extent of their cooperation with law enforcement, and their private

23   activities," based, in part, on privacy interests of the uncharged

24   subjects); WP Co., 201 F. Supp. 3d at 129 ("[C]ompelling privacy and

25   due process interests of persons who have not been charged outweigh

26   any limited public interest in further disclosure in this case.").

27   Indeed, in the same opinion it ruled the common-law right of access

28   applies to search warrant materials post-investigation, the Ninth

17

GEX 121

1  Circuit explained that "the privacy interests of the individuals

2  identified in the warrants and supporting affidavits" are "important"

3  and endorsed protecting those interests "through a court's discretion

4  either to release redacted versions of the documents or, if

5  necessary, to deny access altogether."  See Custer Battlefield

6  Museum, 658 F.3d at 1194.

7      The Court should conduct the same analysis here.  As is

8  commonplace in public corruption investigations, the government did

9  not bring criminal charges against multiple people it investigated,

10 including both public officials and private citizens.  While the

11 government's decision to not prosecute certain individuals does not

12 necessarily exonerate those people or suggest no wrongdoing by them

13 occurred (although a lack of charges sometimes may denote those

14 conclusions), the reality is that if the names and/or identities of

15 these uncharged subjects are not redacted in the MTC Materials and

16 Sentencing Materials, the public will draw the (mistaken but

17 understandable) conclusion that they are guilty of crimes simply by

18 being subjects of the federal investigation.  This disclosure

19 subjects the uncharged persons to "the unfairness of being

20 stigmatized from sensationalized and potentially out-of-context

21 insinuations of wrongdoing" when they "lack the opportunity to clear

22 their names at trial," WP Co., 201 F. Supp. at 124 (cleaned up),

23 offending the uncharged subjects' privacy, reputational, and due

24 process interests.[14]

25

26      [14] The cases Applicant cites stand for the proposition that where
   public officials are involved in the alleged misconduct at issue in
27 that case or investigation, then the weighty public interests
   outweigh any privacy interests those officials may have in having
28 their names withheld from public scrutiny.  (Mot., pp. 14-15.)  In
                                        *(footnote cont'd on next page)*

2.    There Are Compelling Reasons to Protect the Identities of Individuals Who Cooperated in the Federal Investigation

The government may generally "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." WP Co., 201 F. Supp. 3d at 127 (cleaned up).  Preservation of witness anonymity "recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." Roviaro v. United States, 353 U.S. 53, 59 (1957). Among other things, witness anonymity "serves to ensure potential witnesses are free to provide information without fear of reprisal" and that "investigators are able obtain information and assistance from individuals with direct knowledge of criminal conduct." WP Co., 201 F. Supp. 3d at 127.  This is "critical to law enforcement efforts and the government's compelling interest in protecting the public." Id.  Witness anonymity also shields cooperating witnesses from many of the privacy, reputational, and due process concerns faced by uncharged subjects of investigations whose identities become public. See id. at 122.

For these important reasons, courts routinely endorse sealing and/or redacting the identities of witnesses who cooperate with investigators.  See Custer Battlefield Museum, 658 F.3d at 1195 n.5.

---

defendant's criminal case, the public officials' conduct is tangential to defendant's criminal bankruptcy and tax fraud.  It proves that defendant was working and earning an income in which he interfaced with public officials, nothing more.  Further, as noted above, none of these officials were named as co-conspirators in defendant's indictment, nor were they central figures in his case.

19

GEX 123

1   ("[T]he need to protect the identities and safety of confidential

2   informants" is among the "recognized . . . concerns that may call for

3   redaction of the [warrant] materials or withholding of disclosure

4   outright."); In re Los Angeles Times Commc'ns LLC, 628 F. Supp. 3d

5   55, 70 (D.D.C. 2022) (finding that proposed redactions of search

6   warrant materials were "appropriate to protect third-party privacy

7   interests—including . . . information gained from the cooperation of

8   private third-party witnesses.").

9        Here, redacting the names and/or identities of individuals who

10  cooperated in the federal investigation will serve compelling law

11  enforcement interests by incentivizing people with direct knowledge

12  of crimes to report that information to the government.  If the names

13  and/or identities of individuals who did so in the federal

14  investigation were made public, particularly in a public corruption

15  investigation which tends to garner more media scrutiny, "future

16  investigators would risk losing the ability to obtain truthful

17  information from subjects or witnesses since those individuals might

18  not trust that their statements would in fact be kept private."  See

19  In re New York Times Co., 2021 WL 5769444, at *6 (cleaned up).

20  Because the MTC Materials and Sentencing Materials rely on

21  information provided by third-party witnesses whose role in the

22  investigation is not publicly known (like many significant corruption

23  and fraud investigations), disclosure of their names and/or

24  identities would "compromise not only those third-party witnesses'

25  reputations . . . but also the government's own law enforcement

26  interest in maintaining its ability to secure cooperation from

27  witnesses in the future."  In re Los Angeles Times Commc'ns, 628 F.

28  Supp. 3d at 67 (cleaned up).

20

1      3.   Compelling Reasons Exist to Redact Any Sensitive Law

2           Enforcement Techniques

3       The government has a significant and compelling interest in

4  preserving the secrecy of its sensitive law enforcement techniques,

5  including those associated with its wiretap and pen register

6  applications.  See, e.g., In re City of New York, 607 F.3d 923, 940–

7  41 (2d Cir. 2010) (the purpose of the common law's recognition of a

8  law enforcement privilege is "to prevent disclosure of law

9  enforcement techniques and procedures, to preserve the

10 confidentiality of sources, to protect witness and law enforcement

11 personnel, to safeguard the privacy of individuals involved in an

12 investigation, and otherwise to prevent interference with an

13 investigation"); United States v. Rigmaiden, 844 F. Supp. 2d 982, 989

14 (D. Ariz. 2012) (law enforcement privilege to shield sensitive

15 surveillance technique from disclosure); Granick, 388 F. Supp. 3d at

16 1119 (recognizing protecting "law enforcement techniques" as a

17 compelling government interest).

18      The same should be true here.  To the extent the Court orders

19 any materials unsealed, the government should be permitted to redact

20 any information disclosing sensitive law enforcement techniques,

21 particularly those associated with the functioning of wiretap and pen

22 registers.

23      4.   Victim Information Should be Redacted

24      Courts have long recognized that victims' identities may be

25 shielded from public access under certain circumstances.  See United

26 States v. Hubbard, 650 F.2d 293, 315 (D.C. Cir. 1980) ("The public

27 has in the past been excluded, temporarily or permanently, from court

28 proceedings or the records of court proceedings to protect . . . the

privacy and reputation of victims of crimes."). This often occurs in

connection with minor victims, see Richards v. Cox, No.

16CV01794JCMBWN, 2019 WL 2518110, at *2 (D. Nev. June 18, 2019), and

victims of sexual assault, see Heineke v. Santa Clara Univ., No. 17-

CV-05285-LHK, 2017 WL 6026248, at *22 (N.D. Cal. Dec. 5, 2017), but

the fact remains that all victims of crimes are statutorily afforded

privacy rights. See 18 U.S.C. § 3771(a)(8) (the Crime Victims'

Rights Act) (stating that crime victims have "[t]he right to be

treated with fairness and with respect for the victim's dignity and

privacy."). The MTC Materials allude to the identity of at least one

potential victim. To protect that person's "dignity and privacy" as

a crime victim, see id., the Court should authorize redactions of

their identity in the search warrant materials.

### 5. Individuals' Personal Identifying Information Should Be Redacted

The dissemination of personal identifying information -- such as

individuals' dates of birth, social security numbers, bank account

information, home and personal email addresses, and personal

telephone numbers -- poses considerable harm to those persons and

their privacy interests, yet has minimal public interest. In light

of this, courts routinely protect personal identifying information

from public dissemination. See, e.g., Mahone v. Amazon.com, Inc.,

No. C22-594 MJP, 2024 WL 965139, at *2 (W.D. Wash. Mar. 6, 2024)

(authorizing redaction of personal identifying information because

"[d]isclosure of this information could cause a significant harm to

third parties," and "the public can otherwise understand and

appreciate the merits of Defendants' position without this

information."); Capitol Specialty Ins. Corp. v. GEICO Gen. Ins. Co.,

22

1  No. CV 20-672-RSWL-EX, 2021 WL 7708484, at *3 (C.D. Cal. Apr. 14,

2  2021) ("The public has a minimal interest in personal identifying

3  information."); Activision Publ'g, Inc. v. EngineOwning UG, No.

4  CV222CV00051MWFJCX, 2023 WL 2347134, at *1 (C.D. Cal. Feb. 27, 2023)

5  (finding compelling reasons to seal parties' customers' personal

6  information, including the customers' names, account numbers, IP

7  addresses, and email addresses); Reflex Media, Inc. v. Doe No. 1, No.

8  218CV02423RFBBNW, 2022 WL 2985938, at *2 (D. Nev. July 28, 2022)

9  (keeping personal identifying information in an exhibit under seal

10  "because public disclosure of this information could be used for

11  improper purposes").

12       This proposition should not be controversial given the

13  requirements in Federal Rule of Criminal Procedure 49.1 and Federal

14  Rule of Civil Procedure 5.2, which are designed to safeguard this

15  highly sensitive information.  See Fed. R. Crim. P. 49.1(a)

16  (requiring that an individual's social security number, taxpayer

17  identification number, date of birth, the name of an individual known

18  to be a minor, and financial account number be redacted in any

19  document filed electronically or in paper form); Fed. R. Civ. P.

20  5.2(a) (same).  Accordingly, the Court should allow the government to

21  redact all personal identifying information in any unsealed

22  materials.

23  **IV.  CONCLUSION**

24       For the foregoing reasons, the government respectfully requests

25  that this Court keep the materials requested sealed and/or redacted

26  in the manner proposed by the government, as set forth in the

27  government's proposed order filed contemporaneously with the instant

28  opposition.

GEX 127

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

24

GEX 128